# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation,<br><br>Plaintiffs<br><br>v.<br><br>DASHGO, INC., a Delaware corporation, and AUDIOMICRO, INC. d/b/a ADREV, a Delaware corporation,<br><br>Defendants | CASE NO. 1:21-CV-0803 AWI BAM<br><br>ORDER ON DEFENDANT'S MOTIONS TO DISMISS, TO STRIKE, AND FOR MORE DEFINITE STATEMENT<br><br>(Doc. No. 10) |

This is a copyright infringement action that stems from the alleged improper infringement by Defendants Dashgo, Inc. ("Dashgo") and Audiomicro, Inc. d/b/a Adrev ("Adrev") (collectively "Defendants") of hundreds of domestic and foreign copyrighted works owned by Plaintiff Yellowcake, Inc. ("Yellowcake"). The operative complaint is the First Amended Complaint ("FAC"). Currently before the Court is a Rule 12(b)(6) motion to dismiss, a Rule 12(e) motion for more definite statement, and a Rule 12(f) motion to strike, all filed by Defendants. For the reasons that follow, the Rule 12(b)(6) motion will be granted.

## LEGAL FRAMEWORKS

*Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon, 828 F.3d at 842.

*Rule 12(e)*

Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). That is, if a "pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). A Rule 12(e) movant "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e); Gillibeau v. Richmond, 417 F.2d 426, 431 & n.5 (9th Cir. 1969); Estate of Prasad v. County of Sutter, 958 F.Supp.2d 1101, 1124 (E.D. Cal. 2013). Rule 12(e) motions attack "the unintelligibility of the complaint, not simply the mere lack of detail, and is only proper

when a party is unable to determine how to frame a response to the issues raised by the complaint." Neveau v. City of Fresno, 392 F.Supp.2d 1159, 1169 (E.D. Cal. 2005); see also Estate of Prasad, 958 F.Supp.2d at 1124.  Rule 12(e) motions are disfavored and rarely granted. Sanchez v. City of Fresno, 914 F.Supp.2d 1079, 1122 (E.D. Cal. 2012).  Where a party understands the substance of the claim asserted and can obtain the details sought in the Rule 12(e) motion through discovery, a Rule 12(e) motion need not be granted.  Medrano v. Kern Cnty. Sheriff's Office, 921 F.Supp.2d 1009, 1018 (E.D. Cal. 2013); Sanchez, 914 F.Supp.2d at 1122.

*Rule 12(f)*

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial.  See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir 2010); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983).  The grounds for the motion to strike must appear on the face of the pleading or from matters that are properly the subject of judicial notice.  See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1528 (9th Cir. 1993).[1]  Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy.  Hawkins, 62 F.Supp.3d at 1149; Sliger v. Prospect Mortg., LLC, 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2011).

**FACTUAL BACKGROUND**

From the Complaint, Yellowcake is in the business of exploiting intellectual property rights, including digital music distribution.  Yellowcake and its predecessors-in-interest have always owned the exclusive copyrights in *inter alia* 165 domestic copyrighted sound recordings[2] ("the Domestic Works") and 1,075 foreign copyrighted sound recordings ("the Foreign Works").

---

[1] Reversed on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

[2] The sound recordings are essentially albums that include a number of individual songs.  See FAC Ex. A.  There are hundreds of individual songs within the 165 Domestic Works.  See id.

3

1 Yellowcake or its predecessors have registered with the United States Copyright Office the
2 Domestic Works and received Certificates of Registration for each sound recording.  Yellowcake
3 acquired all of its predecessors-in-interest's rights associated with the Domestic Works.  The
4 Foreign Works were duly registered in Mexico, which is the country of first publication.
5 Yellowcake acquired all of its predecessors-in-interest's rights associated with the Foreign Works.
6 The Foreign Works are subject to copyright protection in the United States pursuant to The Berne
7 Convention for the Protection of Literary and Artistic Works and the Copyright Act of 1976, as
8 amended.  Yellowcake is the exclusive owner of all rights in the Domestic Works and the Foreign
9 Works, including the exclusive rights to sell, distribute, and publicly perform those works.

10   Dashgo sells and distributes music throughout the world using internet distribution and
11 retail channels.  Adrev performs business, administrative, distribution, and technological functions
12 in connection with Dashgo's business operations.  Dashgo is a wholly owned subsidiary of Adrev,
13 and Adrev dominates the management of Dashgo.  Dashgo had a contractual right to exploit the
14 Domestic Works and Foreign Works pursuant to two distribution agreements.  One agreement was
15 between Dashgo and Colonize Media (the "Colonize Agreement"), and the other agreement was
16 between Dashgo and MAR International Records ("the MAR Agreement").  Both of these
17 agreements were validly terminated under the terms of those agreements after Yellowcake had
18 acquired the exclusive ownership of all rights in the Domestic Works and the Foreign Works.
19 Dashgo acknowledged in writing that both the Colonize Agreement and the MAR Agreement
20 were validly terminated in writing and that it would cease distributing the Domestic Works and the
21 Foreign Works.  Yellowcake did not enter another distribution agreement with Dashgo, and
22 Dashgo did not obtain any valid rights to exploit the Domestic Works and Foreign Works from
23 any third party after Yellowcake terminated the Colonize Agreement and the MAR Agreement.
24 Whatever rights Dashgo may have had in the Domestic Works and Foreign Works no longer exist.

25   Despite the termination of the two distribution agreements, Dashgo has engaged in a
26 number of unauthorized exploitations of the Domestic Works and Foreign Works, all in violation
27 of Yellowcake's exclusive rights under 17 U.S.C. § 106.  Dashgo has *inter alia* sold, distributed,
28 reproduced, synchronized, created derivative works, and publicly performed Domestic Works and

Foreign Works through digital transmission on online Digital Distribution Platforms (i.e. iTunes, Apple Music, Spotify, Amazon Music, and YouTube) without Yellowcake's authorization. Dashgo created and/or uploaded or caused to be created and/or uploaded videos containing unauthorized derivative works of the Domestic Works and Foreign Works. Dashgo continues to benefit from the unauthorized exploitations of the Domestic Works and Foreign Works. Adrev performed *inter alia* distribution and technological functions for Dashgo in connection with the unauthorized exploitation of the Domestic Works and Foreign Works.

On multiple occasions, Yellowcake through its agent Colonize Music has notified either Dashgo or its agent/business affiliate Adrev, of the unauthorized exploitation of the Domestic Works and Foreign Works and demanded that Defendants cease their infringing conduct. Adrev contacted Colonize to discuss unauthorized exploitations by Dashgo. Nevertheless, Dashgo and Adrev continue their unauthorized exploitation. Despite confirming that all unauthorized uses would cease, Defendants have engaged in at least 165 unauthorized uses of the Domestic Works.

## DEFENDANT'S MOTION

### A. MOTION TO STRIKE – PUNITIVE DAMAGES

*Defendants' Arguments*

With respect to the motion to strike, Dashgo argues that Yellowcake seeks punitive damages under the first cause of action for Copyright Infringement. However, punitive damages are unavailable under the Copyright Act. Thus, the punitive damages request must be stricken.

*Plaintiff's Opposition*

Yellowcake argues that punitive damages are permitted in connection with a claim for copyright infringement if the plaintiff elects to receive actual damages, or is limited to pursuing actual damages instead of statutory damages. None of the authority cited by Defendants prohibits a plaintiff from seeking punitive damages in connection with a claim for copyright infringement.

*Discussion*

Initially, the Court finds that Defendants utilization of Rule 12(f) is improper. "Rule 12(f) does not authorize district courts to strike claims for damages on the grounds that such claims are

1 precluded as a matter of law." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75 (9th Cir. 2010). Thus, Rule 12(f) may not be used to strike a request for punitive damages. Oushana v. Lowe's Cos., 2017 U.S. Dist. LEXIS 182852, *6 (E.D. Cal. Nov. 2, 2017). However, the Court will exercise its discretion and consider the propriety of punitive damages through Rule 12(b)(6). See id.; Kelley v. Correction Corp. of Am., 750 F.Supp.2d 1132, 1146 (E.D. Cal. 2010).

Yellowcake relies on two cases, and only two cases, for the proposition that it is entitled to seek punitive damages if it elects to pursue actual damages instead of statutory damages: *TVT Records v. the Island Def Jam Music Grp.*, 262 F.Supp.2d 185 (S.D. N.Y. 2003) and *Blanch v. Koons*, 329 F.Supp.2d 568 (S.D. N.Y. 2004). However, these cases are not binding and have never been followed by any court in the Ninth Circuit. In fact, these cases are recognized as outliers by courts and treatises alike. E.g. Falkner v. GM, LLC, 393 F.Supp.3d 927, 939 (C.D. Cal. 2018); Viacom Int'l, Inc. v. Youtube, Inc., 540 F.Supp.2d 461, 463-64 (S.D. N.Y. 2008); 4 Nimmer on Copyright § 14.02[C][2]. The clear weight of authority is that punitive damages are unavailable in copyright infringement cases. E.g. Wooten v. Netflix, Inc., 2021 U.S. Dist. LEXIS 203672, *19-*20 (N.D. Ga. May 25, 2021) (and cases cited therein); Falkner, 393 F.Supp.3d at 939 (and cases cited therein); Graham v. Prince, 265 F.Supp.3d 366, 390 (S.D. N.Y. 2017) (and cases cited therein); Massacre v. Davies, 2014 U.S. Dist. LEXIS 114787, *16-*17 (N.D. Cal. Aug. 18, 2014); Reinicke v. Creative Empire, 2013 U.S. Dist. LEXIS 9793, *11-*12 (S.D. Cal. Jan. 24, 2013); 4 Nimmer on Copyright § 14.02[C][2]. The Court will follow the majority rule. Because punitive damages are unavailable in copyright infringement cases, dismissal of the prayer for punitive damages without leave to amend is appropriate. See id.

### B.   MOTION TO DISMISS & MOTION FOR MORE DEFINITE STATEMENT[3]

*Defendants' Argument*

Defendants argue that the FAC is fatally vague and ambiguous and that no copyright claims are plausibly alleged. First, the FAC fails to identify registration dates for any of the

---

[3] Because many of the arguments made by Defendants apply equally to its motion to dismiss and motion for more definite statement, the Court addresses these motions together.

6

Domestic Works or publication and registration dates for the Foreign works. Because registration is a jurisdictional prerequisite to copyright infringement suit, registration must have occurred prior to the filing of this case and relevant registration dates must be alleged. Second, the FAC fails to allege how or when Yellowcake acquired the rights to any of the Domestic Works or Foreign Works. Yellowcake would have no standing to pursue claims that arose before it obtained any right to the works, particularly if the statute of limitations on any of these claims expired. In the absence of allegations that set the dates that rights were obtained, a statute of limitations defense cannot be properly raised and pled in the answer. Third, the FAC alleges that distribution contracts were validly terminated, but the contracts are not attached to the FAC and the FAC does not explain when, where or how the contracts were terminated. Without this information, Defendants argue that they are unable to determine if an affirmative defense is available. Fourth, while the FAC repeatedly alleges infringement, nowhere does the FAC allege when any unauthorized exploitation occurred. Without identifying a date for any infringement, Defendants argue that they are precluded from raising a statute of limitations defense. Finally, the FAC alleges a gross aggregate number of instances of alleged infringement, but utterly fails to allege which works were actually infringed, when the works were infringed, or how the works were infringed. Without this information, it is impossible to know the true potential extent of liability or even the true factual basis for Yellowcake's claims. Therefore, the FAC should be dismissed, or Yellowcake should be required to amend and provide additional necessary information.

Defendants also argue that the first cause of action for direct infringement and the fifth cause of action for contributory infringement are contradictory and legally impossible. A claim for contributory infringement requires that a third party be the direct infringer. Since Dashgo is alleged to be a direct infringer under the first cause action, it is impossible for Dashgo to be a contributory infringer with itself. Thus, either the first or fifth cause of action must be dismissed.

*Plaintiff's Opposition*

Yellowcake argues that the FAC properly alleges copyright infringement claims. A claim for direct infringement requires only allegations of ownership of a valid copyright and copying of the copyright. A claim for contributory infringement requires knowledge of another's

7

infringement and either inducement to infringe or material contribution in the infringement. A claim for vicarious infringement requires the right and ability to supervise infringing conduct of another and a direct financial interest in the infringing activity. The FAC's allegations address all of the elements for these three infringement claims. The FAC alleges that: (1) Yellowcake lawfully owns the copyrights in the Domestic Works and Foreign Works; (2) Defendants infringed all of the copyrights through copying/reproduction, sale, distribution, public performances, creation of derivative works, and synchronization through digital distribution platforms, all without permission; (3) Adrev had the right to control and supervise Dashgo's acts of infringement and contributed and benefited from those acts of infringement; and (4) Yellowcake put the Defendants on notice of their acts of infringement after the distribution agreements had been terminated. No other details or factual allegations are necessary to plausibly state infringement claims (including dates of registration or dates of infringement), and the allegations are not so vague or ambiguous that either dismissal or a more definite statement are appropriate.

      Additionally, Yellowcake argues that it believes Dashgo is the primary infringer, but it can plead in the alternative that Dashgo is a contributory infringer. It is possible and likely that Dashgo assisted Adrev with Adrev's own acts of direct infringement. Simply because there is not a direct infringement claim against Adrev does not mean that there are no valid claims against Dashgo. Yellowcake states that it should be granted leave to amend the FAC to add a claim of direct infringement against Adrev if necessary.

*Legal Standards*

    1.    <u>17 U.S.C. § 501 – Copyright Infringement</u>

"The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work." <u>Maloney v. T3Media, Inc.</u>, 853 F.3d 1004, 1010 (9th Cir. 2017); <u>see</u> 17 U.S.C. § 106. Only the "legal or beneficial owner of an exclusive right under a copyright" has standing to sue for infringement of that right. <u>Righthaven LLC v. Hoehn</u>, 716 F.3d 1166, 1169 (9th Cir. 2013). To state a claim for copyright infringement, a plaintiff must allege: (1) ownership of a valid copyright in the subject work, and (2) copying of

8

protected aspects of the protected work's expression. Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 951 (9th Cir. 2019); see also Great Minds v. Office Depot, Inc., 945 F.3d 1106, 1110 (9th Cir. 2019); A&M Records v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001). "To plead ownership, [a plaintiff] must plausibly allege it owns a valid copyright registration for its works." Malibu Textiles, 922 F.3d at 951. The word "copying" is shorthand for the violation of any of the copyright owner's exclusive rights under 17 U.S.C. § 106. Range Road Music, Inc. v. East Coast Foods, Inc., 668 F.3d 1148, 1153-54 (9th Cir. 2012); see A&M Records, 239 F.3d at 1013. A plaintiff can allege "copying" by alleging facts that plausibly demonstrate: (1) direct copying, (2) a "striking similarity" between the copyrighted works and the allegedly infringing works, or (3) that the defendants had access to the copyrighted works and the allegedly infringing works are "substantially similar." See Malibu Textiles, 922 F.3d at 952; Range Road Music, 668 F.3d at 1154; Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000).

### 2. Indirect/Secondary Copyright Infringement

"A defendant may be held vicariously liable and contributorily liable for copyright infringement carried out by another." Oracle Am., Inc. v. Hewlett Packard Enter. Co., 971 F.3d 1042, 1050 (9th Cir. 2020). "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." Fox Broad. Co. v. Dish Network LLC, 747 F.3d 1060, 1068 (9th Cir. 2014); A&M Records, 239 F.3d at 1013 n.2.

Contributory copyright infringement is a form of secondary liability that has its roots in the tort-law concepts of enterprise liability and imputed intent. Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 670 (9th Cir. 2017). If there is a threshold showing of direct infringement by a third party, see Oracle Am., 971 F.3d at 1050, liability for contributory copyright infringement requires that a defendant: (1) has knowledge of another's copyright infringement; and (2) either (a) materially contributes to the infringement, or (b) induces the infringement. VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 745 (9th Cir. 2019); Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 795 (9th Cir. 2007).

Vicarious infringement is a form of secondary liability whose roots lie in the agency principles of *respondeat superior*. Visa Int'l, 494 F.3d at 802. If there is a threshold showing of

direct infringement by a third party, see Oracle Am., 971 F.3d at 1050, liability for vicarious copyright infringement requires that a defendant has: (1) the right and ability to supervise the infringing conduct, and (2) a direct financial interest in the infringing activity. VHT, 918 F.3d at 746; Giganews, 847 F.3d at 670. The first element requires the legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so. VHT, 918 F.3d at 746. As to the second element, there is a direct financial interest where the infringing material acts as a draw for customers. Giganews, 847 F.3d at 670; Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004). The second element inquires "whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the [financial] benefit is in proportion to the defendant's overall profits." Giganews, 847 F.3d at 670; Ellison, 357 F.3d at 1079.

*Discussion*

1. First Cause of Action – Direct Copyright Infringement against Dashgo

The Court disagrees with most of the arguments made by Defendants.

First, the FAC plausibly alleges ownership of copyrights. Exhibit A identifies the Domestic Works at issue. Exhibit A names the artist who performed the sound recording, the title of individual sound recordings owned by Yellowcake, and the applicable registration number with the Copyright Office. The FAC also alleges that Yellowcake or its predecessors-in-interest registered all of the Domestic Works with the Copyright Office and that Yellowcake acquired all of the rights to the Domestic Works. See FAC ¶¶ 20, 21. Exhibit B identifies the Foreign Works at issue. The names of the artist and the title of the individual sound recordings are identified. With respect to the Foreign Works, the FAC alleges that all of the works were duly registered first in Mexico and that Yellowcake acquired all rights to the Foreign Works. See FAC ¶ 24. These allegations plausibly allege ownership of the copyrights in the Domestic Works and Foreign Works. See Malibu Textiles, 922 F.3d at 951.

Second, Defendants fault the FAC for not identifying when or how rights to the copyrights were acquired, when the copyrights were allegedly infringed, and how the distribution contracts were terminated. Without this information, Defendants contend that they are unable to plead

various affirmative defenses, including statute of limitations. These criticisms of the FAC are improper. A plaintiff is only required to make "a short plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which is done by pleading facts that support a plausible cause of action. See Iqbal, 556 U.S. at 678; Landers v. Quality Communs., Inc., 771 F.3d 638, 640-41 (9th Cir. 2015). A plaintiff "is not required to plead on the subject of an anticipated affirmative defense." United States v. McGee, 993 F.2d 184, 187 (9th Cir. 1993); see Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013). Thus, that Yellowcake did not plead additional facts that may help support an affirmative defense is not a basis to either dismiss the FAC, see id., or require a more definite statement. See Estate of Prasad, 958 F.Supp.2d at 1124; Neveau, 392 F.Supp.2d at 1169. Defendants are free to utilize the information in their possession to plead affirmative defenses and to utilize discovery to build facts for adding further affirmative defenses through an amended answer.[4] See Medrano, 921 F.Supp.2d at 1018; Sanchez, 914 F.Supp.2d at 1122.

Third, there is no heightened pleading standard for copyright infringement claims. See Thunder Studios, Inc. v. Kazal, 2018 U.S. Dist. LEXIS 226079, *7 (C.D. Cal. Mar. 22, 2018); Carter v. Pallante, 256 F.Supp.3d 791, 798 (N.D. Ill. 2017); McDonald v. K-2 Indus., 108 F.Supp.3d 135, 139 (W.D. N.Y. 2015); Facebook, Inc. v. Power Ventures, Inc., 2009 U.S. Dist. LEXIS 42367, *10 (N.D. Cal. May 11, 2009); Perfect 10, Inc. v. Cybernet Ventures, Inc., 167 F.Supp.2d 1114, 1120 (C.D. Cal. 2001). That is, a complaint need not plead with particularity the "who, what, where, when and why" of each act of infringement. Sweet People Apparel, Inc. v. Louis Grp., Inc., 2013 U.S. Dist. LEXIS 201765, *9 (C.D. Cal. Jan. 31, 2013). Therefore, that the FAC does not in essence comply with Fed. R. Civ. P. 9(b) is not a ground for dismissal.

In terms of the adequacy of the FAC's infringement pleading, the Court is satisfied that the FAC has alleged that Yellowcake is the owner of over 1,200 copyrights (the Domestic Works and the Foreign Works). The FAC also adequately alleges that each of these 1,200 copyrights were

---

[4] The Court notes that the FAC alleges that Yellowcake validly terminated the distribution contracts and that Defendants acknowledged the termination. See FAC ¶¶ 29, 30. The FAC also alleges that, after terminating the distribution contracts, Yellowcake or Colonize communicated with Defendants regarding Defendants' apparent improper exploitation of the Domestic Works and Foreign Works. See FAC ¶¶ 37, 38. Accepting these allegations as true, Defendants would have knowledge of a number of facts that could support various defenses to infringement.

infringed. Because so many copyrights are involved, it would be unwieldy, impractical, and contrary to Rule 8(a) to require Yellowcake to explain in a complaint how and when each of these copyrights were infringed. See Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co., 149 F.Supp.3d 1167, 1175 (N.D. Cal. 2015); Perfect 10, 167 F.Supp.2d at 1120-21; 3 Nimmer on Copyright § 12.09[A][2]. In these circumstances, and in order to avoid unwieldiness, a complaint that alleges representative acts of infringement is sufficient. See Blizzard Entm't, 149 F.Supp.3d at 1175; Perfect 10, 167 F.Supp.2d at 1120-21; 3 Nimmer on Copyright § 12.09[A][2]; see also Thunder Studios, Inc. v. Kazal, 2018 U.S. Dist. LEXIS 226079, *7 (C.D. Cal. Mar. 22, 2018). That being said, the Court is not satisfied that sufficient representative acts of infringement have been alleged.

Yellowcake relies on Paragraphs 3, 34, 35, 51, and 52 in arguing that it adequately alleged infringement. Paragraph 3 alleges Dashgo exploited Yellowcake's copyrights "by *inter alia* the unauthorized sale, distribution, reproduction, synchronization, creation of derivative works, and public performance thereof via digital transmission on online platforms, including without limitation iTunes, Apple Music, Spotify, Amazon Music, and [Youtube]." FAC ¶ 3. Paragraphs 34 and 35 allege that, after Yellowcake's termination of the distribution agreements, Dashgo:

> [E]ngaged in a number of unauthorized exploitations [of Yellowcake's copyrights] in violation of Yellowcake's exclusive rights under 17 U.S.C. § 106 including, but not limited to, the sale, distribution, reproduction, synchronization, creation of derivative works, and public performance of [Yellowcake's copyrights] via digital transmission on the online Digital Distribution Platforms without Yellowcake's authorization. [Also] Dashgo created and/or uploaded, or caused to be created and/or uploaded, videos containing unauthorized derivative works of [Yellowcake's copyrights] to the Digital Distribution Platforms.

FAC ¶¶ 34, 35. Paragraphs 51 and 52 allege that:

> Dashgo infringed Yellowcake's [copyrights] by selling, distributing, reproducing, synchronizing, publicly performing, and making derivative works of Yellowcake's [copyrights] without Yellowcake's authorization. By selling distributing, reproducing, synchronizing, making derivative works of, and publicly performing by means of digital transmission, videos containing Yellowcake's [copyrights], Dashgo violated, and continues to violate, Yellowcake's exclusive rights under 17 U.S.C. § 106.

FAC ¶¶ 51, 52.

These five paragraphs provide no examples of how Dashgo actually infringed the various

copyrights. Stating that Dashgo sold, distributed, reproduced, publicly performed, and made derivative works is simply restating terms that are expressly listed as exclusive rights in 17 U.S.C. § 106. It is not enough to merely label works "infringing" or label conduct as "infringement." See Love v. Nuclear Blast Am., 2020 U.S. Dist. LEXIS 156282, *8 (C.D. Cal. Apr. 16, 2020); Blizzard Entm't, 149 F.Supp.3d at 1175-76. Without further factual descriptions that give some examples and explain the acts of infringement, the allegations merely track the language of § 106 and are thus, conclusory.[5] See Blizzard Entm't, 149 F.Supp.3d at 1175-76; see also Iqbal, 556 U.S. at 678 (holding that "a formulaic recitation of the elements of a cause of action will not do."). Extensive examples or detailed allegations are not necessary, but allegations that give examples of each type of infringement alleged, combined with allegations that make clear that the examples are representative of the infringement at issue for Yellowcake's 1,200 plus copyrighted works, are necessary to plausibly plead infringement. For example, an allegation that "Dashgo directly copied and then sold the entire copyrighted sound recording/song 'Es Imposible' by the group 'Carlos Y Jose' (registration number SR0000297168) to purchasers through iTunes after the distribution agreements were cancelled and after Dashgo was informed to cease such infringing conduct," would be a representative instances that sufficiently demonstrates infringement. Cf. Thunder Studios, 2018 U.S. Dist. LEXIS 226079 at *9-*10. Because the FAC relies on conclusory allegations of infringement and does not contain representative examples of the types of infringement at issue, no plausible claim for copyright infringement is alleged. See Blizzard Entm't, 149 F.Supp.3d at 1175-76. Dismissal of the first cause of action with leave to amend is appropriate.[6]

---

[5] Yellowcake alleges that Dashgo engaged in improper "synchronization" of the Domestic Works and Foreign Works. "Synchronization" is not a term that is found in § 106. "Though it is not explicit in the Copyright Act, courts have recognized a copyright holder's right to control the synchronization of musical compositions with the content of audiovisual works and have required parties to obtain synchronization licenses from copyright holders." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 526-27 (9th Cir. 2008). Therefore, while Yellowcake has the right to control "synchronizations" of its copyrights, simply alleging that Dashgo "synchronized" some copyrighted works, without anything more, is too conclusory.

[6] Because the Court is dismissing the first cause of action through Rule 12(b)(6) with leave to amend, the Court will not order Yellowcake to provide a more definite statement. An amended complaint that complies with the analysis of this order will cure the issues identified in connection with Defendants' Rule 12(e) motion.

   2.  <u>Fourth Cause of Action – Vicarious Infringement against Adrev</u>

  There are two problems with the fourth cause of action. First, as explained above, the cause of action for direct infringement is not plausibly alleged. Direct infringement by a third party is a threshold requirement for contributory infringement. <u>See</u> <u>Oracle Am.</u>, 971 F.3d at 1050. Second, while the Court finds that the FAC adequately alleges the first element of vicarious liability,[7] the Court cannot make the same conclusion as to the second element. The FAC merely alleges that "Adrev derived substantial financial benefit from infringement of Yellowcake's [copyrights] by Dashgo." FAC ¶ 77. There are no other factual allegations that explain or expressly support this assertion. Without more, the allegation is merely a formulaic recitation of a necessary element for vicarious liability and is thus, too conclusory. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678. For these reasons, no plausible claim is stated and dismissal of the fifth cause of action is appropriate.[8]

   3.  <u>Fifth Cause of Action – Contributory Infringement against Dashgo and Adrev</u>

  Defendants' argument, which raises the possible inconsistency between the first cause of action for direct infringement and the fifth cause of action for contributory infringement, has some appeal because if Dashgo is a direct infringer, it cannot be a third party with itself. <u>Cf.</u> <u>Oracle Am.</u>, 971 F.3d at 1050 (requiring a threshold hold showing of direct infringement by a third party). However, the Court cannot conclude that this apparent inconsistency is a basis to dismiss either the first or fifth causes of action. First, the Federal Rules of Civil Procedure expressly permit parties to allege claims that are hypothetical, in the alternative, or even inconsistent. Fed. R. Civ. P. 8(d)(2), (3); <u>Molsbergen v. United States</u>, 757 F.2d 1016, 1018-19 (9th Cir. 1985); <u>Deerpoint Grp., Inc. v. Agrigenix, LLC</u>, 393 F.Supp.3d 968, 983 (E.D. cal. 2019). Pursuant to Rule 8(d), Yellowcake can allege that Dashgo is a direct infringer in the first cause of action and a contributory infringer in the fifth cause of action. <u>See</u> <u>id.</u> Second, there are approximately 1,200

---

[7] The FAC alleges that Adrev had the right and ability to stop infringing conduct by Dashgo by virtue of Dashgo being a wholly owned subsidiary of Adrev and Adrev dominating Dashgo's management. <u>See</u> FAC ¶¶ 73-75.

[8] Because the Court is dismissing the fourth cause of action through Rule 12(b)(6) with leave to amend, the Court will not order Yellowcake to provide a more definite statement. An amended complaint that complies with the analysis of this order will cure the issues identified in connection with Defendants' Rule 12(e) motion.

copyrighted works at issue and an unknown number of acts of infringement. It is possible for Dashgo to have directly infringed on some of the copyrighted works in one way (e.g. selling the copyrighted works), but contributorily infringed on the same copyrighted works in a different way (e.g. the creation of derivative works by Adrev).[9] In such a circumstance, Dashgo would be both a direct and contributory infringer. Therefore, any tensions or inconsistencies between the first and fifth causes of action do not warrant dismissal.

More significant is Defendants' argument that no plausible claim is stated. First, as explained above, the cause of action for direct infringement is not plausibly alleged. Direct infringement by third party is a threshold requirement for contributory infringement. See Oracle Am., 971 F.3d at 1050. Second, the fifth cause of action does not distinguish between the acts attributable to each Defendant, but instead makes allegations that lump the Defendants together. Generally, complaints that lump defendants together without adequately distinguishing claims and alleged wrongs among the defendants are improper because they do not give adequate notice. See Yellowcake, Inc. v. Morena Music, Inc., 2021 U.S. Dist. LEXIS 144231, *26 n.3 (E.D. Cal. Aug. 2, 2021); Culinary Studios, Inc. v. Newsom, 517 F.Supp.3d 1042, 1074-75 (E.D. Cal. 2021). Third, there are insufficient allegations that demonstrate how either Dashgo or Adrev either induced or materially contributed to the direct infringement by another. The FAC merely recites the second element for contributory copyright infringement, which is conclusory and insufficient. See Iqbal, 556 U.S. at 678. The fifth cause of action can reasonably be read as alleging contributory copyright infringement with respect to all of Yellowcake's approximately 1,200 copyrighted works. As with the first cause of action, to plausibly plead contributory copyright infringement, Yellowcake need not identify every instance of contributory infringement but must allege representative examples of how each Defendant either materially contributed to direct infringement by another or induced the infringement by another. For these reasons, no plausible claim is stated and dismissal of the fifth cause of action is appropriate.[10]

---

[9] These examples are hypothetical only.

[10] Because the Court is dismissing the fifth cause of action through Rule 12(b)(6) with leave to amend, the Court will not order Yellowcake to provide a more definite statement. An amended complaint that complies with the analysis of this order will cure the issues identified in connection with Defendants' Rule 12(e) motion.

### 4. Second Cause of Action – Injunctive Relief

Yellowcake's claim for injunctive relief is based on the Copyright Act, 17 U.S.C. §§ 502 and 503. See FAC ¶ 64. Section 503 is entitled "Remedies for infringement: Impounding and disposition of infringing articles," and Section 502 is entitled "Remedies for infringement: Injunctions." An injunction under § 502 may issue "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). These two provisions are civil remedies. Petrella v. MGM, 572 U.S. 663, 669 (2014). By their own terms, § 502 and § 503 depend on the infringement of a copyright. Yellowcake, Inc. v. Hyphy Music, Inc., 2021 U.S. Dist. LEXIS 135269, *27 (E.D. Cal. July 20, 2021). However, as discussed above, the Court has dismissed all three of the FAC's copyright infringement causes of action. There is no basis for injunctive relief through § 502 or § 503. See id. at *27-*28; Marcus v. ABC Signature Studios, Inc., 279 F.Supp.3d 1056, 1073 (C.D. Cal. 2017); Massacre, 2014 U.S. Dist. LEXIS 114787 at *17. Therefore, dismissal of the second cause of action for injunctive relief as a distinct cause of action is appropriate, but Yellowcake is free to request injunctive as part of the prayer under an infringement claim or as part of the allegations under an infringement claim.[11] See Yellowcake, 2021 U.S. Dist. LEXIS 135269 at *27-*28.

### 5. Third Cause of Action – Accounting

The third cause of action is alleged against Dashgo and is entitled "accounting." The accounting claim alleges that Dashgo improperly exploited Yellowcake's copyrights, failed to deliver the proceeds of its improper exploitations to Yellowcake, it is just and reasonable to compel Dashgo to account for any income received from the improper exploitation of Yellowcake's copyrights, and Yellowcake's damages are not readily ascertainable but will be proven at trial and believed to be in excess of $24,750,000. See FAC ¶¶ 66-70. However, no authority is cited in the FAC as a bases for the accounting, and the parties do not address the accounting claim in their briefing.

---

[11] The parties did not expressly address the second cause of action for injunctive relief. However, because injunctive relief is not a stand-alone cause of action, and the substantive causes of action that would support injunctive relief have been dismissed, the Court finds it appropriate to address the matter *sua sponte*. See Omar v. Sea Land Service, Inc., 813 F.2d 986, 991 (9th Cir. 1987).

California state law recognizes a claim for accounting. Sass v. Cohen, 10 Cal.5th 861, 869 (2020); Teselle v. McLoughlin, 173 Cal.App.4th 156, 179 (2009). If Yellowcake is intending to plead a California accounting action, there are two problems. First, "[a]n action for an accounting has two elements: (1) that a relationship exists between the plaintiff and defendant that requires an accounting and (2) that some balance is due the plaintiff that can only be ascertained by an accounting." Sass, 10 Cal. 5th at 869 (quoting Teselle, 173 Cal.App.4th at 179). An accounting action is a "means of discovery" and does not apply when the plaintiff alleges a sum certain or a sum can be made certain by calculation. Sass, 10 Cal.5th at 869; see Teselle, 173 Cal.App.4th at 179. Here, the allegations do not indicate that the balance due to Yellowcake can be ascertained only through an accounting. Paragraph 70 alleges that damages are not "readily ascertainable but will be proven at trial . . . ." FAC ¶ 70. If the damages "will be proven at trial," then this suggests that the balance due to Yellowcake can be made a sum certain through calculation. See Sass, 10 Cal.5th at 869. If the damages/balance due is subject to calculation, then an action for an accounting is improper. See id. Second, state law actions for an accounting that are based on monies received from copyright infringement (as this claim is) are preempted by 17 U.S.C. § 301. Marino v. Usher, 673 F. App'x 125, 129 (3d Cir. 2016); Reilly v. Wozniak, 2020 U.S. Dist. LEXIS 36256, *19-*20 (D. Ariz. Mar. 3, 2020); Baiul v. NBC Sports, 2016 U.S. Dist. LEXIS 52291, *33 (S.D. N.Y. Apr. 19, 2016); Our House Films, LLC v. Tunnel, Inc., 2018 U.S. Dist. LEXIS 223439, *6 (C.D. Cal. Dec. 11, 2018); Stavrinides v. Vin De Bona, 2018 U.S. Dist. LEXIS 41305, *15-*16 (C.D. Cal. Mar. 12, 2018); Motown Record Corp. v. George A. Hormel & Co., 657 F.Supp. 1236, 1241 (C.D. Cal. 1987).

In terms of the Copyright Act, an accounting is a remedy when there is a dispute concerning revenues from a copyright between co-owners of the copyright. See Corbello v. Devito, 777 F.3d 1058, 1062 (9th Cir. 2015); Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984). However, Yellowcake is not taking the position that it is a co-owner with Dashgo or Adrev. Moreover, the allegations under the third cause of action are not consistent with a claim based on co-ownership. Therefore, there is no reason to believe that an accounting per *Corbello* and *Oddo* is at issue.

The Copyright Act also provides for various damages for infringement of a copyright, including for "any profits of the infringer that are attributable to the infringement . . . ." 17 U.S.C. § 504(b). "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.; see Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826, 828 (9th Cir. 1985).  Some courts have characterized § 504(b) as providing for an "accounting." E.g. Escobar, Inc. v. Barwest Grp., LLC, 2021 U.S. Dist. LEXIS 181825, *13 (D. Col. Sept. 22, 2021); David Rogers v. eColor Studio, 2013 U.S. Dist. LEXIS 28332, *26 (E.D. N.Y. Feb. 7, 2013); Young Money Entm't, LLC v. Digerati Holdings, LLC, 2012 U.S. Dist. LEXIS 163619, *26 (C.D. Cal. Nov. 15, 2012) (finding an accounting claim to be preempted and noting that "the Copyright Act already affords [plaintiff] an adequate means by which to calculate damages in this action. See 17 U.S.C. § 504."). However, § 504 is a remedial provision. See Petrella, 572 U.S. at 669; Oracle Corp. v. SAP AG, 765 F.3d 1081, 1087 (9th Cir. 2014). As part of a remedial provision, the "accounting" under § 504(b) is properly pursued as a remedy and not as a separate cause of action. Karmo v. Morgan Creek Entm't Grp., 2019 U.S. Dist. LEXIS 133833, *18-*19 (C.D. Cal. Apr. 12, 2019); Affiliated Records, Inc. v. Taylor, 2012 U.S. Dist. LEXIS 67206, *15 (S.D. N.Y. May 14, 2016); see also Escobar, 2021 U.S. Dist. LEXIS 181825 at *13.

Given these considerations, and because the Court is dismissing all other causes of action with leave to amend, the Court will also dismiss the accounting cause of action. To the extent that Yellowcake is attempting to invoke the remedial provisions of § 504(b) through this cause of action, Yellowcake may request an accounting and cite to § 504(b) as a remedy either as part of the allegations under an infringement claim or as part of the prayer for relief. To the extent that Yellowcake is attempting to allege a California claim for an accounting, Yellowcake's may amend to the extent that it believes it can state a valid claim in light of the Court's concerns as stated above.[12]

---

[12] Because of the remedial nature of an accounting under § 504(b) and the clear defects that a California accounting claim would involve, the Court finds it appropriate to address the matter *sua sponte*. See Omar, 813 F.2d at 991.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' combined Rule 12(b)(6), 12(e), and 12(f) motion is GRANTED;
2. Plaintiff's prayer for punitive damages is DISMISSED without leave to amend;
3. Plaintiff's five causes of action are DISMISSED with leave to amend;
4. No later than twenty-eight (28) days from service of this order, Yellowcake shall file an amended complaint consistent with the analyses of this order;[13]
5. Failure to file a timely amended complaint will result in the automatic revocation of leave to amend and the closure of this case without further notice.

IT IS SO ORDERED.

Dated:   January 19, 2022                         _____
                                                                    SENIOR DISTRICT JUDGE

---

[13] In its opposition, Yellowcake raises the possibility of being allowed to amend the FAC to include a direct infringement claim against Adrev. If Yellowcake is in possession of facts that would support a plausible claim, then Yellowcake may add a claim for direct infringement against Adrev.