1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    YELLOWCAKE, INC., a California              No. 1:21-cv-00803-AWI-BAM
      corporation,
12                                                ORDER GRANTING MOTION FOR ENTRY OF
                                                  A TWO-TIER PROTECTIVE ORDER
13                   Plaintiff,

14            v.                                  (Doc. 41)

15    DASHGO, INC., a Delaware corporation,       ORDER DENYING AWARD OF FEES
      and AUDIOMICRO, INC. d/b/a ADREV, a
16    Delaware corporation,

17                   Defendants.

18

19            Currently before the Court is the motion for entry of a two-tier protective order filed by

20    Defendants' Dashgo, Inc. ("Dahsgo") and Audiomicro, Inc. d/b/a Adrev ("Adrev") (collectively

21    "Defendants") on March 25, 2022.  (Doc. 41.)  By the motion, Defendants seek entry of a two-tier

22    protective order, which includes a "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY"

23    ("AEO") designation.  The parties filed a Joint Statement Re: Discovery Disagreement Re: Two-

24    Tier Protective Order, and the instant motion has been taken under submission.  (Doc. 64.)

25            Having considered the parties' arguments, and for the reasons discussed below, the Court

26    finds entry of a two-tier protective order appropriate, and Defendants' motion will be granted.

27    Given the nature of disagreement, the Court also addresses the disputed categories of documents

28

                                                    1

and information identified by the parties and delineates the documents and information subject to the two-tier protective order.

## I.   Factual and Procedural Background

### A.   Factual Overview[1]

Plaintiff Yellowcake, Inc. ("Plaintiff" or "Yellowcake") initiated this copyright action on May 17, 2021.  (Doc. 1.)  The action stems from the alleged improper infringement by Defendants of hundreds of domestic and foreign copyrighted works owned by Yellowcake. Plaintiff also names as defendants Benjamin Patterson, president of Dashgo, and Noah Becker, president of Adrev. Patterson reports to Becker and Adrev.  Adrev and Becker dictate Dashgo's business strategy and actions.

Yellowcake and its predecessors-in-interest have always owned the exclusive copyrights in One Thousand Six Hundred and Seventy-Two (1,672) of Yellowcake's copyrighted sound recordings ("Copyrighted Works") and Three Hundred Sixty-Three (363) foreign copyrighted works ("Foreign Works").  (Doc. 31, Second Amended Complaint ("SAC") ¶¶1, 2.)[2]  Plaintiff alleges that Defendants exploited Yellowcake's Copyrighted Works and Foreign Works by, inter alia, the unauthorized sale, distribution, reproduction, synchronization, creation of derivative works, and public performance thereof via digital transmission on online platforms, including Amazon Music ("Amazon") and www.YouTube.com ("YouTube"). (SAC ¶3.)

Yellowcake or its predecessors have registered with the United States Copyright Office the Copyrighted Works and received Certificates of Registration for each sound recording. Yellowcake acquired all of its predecessors-in-interest's rights associated with the Copyrighted Works. The Foreign Works were duly registered in Mexico, which is the country of first publication. Yellowcake acquired all of its predecessors-in-interest's rights associated with the Foreign Works. The Foreign Works are subject to copyright protection in the United States

---

[1] The factual background is generally taken from the Second Amended Complaint. (Doc. 31.)

[2] In contrast to the allegations in the SAC, the First Amended Complaint ("FAC") alleged infringement of 165 domestic copyrighted sound recordings and 1,075 foreign copyrighted sound recordings.  (See Doc.1 ¶¶1,2; Doc. 30, p. 3 (Order on Defendants Motion to Dismiss)). All page numbers are to the Court's CM/ECF page number.

pursuant to The Berne Convention for the Protection of Literary and Artistic Works and the Copyright Act of 1976, as amended. Yellowcake is the exclusive owner of all rights in the Copyrighted Works and the Foreign Works, including the exclusive rights to sell, distribute, and publicly perform those works. (SAC ¶¶25-30.)

Dashgo sells and distributes music throughout the world using internet distribution and retail channels. (SAC ¶12.) Adrev performs business, administrative, distribution, and technological functions in connection with Dashgo's business operations. Dashgo is a wholly owned subsidiary of Adrev.

Colonize Media, Inc. ("Colonize") is Yellowcake's agent and distributor; and Yellowcake has authorized Colonize Media to be its exclusive distributor. Previously, Dashgo had a contractual right to exploit Yellowcake's Copyrighted Works and the Foreign Works pursuant to two since-terminated written distribution agreements: one between Dashgo and DH1 Media, the predecessor of Yellowcake's current distributor, Colonize, and one between Dashgo and MAR International Records, Inc. ("the MAR Agreement"), a predecessor-in interest in a number of Yellowcake's Copyrighted Works and Foreign Works. (SAC ¶ 35.) Yellowcake alleges both of these distribution agreements were validly terminated under the terms of those agreements after Yellowcake had acquired the exclusive ownership of all rights in the Copyrighted Works and the Foreign Works. (SAC ¶36.) Defendants Dashgo, Patterson, Adrev and Becker acknowledged in writing that both the Colonize Agreement and the MAR Agreement were validly terminated in writing and that Dashgo would cease distributing the Copyrighted Works and the Foreign Works. (SAC ¶39.)

Yellowcake did not enter into another distribution agreement with Dashgo or otherwise authorize Dashgo or Patterson to continue distributing or exploiting any of Yellowcake's Copyrighted Works or Foreign Works after the termination of the distribution agreements. Whatever rights Dashgo may have had in the Copyrighted Works and Foreign Works no longer exist, and Dashgo did not obtain any valid rights to exploit Yellowcake's Copyrighted Works or Foreign Works from any third party. (SAC ¶¶41-42.)

Despite the termination of the two distribution agreements, Dashgo and Patterson started

3

1    distributing and exploiting of Yellowcake's Copyrighted Works and Foreign Works again without

2    authorization from Yellowcake.  Yellowcake, through Colonize, notified Dashgo, Patterson,

3    Adrev, and Becker of Dashgo's unauthorized distribution and exploitation of Yellowcake's

4    Copyrighted Works and Foreign Works.  (SAC ¶¶44-45.)  As an example, Dashgo and Patterson

5    allegedly copied and then synchronized a copyrighted sound recording to an audiovisual work,

6    and then uploaded the new video to one of Dashgo's channels on www.YouTube.com.  (SAC

7    ¶46.)  In other instances, Dahsgo and Patterson copied and then sold some Copyrighted Works

8    and Foreign Works directly to purchasers through Amazon.  (SAC ¶¶49-52.)

9                                      **B.  Discovery Disputes**

10              This case, even though in the early stages, has had numerous discovery disputes, many of

11   which remain pending.   On April 6, 2022, the Court held a status conference on several

12   discovery motions.  The Court determined that the parties had not adequately met and conferred,

13   vacated the hearing date on the discovery motions, and set a further status conference. The parties

14   were to complete substantive meet and confer and, if they were unable to reach an agreement,

15   then the Court indicated its intention to set a briefing schedule and hearing date on the remaining

16   issues.  (Doc. 52.)

17              On April 8, 2022, Defendant Dashgo filed an ex parte application for an order directing

18   Plaintiff's counsel to withdraw subpoenas to third parties Amazon.com and YouTube, Inc. or, in

19   the alternative, staying enforcement of the subpoenas.  (Doc. 50.)

20              On April 11, 2022, the Court stayed all discovery, but instructed the parties to continue meet

21   and confer efforts on all motions, including the ex parte application, and be prepared to present a

22   discovery plan at the next status conference.  On May 17, 2022, the Court held a status conference.

23   The Court set a briefing schedule on Defendants' motion for two-tier/AEO protective order. The

24   parties represented that they had narrowed the issue related to the protective order and would submit

25   limited briefing as to that issue.[3] Discovery remained stayed pending resolution of the motion for

26   _____

27   [3] While the parties represented that they had narrowed the issue related to the protective order, the
     Joint Statement, nonetheless, consists of about 50 pages of briefing and over 400 pages of
     exhibits. At the status conference on June 9, 2022, the Court admonished the parties against
28   unnecessarily burdening the Court's limited resources.

                                             4

1    entry of protective order.  At a status conference on June 9, 2022, the Court lifted the stay, except

2    for discovery implicating the two-tier/AEO protective order.

3              **II.       Motion for Protective Order**

4              Defendants filed the instant motion for entry of a two-tier protective order on March 25,

5    2022.  (Doc. 41.)  On June 3, 2022, the parties filed their Joint Statement of Discovery

6    Disagreement.  (Doc. 64.)  The parties indicate that the only contested issue is whether the Court

7    should enter a two-tier protective order.  However, the underlying dispute centers on whether

8    Plaintiff's discovery seeks disclosure of Defendants' proprietary and highly sensitive documents

9    or information or trade secrets.   Defendants believe a two-tier/AEO protective order is necessary

10   so that they may avoid significant financial or competitive harm and disadvantage by disclosing

11   such sensitive information in discovery.

12              **A. Defendants' Position**

13              Defendants bring this motion because Yellowcake and its affiliate (and exclusive

14   licensee), Colonize, are direct competitors of Dashgo in the digital music distribution industry.

15   Both Dashgo and Yellowcake distribute their respective clients' content to the same content

16   delivery services such as Spotify, Apple Music, YouTube and others.  (Doc. 64, p. 74, Patterson

17   Decl. ¶18.)  Colonize's website and Dashgo's website target the same potential clients and offer

18   similar services: strategies for reaching fan targets for artists, songwriters, creators and others.

19   (Patterson Decl. ¶19. )

20              Defendants believe Plaintiff should not need Defendants' proprietary and highly sensitive

21   documents or information or trade secrets in this case. Dashgo has, over the years, and at large

22   investment, developed a unified, industry leading software program that enables its clients to

23   manage their content. (Patterson Decl. ¶ 23.)  Because the digital music distribution industry is so

24   competitive, digital music distributors are very protective of their trade secrets, customer lists,

25   proprietary systems and software, and other such proprietary and confidential information.

26   (Patterson Decl. ¶ 24.)

27              Underlying the instant motion for a two-tier protective order is Yellowcake's Requests for

28   Production of Documents, Set One ("RPD") and First Set of Interrogatories to Defendants

                                                        5

1   ("Interrogatories Set One").  As an initial matter, Defendants claim Yellowcake's RPD is

2   overbroad for two main reasons:  First, the FAC has been superseded by the SAC, which lists an

3   entirely different set of copyrighted works, and the definitions in the RPD are obsolete.[4]  Second,

4   Yellowcake's SAC identifies sound recordings by artist and title.  Sound recordings cannot solely

5   be identified by artist name and title, or even by copyright registration number rather, each unique

6   sound recording can be referenced by an International Standard Recording Code ("ISRC"), a 12-

7   character, alphanumeric code that is assigned to a piece of music set for commercial release. An

8   artist can rerecord and license different versions of the same sound recording.  The same artist can

9   rerecord a song multiple times even though each iteration bears the same title. Thus, a list of artist

10  names and titles are overbroad, vague and ambiguous.[5]

11      Further, Defendants contend that the RPD seek sensitive documents in the following

12  categories: (1) Dashgo's agreements with DSPs [digital service providers like iTunes, Spotify,

13  YouTube, etc.]; (2) Dashgo's agreements with third party licensors (content owners, artists and

14  record labels), including those licensors that claim rights to different iterations of any of

15  "Yellowcake's Copyrighted Works" or "Foreign Works"; (3) documents containing one, some or

16  all of Dashgo's existing clients and contacts; (4) documents reflecting Dashgo's internal

---

18  [4] The Court agrees.  Plaintiff's RPD and Interrogatories Set One both incorporate the same
    definitions of "Yellowcake's Copyrighted Works" and the "Foreign Works" as set forth in the
19  FAC, but not the definitions set forth in the SAC.  The definitions in the FAC of Copyrighted
    Works and Foreign Works are different from the definitions in the SAC. Any RPD based upon
20  terminology or allegations in the FAC are superseded by the SAC.  However, the Court
    understands that Plaintiff has recently provided a "list" of copyrighted works (both domestic and
21  foreign) that Plaintiff contends Defendants infringed.   The parties are directed to meet and confer
    to identify the list and which definitions will be used for responding to the RPD and
22  Interrogatories Set One. The Court will not enforce a request or interrogatory that contains
    superseded definitions.
23

24  [5] Yellowcake's position is that identification by title is sufficient.  (Doc. 64 p. 41, n.10 ("Both
    Yellowcake and Yellowcake's predecessor-in-interest were under contract with Dashgo to
25  distribute the sound recordings at issue in this action and, thus, Dashgo already knows the specific
    ISRC for each sound recording claimed by Yellowcake.") Yellowcake contends it is not obligated
26  to provide recordings identified by ISRC.  Dashgo was contracted to distribute Yellowcake's
    sound recordings and Dashgo knows the specific ISRC. *See* Exh. 17 (p. 465) (Dashgo royalty
27  report which identifies ISRC of Yellowcake's recordings claimed by Yellowcake).   According to
    Dashgo, Yellowcake thereafter provided a specific list of sound recordings.
28

6

1    procedures and processes and other proprietary commercial information; (5) documents

2    containing financial information relating to Dashgo's clients, business operations, performance

3    and profitability; and (6) documents that pertain to highly proprietary software and systems that

4    Dashgo has developed. (Doc. 64 p.12, 18-19.)  Because Yellowcake's discovery seeks sensitive

5    and confidential information, Dashgo wants to designate these documents as AEO under the

6    proposed protective order.  Defendants argue that wholesale disclosure to a competitor will

7    expose Dashgo and its business relationships to competitive harm.

8        Defendants contend good cause exists for a two-tier/AEO protective order for multiple

9    reasons. First, Yellowcake agreed to a two-tier protective order in the parties' joint scheduling

10   report.  (Doc. 14.) Second, Yellowcake, as a digital music distributor, is a direct competitor of

11   Dashgo.  (Doc. 64, p. 16.)  Yellowcake's exclusive licensee, Colonize, also is a direct competitor

12   of Dashgo, and Colonize and Yellowcake have overlapping principals.  *Id.*   Third, and critically,

13   Yellowcake's RPD and Interrogatories Set One seek sensitive and confidential documents and

14   information, including highly sensitive documents and information of third parties that are clients

15   of Dashgo or Adrev.  (Doc. 64 p. 21.)

16       Defendants request an award of attorney's fees if the motion is granted.

17                    **B.  Plaintiff Yellowcake's Position**

18       Yellowcake counters that Defendants have failed to show that good cause exists for a two-

19   tier/AEO protective order.  Yellowcake makes the following arguments against a two-tier/AEO

20   protective order: Yellowcake never agreed to a two-tier/AEO protective order; Yellowcake is not

21   a competitor of Defendants; this case does not involve trade secrets or patents; Yellowcake will

22   be prejudiced if its Principal, Kevin Berger, cannot review financial documents related to the

23   revenue Defendants received; counsel cannot adequately assess AEO-produced information

24   without necessary input from others; Defendants cite to broad categories of potential documents;

25   Defendants' assertion the RPD call for production of sensitive documents is an overbroad

26   interpretation of Yellowcake's discovery demands; and Defendants have already disclosed

27   documents they now deem sensitive.  (Doc. 64, p. 25-26.)

28       Yellowcake generally contends that Defendants have failed to explain why production of

1  correspondence and confidential documents requires a two-tier protective order.  The proposed

2  two-tier protective order comes from the Northern District of California and is intended for use in

3  patent and trade secret cases, but this case concerns only copyrighted music, not patents or trade

4  secrets.  Yellowcake asserts that the only relevant information that may even remotely be deemed

5  "confidential" is financial information relating to the income received by Defendants from the

6  unauthorized exploitation of Yellowcake's copyrighted works.  But this income goes to

7  Yellowcake's copyrights, and Yellowcake contends is entitled to receive this information.

8       Yellowcake believes the request for a two-tier/AEO protective order is a delay tactic and

9  complains that Defendants continue to withhold production of documents, such as

10  correspondence, regardless of the content, until Yellowcake agrees to the two-tier protective

11  order.  Some documents were produced in early April 2022, but most were irrelevant and still

12  withheld documents.  Defendants also have not provided any substantive answer to

13  interrogatories unless Yellowcake agrees to an inappropriate two-tier order.[6]

14       Yellowcake insists that it never agreed to the type of two-tier/AEO protective order

15  proposed here.  Instead, Yellowcake believed it was agreeing to a two-tier designation of

16  "CONFIDENTIAL" versus "NON-CONFIDENTIAL." (Doc. 64 p. 33.)

17       According to Yellowcake, Defendants intend on designating significant documents as

18  AEO because Mr. Berger is also a shareholder of Colonize which is a competitor of Defendant

19  Dashgo.  Yellowcake will have to make a motion to challenge such designations because it has

20  not asked for documents that could give Yellowcake a competitive advantage if viewed by Mr.

21  Berger.  Yellowcake posits that if there are certain financial terms in third-party contracts that

22

23  [6] The Court has reviewed, briefly, the response by Defendants to the RPD.  Much of the response
   consists of what the Court characterizes as boilerplate objections. Boilerplate objections are not
   appropriate, and a party's objections should be specific and supported by evidence if challenged.

24  See Fed. R. Civ. P. 34(b)(2); *Bragel Intl., Inc. v. Kohl's Dept. Stores*, 2018 WL 7890682, at *5
   (C.D. Cal. Nov. 14, 2018); *Peck v. Cty. of Orange*, No. 2:19-CV-04654 DS FAF MX, 2020 WL

25  4218223, at *3 (C.D. Cal. July 10, 2020) (boilerplate "General Objections" are inappropriate and
   overruled.) Once the parties have met and conferred on the "list" of Copyrighted Works and

26  Foreign Works at issue in this case, as discussed *infra,* Defendants are required to supplement
   their responses to the RPD and Interrogatories Set One to eliminate boilerplate objections to the

27  discovery requests.

28

1    Defendants are concerned about, then those terms could be redacted subject to a standard

2    privilege log.  Yellowcake also contends that Defendants have not identified what documents that

3    they have in their possession that are highly confidential or trade secrets and why it would be a

4    problem if Mr. Berger were to see them.

5         Yellowcake asserts that Defendants have not met their heavy burden to show good cause

6    for the extraordinary relief of an AEO designation or demonstrated that there are no other

7    alternatives to an AEO designation.  It is not seeking any of the six categories of documents[7]

8    identified by Defendants above and believes that a compromise could be made by using

9    redactions.[8] (Doc. 64, p.37.)

10        Yellowcake further asserts that it will be prejudiced by a two-tier protective order.  In

11   particular, Yellowcake avers that an AEO designation should be reserved for only rare instances

12   where it is truly justified, citing out of district authority. (Doc. 64 p. 37.)  Trial preparation and

13   trial are made more difficult and expensive if an attorney cannot make complete disclosures of the

14   facts to the client. AEO designation of financial information from exploitation of Yellowcake's

15   work also will interfere with Yellowcake's ability to prepare damages.  While Defendants claim

16   the need for a two-tier protective order to "cover sweepingly broad categories" of "non-descript

17   documents," (Doc. 64 p. 39), Yellowcake points out that Defendants do not identify what

18   documents are so highly sensitive that a general "confidentiality" designation is not sufficient,

19   given this dispute involves recording and revenue generated, not copyrighted software.

20        With regard to the six categories of documents relied on by Defendants to support their

21   request for two-tier/AEO protective order, Yellowcake disputes Defendants' broad

22   characterization of those requests, arguing that discovery is narrowly tailored to Yellowcake's

23

24   _____

     [7] Plaintiff contends that not until the filing of this motion did Dashgo identify these categories of
25   documents.  (Doc. 64, p. 37 ("after Defendants had filed the instant motion for a protective order
     Defendants, for the first time, identified six categories of documents in their joint statement that
26   they claim are sensitive and shall be subject to a Two-Tier order."))

27   [8] For instance, Yellowcake contends Dashgo, as a sub-distributor for Colonize Media, has
     previously sent royalty accounting reports directly to Colonize Media.
28

claims and Yellowcake is only seeking information related to its own copyrights.[9]

As to the six identified categories in dispute, Yellowcake first argues that Dashgo's agreements with DSPs like iTunes, Spotify, etc., are not confidential.  Such contracts are not propriety and are form agreements used in the Music industry.  All other distributors use the same form agreements. The net revenue received by Dashgo from the DSPs from the exploitation of Yellowcake's sound recordings is directly relevant to Yellowcake's damages.

Yellowcake likewise argues that Dashgo's agreements with third-party licensors (content owners, artists, etc) are not proprietary.  Dashgo can easily redact the financial information contained in the distribution contract as the only relevant information is as to Defendants' affirmative defense that they allegedly had the right to distribute the subject sound recordings granted by third party licensors.

Additionally, Yellowcake contends that client lists and contacts are not trade secrets (Doc. 64 p.43.), citing 18 U.S.C. § 1839(3),[10] because Dashgo disclosed clients on social media platforms, citing Exh. 18.

Next, Yellowcake asserts it is not seeking "internal procedure and processes," and "other proprietary commercial information."  These categories are too broad and legally deficient, and Yellowcake did not ask for such information in its discovery requests.

Further, Yellowcake did not ask for financial information relating to Dashgo's clients,

---

[9] The Court does not agree that the RPDs are narrow.  While the Court did not analyze all of the requests in the RPD, two requests are templates of most: 38. Copies of all documents evidencing any correspondence sent by Adrev on behalf of MediaMuv to any third-party.  39. Copies of all documents evidencing any correspondence sent by Dashgo on behalf of MediaMuv to any third-party. (Doc. 64 p. 175.)  Indeed, RPD Set Two does not define the documents requested in terms of the Copyrighted Works or Foreign Works.  (Doc. 64 p. 169-170.)

[10] Section 1839(3) provides: (3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if-- (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

business operations performance and profitability.  It only requested such information as it pertains to revenue related to the sound recordings that Yellowcake owns. (Doc. 64, p. 44.) Defendants have already sent the allegedly sensitive and proprietary royalty accounting reports that they now seek to designate as AEO directly to Colonize, citing Exh. 17,[11] royalty reports concerning royalties allegedly paid to third parties from the exploitation of the sound recordings claimed by Yellowcake.  Contrary to Defendants' suggestion, Colonize cannot "steal" any client of Dashgo's because such client is presumably under contract with Dashgo.

Similarly, Yellowcake claims it never asked for software in its discovery demands, despite Dashgo arguing that documents related to its proprietary software and systems need AEO designation.

Yellowcake maintains that it is not a competitor of Dashgo. Yellowcake owns and monetizes intellectual property, including the subject copyrighted works, through third-party distributors and retailers. It does not distribute or exploit music it does not own or music for any third parties. In contrast, Dashgo is a digital music distributor. (Doc. 64 p.45)

Yellowcake reiterates that an AEO protective order will result in prejudice.  Counsel will be unable to share the revenue related information with Plaintiff's representative who is more knowledgeable about such information.  Also, Plaintiff believes Dashgo intends to designate all relevant documents as AEO, and counsel therefore will be unable to adequately prepare.  It is Plaintiff's position that this case involves Yellowcake's own copyright sound recordings and Defendant's distribution, not highly confidential competitive information, like the cases cited by Defendants. (Doc. 64 p. 46.)  Plaintiff asks that Defendants' request for a two-tier/AEO protective order be denied, and that Plaintiff be awarded fees for opposing the motion.

### C.  Relevant Terms of the Proposed Protective Order

Defendants have submitted a proposed two-tier Protective Order (Doc. 64, Appendix 1, p.53-53), which is modeled after the one used the by Northern District of California in intellectual property cases.  The proposed protective order defines "HIGHLY CONFIDENTIAL -

---

[11] Exhibit "17" consists of an email and the first few pages of an approximately 70,000-page royalty report sent by Defendants Dashgo and Benjamin Patterson directly to Colonize.

1   ATTORNEYS' EYES ONLY" information or items as "extremely sensitive 'Confidential

2   Information or Items,' disclosure of which to another Party or Non-Party would create a

3   substantial risk of significant financial or competitive harm that could not be avoided by less

4   restrictive means."  (*Id.* at ¶2.8.)

5            In turn, the proposed order defines "CONFIDENTIAL" information or items as

6   "information (regardless of how it is generated, stored or maintained) or tangible things that

7   qualify for protection under Federal Rule of Civil Procedure 26(c)." (*Id.* at ¶2.2.)  No other

8   definition for confidential information is provided.  It is unclear what portions of Rule 26(c) apply

9   to the proposed protective order because Rule 26(c) pertains to categories not at issue in this

10  litigation. The Court presumes, based on Defendants' argument, that Rule 26(c)(1)(G) is at issue:

11  "(G) requiring that a trade secret or other confidential research, development, or commercial

12  information not be revealed or be revealed only in a specified way."

13           The proposed protective order states that the designating party shall exercise restraint

14  when designating material as attorneys' eyes only.  (*Id.* at ¶5.1 ("Each Party or Non-Party that

15  designates information or items for protection under this Order must take care to limit any such

16  designation to specific material that qualifies under the appropriate standards. To the extent it is

17  practical to do so, the Designating Party must designate for protection only those parts of

18  material, documents, items, or oral or written communications that qualify – so that other portions

19  of the material, documents, items, or communications for which protection is not warranted are

20  not swept unjustifiably within the ambit of this Order.") Mass designations are prohibited.[12] (*Id.*)

21       **III.    Discussion**

22             **A.  Legal Standards for a Motion for Protective Order**

23           The Court is vested with broad discretion to manage discovery. *Dichter-Mad Family

24  Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013) (per curiam); *Surfvivor Media, Inc. v.

25  Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).  District courts also have broad discretion to

26  determine whether a protective order is appropriate and, if so, what degree of protection is

27

28  ───────────────
    [12] The Court agrees that this "restraint" provision shall be included in the draft protective order
    submitted to the Court after the parties' meet and confer, as described *infra*.

1  warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Phillips ex rel.*

2  *Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002) (finding that the

3  law gives district courts broad latitude to grant protective orders to prevent disclosure of materials

4  for many types of information).  Under Rule 26(c), the Court "may, for good cause, issue an order

5  to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

6  expense, including one or more of the following: [ ] forbidding the disclosure or discovery; … [ ]

7  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain

8  matters; …[or] requiring that a trade secret or other confidential research, development, or

9  commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P.

10  26(c)(1).

11       The party seeking to limit discovery has the burden of proving "good cause," which

12  requires a showing "that specific prejudice or harm will result" if the protective order is not

13  granted. *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011) (citing

14  *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003)); see  Fed. R. Civ. P.

15  26(c); accord *Beckman Indus., Inc. v. International Ins. Co*., 966 F.2d 470, 476 (9th Cir. 1992)

16  (noting that "broad allegations of harm, unsubstantiated by specific examples or articulated

17  reasoning, do not satisfy the Rule 26(c) test" (citation omitted)); *see also Ctr. For Auto Safety v.*

18  *Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016) (listing as examples of compelling

19  reasons when "a court record might be used to 'gratify private spite or promote public scandal,' to

20  circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's

21  competitive standing' " (citation omitted)).  Federal Rule of Civil Procedure 26(c)(1)(G)

22  anticipates that in certain cases, discovery of trade secrets should either be limited or not

23  permitted. "Confidential business information has long been recognized as property." *Carpenter*

24  *v. United States,* 484 U.S. 19, 26, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987) ("Confidential

25  information acquired or compiled by a corporation in the course and conduct of its business is a

26  species of property to which the corporation has the exclusive right and benefit, and which a court

27  of equity will protect through the injunctive process or other appropriate remedy.)

28

**B. Analysis**

### 1. Direct Competitors

For purposes of this motion, the record before the Court supports a finding that Plaintiff and Defendants are direct competitors.  Defendants have submitted competent evidence from Patterson that Colonize is targeting the same client base that Dashgo is targeting for the same services. (Patterson ¶¶17-19.) Patterson also states that Yellowcake is a direct competitor, based on his knowledge of the industry, his review of relevant websites, and his review of the allegations in the SAC. (*See e.g.*, Patterson ¶20 ("Yellowcake and Colonize share, or shared, common principals, and have other longstanding connections, currently including, without limitation, an exclusive licensor-licensee relationship."))

Yellowcake and Colonize contend they are not competitors with Defendants.  However, they have not submitted competent evidence to support their position, which is based solely on argument.  Indeed, the very allegations in the SAC support the proposition that Colonize and Dashgo are competitors, because Dashgo once was permitted to distribute works that Colonize now exclusively is distributing.  Thus, the Court finds they are competitors.  *W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*, No. CV 10-6017 DDP (SS), 2012 WL 12884045, at *3 (C.D. Cal. Aug. 27, 2012) ("With regard to an attorney's-eyes-only provision, confidential information that may be used against the company by a direct competitor is generally afforded more protection.").

Having concluded that Plaintiff and Defendants are competitors, the Court now turns to the underlying dispute concerning Defendants' late-disclosed list of six specific categories[13] of requested information and whether those categories seek confidential information necessitating a two-tier/AEO protective order.

### 2. Categories of Confidential Information

As discussed below, the Court finds that Defendants have sufficiently established that

---

[13] It appears Defendants did not identify these six troublesome categories until the Joint Statement was filed, despite the Court's active involvement in the parties' meet and confer process.  If that is so, the Court considers Dashgo's lack of disclosure as a breach of the duty to meet and confer.  Any such future conduct will subject the responsible party and counsel to sanctions.

1   limited categories of requested documents seek at least some information that is sensitive and

2   confidential and that there is potential for harmful disclosure of confidential information to a

3   competitor.  The Court will therefore grant Defendants' request for a two-tier/AEO protective

4   order.  However, AEO designations shall be subject to the categories of information and the

5   limitations hereinafter described to avoid unnecessary challenges to such designations.

6          (1) **Dashgo's Agreements with Digital Service Providers**

7          Yellowcake argues that contracts with DSPs like iTunes, Amazon, Spotify, etc., are not

8   confidential because they are form agreements used in the music industry by all other distributors.

9   Contrary to Yellowcake's argument, it is not the agreement "form" that Defendants claim is

10  confidential, but the information contained in the form regarding the contractual arrangement

11  with each of Dashgo's providers.  For instance, Yellowcake's RPD requests all documents

12  regarding the Copyrighted Works on digital distribution platform, such as YouTube, Amazon and

13  Spotify, including "contracts." (Doc. 64 p. 119.)  Unfortunately, Dashgo has failed to provide a

14  description of any type of information contained in the agreements.[14]  The most the Court has

15  been told is from Patterson's declaration, which states only: "Dashgo has longstanding direct

16  relationships and integration with DSPs and performing rights organizations."  (Doc. 64, p. 76.)

17         The Court imagines that the agreements describe: the scope of the contract, the services to

18  be provided (including listing creative works which will be distributed), and the pricing agreed

19  upon by the parties.  Presumably, the scope of these agreements touches more than merely the

20  copyrighted works allegedly infringed by Yellowcake and includes terms on which Dashgo has

21  agreed with these DSPs for unrelated digital works distributed to the DSPs.  As a competitor,

22  disclosure of the contractual terms Dashgo has with the same DSPs that, at least, Colonize

23  contracts with for similar services, will put Dashgo at a competitive disadvantage.

24         It is probable that information can be redacted from these agreements to protect

25  confidential information.  But given that the Court cannot make a determination based on the lack

26  of information, the Court will conduct an *in camera* review of three contracts with DSPs. The

27  ────────────────────

28  [14] For instance, Dashgo does not argue that the agreements contain a confidentiality provision or
    if the specific agreements identify any information as "confidential."

1    Court notes that Dashgo has failed to carry its burden as to this category of documents, but

2    nonetheless, based on the Court's concern with the disclosure of competitive information, the

3    Court will employ the *in camera* proceeding. Thus, Dashgo will provide three representative

4    contracts with DSPs of Dashgo's choosing to the Court with fourteen (14) days of service of this

5    order, in a sealed envelope to the clerk's office, noted on the envelope:  case name and number,

6    "IN CAMERA for Hon. Barbara A. McAuliffe. NOT TO BE FILED."

7         (2) **Dashgo's agreements with third party licensors** (content owners, artists and record

8    labels)

9         Patterson states that RPD, Set One, captures highly sensitive documents and information

10   of clients of Defendants.  (Doc. 64 ¶29, p. 84.)  According to Patterson, Defendants' clients "have

11   privacy, confidentiality and other rights that would prevent the disclosure of their highly

12   sensitive, proprietary and confidential documents and information to Plaintiff."  (*Id.* at ¶30.)  He

13   further states that to disclose such information "would be potentially putting its business

14   relationships at risk."  (*Id.*)

15        Dashgo has failed to provide any kind of specific information as to what is "private,

16   confidential and sensitive" such that this information should be subject to an AEO designation.

17   Patterson's conclusory statements that information is confidential are insufficient.  The Court

18   cannot discern what information such contracts contain.  Information can be subject to a

19   "confidential" designation in a protective order but not "AEO."  The Court acknowledges that the

20   financial arrangement the third party has with Defendants would be confidential and sensitive, if

21   disclosed to a competitor.  As Plaintiff suggests, and the Court adopts, licensor identification and

22   financial terms in third party contracts can be redacted and subject to a standard privilege log.

23   *Finjan, Inc. v. SonicWall, Inc.*, 2020 WL 4192285, at *3 (N.D. Cal. July 21, 2020) ("[E]ven if

24   portions of the exhibits or testimony are not relevant, a party generally may not redact or withhold

25   from production irrelevant portions of documents that also contain relevant and responsive

26   information.")). These redactions should be sufficient to protect privacy and confidential

27   information. For any redactions, Defendants shall produce a privilege log, formally asserting that

28   the redacted sections of their document production are protected by specifically identified

16

privileges.

(3) Documents containing **Dashgo's existing client list and contacts**

Yellowcake argues a list of clients and their contact information, without more, is not a trade secret because it is generally and publicly available information and thus is not confidential, citing 18 U.S.C. § 1839(3).

"It is well-established that a customer list may constitute a protectable trade secret." *BakeMark, LLC v. Navarro*, 2021 WL 2497934, at *8 (C.D. Cal. Apr. 24, 2021) (citing *Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514 (1997)). Numerous cases in this Circuit have relied on *Morlife* in holding that customer lists can be trade secrets. See e.g., *BakeMark, LLC v. Navarro*, 2021 WL 2497934, at *8; *Arthur J. Gallagher & Co. v. Petree*, No. 2:18-CV-03274 JAM KJN, 2022 WL 1241232, at *7 (E.D. Cal. Apr. 27, 2022); *Coldwell Solar, Inc. v. ACIP Energy LLC*, No. 2:20-CV-00768 TLN CKD, 2021 WL 3857981, at *10 (E.D. Cal. Aug. 30, 2021).

In *Morlife*, the court of appeals affirmed the trial court's finding that "a compilation, developed over a period of years, of names, addresses, and contact persons, containing pricing information and knowledge about particular roofs and roofing needs of customers using its services" constituted a trade secret. *Morlife, 56* Cal.App.4th at 1521. The court reasoned the client list "had independent economic value" as "the identity of those particular commercial buildings using such services is not generally known." *Id.* By contrast, client lists are not protected trade secrets where "the names and addresses of persons, firms and corporations using the type of products sold by plaintiff are commonly known to the trade." *Morlife*, 56 Cal.App.4th at 1521-1522; *Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc.*, Case No. 19-cv-00642-JLS-JDE, 2019 WL 2177262, at *7 (C.D. Cal. May 20, 2019) ("The detailed compilation of all [Plaintiff]'s customers, combined with specific information concerning each customer's 'billing rates, key contacts, specialized requirements and mark up rates' are protectable trade secrets.") (citation omitted) (emphasis in original); *Argo Group U.S., Inc. v. Prof'l Governmental Underwriters, Inc.*, No. 13-1787-AG (DFMx), 2013 WL 11327772 at 3 (C.D. Cal. Dec. 6, 2013) (noting that "customer lists can be protected trade secrets, but courts are reluctant to protect them 'to the extent they embody information which is readily available through public sources' ")

Yellowcake argues that the clients can be determined from Dashgo's website.  While some or all may be identified, it is substantively different to force an entity to compile and condense its entire book of business and produce it to a competitor.  Thus, the Court is persuaded that disclosure of client lists and contact information would be disclosing confidential information.  Any such disclosure shall be made pursuant to an AEO provision of a protective order.

(4) documents reflecting **Dashgo's internal procedures and processes** and other proprietary commercial information

Yellowcake contends it is not seeking "internal procedure and processes," and "other proprietary commercial information," and did not ask for such information in its discovery requests.[15]

However, the discovery requests are broad requests for documents which arguably include the documents of concern to Dashgo.  The Court need not rule on the scope of discovery requests in this motion.  Since Yellowcake argues it is not seeking "internal procedure and processes," and "other proprietary commercial information," and Yellowcake does not object to production of such documents, if any, under AEO designation, any such documents may be produced pursuant to an AEO designation.  Thus, to the extent Defendants produce such information, it shall be subject to an AEO designation in the protective order.

(5) documents containing **financial information**, including such information relating to Dashgo's clients, business operations, performance and profitability

Yellowcake agrees to limit its demand for financial documents to three years preceding the filing of the complaint.

Nonetheless, the Court cannot determine what documents fall within this category.  The

---

[15] The Court disagrees that the RPD does not ask for such information; it can be so interpreted to request internal information.  For instance, a select number of requests provide as follows: 20. Copies of all of Dashgo's internal documents concerning or referring to Jose Teran. 21. Copies of all of Dashgo's internal documents concerning or referring to Webster Batista Fernandez. 22. Copies of all of Adrev's internal documents concerning or referring to Jose Teran. 23. Copies of all of Adrev's internal documents concerning or referring to Webster Batista Fernandez.  (Doc. 64 p. 173.)

party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir.2011).  Yet, the Court acknowledges that competitors do not usually hand out their sales statistics to one another but regard them as confidential and sensitive information which they often go to great pains to hide.

Yellowcake represents that at a minimum, royalty reports would fall within this category but should be produced without an AEO designation.  Yellowcake points out that Dashgo has already provided royalty reports directly to Colonize and an example is attached as Exhibit "17." (Doc. 64 p.41 n.10.)

Part of the uncertainty regarding this discovery category falls at the feet of Yellowcake. The FAC and the SAC claim infringement of different copyrighted materials.  (See n.2, *infra*.) Dashgo represents that since the filing of the Joint Statement for this motion, Yellowcake has provided a "list" of identifiable copyrighted works that Dashgo can use to provide documents and information.

The Court finds that financial information directly related to the royalty or revenue of the alleged Copyrighted Works and Foreign Works (as further provided in the "list" of identifiable copyrighted works) is not subject to AEO designation.  Such documents are relevant to and probative of the alleged infringement. The Court intends that any financial information produced regarding revenue related to the sound recordings that Yellowcake alleges it owns (as identified in the "list") is not subject to AEO designation.  Any other financial information, if contained on a produced document, may be redacted and subject to a privilege log.

To the extent that Defendants contend they are being asked to produce documents related to "business operations, performance and profitability," such information can be designated as AEO, except as it directly relates to the "list" of identifiable copyrighted works.  These excepted documents will be produced without an AEO designation and Defendants shall produce a privilege log for any redactions, formally asserting that the redacted sections are protected by specifically identified privileges.

**(6) Proprietary Software and Systems Developed**

Yellowcake contends it has not requested any proprietary information, such as propriety software and systems.

To the extent that Dashgo produces such information, it may be produced under an AEO designation.

### C.  Attorney's fees

Both sides request an award of attorneys' fees.  Both sides are denied attorneys' fees.

Having reviewed the Joint Statement, the Court finds both sides' positions have partial merit. As the Court has so informed the parties in multiple status conferences, the Court will not countenance gamesmanship and noncooperation in discovery from any party.  As the parties are aware, the Federal Rules of Civil Procedure, including the discovery rules, must be construed, administered and employed not only by the Court, but also by the parties "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The Court expects and demands that the parties and counsel act with professionalism and cooperation in all aspects of this case, and as relevant to this motion, conduct discovery in a cooperative manner.

### IV.    Conclusion and Order

The Court finds that a two tier/AEO provision in a protective order is warranted in this case, for the documents as noted in this Order.  The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Therefore, the Motion for Entry of a Two-Tier Protective Order is GRANTED for the documents and information noted in this Order.

IT IS FURTHER ORDERED as follows:

1. The parties shall meet and confer on proposed language and shall submit a revised protective order for the Court's review within thirty (30) days of service of this order;

2. Dashgo will provide three representative contracts with DSPs of Dashgo's choosing to

the Court with fourteen (14) days of service of this order, in a sealed envelope to the clerk's office, noted on the envelope: case name and number, "IN CAMERA for Hon. Barbara A. McAuliffe. NOT TO BE FILED;"

3. The parties are directed to meet and confer to identify the "list" of Copyrighted Works and Foreign Works and which definitions will be used for responding to the RPD and Interrogatories. To the extent such a "list" has not been provided by Plaintiff to Defendants, the parties are directed to meet and confer and Plaintiffs are directed to provide such a list, with specificity.  Defendants are entitled to know the works, with specificity, they are alleged to have infringed.

4. Once the parties have met and conferred on the "list" of Copyrighted Works and Foreign Works at issue in this case, and following entry of the protective order, Defendants are required to supplement their responses to the RPD and Interrogatories Set One eliminating the boilerplate objections to the discovery requests.

IT IS SO ORDERED.

Dated:   **July 20, 2022**          /s/ Barbara A. McAuliffe
                                   UNITED STATES MAGISTRATE JUDGE