# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

YELLOWCAKE, INC., a California corporation,

Plaintiff,

v.

DASHGO, INC., a Delaware corporation; and AUDIOMICRO, INC. d/b/a ADREV, a Delaware corporation, BENJAMIN PATTERSON, an individual and NOAH BECKER, an individual,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.: 1:21-cv-00803-AWI-BAM**

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

**Via Zoom video conference/telephone number**

**Date**:  Thursday, August 12, 2022

**Time**:  8:30 a.m.

**Place**:  United States District Court, E.D. Cal.
Robert E. Coyle U.S. Courthouse

Courtroom 8 – Sixth Floor

2500 Tulare Street

Fresno, CA 93721

(E-filing)

Hon. Magistrate Judge Barbara A. McAuliffe, Presiding

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

1

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Plaintiff Yellowcake, Inc. ("Yellowcake" or Plaintiff"), on the one hand, and Defendants Dashgo, Inc. ("Dashgo") and Audiomicro, Inc. d/b/a Adrev ("Adrev" and when collectively referred to with Dashgo, "Defendants"), on the other hand, and pursuant to Rule 251 of the Local Rules of the United States District Court, Eastern District of California, and Rule 37 of the Federal Rules of Civil Procedure ("FRCP"), hereby file this Joint Statement re: Discovery Disagreement regarding Plaintiff's motion to (a) compel substantive responses to Plaintiff's Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25; (b) compel production of documents responsive to Plaintiff's Request for Documents, Set Two ("Set Two Document Request"); and (c) compel production of all relevant documents responsive to Plaintiff's Request for Production of Documents, Set One ("Set One Document Request"), or, in the alternative, for a default judgment against Defendants and for attorneys' fees pursuant to Rule 37(a)(5)(A) of the FRCP.

## I.    **PLAINTIFF'S STATEMENT AND CONTENTIONS.**

### A.    INTRODUCTION.

This case is a straightforward copyright infringement case where Defendants unlawfully copied, sold, and otherwise exploited two thousand thirty-five (2,035) copyrighted sound recordings (i.e., songs) owned by Yellowcake on Amazon Music and YouTube even after Defendants acknowledged that the copyrighted works were owned by Yellowcake and represented that they would stop selling the works. Simply put, Defendants have no legitimate excuse or legal defense for their actions.

After litigation commenced, Yellowcake served discovery demands narrowly tailored to the issues of the case, including interrogatories (the "Interrogatories") and document demands consisting of the Set One Document Request and the Set Two Document Request. Since copyright infringement is a strict liability offense and Defendants have no real defense to Yellowcake's claims, the Defendants, through counsel, have resorted to using aggressive scorched earth litigation tactics and the

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

intentional delay of discovery as their only means of defense.[1]

Despite asking for, and Yellowcake consenting to, an extension of time to serve responses to Yellowcake's discovery demands, the Defendants have failed to provide proper substantive responses to Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25, have merely asserted inapplicable objections and have inappropriately referred to documents under FRCP 33(d). This was done intentionally so that Defendants would not have to admit to their liability in verified interrogatory responses.

Initially, rather than producing any documents, Defendants notified Yellowcake that they would not produce any documents unless Yellowcake agreed to an unnecessarily overbroad two-tier protective order that is both inappropriate for this kind of case and would prohibit the principal of Yellowcake from reviewing the documents disclosed, thereby intentionally interfering with Yellowcake's ability to effectively present its case.[2]

Furthermore, Defendants have also refused to respond to Plaintiff's Set Two Document Request on the inappropriate basis that the documents sought are not relevant to this case. As explained in detail hereafter, the documents sought are extremely relevant to Yellowcake's prosecution of its case and Defendants' unilateral and self-serving determination to withhold documents on the basis of relevancy is inappropriate.

In light of the deficiencies in Defendants' discovery responses, it is evident that Defendants' request for an extension of time to respond to Yellowcake's demands and their insistence on an unnecessary two-tier protective order were nothing

---

1 Yellowcake respectfully reminds the Court that Defendants opposed Yellowcake's counsel's *pro hac vice* application using false accusations and inaccurate information. Defendants' counsel also went so far as to refuse to consent to an adjournment of a then-pending motion to strike even though the hearing date was set during the honeymoon of Yellowcake's lead counsel and at a time when Yellowcake's local counsel's wife was scheduled for a medical procedure. Yellowcake's counsel was forced to make an emergency application to the Court for a continuance. Yellowcake's counsel was compelled to file that application even after Yellowcake had granted Defendants' request for an extension of time to answer the Complaint. (Dkt. Nos. 17 and 18).

2 The issues concerning Defendants' request for a two-tier protective order have been extensively briefed by the parties in the Joint Statement Re: Discovery Disagreement Re: Two-Tier Protective Order, which was filed with the Court on June 3, 2022. *See* Dkt. No. 64.

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

more than a bad faith delay and prejudice tactic.

After receipt of Defendants' deficient discovery responses, Yellowcake requested a meet and confer conference to discuss Defendants' improper objections and refusal to respond. Despite a two-hour meet and confer conference and numerous correspondences between the parties, Defendants still refused to serve substantive responses to Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25 and continue to withhold documents on the improper basis of relevancy. Notably, on multiple occasions, Yellowcake asked Defendants to participate in an informal discovery conference pursuant to Magistrate Judge McAuliffe's individual rules. Consistently, Defendants have refused to participate in an informal conference without explanation, which has resulted in Yellowcake's motion under Local Rule 251 and FRCP Rule 37.

Notwithstanding that Defendants have refused to produce complete and substantive responses to Plaintiff's discovery demands, Defendants have served their own interrogatories and four separate requests for documents totaling one hundred and sixty-three (163) separate demands. Yellowcake has provided over one-hundred pages of information in response to Defendants' interrogatories and produced approximately 70,000 pages of documents in response to Defendants' document demands.

As a result of the foregoing, Yellowcake had no choice but to file its motion and move to compel. Dkt. No. 61.[3]

---

3 At the last Court conference held on June 9, 2022, Magistrate Judge McAuliffe rhetorically asked why the parties were having such issues with regards to discovery. The undersigned has appeared as counsel for clients in federal court thirty-one (31) times. Except for this case, the undersigned *has never requested a discovery conference, and has not been forced to file or defend against a motion to compel*, including in the six (6) matters that the undersigned has appeared in before the United States District Court for the Eastern District of California. In fact, the undersigned and his co-counsel have managed to effectively settle three (3) other matters in this District with minimal court intervention.

4

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

**B.    NATURE OF THE ACTION.**

As noted above, this is a straightforward and relatively simple copyright infringement case. Yellowcake is an intellectual property holding company that owns, holds, and exploits intellectual property, including, but not limited to, sound recordings. Defendants and two related digital music distribution companies willfully infringed two (2) catalogs of copyrighted sound recordings of regional Mexican music owned by Yellowcake, defined in the Second Amended Complaint ("SAC") as Yellowcake's Copyrighted Works and Foreign Works, by exploiting the songs well after prior distribution agreements were terminated and after Defendants acknowledged in writing that the sound recordings belonged to Yellowcake and that they would stop exploiting them.[4] *See* SAC at ¶¶ 1-2.

Previously, Dashgo had a contractual right to exploit Yellowcake's Copyrighted Works and the Foreign Works pursuant to two since-terminated written distribution agreements, one between defendant Dashgo and DH1 Media, the predecessor of Yellowcake's current distributor, Colonize Music, Inc. ("Colonize") and one between Dashgo and MAR International Records, Inc., a predecessor-in-interest in a number of Yellowcake's Copyrighted Works and Foreign Works. *See id.* at ¶ 35.

Defendants argue that, although the distribution agreements were terminated in writing, they were allegedly granted an oral license to continue distributing the catalogs by Colonize. This is untrue. The distribution agreements were properly terminated and Defendants even stopped distributing the songs for a period of time. However, sometime after Defendants initially stopped distributing the songs, Defendants started distributing them again even though Defendants had previously acknowledged that the prior distribution agreements were terminated.

---

4 The capitalized terms, Yellowcake's Copyrighted Works and Foreign Works, are defined in Yellowcake's SAC filed February 16, 2022. *See* Dkt. No. 31.

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

Dashgo did not obtain any valid rights to exploit Yellowcake's Copyright Works or Foreign Works from any third party after the termination of the distribution agreements. Yellowcake was the exclusive owner of all rights in the two (2) catalogs of sound recordings at the time of the termination of the distribution agreements and they have been ever since. *See* SAC at ¶ 43. Following the termination of the prior distribution agreements, Yellowcake did not grant – orally or in writing – any rights in the two (2) catalogs to Defendants.

As a result, and to protect its rights in the two (2) catalogs, Yellowcake commenced this action and served discovery demands upon Defendants. In the discovery demands, and as explained in further detail below, Yellowcake has sought documents and information that are narrowly tailored for the purpose of Yellowcake's prosecution of this case and to the specific issues and elements of its claims against Defendants for copyright infringement, vicarious infringement and contributory infringement. In essence, Yellowcake is seeking information and documents concerning the dates of the alleged acts of infringement, the nature of the alleged acts of infringement, the revenue received by Defendants in connection with their acts of infringement and what Defendants did with the revenue received from their unlawful exploitation of Yellowcake's sound recordings. Yellowcake also seeks documents and information related to Defendants alleged affirmative defenses.

However, Defendants are now trying to delay this action and prejudice Yellowcake's ability to properly prosecute this action by failing to provide Yellowcake with substantive responses to important and refusing to produce relevant documents in response to the Set One Document Request and Set Two Document Request.

**C.    RELEVANT PROCEDURAL AND MEET & CONFER HISTORY.**

On or about May 17, 2021, Yellowcake filed this action against Defendants. Since copyright infringement is a strict liability offense and Defendants have no real defense to Yellowcake's claims in this matter, Defendants' insurance company counsel

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

has resorted to using aggressive scorched earth litigation tactics and intentionally delaying discovery as the only means of defending against otherwise indefensible claims. *See Doc's Dream, LLC v. Dolores Press, Inc.,* 766 Fed. Appx. 467, 471 (9th Cir. 2019) (Copyright infringement is a strict liability offense); *see also Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021); *United States v. Liu,* 731 F.3d 982, 988 (9th Cir. 2013) (A plaintiff does not need to prove unlawful intent or culpability.)  Since the initiation of this action, Defendants have made it unmistakably clear that it is their strategy to do everything possible to delay this action and make it as expensive as possible for Yellowcake to prosecute.

In November 2021, Yellowcake served the Defendants with its narrowly tailored Set One Document Request and the Interrogatories. On December 13, 2021, Yellowcake served the Defendants with the Set Two Document Request. Copies of Yellowcake's Set One Document Request, Interrogatories, and Set Two Document Request are sequentially attached hereto as <u>Exhibits "1," "2" and "3"</u>.[5] Responses to the demands were due on or before December 31, 2021. Shortly before the responses were due, Defendants requested an extension of time to respond. In good faith, Yellowcake consented to the request and the parties agreed that Defendants' responses would be due by January 7, 2022. *See* Dkt. No. 28.

On January 7, 2022, Defendants responded to Yellowcake's discovery demands by only asserting objections and providing incomplete interrogatory responses. The responses did not produce a single page of documents. Copies of Defendants' Response to Set One Document Request, Response Set Two Document Request, Response to the Interrogatories, and their Amended Response to the First Set of Interrogatories are sequentially attached hereto as <u>Exhibits "4," "5," "6" and "7"</u>.[6]

---

5 Plaintiff's Exhibits are attached hereto as Appendix 1.

6 On November 20, 2021, Defendants' counsel suggested a Two-Tier protective order rather than accept redacted documents served by Yellowcake in response to Defendants' discovery demands Yellowcake declined because redaction of the minimal business information was sufficient to address Yellowcake's concerns as no

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

Due to Defendants' deficient discovery responses, on January 12, 2022, Yellowcake requested a meet and confer conference to discuss the same. A copy of Yellowcake's January 12, 2022, correspondence is attached hereto as Exhibit "8".

The parties had a meet and confer telephone conference on January 18, 2022, in which they discussed Defendants' discovery responses in detail for over two (2) hours. During that call, Defendants made it clear that they would not serve substantive responses to any of Yellowcake's discovery demands without a two-tier protective order and continued to rely on their generic and inappropriate objections.

On January 21, 2022, Defendants' counsel wrote to Yellowcake's counsel and maintained that its use of FRCP 33(d) was "perfectly appropriate and acceptable procedure for responding" to the Interrogatories, which in their view "would require burdensome or expensive research." A copy of Defendants' correspondence, dated January 21, 2022, is attached hereto as Exhibit "9". However, this is untrue. Defendants' utilize a searchable database as evidenced by the royalty statements previously provided by Dashgo to Yellowcake. A true and correct portion of a royalty accounting report previously produced by Defendants to Yellowcake's current distributor, which is clearly created by an easily searchable database available to Defendants, is attached hereto as Exhibit "10".

On February 4, 2022, Yellowcake responded to Defendants' letter of January 21, 2022, further addressing Defendants' deficient responses and demanded that Defendants' serve amended interrogatory responses as their "boilerplate responses have failed to include the requisite specificity of the exact location of the purported documents, or rather, include any specificity at all." A copy of Yellowcake's February 4, 2022, letter is attached hereto as Exhibit "11". Yellowcake also asked Defendants to participate in an informal discovery conference call with Magistrate Judge McAuliffe

---

sensitive information is at issue in this case. At no point during this time did Defendants advise Yellowcake that they would not serve any documents in response to Yellowcake's demands unless the parties agreed to a Two-Tier protective order.

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

under her individual rules to discuss all of the parties outstanding discovery issues. *See id.*. Defendants sent correspondence the same day rejecting Yellowcake's proposed call with Magistrate Judge McAuliffe. A copy of Defendants' February 4, 2022, letter is attached hereto as Exhibit "12".

Yellowcake again wrote to Defendants on February 9, 2022, and requested that Defendants agree to an informal discovery conference call with Magistrate Judge McAuliffe or provide Yellowcake with an explanation as to why they would not agree to a such a call.[7] A copy of Yellowcake's February 9, 2022, letter is attached hereto as Exhibit "13". Defendants then wrote another letter to Yellowcake on February 9, 2022, again refusing to agree to such a call. A copy of Defendants' February 9, 2022, letter is attached hereto as Exhibit "14". Yellowcake responded to Defendants' February 9, 2022, letter via email on February 10, 2022, and again asked Defendants to participate in a discovery call with Magistrate Judge McAuliffe. A copy of Yellowcake's February 10, 2022, email is attached hereto as Exhibit "15". Defendants then sent another letter on February 10, 2022, once again reiterating the same issues that had been addressed in prior correspondence, again refusing to agree to an informal conference call with Magistrate Judge McAuliffe, and again failing to provide a reason for not agreeing to such a call. A copy of Defendants' February 10, 2022, letter is attached hereto as Exhibit "16".

On the eve of a status conference held on April 6, 2022, Defendants finally produced thousands of pages of irrelevant documents to Yellowcake, notwithstanding the fact that there was no protective order in place. These irrelevant documents were produced – tactically – so Defendants could report at the status conference that they had started their production. Defendants continue to withhold all relevant documents under

_____

7 Also addressed in the parties' correspondence of February 9, 2022, are two subpoenas served by Yellowcake. Yellowcake's counsel inadvertently failed to serve Defendants' counsel with prior notice of the subpoenas under FRCP 45(A)(4). As soon as this was brought to Yellowcake's counsel's attention, Yellowcake's counsel apologized, and the subpoenas were immediately withdrawn. No documents were served in response to the subpoenas.

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

the spurious claim that a Two-Tier protective order is necessary. Until April 5, 2022, Defendants had not produced even a single document or provided responses to all of the Interrogatories, which was served five months earlier.

At this point, Yellowcake has made multiple fruitless attempts in good faith to resolve Defendants' discovery stonewalling. Defendants' discovery responses and subsequent correspondence speak for themselves, and it is obvious that Defendants are doing everything possible to stall the prosecution of this action and to unduly burden and expense Yellowcake as their chief legal strategy.

**D.   CONTENTIONS.**

**1.   Defendants' Deficient Responses to the Interrogatories Nos. 1-15, 18, 20-22, 24, and 25.**

a.   <u>Defendants' Abuse of Federal Rule of Civil Procedure 33(d)</u>

Defendants have refused to provide any substantive responses to Interrogatories Nos. Nos. 1-15, 18, 20-22, 24, and 25, all of which ask straight forward questions concerning the key issues of this case. Specifically, Defendants inappropriately refer to FRCP 33(d) in response to Interrogatories Nos. 1-15, 18, 20-22, 24, and 25. *See* <u>Exhibits "6" and "7</u>." Defendants' reliance on FRCP 33(d) is wholly improper under the facts and circumstances of this case and is otherwise deficient.

FRCP 33(d) reads in pertinent part,

> Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.

*See* FRCP 33(d).

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

First, the reference to such records must be specific and designed to provide the information requested. Under Rule 33(d), "the responding party chooses to produce business records in answer to the interrogatories – not to avoid answering them. To answer an interrogatory, a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." *See L.H. v. Schwarzenegger*, No. S-06-2042, 2007 WL 2781132, at  (E.D. Cal. Sept. 21, 2007) citing *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 277 (C.D. Cal.1999).

A responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them. *See* Moore's Federal Practice, § 33.105 [3] (3d ed. 2001). References to such records must be specific and designed to provide the requested information. "The records must be offered 'in a manner that permits the same direct and economical access that is available to the [responding] party.' If compilations and summaries exist, these should be made available." *See U.S. ex. rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 680 (E.D. Cal. 2006) (citations omitted).

Here, the Defendants have only provided a spreadsheet that tags the documents to the responsive Interrogatories. *See* <u>Exhibit "17"</u> (a true and correct example of the spreadsheet provided by Defendants). The spreadsheet does not help the Plaintiff deduce what information is responsive to the Interrogatories.

A responding party's familiarity with the method of record retention and organization may facilitate review of records based on this knowledge that is unavailable to the opposing party. *Id.,* citing *T.N. Taube Corp. v. Marine Midland Mortg. Corp.*, 136 F.R.D. 449, 454 (W.D.N.C. 1991).  The response referring to business records must, at a minimum, provide the category and location of records which will provide the answers, and if the records are voluminous, the response must include an index guiding the party to the responsive documents. *Id.* at 680-81; *see also Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) (specification of records must be in sufficient detail to allow party to locate and identify documents from which the interrogatory answer may

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

be ascertained, as readily as the party served).  If the party cannot identify which specific documents contain the answer to the interrogatories, they must completely answer the interrogatories without referring to the documents. *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004).

Based on the purpose of FRCP 33(d), Defendants' citation to FRCP 33(d) is completely disingenuous. Most of Yellowcake's interrogatories concern the factual circumstances regarding which of Yellowcake's copyrighted works were infringed by Defendants, what digital distribution platforms Defendants used to distribute the songs and the revenue received by Defendants as a result of such actions. *See* Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25 (Exhibit "2"). For example, Interrogatory No. 2 states that: "

> If the answer to the foregoing interrogatory is in the affirmative, identify: (i) the name of the artist of each sound recording Exploited; (ii) the title of each sound recording Exploited; (iii) which Defendant Exploited the sound recording; (iv) the date of each Exploitation; (v) the nature of each such Exploitation; (vi) the identify of any third parties involved in each such Exploitation (including, but not limited to, any digital service provides such as Amazon, Spotify, Apple Music, and iTunes); (vii) the gross amount of revenue generated from each such Exploitation; (xiii) the name of every party that received any revenue generated by each such Exploitation; and (ix) the amount of revenue received by each such party.

*See* Interrogatory No 2 (Exhibit "2").

These interrogatories are at the heart of the dispute. Defendants are digital music and content distributors whose entire business is based around using "dashboards" developed specifically to track such information and use the information to pay the appropriate income to the record labels and content owners they distribute for. The information sought by Yellowcake is easily accessible by Defendants and can be easily extrapolated by them and set forth in their interrogatory responses. *See* Exhibit "10"

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

(True and correct copies of royalty accounting reports previously produced by Defendants, which are clearly created by an easily searchable database available to Defendants). As such, the burden of compiling and abstracting the relevant information is much lower than the burden on Yellowcake who must review thousands of pages of documents in order to extract the exact same information without knowing if it is accurate. Meanwhile, the same information can be easily extracted by Defendants from their own dashboards. *See U.S. ex. rel. Englund*, 235 F.R.D. at 680. Defendants are refusing to provide the information in the form of direct responses to Yellowcake specifically to burden, expense and delay Yellowcake and to avoid having to concede their liability in written interrogatory responses.

Second, as set forth above, to appropriately employ FRCP 33(d), the disclosing party must, among other things, "list the specific document provided the other party and indicat[e] the page or paragraphs that are responsive to the interrogatory." *Athwal v. Cty. of Stanislaus*, No. 15-cv-0311, 2021 WL 4505554, at *3 (E.D. Cali Oct. 1, 2021). Defendants' generic, boilerplate responses and insufficient spreadsheet have failed to include the requisite specificity of the exact location of the purported documents, or rather, include any specificity at all. Indeed, Defendants' failure to provide Yellowcake with any specificity of the documents and/or their location, which are purportedly responsive to the Interrogatories, is in direct contravention of the purposes of the statute. *See id.* at *3 ("when invoking Rule 33(d), the responding party has the duty to specify by category and location, the records from which answers to interrogatories can be derived."); *see also O'Connor*, 185 F.R.D. at 278 (holding that when voluminous documents are produced under Rule 33(d), they must be accompanied by indices designed to guide the searcher to the documents responsive to the interrogatories).

Instead, Defendants state in their response to the Interrogatories that:

> [a]ny documents responsive to this Interrogatory, to be produced by Responding Parties after entry of a suitable protective order, will be electronically 'tagged' such that Propounding Party should be able to sort and access

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

documents subject to the Rule 33(d) referenced set forth above and are therefore responsive to this Interrogatory.

*See* Exhibit "7".

Again, as mentioned above, Defendants have produced a spreadsheet that tags documents allegedly responsive to the Interrogatories but does nothing other than produce the tag, which does not assist Yellowcake in deducing the relevant information responsive to the specific Interrogatories. *See* Exhibit "17" (A true and correct copy of an email and the first few pages of an approximately 70,000 page royalty report sent by Defendants Dashgo and Benjamin Patterson directly to Colonize). However, the "tagged" documents do not allow Yellowcake to ascertain the information in the documents such that the "tag" does not (i) "permit[ ] the same direct and economical access that is available to the [responding] party" (*see U.S. ex. rel. Englund*, 235 F.R.D. at 680 (citations omitted)), (ii) "guide [Yellowcake] to the documents responsive to the interrogatories" (*see O'Connor*, 185 F.R.D. at 278); or (iii) provide "sufficient detail to enable [Yellowcake] to locate and identify them as readily as readily as [Defendants] could," such as an "index guiding [Yellowcake] to the responsive documents." (*see* FRCP 33(d)(1); *DeFabiis*, 168 F.R.D. at 284). Therefore, Defendants' blanket citation to FRCP 33(d) is inappropriate and, to the extent that it may be permitted, must be accompanied by the required specificity noted above.

b. Defendants Must Amend their Responses to Interrogatories Nos. 5-8

In Yellowcake's Interrogatories Nos. 5 through 8, Yellowcake requests that Defendants state whether or not Dashgo ever posted or uploaded any video containing any of Yellowcake's Copyrighted Works or Foreign Works to YouTube and requests that if the answer is in the affirmative, to provide certain information concerning the upload. *See* Exhibit "2".

In response to Yellowcake's Interrogatories Nos. 5 through 9, Defendants responded (in addition to their improper objections) that "Dashgo did not post or upload

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

14

to www.YouTube.com video containing any sound recordings in which Plaintiff contends it acquired copyrights." However, Yellowcake has produced screenshots of sound recordings, to which Yellowcake owns the copyright to, that appear to have been uploaded and hosted on Dashgo's "YouTube channel". *See* Exhibit "18" (True and correct copies of the YouTube screenshots). In light of such proof, it is highly unlikely that Dashgo did not post or upload to YouTube any videos containing sound recordings to which Yellowcake owns the rights. Moreover, the term "Defendants" defined in the Interrogatories "means and refers to DASHGO, INC. and AUDIOMICRO, INC. d/b/a ADREV, and any of their agents or representatives," and, thus, the distribution of any sound recording by an agent or affiliate of Defendants would require a response to Interrogatories Nos. 5 through 8. *See* Exhibit "2".

As a result, Defendants should be ordered to amended their response to Interrogatories Nos. 5 through 8 and provide Yellowcake with the correct information.

### c. Defendants Must Provide a Substantive Response to Interrogatories Nos. 9-12

In Yellowcake's Interrogatories Nos. 9 through 12, Yellowcake requests that Defendants identify the basis upon which Defendants asserts "it has, or had the rights to Exploit" the Yellowcake's Copyrighted Works and Foreign Works," as well as the parties to, and dates of, "any agreements upon which Dashgo has, or had, relied on in asserting that it has, or had, the right to Exploit" any of Yellowcake's Copyrighted Works and Foreign Works." *See* Exhibit "2".

In response to Yellowcake's Interrogatories Nos. 9 through 12, Defendants responded (in addition to their improper objections) that "Dashgo also acquired rights from third party rights holders independently granting Dashgo rights to exploit sound recordings in which Plaintiff contend it acquired copyrights," but fails to identify those parties and instead refers to documents pursuant to FRCP 33(d). *See* Exhibit "7".

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

Interrogatories Nos. 9 through 12 are simple interrogatory requests – identify the parties to any agreements Dashgo is relying upon – and yet Dashgo refers to documents that it has "tagged" such that Yellowcake "should be able to sort and access documents" for the information responsive to the Interrogatories. *See id.* However, Yellowcake has not yet been able to identify the parties to said agreement(s) that Defendants are relying upon. In attempting to rely upon FRCP 33(d) in response to an otherwise simple interrogatory request, Defendants have made it abundantly clear that they are being intentionally evasive so as to avoid making admissions in writing.

As a result, Defendant should be directed to amend their response to Interrogatories 9 through 12 and to provide Yellowcake with the correct information.

### d. Defendants' Improper Objections to the Interrogatories

Defendants also asserted essentially the same inapplicable form objections to Yellowcake's Interrogatories as they did to Yellowcake's document demands and Yellowcake asserts the same arguments regarding the impropriety of the objections to Yellowcake's request for documents set forth in detail below. *See infra* at pp. 16-24.

An "evasive or incomplete ... answer, or response is to be treated as a failure to . . . answer, or respond." *Holt v. Nicholas*, 2014 U.S. Dist. LEXIS 7864 (E.D. Cal. 2014), Fed. R. Civ. P. 33(b)(1), 37(a)(3).

As a result of the foregoing, Defendants should be compelled to serve substantive responses to Yellowcake's Interrogatories to the extent that they are refusing to do so based on inappropriate objections.

### 2. Defendants' Deficient Responses to Yellowcake's Set One Document Request.

To the extent that Defendants are withholding documents based on the objections set forth in their response to Yellowcake's Set One Document Request, Defendants should be compelled to produce such documents as their objections are inappropriate. Defendants repeatedly assert a slew of completely irrelevant objections to Yellowcake's Set One Document Request. Defendants repeatedly assert inapplicable form objections

16

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

along with the following response to every request: "Without waiving the foregoing objections, Responding Parties [Defendants] respond as follows: Subject to entry of a suitable Two-Tier protective order, Responding Parties will produce, on a rolling basis, extent, relevant non-privileged documents reasonably within Responding Parties' possession, custody or control responsive to the Request." *See* Exhibit "4". The Set One Document Request includes forty-two (42) separate requests and Defendants provide the same, form objections to all but one of the forty-two document requests.[8]

FRCP 34 requires that a party responding to a request for production must either state that inspection of documents and related activities will be permitted as requested, or state an objection, including the specifics of the objection and how that objection relates to the documents being demanded. FRCP 34(a), (b)(2)(B). Generic, boilerplate objections to discovery are not sufficient. *See Marti v. Baires*, No. 1:08-cv-00653-AWI-SKO (PC), 2012 U.S. Dist. LEXIS 77962, 2012 WL 2029720, *5-6 (E.D. Cal. 2012) (reliance on boilerplate objections is an abuse of the discovery process); *see also* A. *Fraber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (general or boilerplate objections such as "overly burdensome and harassing" are improper); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 148 5th Cir. 1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable). "As the parties opposing discovery, Defendants bear the heavy 'burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, and supporting [their] objections.'" *Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845-JLS BLM, 2015 WL 4742346, at *3 (S.D. Cal. July 28, 2015) (citing *DIRECTV, Inc. v. Trone,* 209 F.R.D. 455, 458 (C.D. Cal. 2002)); *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C-06-01962

---

8 Response to Request Number 36 is the only response which is slightly different.

17

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

JW PSG, 2011 WL 1496326, at *1 (N.D. Cal. Apr. 20, 2011) (quoting *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975)) ("Under liberal discovery principles of the Federal Rules [a party opposing discovery is] required to carry a heavy burden of showing why discovery was denied.")."

A review of Defendants form objections makes it clear that they do not apply and that Defendants should be compelled to respond. For example, below is the first document request in Yellowcake's Set One Document Request, followed by Defendants' response:

Request for Documents #1

Produce all documents concerning or related to the Defendants' sale, distribution, public performance, synchronization, license or any other exploitation of Yellowcake's Copyrighted Works including, but not limited to, such exploitation on digital distribution platforms such as YouTube, Amazon.com, and Spotify. Responsive documents shall include, but are not limited to, any: (i) royalty statements; (ii) contracts; (iii) reconciliations; (iv) payment receipts; (v) advertising copy; (vi) videos; (vii) "dashboard" information and (viii) documents including, but not limited to, any royalty statements from any national or international performing rights organization such as ASACP, BMI, SESAC, PRS for Music, Sound Exchange or Mechanical Licensing Collective.

Response to Request for Documents #1

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the documents and things requested are not within Responding Parties' possession, custody or control, including without limitation to the extent the documents and things reside on third-party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Request calls for the production of documents that are not relevant to any party's claim or defense in this action, that is, the Request is not

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

18

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Request is not proportional to the needs of the case, that is, the Request is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Request is duplicative of other Requests. Objection on the grounds that the Request calls for production of documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third-party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Request calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Defendants" purports to include Responding Parties' attorneys. Objection on the grounds that the Request is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party may obtain the documents and things requested from other, less costly and/or more convenient third-party sources, including without limitation publicly available sources. Further objection on the grounds that the Request is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not be responsive to the Request. Objection on the grounds that the Request seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Request is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Defendants" and "Yellowcake's Copyrighted Works"

19

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

and as to the phrase "digital distribution platforms". Objection on the grounds that the Request is vague and ambiguous, including without limitation as to the purportedly defined terms "Defendants" and "Yellowcake's Copyrighted Works", as to the terms "concerning", "related", "exploitation", "platforms", "reconciliations", and as to the phrases "any other exploitation", "digital distribution platforms", "such as", "digital distribution" platforms such as YouTube, Amazon.com and Spotify", "'dashboard' information" and "related to".

Without waiving the foregoing objections, Responding Parties respond as follows: Subject to entry of a suitable two-tier protective order, Responding Parties will produce, on a rolling basis, extent, relevant non-privileged documents reasonably within Responding Parties' possession, custody or control responsive to the Request.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

Defendants essentially asserted the exact same objections to every demand. *See* Exhibit " 4".

18
19
20
21
22
23
24
25
26
27
28

Defendants' rote repetition of generic objections that are irrelevant is improper. Yellowcake's Set One Document Request seeks documents related to Defendants' acts of copyright infringement and the income they received from such act of infringement as evidence by the above request. *See* Exhibit "1." There is no way that Defendants can assert in good faith that spreadsheets, royalty statements, distribution reports and correspondence about these acts can be deemed: (i) irrelevant; (ii) not reasonably calculated to lead to admissible evidence; (iii) not proportional to the needs of the case; (iv) unduly burdensome or too costly to produce for a digital music distributor like Dashgo whose entire business model is based on collecting and using such information and documents in the ordinary course of its business; (v) is inaccessible to a digital music distribution company like Dashgo whose entire business model is based on collecting

20

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

and using such information and documents in the ordinary course of its business; (vi) that such documents are privileged, confidential or subject to attorney client privilege; or (vii) that the documents requested are proprietary or trade secrets.

As a result, Defendants should be compelled to produce all documents demanded in the Set One Document Request being withheld by Defendants.

### 3. Defendants' Improper Objections to Yellowcake's Set Two Document Request.

Yellowcake served its Set Two Document Request, specifically related to Defendants' acts of willful copyright infringement, which seeks documents related to Defendants practice of knowingly selling and distributing copyrighted sound recordings, which it has no right to do. To that end, Yellowcake served its Set Two Document Request, concerning Defendants' relationship with a company known as MediaMuv, LLC ("MediaMuv") and its two principals. MediaMuv and its principals have plead guilty to criminal copyright infringement for knowingly exploiting sound recordings they did not own through Dashgo and Adrev . Copies of the plea agreement and an article regarding MediaMuv's guilty plea are sequentially attached hereto as <u>Exhibit "19"</u>.

To date, Defendants have not produced a single document responsive to Plaintiff's Set Two Document Request, on the impermissible basis that the documents are allegedly not relevant even though the documents demanded go straight to the issue of Defendants' practice of knowingly exploiting sound recordings they have no rights to. Contrary to any potential misrepresentation by Defendants, Dashgo and Adrev were involved with MediaMuv and its principals in acts of infringement upon Yellowcake's sound recordings. Attached hereto as <u>Exhibit "20"</u> are true and correct copies of emails between Yellowcake's distributor (i.e., Colonize) Defendants, and MediaMuv regarding MediaMuv's infringement of copyrighted sound recordings that were being lawfully distributed by Colonize.  As such, the documents sought by the Plaintiff in its Set Two Document Request are critical to Yellowcake's claims of willful infringement by the Defendants under 17 U.SC. § 504(c)(2).

21

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Notwithstanding this fact, Defendants have refused to produce any documents responsive to the Set Two Document Request on the improper grounds that they claim the documents are not relevant to this case even though they are. This is a self-serving and improper limitation unilaterally imposed by the Defendants to try and avoid producing documents that would be devastating to their position. However, their unilateral determination that Plaintiff's Set Two Document Request is not relevant is an insufficient basis to continue withholding responsive documents. *See A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, (C.D. Cal. 2006) (finding "boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper," requiring to defendant to conduct a reasonable inquiry and make a supplemental production of documents to plaintiff); *see also Morgan Hill Concerned Parents Assoc. v. California Dep't of Education*, No. 2:11-cv-3471, 2016 WL 304564, at *3 (E.D. Cal. Jan. 26, 2016) ("It improper to withhold production of a document to which a party has no valid objections, solely on the grounds that the request is too broad, or asks for information the requester is not entitled to."). Specifically, a review of Defendants' form objections makes it clear that they do not apply and that Defendants should be compelled to respond.

For example, below is the first document request in Yellowcake's Request for Production of Documents, Set No. Two, followed by Defendants' response:

<u>Request for Documents #1</u>

Copies of all documents provided by Dashgo to MediaMuv LLC including, but not limited to, any reporting or royalty statements.

<u>Response to Request for Documents #1</u>

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the documents and things requested are not within Responding Parties' possession, custody or control, including without limitation to the extent the documents and things reside on

22

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

third-party servers in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Request calls for the production of documents that are not relevant to any party's claim or defense in this action, that is, the Request is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Request is not proportional to the needs of the case, that is, the Request is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Request is duplicative of other Requests, including without limitation Propounding Party's Requests for Production – Set One, Requests Nos. 13-20 and 33. Objection on the grounds that the Request calls for production of documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third-party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Request calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Dashgo" purports to include Responding Parties' attorneys. Objection on the grounds of the official information privilege and the law enforcement investigatory privilege. Objection on the grounds that the Request is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party may obtain the documents and things requested from other, less costly and/or more convenient third-party sources. Further objection on the grounds that the Request is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not be responsive to the Request. Objection on the grounds that the

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND  MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

> Request seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Request is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo" and "MediaMuv LLC". Objection on the grounds that the Request is vague and ambiguous, including without limitation as to the purportedly defined terms "Dashgo" and "MediaMuv LLC" and as to the term "provided".

Defendants essentially asserted the exact same objections to every demand. *See* Exhibit "5".

Again, Defendants' responses to Yellowcake's document demands violate FRCP 34. *See supra* at pp. 17. Additionally, Defendants' objections on the grounds of relevancy as to Yellowcake's document requests concerning MediaMuv are disingenuous as MediaMuv, a known agent/affiliate of Defendants, and its principals. has plead guilty to criminal copyright in the United States District Court for the District of Arizona. *See* Exhibit "19" (Articles concerning MediaMuv's guilty plea along with a copy of the plea agreement). Based on documents already produced by Yellowcake in discovery, Yellowcake has reason to believe that Defendants were knowingly helping MediaMuv infringe its copyrights (*see* the emails annexed hereto Exhibit "20" wherein Defendants' executives are making excuses for MediaMuv's unauthorized exploitation of copyrighted works it does not own even though the correspondence was not originally directed to Defendants) and thus, the documents demanded are relevant. Defendants' refusal to produce these documents is telling.

As a result, Defendants should be compelled to produce the documents demanded in the Set Two Document Request.

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS**

**4. Plaintiff Should Be Granted Attorneys' Fees.**

Due to the Defendants' misuse of discovery in this action, Yellowcake has been forced to make a motion to compel after trying to work in good faith to resolve the discovery issues discussed herein in order to avoid formal motion practice. As a result of the Defendants' repeat refusal (without explanation) to provide complete and substantive responses to Yellowcake's discovery demands, Yellowcake should be granted its attorneys' fees in connection with this motion.

Defendants have used improper objections and inappropriately relied on FRCP 33(d) to withhold relevant documents and information for several months and to further delay and expense Yellowcake. Their tactic is clear – avoid responding to the discovery demands so as to avoid making admissions of liability in writing in the face of Yellowcake's strict liability claims.

Repeatedly and without explanation, Defendants have rejected Yellowcake's multiple requests to participate in the Court's informal discovery resolution conference procedure. These requests were made by Yellowcake in a good faith an attempt to resolve the dispute over the discovery issues without having to engage in formal motion practice and unnecessarily burdening the Court with having to decide a motion on the issues. Thus, Defendants' repeated refusal to participate in such a conference is extremely telling of their strategy and how they intend to continue litigating this matter.

Accordingly, the Court should deny Defendants' request for attorneys' fees and costs, and grant Yellowcake its fees and costs.

**E. CONCLUSION.**

Accordingly, Defendants should be compelled to (i) provide substantive responses, including documents, to Plaintiff's Set One Document Request and Set Two Document Request; (ii) provide substantive responses to Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25; and (iii) reimburse Yellowcake for the attorneys' fees it has been compelled to incur in this motion, pursuant to FRCP 37(a)(5), in the amount of $5,000.00.

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Tel: 516.328.2300 | Fax: 516.328.6638

## II.    DEFENDANTS' STATEMENT AND CONTENTIONS.

### A.    INTRODUCTION.

Plaintiff's motion is flawed and utterly misguided, and should be denied, and Defendants' awarded their attorneys' fees and costs incurred in having to defend against the motion.

First, the motion is procedurally flawed in numerous ways. It purports to address three different pieces of discovery (one set of interrogatories and two sets of document requests) in a single motion. It also fails to comply with Local Rule 251, which requires that each specific interrogatory or other item objected to, and the objection thereto, be reproduced in full, with the respective arguments and supporting authorities of the parties set forth immediately following each such objection. L.R. 251(c). In lieu of compliance with Local Rule 251, Yellowcake offers only a single "example" of, and omnibus arguments about, Defendants' purportedly non-compliant responses to each of Plaintiff's three pieces of discovery. Plaintiff also purports to move to compel on discovery that Plaintiff failed to identify in its Amended Notice of Motion. Most importantly, the motion seeks to enforce discovery which the Court, in its July 21, 2022 Order, explicitly stated it "will not enforce" due to the inclusion of "superseded definitions." Docket No. 78, fn.4 at 6:18-23; *see* footnote 10, *infra*. Despite Defendants' repeated requests, Plaintiff refused to withdraw – without prejudice – its present motion. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 14-21, Exs. "D"-"H".

Second, Defendants' references to Fed. R. Civ. P. 33(d), given in response to certain of Plaintiff's Interrogatories, are perfectly appropriate as applied and wholly within the letter and spirit of Rule 33(d). The responses which make such reference are to those interrogatories that would otherwise require summaries of Defendants' business records. Defendants' method of electronically "tagging" documents responsive to specific interrogatories is legally permissible and makes the burden of deriving or ascertaining the answer "substantially the same" for

Plaintiff. Plaintiff has consistently refused Defendants' repeated entreaties to use a <u>free</u> e-discovery service to alleviate any potential burden on Plaintiff. Instead, in order to respond to the Interrogatories, Plaintiff would have Defendants utilize "a searchable database" and create new documents, not previously existing. Defendants are not required to do that. As set forth below, Defendants' responses to the other Interrogatories with which Plaintiff purports to take issue are perfectly responsive, and there is no need for the Court to compel further responses.

Third, Defendants' objections to Plaintiff's Set One Document Request[9] are well taken, and their responses are fully responsive and compliant. Plaintiff's present issues are, if anything, of Plaintiff's own making, due, without limitation and in pertinent part, to the wholesale incorporation by reference into Plaintiff's discovery of the overbroad definitions of "Yellowcake's Copyrighted Works" and "Foreign Works" set forth in Plaintiff's First Amended Complaint. As the Court noted in footnote 4 of its July 21, 2022 Order granting Defendants' motion for a two-tier protective order, Plaintiff's discovery that is based upon terminology or allegations in the First Amended Complaint – that is, <u>all</u> of Plaintiff's discovery – are superseded by the Second Amended Complaint. Docket No. 78 at 6:18-23.[10]

---

[9] For the Court's convenience only, Defendants adopt the definitions used by Plaintiff in reference to Plaintiff's discovery.

[10] The Court's July 21, 2022 Order directed the parties to meet and confer to identify the list and which definitions will be used for responding to Plaintiff's document requests and interrogatories, and states that "[t]he Court will not enforce a request or interrogatory that contains superseded definitions." Docket No. 78 at 6:21-23, 21:4-9. <u>All</u> of Plaintiff's discovery contains these superseded definitions. As of the August 12, 2022 due date for submission of this joint statement, no agreement has been reached between the parties as to the requisite list and definitions. Accordingly, the Court should not enforce <u>any</u> of Plaintiff's discovery that is the subject of Plaintiff's present motion to compel and should deny Plaintiff's motion.

Moreover, the Court further ordered that once the parties have met and conferred on the "list" of Copyrighted Works and Foreign Works at issue in this case, and following entry of the protective order, Defendants are required to supplement their responses to Plaintiff's document requests and interrogatories. Thus, Plaintiff's present motion is also premature, since the

Fourth, Plaintiff's Set Two Document Request is entirely redundant with Requests Nos. 13-18 of Plaintiff's Set One Document Request, except that Set Two Document Request is not limited to the works at issue in this action (namely, "Yellowcake's Copyrighted Works" and "Foreign Works"). Accordingly, the Set Two Document Request seeks documents that are not relevant to Plaintiff's claims, nor proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

For these reasons, as more particularly set forth below, Plaintiff's motion should be denied *in toto*.

**B.     DETAILS OF MEET AND CONFER.**

This is an action for alleged copyright infringement of thousands of sound recordings to which the plaintiff, Yellowcake, allegedly claims rights. The subject sound recordings are allegedly subject to copyright in the United States and Mexico. The defendants are Dashgo and

---

discovery responses that are at issue on this motion will be superseded by Defendants' supplemental responses. Either way, the motion should be denied.

Further, with regard to the "list" of specific, identifiable iterations of the copyrighted works that Defendants are alleged to have infringed (defined in the Second Amended Complaint as "Yellowcake's Copyrighted Works" and "Foreign Works"): As Defendants have previously explained, *see* Docket No. 64 [Joint Statement re: Defendants' motion for two-tier protective order] at 10:1-11, a unique sound recording can be referenced by an International Standard Recording Code ("ISRC"), a 12-character, alphanumeric code that is assigned to a piece of music set for commercial release. Accordingly, Defendants had been trying to get Plaintiff to specify the ISRC codes for each sound recording claimed to be on the "list". *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 14-16, 18, Exs. "D" [at page 2], "F" [at page 1]. By keying the "list" to ISRC codes, there could be no question but that the "list" included information identifying the unique sound recordings allegedly infringed by Defendants. On August 9, 2022, Plaintiff's counsel unilaterally produced what was represented to be the revised "list" of sound recordings allegedly at issue in this action, which "list" included ISRC codes. Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 22, Ex. "I". Defendants' spot check of Plaintiff's August 9, 2022 "list" revealed that the "list" included ISRC codes that <u>do not match up</u> to the sound recordings which they purported to be. Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 22-23, Exs. "I", "J". A "list" that does not include true and correct ISRC codes does not permit Defendants to "know the works, with specificity, they are alleged to have infringed." *Cf.* Docket No. 78 [7/21/2022 Order] at 21:8-9. Accordingly, the August 9, 2022 "list" does not provide Defendants with sufficient and proper notice of the allegations against them.

Adrev and two individuals in their employ, respectively, Benjamin Patterson (of Dashgo) and Noah Becker (of Adrev). Dashgo and Adrev were both formed in 2007. Dashgo provides services for the distribution of digital music. Adrev is an administrator for monetization of music rights on YouTube's Content ID platform and is Dashgo's parent entity.

Plaintiff's First Amended Complaint ("FAC") was filed on July 21, 2021. Docket No. 7. The subject sound recordings were defined in the FAC as "Yellowcake's Copyrighted Works" (those allegedly registered with the U.S. Copyright Office) and "Foreign Works" (those allegedly subject to Mexican copyright protection). Those defined terms are, in turn, defined by reference to Exhibits to the FAC, which set forth a list of artist names, albums, song titles, U.S. Copyright Registration numbers and, as to Exhibit A, (broken) YouTube links. *See* Docket No. 7 [FAC], ¶¶ 1, 2, pp. 19-61 [including Exhibits A & B].

On November 1, 2021, Yellowcake served Set One Document Request on Defendants, Appendix 1, Exhibit 1, and on November 11, 2021, served Interrogatories on Defendants. Appendix 1, Exhibit 2. Just a few weeks later, on December 13, 2021, Plaintiff served Set Two Document Request on Defendants.[11] Appendix 1, Exhibit 3.

All of Plaintiff's discovery incorporates the definitions of "Yellowcake's Copyrighted Works" and "Foreign Works" set forth in the FAC. In the digital music distribution business, sound recordings cannot solely be identified by artist name and title, or even by copyright registration number, as there are numerous cases of artists re-recording or licensing distinct versions of sound recordings to various record labels and distributors, each iteration bearing the same artist name and title. Consequently, the defined terms "Yellowcake's Copyrighted Works"

---

[11] Yellowcake served single sets of document requests and interrogatories on Dashgo and Adrev jointly. Defendants accordingly responded jointly.

and "Foreign Works" are inherently overbroad, vague and ambiguous, capturing not only works that might be at issue in this action, but also those that are completely irrelevant to this action[12], including works owned, licensed or otherwise claimed by other Dashgo clients, both present and former. Plaintiff's document requests and interrogatories, as served, are also, among other things, facially unlimited as to time[13], extremely broad, and call for the production of all manner of documents and information, including without limitation confidential and sensitive documents and information of third parties. Plaintiff's discovery is anything but "narrowly tailored". *Cf.* Sections I.A., I.B., I.C., *supra*, at 2:22-23, 6:10-11, 7:10-11.

Defendants timely responded to Plaintiff's Set One Document Request and Interrogatories on Friday, January 7, 2022[14], Appendix 1, Exhibits 4, 6, and, one week later, timely responded to Set Two Document Request on Friday, January 14, 2022. Appendix 1, Exhibit 5. Defendants' response to Set Two Document Request consisted solely of objections.

---

[12] "Might" be at issue in this action because, thus far in discovery, Yellowcake has failed to establish its ownership of *any* of "Yellowcake's Copyrighted Works" or "Foreign Works". In terms of chain of title documentation, all Yellowcake has produced are some Asset Purchase and Assignment Agreements ("APAs") pursuant to which Yellowcake is the Buyer. The APAs show only that the Sellers represent their ostensible ownership of the works being sold (including by quitclaim). Defendants have no information as to whether those representations are true or false, and Yellowcake has thus far refused, without substantial justification – indeed, without any justification at all – to produce any documentation that predates the APAs that might establish good title. Likewise, Yellowcake has failed to establish that any of the "Foreign Works" ***are even eligible*** for copyright protection under the Copyright Act. 17 U.S.C. § 104(b); *see also United States v. Hernandez* (9th Cir. 1991) 952 F.2d 1110, 1118 (citing *New York Chinese v. U.E. Enterprises* (S.D.N.Y. March 8, 1989) 1989 WL 22442, *5, 1989 U.S.Dist. LEXIS 2760 *19–20). Thus, discovery regarding the "Foreign Works" seeks irrelevant information and documents.

[13] By letter dated February 4, 2022, as to non-financial documents, Plaintiff's counsel later agreed to limit the relevant time period to "January 1, 2010 to the present" – a period of more than 12 years. *See* Appendix 1, Exhibit 11 [2/4/2022 Berman letter] at page 3.

[14] Pursuant to the parties' stipulations, the Court first extended the date for Defendants' discovery responses to December 31, 2021, Docket No. 27, and then to January 7, 2022. Docket No. 29.

Following an initial January 18, 2022 meet and confer teleconference, on February 11, 2022, Defendants served amended responses to Interrogatories Nos. 1-16, 20, 21, 22, 24 and 25. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 13, Exs. "B", "C".[15] Defendants never received any meet and confer correspondence from Plaintiff with regard to those amended responses.

On February 16, 2022, Plaintiff filed a Second Amended Complaint ("SAC"). Docket No. 31. The SAC completely redefines the previously-defined terms "Yellowcake's Copyrighted Works" and "Foreign Works",[16] thereby rendering the definitions of "Yellowcake's Copyrighted Works" and "Foreign Works" in Plaintiff's discovery obsolete, irrelevant and unintelligible.

On March 24, 2022, Plaintiff filed a purported "Notice of Motion and Motion to Compel Discovery". Docket No. 40. That notice stated, verbatim, that Plaintiff "will move to compel discovery pursuant to Fed. R. Civ. P. 37 and Eastern District of California Civil Local Rule 251."

---

[15] Given that Plaintiff has purported to compel further responses to Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25, *see* Docket No. 61 [Amended Notice of Motion] at 2:11-12, Defendants are perplexed by Plaintiff's ***failure to include*** Defendants' February 11, 2022 amended interrogatory responses in Appendix 1 (which comprises all of Plaintiff's exhibits on this motion). How can Plaintiff expect the Court to rule on the propriety of Defendants' responses to Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21 and 22 if Plaintiff does not offer Defendants' most current responses into evidence? For the convenience of the Court, and to resolve the lacuna created by Plaintiff, Defendants have submitted into evidence the said February 11, 2022 amended interrogatory responses, and the verifications thereto, which are attached as Exhibits "B" and "C" to the Declaration of Ory Sandel (Appendix 2, Exhibit 1).

[16] Since the Exhibits to the FAC are different than the Exhibits to the SAC, the definitions of "Yellowcake's Copyrighted Works" and "Foreign Works" necessarily changed between the July 21, 2021 filing of the FAC and the February 16, 2022 filing of the SAC. *See* footnote 10, *supra*. Indeed, Yellowcake's two sequential pleadings allege completely different totals of alleged infringements, both of "Yellowcake's Copyrighted Works" and of the "Foreign Works." *Compare* Docket No. 7 [FAC], ¶¶ 1 (alleging 165 infringements of "Yellowcake's Copyrighted Works"), 2 (alleging 1,075 infringements of the "Foreign Works") *with* Docket No. 31 [SAC], ¶ 1 (alleging 1,672 infringements of "Yellowcake's Copyrighted Works", 2 (alleging 363 infringements of the "Foreign Works"). Moreover, the two pleadings even allege a completely different number of works at issue. By letter of May 16, 2022, Mr. Berman informed defense counsel that nearly 500 *additional* songs had been added to the Exhibits to the SAC as compared with the FAC.

Docket No. 40 at 2:5-7. As such, Plaintiff's purported Notice of Motion was facially deficient. Fed. R. Civ. P. 7(b)(1)(B), (C); *Andreas v. Volkswagen of Am., Inc.* (8th Cir. 2003) 336 F.3d 789, 793; *see also Browning v. Lilien* (S.D. Cal. Sept. 15, 2016) No. 15CV2208-GPC (BLM), 2016 WL 4917115, at *2 (notice of motion must provide opposing counsel and the Court with sufficient information to rule on the motion); *In re Carson* (Bankr. E.D. Cal. 2014) 510 B.R. 627, 631 (mere formulaic recitation insufficient to meet the particularity standard for motions).

On April 6, 2022, the Court held a status conference regarding the parties' various discovery motions and ordered the parties to further meet and confer, which the parties did, telephonically, on April 13 and 26, 2022.

On April 27, 2022, Defendants served a further amended and supplemental response to Interrogatory No. 25. Appendix 1, Exhibit 7.

Counsel held further meet and confer teleconferences on April 4, 13, 26 and 27, 2022 and May 16, 2022. On nearly each call, Mr. Berman added new discovery responses with which Yellowcake was now taking issue, thereby "moving the goalposts" by expanding, rather than narrowing, the issues. *See* Section II.D.1., *infra* (referencing Appendix 1, Exhibit 9). Ultimately, and needless to say, no resolution was reached.

The Court held a status conference on May 17, 2022, at which time Defendants raised the deficiencies of Plaintiff's March 24, 2022 "Notice of Motion and Motion to Compel Discovery". The Court thus instructed Plaintiff to file amended notices of motion and *expressly stated* that it was the Court's preference that each motion for each item of discovery be separately noticed.

On May 24, 2022, *contrary to the Court's instruction*, Plaintiff filed a single "Amended Notice of Motion and Motion to Compel Substantive Responses to Plaintiff's Demands". Docket No. 61.

In pertinent part, the said Amended Notice of Motion states that Plaintiff is moving to:

"(a) compel production of documents responsive to Plaintiff's Request for Documents, Set Two;

(b) compel substantive responses to Plaintiff's Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25; and

(c) compel production of all relevant documents responsive to Plaintiff's Request for Production of Documents, Set One." Docket No. 61 at 2:6-14.

Plaintiff's May 24, 2022 Amended Notice of Motion is just as defective as its original March 24, 2022 Notice of Motion, first, because Yellowcake combined three motions in a single notice of motion; second, because Yellowcake failed to specify which document requests are the subject of its motion; and third, because Plaintiff cannot compel document production responsive to Plaintiff's Set Two Document Request (to which Defendants have asserted only objections) without first compelling further responses to those document requests.

By agreement of the parties, and per the Court's June 9, 2022 Minute Order, Docket No. 66, Yellowcake provided its portion of this joint statement to Defendants on June 24, 2022.

On July 21, 2022, the Court entered its order granting Defendants' motion for entry of a two-tier protective order. Docket No. 78. Based on the provisions of the said Order – including the Court's express statement that "The Court *will not enforce* a request or interrogatory that contains superseded definitions", Docket No. 78 at 6:18-23 (emphasis added) – and in order to attempt to resolve issues set forth in Plaintiff's portion of the joint statement and to avoid the unnecessary expenditure of resources (both those of Defendants and those of the Court), Defendants' counsel repeatedly sought Plaintiff's agreement to withdraw this motion *without prejudice*; Plaintiff's counsel ***repeatedly refused***. Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 14-21, Exs. "D"-"H". Defendants were thus given no choice but to complete their portion of the joint statement and file it by the court-ordered August 12, 2022 due date. *See* Docket No. 66.

### C.    NATURE OF THE ACTION AND FACTUAL DISPUTES.

The relationship between the parties goes back more than a decade. In or about February of 2011, Dashgo and Richboy Ventures, Inc. f/s/a p/k/a DH1 Digital ("DH1") entered into a Digital Distribution & Licensing Representation Agreement ("Agreement"), pursuant to which Dashgo was granted rights to exploit certain of the sound recordings in which Plaintiff now contends it acquired copyrights. Defendants are informed and believe that DH1 later became, or is otherwise affiliated with, Colonize Media, Inc. f/k/a DH1 Media, Inc. ("Colonize Media"). Colonize Media is Plaintiff's exclusive licensee. Jose David Hernandez was the sole principal of DH1 and is a principal of Colonize Media (and a former principal of Yellowcake). Kevin Berger is a principal of Colonize Media and Yellowcake.

On or about January 5, 2015, DH1 sent a letter purporting to terminate the said Agreement, effective as of February 15, 2015, but then DH1 requested, both verbally and in writing, prior to the would-be effective termination date, that Dashgo should take down (cease the exploitation of) DH1 content *only upon express notification* from DH1's principal, David Hernandez, thereby superseding the purported termination of the said Agreement or, in the alternative, granting Dashgo an implied license to continue exploiting the subject sound recordings pending further written notice from DH1. Plaintiff is consequently legally and equitably estopped from making the claims alleged or, alternatively, has waived all such claims.

Nevertheless, on May 17, 2021, Plaintiff filed suit against Defendants for copyright infringement. Docket No. 1. Following Defendants' July 1, 2021 filing of a Rule 12 motion, Plaintiff filed a First Amended Complaint ("FAC"), as a matter of course, on July 21, 2021. Docket Nos. 4, 7; Fed. R. Civ. P. 15(a)(1)(B). After a further Rule 12 motion was granted with leave to amend, Plaintiff filed a Second Amended Complaint ("SAC") on February 16, 2022.

Docket Nos. 10, 30, 31. Each iteration of the Complaint alleges infringement of thousands of sound recordings to which Yellowcake claims rights, span large periods of time[17] and implicate the actions of many actors, including foreign (Mexican) musicians and entities.

The subject sound recordings are defined, in both the FAC and the SAC, as "Yellowcake's Copyrighted Works" and "Foreign Works". Those defined terms are, in turn, defined by reference to Exhibits to the FAC and the SAC, which set forth a list of artist names, albums, song titles, U.S. Copyright Registration numbers (as to certain of the works) and, as to Exhibit A, (broken) YouTube links.[18] *See* Docket No. 7 [FAC], ¶¶ 1, 2, pp. 19-61 [including Exhibits A & B]; Docket No. 31 [SAC], ¶ 24, Docket No. 31-1 [Exhibit A], 31-2 [Exhibit B]; Docket No. 31-3 [Exhibit C]. Many of the copyright registrations alleged are for compilations or collections of sound recordings, and for most of which Yellowcake is <u>not</u> the registered claimant. <u>None</u> of the "Foreign Works" is registered with the U.S. Copyright Office, and it is therefore an open question as to whether any of the "Foreign Works" ***are even eligible*** for copyright protection under the Copyright Act. *See* 17 U.S.C. § 104(b); *see also United States v. Hernandez* (9th Cir. 1991) 952 F.2d 1110, 1118 (citing *New York Chinese v. U.E. Enterprises* (S.D.N.Y. March 8, 1989) 1989 WL 22442, *5, 1989 U.S.Dist. LEXIS 2760 *19–20). If they are not eligible, Plaintiff cannot pursue its claims for infringement of the "Foreign Works", and any discovery taken regarding such ineligible "Foreign Works" is facially overbroad and seeks

---

[17] Technically, an infinite amount of time, as Plaintiff's pleadings contain no allegations about when any of the alleged infringements occurred, nor when any of the communications or agreements between the parties allegedly occurred.

[18] As to the "Foreign Works", Exhibit C to Plaintiff's SAC also lists Universal Product Codes ("UPCs"). A UPC would be unique to an album, not to an individual sound recording (unless the sound recording was sold as album comprised of a single track). It appears that the UPCs for all of the sound recordings listed on Exhibit C to Plaintiff's Second Amended Complaint are for

irrelevant information and documents. To date, Plaintiff has failed and refused, without substantial justification – indeed, without any justification at all – to provide evidence that <u>any</u> of the "Foreign Works" are eligible for copyright protection under the Copyright Act.[19]

Further, in the digital music distribution business, sound recordings cannot be identified solely by artist name and title, or even by copyright registration number, as there are numerous cases of artists re-recording or licensing distinct versions of sound recordings to various record labels and distributors, each iteration bearing the same artist name and title. Without limitation, based on the foregoing, the subject sound recordings cannot be verifiably and positively identified with any degree of certainty based only on the Exhibits to the FAC (or, for that matter, the Exhibits to the SAC). *See* footnote 10, *supra*. Defendants reasonably believe that Plaintiff's complaints about certain of the subject sound recordings are the result of ownership conflict reports over completely different sound recordings that were incorrectly flagged by Plaintiff and/or Plaintiff's predecessor(s)-in-interest as infringing versions of the same sound recording.

On November 1, 2021, Yellowcake served Set One Document Request on Defendants, and on November 11, 2021, served Interrogatories on Defendants. Just a few weeks later, on December 13, 2021, Plaintiff served Set Two Document Request on Defendants.

Plaintiff's discovery incorporates the same overbroad, vague and ambiguous definitions of "Yellowcake's Copyrighted Works" and "Foreign Works" set forth in the FAC (but not the definitions set forth in the SAC). Thus, for the purposes of Plaintiff's discovery, and this motion,

---

albums comprised of multiple tracks. Thus, the UPCs set forth in Exhibit C to Plaintiff's Second Amended Complaint are not unique to each sound recording.

[19] In this regard, Dashgo has filed a motion to compel a further response to Defendant Dashgo, Inc.'s Interrogatories, Set One, to Plaintiff Yellowcake, Inc., Interrogatory No. 4, which Interrogatory sought to obtain this highly-pertinent information. That motion should be granted.

"Yellowcake's Copyrighted Works" is defined by reference to Exhibit A to the FAC and "Foreign Works" is defined by reference to Exhibit B to the FAC. *See* footnote 10, *supra*.

Exhibits A and B to the FAC are comprised of nothing more than a list of artists and song titles. Consequently, the defined terms "Yellowcake's Copyrighted Works" and "Foreign Works" are inherently overbroad, vague and ambiguous, capturing not only works that might be at issue in this action, but also those that are completely irrelevant to this action, including works owned, licensed or otherwise claimed by other Dashgo clients. *See* footnote 12, *supra*.

       1.    **<u>Interrogatories</u>**.

On November 11, 2021, Plaintiff served a first set of twenty-five (25) Interrogatories on Defendants.[20] Appendix 1, Exhibit 2; *see* footnote 11, *supra*. Defendants originally responded to all twenty-five Interrogatories on January 7, 2022. Appendix 1, Exhibit 6. On February 11, 2022, Defendants served amended responses to Interrogatories Nos. 1-16, 20-22, 24 and 25. Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 13, Exs. "B", "C". On April 27, 2022, Defendants served a further amended and supplemental response to Interrogatory No. 25. Appendix 1, Exhibit 7.

Preliminarily, it is unclear to Defendants which Interrogatory responses are even purportedly in dispute on this motion and, as to those Interrogatory responses that are purportedly in dispute, precisely what the dispute(s) is/are. Defendants are perplexed because:

Plaintiff's Amended Notice of Motion states that Plaintiff will move to compel "substantive [*sic*] responses to Plaintiff's Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25." Docket No. 61 [Amended Notice of Motion] at 2:11-12. Plaintiff's portion of this

---

[20] As argued below, *see* footnotes 27, 29, *infra*, Plaintiff's Interrogatories in fact exceed the 25-interrogatory limit because two of the Interrogatories (at least, as to those Interrogatories that are the subject of this motion) are comprised of "subparts" that seek information about separate, discrete and distinct subjects and should therefore be considered multiple Interrogatories.

Joint Statement likewise purports to move to compel as to Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25, on the one hand, *see supra* at 2:7-8, 3:4-5, 5:6, but, alternatively, as to Interrogatories Nos. 1-15, 18, 20-22, 24 and 25, on the other hand, *see supra* at 10:10-17.

Oddly, Plaintiff asserts that "Defendants inappropriately refer to FRCP 33(d) in response to Interrogatories Nos. 1-15, 18, 20-22, 24, and 25." *See* Section I.D.1.(a), *supra*, at 10:15-17. This is a ***demonstrably false assertion*** since the <u>only</u> Interrogatories to which Defendants responded with reference to Rule 33(d) were Interrogatories Nos. 2, 4, 10, 12, 14 and 16. Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 13, Ex. "B" [Defendants' amended responses to Interrogatories Nos. 1-16, 20, 21, 22, 24 and 25] at 8:18-9:4, 11:25-12:10, 21:25-22:12, 26:12-26, 30:2-10, 33:11-19. Further, as set forth in detail below, the references to Rule 33(d) are wholly appropriate given the content of the subject Interrogatories.

As might be expected of businesses involved in the digital distribution of music (and, indeed, any business functioning in modern times), all of Defendants' responsive documents are in electronic (i.e., digital) form. In connection with Defendants' production, Defendants retained the services of LogikCull, an e-discovery service provider (www.logikcull.com). Using LogikCull, Defendants have organized and labeled their production, *cf.* Fed. R. Civ. P. 34(b)(2)(E)(ii), by electronically "tagging" each document to indicate to which document request and/or interrogatory that document is responsive. Thus, in order to know which documents are responsive to any given document request or interrogatory (that is, as to those interrogatories to which Defendants' response included reference to Rule 33(d)), one merely needs to search LogikCull for those documents "tagged" with the relevant document request or interrogatory number. This is a perfectly legitimate, typical and wholly proper, method of producing documents. *See HTC Corp. v. Tech. Properties Ltd.* (N.D. Cal. Jan. 12, 2011) No. C08-00882 JF

HRL, 2011 WL 97787, at *5; *see also Bonillas v. United Air Lines Inc.* (N.D. Cal. Dec. 19, 2014) No. C-12-06574(EDL), 2014 WL 7247215, at *2 (". . . attorneys reviewed the subset and tagged documents for production . . ."); *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.* (D. Mass. June 28, 2018) No. 11-CV-10230-MLW, 2018 WL 11026335, at *96, fn. 169; *Mt. Hawley Ins. Co. v. Felman Prod., Inc.* (S.D.W. Va. 2010) 271 F.R.D. 125, 135 (tagging for privilege); *Jermyn v. Best Buy Stores, L.P.* (S.D.N.Y. Dec. 15, 2010) No. 08CIV214CMDF, 2010 WL 11591503, at *1 (same). Defendants have spent considerable time and resources reviewing and "tagging" documents using LogikCull, and have produced tens of thousands of pages of "tagged" documents.

While LogikCull charges Defendants for use of their e-discovery services, Plaintiff can use LogikCull for free to electronically review, sort and run searches of Defendants' production. However, despite Defendants' repeated entreaties to take advantage of LogikCull, for reasons unknown to Defendants, Plaintiff has consistently refused to use LogikCull to *electronically* search Defendants' production. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 2-12, Ex. "A".

Instead, Plaintiff now complains that it is too great a burden to *manually* search Defendants' production to determine which documents are responsive to which document requests and/or interrogatories.[21] Again, and as set forth above, all it would take for Plaintiff to make that determination is an electronic LogikCull search for a given "tag". That would not be

---

[21] Defendants provided Plaintiff with links from which Plaintiff could download Adobe Acrobat (pdf) and native format files of Defendants' production (a separate link for each tranche of Defendants' rolling production). *See*, *e.g.*, Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 11, Ex. "A". Each file was Bates numbered. A spreadsheet of "tags", by Bates number, was provided as well. Using LogikCull, it is a simple matter to search Defendants' production for "tags"; the spreadsheet is nothing more than a summary.

burdensome in the least, much less unduly burdensome. Plaintiff's present complaints are of their own making.

Plaintiff also asserts that "Defendants have refused to provide any substantive responses to Interrogatories Nos. Nos. [*sic*] 1-15, 18, 20-22, 24, and 25." *See* Section I.D.1.(a), *supra*, at 10:12-13. **This is also a demonstrably false assertion**. As required by Local Rule 251(c), Defendants set forth in full the Interrogatories that are properly raised by this motion and the responses thereto. Those responses are facially "substantive" and are precisely responsive to the questions posed.

The only other issue Plaintiff raises with respect to Interrogatories Nos. 20-22 and 25 is that Defendants have asserted "inapplicable form objections" to those (and, purportedly, all other) Interrogatories. *See* Section I.D.1.(d), *supra*, at 16:12-13. Defendants' objections are tailored to each Interrogatory, are entirely proper and, therefore, are not "form objections".

In any event, the Court's July 21, 2022 Order states, in pertinent part: "Once the parties have met and conferred on the 'list' of [Yellowcake's] Copyrighted Works and Foreign Works at issue in this case, and following entry of the protective order, Defendants are required to supplement their responses to the RPD and Interrogatories Set One eliminating the boilerplate objections to the discovery requests." Docket No. 78 at 21:10-13. Since Defendants will be supplementing their responses to Plaintiff's discovery to "eliminate[e] the boilerplate objections to the discovery requests", Plaintiff's motion is premature, at least in this respect. *But see* footnote 10, *supra* (noting that Plaintiff's motion is wholly premature).

## 2. <u>Set One Document Request</u>.

On November 1, 2021, Yellowcake served Set One Document Request on Defendants, consisting of forty-two (42) document requests. Appendix 1, Exhibit 1. Defendants responded to

all forty-two requests on January 7, 2022, the vast majority of which represented that Defendants would "produce, on a rolling basis, extent, relevant non-privileged documents reasonably within Responding Parties' possession, custody or control" responsive to the requests, subject to entry of a suitable two-tier protective order. Appendix 1, Exhibit 4. As of the filing of this joint statement, no protective order has yet been entered.[22] Plaintiff cannot reasonably expect Defendants to produce documents to be designated under the protective order before its entry.

Plaintiff contends that Defendants should be "compelled to produce all documents demanded in the Set One Document Request *being withheld by Defendants*." *See* Section I.D.2., *supra*, at 21:4-5 (emphasis added); *see also* Section I., *supra*, at 3:18, 4:7, 9:24, 25:8-9. However, Plaintiff offers ***no evidence*** that Defendants are "withholding" any documents. Indeed, Plaintiff ***admits*** that it has no such evidence, nor any factual knowledge, that Defendants are withholding documents. *See* Section I.D.2, *supra*, at 16:23-25 ("*To the extent that* Defendants are withholding documents . . .") [emphasis added].

Defendants are perplexed as to why Plaintiff burdened the Court with this aspect of Plaintiff's present motion to compel, given the utter absence of any evidence to substantiate Plaintiff's calumnious accusation. With respect to the Set One Document Request, this motion is a tempest in a teapot.

---

[22] The Court's July 21, 2022 Order granting Defendants' motion for entry of a two-tier protective order, in pertinent part, ordered the parties to meet and confer on proposed language and submit a revised protective order for the Court's review. Docket No. 78 at 20:25-27. The parties met and conferred, as ordered, between July 21, 2022 and August 10, 2022, at which time agreement was reached as to the form and content of a protective order. On August 11, 2022, Defendants requested that Mr. Berman graphically sign the proposed form of protective order, approving it as to form and content. On the afternoon of August 12, 2022, Defendants received the proposed form of protective order signed by Mr. Berman. That form is being submitted to the Court for the Court's review at the same time as this Joint Statement. Provided the Court approves the parties' proposed form, a protective order will be entered in due course; however, as of this filing, no protective order has yet been entered.

### 3.    Set Two Document Request.

One of Dashgo's former clients was an Arizona entity known as MediaMuv, LLC ("MediaMuv"). According to the records of the Arizona Secretary of State, MediaMuv was formed in 2017. Its principals, members and/or associates are believed to have been Jose Teran, Omaida Batista and/or Webster Batista Fernandez, one or more of whom are believed to also have been members of Musika Ink LLC, a Florida limited liability company ("Musika"), and/or VA Music, LLC, an Arizona limited liability company ("VA Music").

Requests Nos. 13 through 18 of Plaintiff's Set One Document Request sought production of documents "by, between or among" any of Defendants, on the one hand, and MediaMuv, or anyone acting on MediaMuv's behalf (which would include its members), "concerning or regarding" any of "Yellowcake's Copyrighted Works" and the "Foreign Works". *See* Appendix 1, Exhibit 1 [Set One Document Request] at 7:1-8:8. By tethering these MediaMuv-related Requests to documents "concerning or regarding" any of "Yellowcake's Copyrighted Works" and the "Foreign Works", Requests Nos. 13 through 18 of the Set One Document Request sought relevant documents correlated to Plaintiff's allegations made in this action. In response, Defendants represented that they would produce, on a rolling basis, "extent, relevant non-privileged documents reasonably within Responding Parties' possession, custody or control" responsive to these six Requests. *See* Appendix 1, Exhibit 4.

On December 13, 2021, Yellowcake served Set Two Document Request on Defendants, consisting of sixty-seven (67) document requests. Appendix 1, Exhibit 3. In contrast to Plaintiff's Set One Document Request, which requested <u>relevant</u> MediaMuv-related documents (that is, those documents "concerning or regarding" any of "Yellowcake's Copyrighted Works" and the "Foreign Works"), Plaintiff's Set Two Document Request sought production of <u>irrelevant</u>

MediaMuv-related documents, namely, documents relating in any way to MediaMuv, its members and affiliated entities, including Musika and VA Music. *See* Appendix 1, Exhibit 3.

Plaintiff's Set Two Document Request is **not tethered in any way** to the sound recordings at issue in this action or to the allegations of the Complaint, the FAC or the SAC. Instead, the Set Two Document Request seeks production of *every document having anything whatsoever to do with* MediaMuv and its members and affiliates. As such, the Set Two Document Request is inherently overbroad, seeks documents that are entirely irrelevant any claim or defense in this action, and is wholly out of proportion to the needs of the case.

Consequently, in response to the Set Two Document Request, Defendants stated only objections. *See* Appendix 1, Exhibit 5.

On or about November 16, 2021 – that is, between the November 1, 2021 date of service of the Set One Document Request and the December 13, 2021 date of service of the Set Two Document Request – Jose Teran and Webster Batista Fernandez were indicted for conspiracy, wire fraud, money laundering and aggravated identity theft in connection with an allegedly fraudulent scheme to claim rights to, and monetize, a music library of over 50,000 songs.[23]

Defendants do not deny that, for a period of time, Dashgo had an arms-length relationship with MediaMuv, pursuant to which MediaMuv represented and warranted to Dashgo that MediaMuv was the copyright holder, or had obtained and held valid and sufficient rights, including copyrights, and that the content to be delivered to Dashgo by MediaMuv would not

---

[23] The indictment was filed in United States District Court, District of Arizona, Case No. CR-21-00955-PHX-DLR (MTM). The Court may take judicial notice of this fact. Fed. R. Evid. 201. The purported online news article on the subject, proffered as evidence by Plaintiff, *see* Section I.D.3., *supra*, at 21:13-16, and Appendix 1, Exhibit 19 [purported 4/26/2022 online news article from "Miami New Times"], is hearsay, that is, an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801.

infringe on the rights of any third parties, including but not limited to copyrights. Dashgo was entitled to, and did, rely on MediaMuv's representations and warranties.

In March of 2020, apparently out of thin air and based on no facts whatsoever, David Hernandez, a principal of Colonize Media, obtained the purported "understanding" that Adrev "owns and manages MediaMuv." *See* Appendix 1, Exhibit 20, at Bates Nos. PLF003337-3338 [3/11/2020 3:40 p.m. email from David Hernandez to Ted Kartzman]. Even if Plaintiff did not, or does not, believe <u>Defendants</u> that the relationship between Dashgo and MediaMuv was strictly arms-length, Plaintiff was so informed of the same by Ted Kartzman of Google, <u>a neutral third party</u>, more than two years ago. *See* Appendix 1, Exhibit 20, at Bates No. PLF003340 [3/12/2020 11:30 a.m. email from Ted Kartzman to David Hernandez, stating: "I keep telling you that AdRev has nothing to do with MediaMuv. ¶ MediaMuv manages their own account on YouTube. ¶ They're not owned by Adrev."].

Moreover, Dashgo does not referee rights disputes between its clients and/or former clients; if such disputes arise, those are worked out between the parties and whichever party has superior rights to a given work (or, alternatively, whatever agreement is reached between the parties) is the party to whom Dashgo pays any royalties it may have collected on the work at issue. *See* Appendix 1, Exhibit 20, at Bates Nos. PLF003351 [6/12/2018 1:11 a.m. email from Noah Becker to David Hernandez, copied to Colonize Media and MediaMuv], PLF003345 [8/1/2018 12:30 p.m. email from Noah Becker to David Hernandez, copied to Colonize Media and MediaMuv].

For reasons unknown to Defendants, Plaintiff has persisted in asserting that there is or was some kind of untoward relationship between Defendants and MediaMuv. In the meet and confer telephone calls between counsel that took place on April 4, 2022 and April 27, 2022, Mr.

Berman sought to legitimate the Set Two Document Request on the purported, and factually unsupported, ground that Defendants had adopted MediaMuv's "business model". In other words, Plaintiff essentially accused Defendants of fraudulently scheming to claim rights to, and monetize, the sound recordings to which Plaintiff claims rights.

In their portion of this joint statement, Plaintiff takes this wholly unfounded accusation a step further, claiming – again without basis – that Defendants "were knowingly helping MediaMuv" infringe on Plaintiff's alleged copyrights. *See* Section I.D.3., *supra*, at 24:17-20. [24]

Nothing could be further from the truth. Had there been any such connection between Defendants and MediaMuv, Defendants and/or their principals surely would have been indicted for aiding and abetting Jose Teran and Webster Batista Fernandez.

Plaintiff has offered <u>not a shred of evidence</u> either to show that Plaintiff's Set Two Document Request seeks relevant documents or to substantiate its calumnious accusations against Defendants. The unfounded assertions by Plaintiff and its counsel are so outrageous that they warrant a Rule 11 motion; Defendants have not ruled out making such a motion to recover the cost of responding to Plaintiff's outlandish and completely unsupported assertions, but in any event the Court should award Defendants their attorneys' fees and costs on this motion as requested below. *See* Section II.D.4., *infra*.

---

[24] The evidence proffered by Plaintiff for this accusation shows quite plainly that the dispute over rights as between David Hernandez/Colonize Media, on the one hand, and MediaMuv, on the other hand, involve works **not at issue in this action**. *Compare* Appendix 1, Exhibit 20, at Bates Nos. PLF003326, PLF003330 [referencing the artist La Zenda Nortena], PLF003344, PLF003357, PLF003359 [referencing the artist Los Inquietos Del Norte], *with* Docket No. 31-1, 31-2, 31-3 [Exhibits A, B and C to Plaintiff's SAC (none of which reference either La Zenda Nortena or Los Inquietos Del Norte)]. <u>Plaintiff's</u> <u>own</u> <u>evidence</u> unequivocally shows that Plaintiff's Set Two Document Request seeks irrelevant documents. Plaintiff's factually-unfounded accusations of criminal conduct by Defendants do not somehow make those document requests relevant.

Plaintiff's motion is utterly lacking in merit as to each item of discovery on which Plaintiff has moved. The motion should be denied, and Defendants awarded their attorneys' fees and costs incurred in defense of the motion.

**D.    CONTENTIONS.**

Plaintiff has failed to comply with Local Rule 251(c) by failing to reproduce in full each specific discovery item and the objections thereto. Instead, Plaintiff offers a only single "example" of Defendants' purportedly-insufficient discovery responses for each of the three pieces of discovery addressed by Plaintiff's motion; Plaintiff otherwise purports to summarize, and makes vague and conclusory claims and arguments about, all of Defendants' other discovery responses. This makes it impossible to accurately review, analyze or resolve the discovery dispute. On this basis alone, the Court should deny Plaintiff's motion. *See*, *e.g.*, *U.S. Legal Support, Inc. v. Hofioni* (E.D. Cal. Nov. 5, 2015) No. 2:13-CV-01770-MCE-AC, 2015 WL 6756234, at *8; *Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.* (E.D. Cal. Sept. 17, 2014) No. 2:13-CV-01378-WBS-AC, 2014 WL 4661979, at *11; *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.* (E.D. Cal. Sept. 7, 2006) No. 1:04CV5153 OWW DLB, 2006 WL 8458563, at *1.[25]

**1.    Interrogatories.**

As a preliminary matter, Plaintiff's motion should be denied outright as to Interrogatories Nos. 1, 3, 6-9, 13, 15, 16 and 24, _none of which were identified_ in Plaintiff's May 24, 2022 Amended Notice of Motion. Docket No. 61.

---

[25] As in *E. & J. Gallo Winery*, Plaintiff seems to spend more lines of its portion of this joint statement disparaging defense counsel than dealing with the merits of the discovery dispute.

The Amended Notice of Motion states that Plaintiff will move to compel "substantive [*sic*] responses to Plaintiff's Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25." Docket No. 61 [Amended Notice of Motion] at 2:11-12. Plaintiff's portion of this Joint Statement likewise purports to move to compel as to Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25, on the one hand, *see* Sections I.A., I.B., *supra* at 2:7-8, 3:4-5, 5:6, but, alternatively, as to Interrogatories Nos. 1-15, 18, 20-22, 24 and 25, on the other hand, *see* Section I.D.1., *supra* at 10:10-17.

A motion must state "with particularity" the grounds on which it is made and the relief or order sought. Fed. R. Civ. P. 7(b)(1)(B). The purpose of Rule 7's particularity requirement is to give notice of the basis for the motion to the court and the opposing party, so as to avoid prejudice, "providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly." *Andreas v. Volkswagen of Am., Inc.* (8th Cir. 2003) 336 F.3d 789, 793; *see also Browning v. Lilien* (S.D. Cal. Sept. 15, 2016) No. 15CV2208-GPC (BLM), 2016 WL 4917115, at *2 (notice of motion must provide opposing counsel and the Court with sufficient information to rule on the motion). A notice of motion that is made with insufficient particularity may be denied, and such denial is not an abuse of the court's discretion. *See Davis v. King* (10th Cir. 2014) 560 F. App'x 756, 761.

On the parties' first meet and confer telephone call, which occurred on January 18 2022, Plaintiff's counsel specifically stated that Defendants' responses to Interrogatories Nos. 1, 3, 5, 7, 17, 18, 19 and 23 were **not in dispute**. *See* Appendix 1, Exhibit 9 [1/21/2022 Idell letter to Berman] at page 2. In further meet and confer, and as evidenced by the present motion (which purports to move to compel as to the responses to Interrogatories Nos. 1, 3, 5, 7 and 18), Mr. Berman continually <u>added</u> to the matters purportedly in dispute.

By failing to identify (or, alternatively, misidentifying) the particular Interrogatories on which it is moving to compel, Plaintiff has failed to comply with its procedural obligations. Accordingly, the Court should deny Plaintiff's motion outright at least as to Interrogatories Nos. 1, 3, 6-9, 13, 15, 16 and 24 (though the Court should also deny Plaintiff's motion as to Interrogatory No. 5, in light of Mr. Berman's January 18, 2022 representation that the response to Interrogatory No. 5 was not in dispute).

Defendants address below, with specificity, Interrogatories Nos. 2, 4, 5, 10, 11, 12, 14, 16, 20, 21, 22 and 25. Each specific Interrogatory is set forth in full, followed by Defendants' objections and response and Defendants' argument and supporting authorities as to why the objections are well taken and the response is sufficient and responsive to the question posed.

**INTERROGATORY NO. 2:**

If the answer to the foregoing interrogatory is in the affirmative[26], identify: (i) the name of the artist of each sound recording Exploited; (ii) the title of each sound recording Exploited; (iii) which Defendant Exploited the sound recording; (iv) the date of each Exploitation; (v) the nature of each such Exploitation; (vi) the identity of any third parties involved in each such Exploitation (including, but not limited to, any digital service providers such as Amazon, Spotify, Apple Music and iTunes); (vii) the gross amount of revenue generated from each such Exploitation; (xiii) the name of every party that received any revenue generated by each such Exploitation; and (ix) the amount of revenue received by each such party.

---

[26] Interrogatory No. 1 requests that Defendants "[s]tate whether or not You have ever Exploited any of Yellowcake's Copyrighted Works." Appendix 1, Exhibit 2 [Interrogatories] at 3:21-22. Defendants' amended response to Interrogatory No. 1 states, in pertinent part: "Dashgo has exploited sound recordings in which Plaintiff contends it acquired copyrights." Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 13, Ex. "B" [amended Interrogatory responses] at 6:22-23. Defendants liberally interpreted their amended response to Interrogatory No. 1 to be "in the affirmative" and therefore responded to Interrogatory No. 2.

**AMENDED RESPONSE TO INTERROGATORY NO. 2:**

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for the production of documents that are not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection on the grounds that the Interrogatory calls for production of documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined terms "You" and "Defendant" purport to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from

other, less costly and/or more convenient third party sources, including without limitation the referenced "digital service providers". Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "You", "Defendant", "Yellowcake's Copyrighted Works", "Exploited" and "Exploitation", as to the terms "receives", "revenue", "nature", "identity", "involved", and "generated" and as to the phrases "involved in", "digital service providers", "generated from" and "generated by". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined terms "You", "Defendant", "Yellowcake's Copyrighted Works", "Exploited" and "Exploitation", as to the terms "receives", "revenue", "nature", "identity", "involved", "revenue" and "generated" and as to the phrases "involved in", "digital service providers", "generated from" and "generated by".

Without waiving the foregoing objections, Responding Parties respond as follows: To the extent the Interrogatory purports to ask for information, including financial information, regarding sound recordings in which Plaintiff contends it acquired copyrights that were delivered to digital distributions platforms by either or both of the Responding Parties, pursuant to Rule

33(d) of the Federal Rules of Civil Procedure, and related case law, Responding Parties refer Propounding Party to all extant, relevant non-privileged format(s) of electronically-stored information, or any compilations or summaries thereof, including without limitation indexes and/or spreadsheets, sourced from "digital service providers" or otherwise, to be produced by Responding Parties after entry of a suitable protective order.

Any documents responsive to this Interrogatory, to be produced by Responding Parties after entry of a suitable protective order, will be electronically "tagged" such that Propounding Party should be able to sort and access documents subject to the Rule 33(d) reference set forth above and are therefore responsive to this Interrogatory. Responding Parties reserve the decision to alternatively create and produce, after entry of a suitable protective order, one or more spreadsheets containing the information requested by this Interrogatory.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

**<u>Argument</u>**

Plaintiff takes issue with Defendants' reference to Rule 33(d).

Rule 33(d) provides:

"If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."

Rule 33(d) provides the option of producing business records in lieu of answering an interrogatory if the burden of deriving or ascertaining the answer will be substantially the same for either party. *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.* (D. Colo. 2014) 305 F.R.D. 247, 255. The purpose of this option is to place the burden of research on the party seeking the information, instead of requiring the responding party to conduct a burdensome or expensive search of its own records. *Ibid.*

When the burden of deriving or ascertaining an answer to a discovery request is substantially the same for either party, the court has discretion to decide which party should do it. *See Berster Techs., LLC v. Christmas* (E.D. Cal. Oct. 4, 2011) No. CIV 2:11-CV-1541-KJM, 2011 WL 4710801, at *3 (citing *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.* (N.D.Cal. Dec.15, 2008) 2008 WL 5272186, at *3).

Preliminarily, Plaintiff's Interrogatory No. 2 is, on its face, extremely overbroad, including without limitation as to time (which, per the Interrogatories as served, is entirely unlimited). *But see* footnote 13, *supra* (2/4/2022 agreement by Plaintiff's counsel to "limit" the relevant time period to "January 1, 2010 to the present" – a period of more than 12 years). Notwithstanding the three-year statute of limitations for copyright infringement, 17 U.S.C. § 507(b), by Interrogatory No. 2, Plaintiff is seeking information on the "Exploitation" of "Yellowcake's Copyrighted Works" over a period of *more than twelve years*. Thus, Defendants' objection on overbreadth grounds is well taken.

As Plaintiff admits, for at least a portion of that time, Dashgo had a contractual right to engage in such "Exploitation". *See* Section I.B., *supra*, at 5:12-14. As Plaintiff also admits,

David Hernandez received reports on revenues generated by such "Exploitation". *See* Section I.C., *supra*, at 8:13-18 (citing Exhibit "10"). In other words, Plaintiff admits: (1) that Interrogatory No. 2 seeks information that is ***irrelevant*** to Plaintiff's claims of infringement; <u>and</u> (2) that it is ***already in possession*** of information sought by Interrogatory No. 2. Thus, Defendants' objections on relevance, undue burden and hardship grounds are also well taken.

Moreover, Interrogatory No. 2 consists of <u>nine</u> (9) separate purported subparts about discrete and disparate separate subjects.[27] Logically, and unsurprisingly, information responsive to Interrogatory No. 2 can be derived or ascertained from documents that are equally disparate. This is precisely the type of circumstance contemplated by Rule 33(d).

Defendants have not only provided documents containing responsive information to Plaintiff, but also provided Plaintiff information on LogikCull, a service that is free to Plaintiff and through which Plaintiff could easily and quickly electronically search Defendants' production. Defendants' files are in electronic format and easily searchable (including by "tags")

---

[27] As is apparent, Interrogatory No. 2 consists of nine (9) separate purported subparts. A party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Fed. R. Civ. P. 33(a)(1); *Safeco of Am. v. Rawstron* (C.D. Cal. 1998) 181 F.R.D. 441, 443-444 (quoting Advisory Committee Note, 146 F.R.D. at 675-676). Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. *Ibid.*; *see also Collaboration Properties, Inc. v. Polycom, Inc.* (N.D. Cal. 2004) 224 F.R.D. 473, 475 ("a party cannot avoid the numerical limits by asking questions about *distinct subjects,* but numbering the questions as subparts."); *Willingham v. Ashcroft* (D.D.C. 2005) 226 F.R.D. 57, 59 ("[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated."). Here, the purported subparts of Interrogatory No. 2 constitute *at least* three distinct and discrete areas of inquiry. Accordingly, Interrogatory No. 2 is not a single interrogatory, but rather at least three separate interrogatories. Interrogatory No. 4 similarly consists of at least three separate interrogatories. Notwithstanding the fact that Plaintiff propounded more than 25 interrogatories, Defendants responded to all of them. Plaintiff now has the gall to complain, and move the Court, about the propriety of those responses.

and, thus, it would not be unduly burdensome for Plaintiff to discern which documents contain information responsive to Interrogatory No. 2. In other words, the records have been offered to Yellowcake "in a manner that permits the same direct and economical access" that is available to Defendants. *See* Section I.D.1., *supra*, at 11:12-13 (citing *U.S. ex. rel. Englund v. Los Angeles County* (E.D. Cal. 2006) 235 F.R.D. 675, 680.

Plaintiff's Interrogatory No. 2 is, on its face, extremely overbroad. Rather than accepting the fact that Plaintiff's counsel crafted an interrogatory that is impossible to answer without reference to existing business records, Plaintiff now insists that Defendants "extrapolate" information and set it forth in a narrative response to Interrogatory No. 2. *See* Section I.D.1., *supra*, at 12:26-28. Such "extrapolation" amounts to the creation of new information and documents, not previously existing, for use in this litigation. There is no requirement that Defendants undertake such "extrapolation", and Rule 33(d) specifically provides a permissible alternative.

Instead of simply agreeing to use LogikCull to *electronically* review, search and sort Defendants' document production, and despite Defendants' repeated entreaties, Plaintiff has consistently refused to use LogikCull and, instead, now complains about the purported burden of having to *manually* review Defendants' production to determine which documents are responsive to a given document request and/or interrogatory. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 2-12, Ex. "A". Plaintiff's position is without substantial justification.

Defendants have borne the initial – and substantial – burden of reviewing and "tagging" the tens of thousands of electronic documents that have been produced; Defendants should not also have to now bear a further burden of providing Plaintiff with an index of tagged documents,

which would amount to nothing more than busywork. Plaintiff's motion should be denied as to Interrogatory No. 2.

## INTERROGATORY NO. 4:

If the answer to the foregoing interrogatory is in the affirmative[28], identify: (i) the name of the artist of each sound recording Exploited; (ii) the title of each sound recording Exploited; (iii) which Defendant Exploited the sound recording; (iv) the date of each Exploitation; (v) the nature of each such Exploitation; (vi) the identity of any third parties involved in each such Exploitation (including, but not limited to, any digital service providers such as Amazon, Spotify, Apple Music and iTunes); (vii) the gross amount of revenue generated from each such Exploitation; (viii) the name of every Person that received any revenue generated by each such Exploitation; and (ix) the amount of revenue received by each such Person.

## AMENDED RESPONSE TO INTERROGATORY NO. 4:

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for the production of documents that are not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

---

[28] Interrogatory No. 3 requests that Defendants "[s]tate whether or not You have ever Exploited any of the Foreign Works." Appendix 1, Exhibit 2 [Interrogatories] at 4:7-8. Defendants' amended response to Interrogatory No. 3 states, in pertinent part: "Dashgo has exploited sound recordings in which Plaintiff contends it acquired copyrights." Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 13, Ex. "B" [amended Interrogatory responses] at 10:2. Defendants again liberally interpreted their amended response to Interrogatory No. 3 to be "in the affirmative" and therefore responded to Interrogatory No. 4.

Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection on the grounds that the Interrogatory calls for production of documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined terms "You" and "Defendant" purport to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources, including without limitation the referenced "digital service providers". Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require

entry of a suitable protective order prior to disclosure. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "You", "Defendant", "Foreign Works", "Exploited" and "Exploitation", as to the terms "receives", "revenue", "nature", "identity", "involved", and "generated" and as to the phrases "involved in", "digital service providers", "generated from" and "generated by". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined terms "You", "Defendant", "Foreign Works", "Exploited" and "Exploitation", as to the terms "receives", "revenue", "nature", "identity", "involved", "revenue" and "generated" and as to the phrases "involved in", "digital service providers", "generated from" and "generated by".

Without waiving the foregoing objections, Responding Parties respond as follows: To the extent the Interrogatory purports to ask for information, including financial information, regarding sound recordings in which Plaintiff contends it acquired copyrights that were delivered to digital distributions platforms by either or both of the Responding Parties, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, and related case law, Responding Parties refer Propounding Party to all extant, relevant non-privileged format(s) of electronically-stored information, or any compilations or summaries thereof, including without limitation indexes and/or spreadsheets, sourced from "digital service providers" or otherwise, to be produced by Responding Parties after entry of a suitable protective order.

Any documents responsive to this Interrogatory, to be produced by Responding Parties after entry of a suitable protective order, will be electronically "tagged" such that Propounding Party should be able to sort and access documents subject to the Rule 33(d) reference set forth above and are therefore responsive to this Interrogatory. Responding Parties reserve the decision

to alternatively create and produce, after entry of a suitable protective order, one or more

spreadsheets containing the information requested by this Interrogatory.

Discovery is continuing. Responding Parties reserve the right to amend and/or

supplement this response.

**Argument**

Plaintiff takes issue with Defendants' reference to Rule 33(d).

Rule 33(d) provides:

"If the answer to an interrogatory may be determined by examining, auditing, compiling,

abstracting, or summarizing a party's business records (including electronically stored

information), and if the burden of deriving or ascertaining the answer will be substantially the

same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the

interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the

records and to make copies, compilations, abstracts, or summaries."

Rule 33(d) provides the option of producing business records in lieu of answering an

interrogatory if the burden of deriving or ascertaining the answer will be substantially the same

for either party. *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.* (D. Colo. 2014) 305

F.R.D. 247, 255. The purpose of this option is to place the burden of research on the party

seeking the information, instead of requiring the responding party to conduct a burdensome or

expensive search of its own records. *Ibid.*

When the burden of deriving or ascertaining an answer to a discovery request is

substantially the same for either party, the court has discretion to decide which party should do

it. *See Berster Techs., LLC v. Christmas* (E.D. Cal. Oct. 4, 2011) No. CIV 2:11-CV-1541-KJM, 2011 WL 4710801, at \*3 (citing *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.* (N.D.Cal. Dec.15, 2008) 2008 WL 5272186, at \*3).

Preliminarily, Plaintiff's Interrogatory No. 4 is, on its face, extremely overbroad, including without limitation as to time (which, per the Interrogatories as served, is entirely unlimited). *But see* footnote 13, *supra* (2/4/2022 agreement by Plaintiff's counsel to "limit" the relevant time period to "January 1, 2010 to the present" – a period of more than 12 years). Notwithstanding the three-year statute of limitations for copyright infringement, 17 U.S.C. § 507(b), by Interrogatory No. 4, Plaintiff is seeking information on the "Exploitation" of the "Foreign Works" over a period of *more than twelve years*. Thus, Defendants' objection on overbreadth grounds is well taken.

As Plaintiff admits, for at least a portion of that time, Dashgo had a contractual right to engage in such "Exploitation". *See* Section I.B., *supra*, at 5:12-14. As Plaintiff also admits, David Hernandez received reports on revenues generated by such "Exploitation". *See* Section I.C., *supra*, at 8:13-18 (citing Exhibit "10"). In other words, Plaintiff admits: (1) that Interrogatory No. 2 seeks information that is ***irrelevant*** to Plaintiff's claims of infringement; <u>and</u> (2) that it is ***already in possession*** of information sought by Interrogatory No. 2. Thus, Defendants' objections on relevance, undue burden and hardship grounds are also well taken.

Moreover, Interrogatory No. 4 consists of <u>nine</u> (9) separate purported subparts about discrete and disparate separate subjects.[29] Logically, and unsurprisingly, information responsive

---

[29] As is apparent, Interrogatory No. 4 consists of nine (9) separate purported subparts. A party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Fed. R. Civ. P. 33(a)(1); *Safeco of Am. v. Rawstron* (C.D. Cal. 1998) 181 F.R.D. 441, 443-444 (quoting Advisory Committee Note, 146 F.R.D. at 675-676). Parties cannot evade this presumptive limitation through the device of

to Interrogatory No. 4 can be derived or ascertained from documents that are equally disparate. This is precisely the type of circumstance contemplated by Rule 33(d).

Defendants have not only provided documents containing responsive information to Plaintiff, but also provided Plaintiff information on LogikCull, a service that is free to Plaintiff and through which Plaintiff could easily and quickly electronically search Defendants' production. Defendants' files are in electronic format and easily searchable (including by "tags") and, thus, it would not be unduly burdensome for Plaintiff to discern which documents contain information responsive to Interrogatory No. 4. In other words, the records have been offered to Yellowcake "in a manner that permits the same direct and economical access" that is available to Defendants. *See* Section I.D.1., *supra*, at 11:12-13 (citing *U.S. ex. rel. Englund v. Los Angeles County* (E.D. Cal. 2006) 235 F.R.D. 675, 680.

Plaintiff's Interrogatory No. 4 is, on its face, extremely overbroad. Rather than accepting the fact that Plaintiff's counsel crafted an interrogatory that is impossible to answer without reference to existing business records, Plaintiff now insists that Defendants "extrapolate" information and set it forth in a narrative response to Interrogatory No. 4. *See* Section I.D.1., *supra*, at 12:26-28. Such "extrapolation" amounts to the creation of new information and

joining as "subparts" questions that seek information about discrete separate subjects. *Ibid.*; *see also Collaboration Properties, Inc. v. Polycom, Inc.* (N.D. Cal. 2004) 224 F.R.D. 473, 475 ("a party cannot avoid the numerical limits by asking questions about *distinct subjects,* but numbering the questions as subparts."); *Willingham v. Ashcroft* (D.D.C. 2005) 226 F.R.D. 57, 59 ("[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated."). Here, the purported subparts of Interrogatory No. 4 constitute *at least* three distinct and discrete areas of inquiry. Accordingly, Interrogatory No. 4 is not a single interrogatory, but rather at least three separate interrogatories. Interrogatory No. 2 similarly consists of at least three separate interrogatories. Notwithstanding the fact that Plaintiff propounded more than 25 interrogatories, Defendants responded to all of them. Plaintiff now has the gall to complain, and move the Court, about the propriety of those responses.

documents, not previously existing, for use in this litigation. There is no requirement that Defendants undertake such "extrapolation", and Rule 33(d) specifically provides a permissible alternative.

Instead of simply agreeing to use LogikCull to *electronically* review, search and sort Defendants' document production, and despite Defendants' repeated entreaties, Plaintiff has consistently refused to use LogikCull and, instead, now complains about the purported burden of having to *manually* review Defendants' production to determine which documents are responsive to a given document request and/or interrogatory. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 2-12, Ex. "A". Plaintiff's position is without substantial justification.

Defendants have borne the initial – and substantial – burden of reviewing and "tagging" the tens of thousands of electronic documents that have been produced; Defendants should not also have to now bear a further burden of providing Plaintiff with an index of tagged documents, which would amount to nothing more than busywork. Plaintiff's motion should be denied as to Interrogatory No. 4.

**INTERROGATORY NO. 5:**

State whether or not Dashgo ever posted or uploaded and [*sic*] video containing any of Yellowcake's Copyrighted Works to www.YouTube.com.

**AMENDED RESPONSE TO INTERROGATORY NO. 5:**

Responding Parties incorporate by this reference the above General Objections. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without

limitation information subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Dashgo" purports to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources, including without limitation publicly available sources. Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo" and "Yellowcake's Copyrighted Works". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined terms "Dashgo" and "Yellowcake's Copyrighted Works" and as to the phrase "posted or uploaded and video". Objection on the grounds that the Interrogatory is unintelligible.

Without waiving the foregoing objections, Responding Parties respond as follows: To the best of Responding Parties' current knowledge and information, Dashgo did not post or upload to www.YouTube.com video containing any sound recordings in which Plaintiff contends it acquired copyrights.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

**Argument**

Plaintiff's argument regarding Defendants' ***sworn*** response to Interrogatory No. 5 amounts to nothing more than a refusal to believe that response. In Plaintiff's own words, Plaintiff's refusal to believe Defendants is premised on the following:

> "Yellowcake has produced screenshots of sound recordings, to which Yellowcake owns the copyright to, that appear to have been uploaded and hosted on Dashgo's "YouTube channel". _See_ Exhibit "18" (True and correct copies of the YouTube screenshots). In light of such proof, it is highly unlikely that Dashgo did not post or upload to YouTube any videos containing sound recordings to which Yellowcake owns the rights. Moreover, the term "Defendants" defined in the Interrogatories "means and refers to DASHGO, INC. and AUDIOMICRO, INC. d/b/a ADREV, and any of their agents or representatives," and, thus, the distribution of any sound recording by an agent or affiliate of Defendants would require a response to Interrogatories Nos. 5 through 8. _See_ Exhibit "2"."
> _See_ Section I.D.1.(b), _supra_, at 14:27-15:11.

As Plaintiff concedes, it only "appears" that Dashgo posted or uploaded video to YouTube.com. As the saying goes, appearances can be deceiving. In the face of Defendants' sworn denial, "appearance" has, in fact, deceived Plaintiff.

On the premise that the Interrogatories define "Defendants" as including Defendants "agents or representatives", Plaintiff further argues that perhaps an agent, representative or affiliate of Dashgo posted or uploaded to www.YouTube.com video containing sound recordings in which Plaintiff contends it acquired copyrights. This argument fails as well:

Defendants have objected to the purportedly defined term "Dashgo" on overbreadth grounds. That objection is well taken, since the only corporate defendants in this case are Dashgo and Adrev, which Defendants are the entities to which Plaintiff's discovery was directed. _See_, _e.g._, _Valdez v. Genesis Healthcare LLC_ (C.D. Cal. Sept. 7, 2021) No. 2:19-CV-00976-DMG-JC, 2021 WL 5989963, at *11 (citing _Holloway v. 3M Company_ (C.D. Cal. Oct. 31, 2019) 2019 WL 7172600, *7, _et seq._) (where definitions of terms "DEFENDANT", "YOU" and "YOUR"

purported to include, inter alia, "affiliates", "agents" and "representative", such defined terms

limited to "the specific Defendant to whom each such discovery request is directed").

Indeed, in the General Objections prefacing each of their responses to the Interrogatories,

Defendants repeatedly and expressly stated: "The responses given herein interpret each such

defined term ["Dashgo", "Audiomicro", "Adrev", "You", "Your", "Defendants"] as referring

only to the entity itself, i.e., Dashgo, Inc. and Audiomicro, Inc. d.b.a. Adrev, and no other person

or entity." *See* Appendix 1, Exhibit 6 [Defendants' response to Interrogatories] at 3:13-25;

Appendix 1, Exhibit 7 [Defendants' amended and supplemental response to Interrogatory No.

25] at 3:14-26; Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 13, Ex. "B" [Defendants' amended

responses to Interrogatories Nos. 1-16, 20, 21, 22, 24 and 25] at 3:14-26. Those General

Objections were incorporated by reference into Defendants' response to Interrogatory No. 5.

Moreover, in their further and supplemental response to Interrogatory No. 25, Defendants

have explained to Plaintiff – under oath – the very reason why it "appears" that Dashgo posted or

uploaded video to YouTube.com. *See* Appendix 1, Exhibit 7 [Defendants' amended and

supplemental response to Interrogatory No. 25] at 9:1-22. Defendants are thus puzzled and

perplexed as to why Plaintiff has seen fit to move to compel as to Interrogatory No. 5, which

amounts to nothing more than a waste of time and resources.

Plaintiff's motion should be denied as to Interrogatory No. 5.[30]

**INTERROGATORY NO. 10:**

Identify the parties to, and dates of, any agreements upon which Dashgo has, or had,

---

[30] To the extent the Court considers Plaintiff to have properly moved to compel as to
Interrogatories Nos. 6 through 8 (despite Plaintiff's failure to identify those interrogatories in its
Amended Notice of Motion, Docket No. 61), the same arguments set forth above regarding
Interrogatory No. 5 apply.

relied in asserting that it has, or had, the right to Exploit any of Yellowcake's Copyrighted Works.

**AMENDED RESPONSE TO INTERROGATORY NO. 10:**

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection on the grounds that the Interrogatory calls for information based on documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Dashgo" purports to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent

Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources. Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Exploit" and "Yellowcake's Copyrighted Works", as to the term "right" and as to the phrases "relied in asserting", "it has, or had" and "the right to Exploit". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Exploit" and "Yellowcake's Copyrighted Works", as to the terms "relied", "asserting" and "right" and as to the phrases "relied in asserting", "it has, or had", "the right to Exploit" and "agreements upon which Dashgo has, or had, relied in asserting that it has, or had, the right to Exploit any of Yellowcake's Copyrighted Works".

Without waiving the foregoing objections, Responding Parties respond as follows:

In or about February of 2011, Dashgo and Richboy Ventures, Inc. f/s/a p/k/a DH1 Digital ("DH1") entered into a Digital Distribution & Licensing Representation Agreement ("Agreement"), pursuant to which Dashgo was granted rights to exploit certain of the sound

recordings in which Plaintiff contends it acquired copyrights. Responding Parties are informed and believe that DH1 later became, or is otherwise affiliated with, Colonize Media, Inc. f/k/a DH1 Media, Inc.; references to "DH1" include those entities and any other entities owned, operated and/or controlled by David Hernandez, DH1's principal, including Colonize Media, Inc. f/k/a DH1 Media, Inc.

On or about January 5, 2015, DH1 sent a letter purporting to terminate the said Agreement effective as of February 15, 2015, but then requested, both verbally and in writing, prior to the would-be effective termination date, that Dashgo take down (cease the exploitation of) DH1 content only upon express notification from DH1's principal, David Hernandez, thereby superseding the purported termination of the said Agreement or, in the alternative, granting Dashgo an implied license to continue exploiting the subject sound recordings pending further written notice from DH1. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, and related case law, Responding Parties refer Propounding Party to correspondence to Dashgo from DH1 regarding the take down of DH1 content, to be produced by Responding Parties after entry of a suitable protective order.

In addition, Dashgo also acquired rights from third party rights holders independently granting Dashgo rights to exploit sound recordings in which Plaintiff contends it acquired copyrights. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, and related case law, Responding Parties refer Propounding Party to Dashgo's formal written agreements with third party rights holders independently granting Dashgo rights to exploit sound recordings in which Plaintiff contends it acquired copyrights, to be produced by Responding Parties after entry of a suitable protective order.

Any documents responsive to this Interrogatory, to be produced by Responding Parties after entry of a suitable protective order, will be electronically "tagged" such that Propounding Party should be able to sort and access documents subject to the Rule 33(d) reference set forth above and are therefore responsive to this Interrogatory.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

**<u>Argument</u>**

Plaintiff takes issue with Defendants' reference to Rule 33(d).

Rule 33(d) provides:

"If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."

Rule 33(d) provides the option of producing business records in lieu of answering an interrogatory if the burden of deriving or ascertaining the answer will be substantially the same for either party. *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.* (D. Colo. 2014) 305 F.R.D. 247, 255. The purpose of this option is to place the burden of research on the party seeking the information, instead of requiring the responding party to conduct a burdensome or expensive search of its own records. *Ibid.*

When the burden of deriving or ascertaining an answer to a discovery request is substantially the same for either party, the court has discretion to decide which party should do it. *See Berster Techs., LLC v. Christmas* (E.D. Cal. Oct. 4, 2011) No. CIV 2:11-CV-1541-KJM, 2011 WL 4710801, at *3 (citing *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.* (N.D.Cal. Dec.15, 2008) 2008 WL 5272186, at *3).

Preliminarily, Plaintiff's Interrogatory No. 10 is, on its face, extremely overbroad, including without limitation as to time (which, per the Interrogatories as served, is entirely unlimited). *But see* footnote 13, *supra* (2/4/2022 agreement by Plaintiff's counsel to "limit" the relevant time period to "January 1, 2010 to the present" – a period of more than 12 years). Notwithstanding the three-year statute of limitations for copyright infringement, 17 U.S.C. § 507(b), by Interrogatory No. 10, Plaintiff is seeking information on the "Exploitation" of "Yellowcake's Copyrighted Works" over a period of *more than twelve years*. Thus, Defendants' objection on overbreadth grounds is well taken.

As Plaintiff admits, for at least a portion of that time, Dashgo had a contractual right to engage in such "Exploitation". *See* Section I.B., *supra*, at 5:12-14. In other words, Plaintiff admits that Interrogatory No. 10 seeks information that is ***irrelevant*** to Plaintiff's claims of infringement. Thus, Defendants' objection on relevance grounds is also well taken.

On July 21, 2022, the Court entered its order granting Defendants' motion for entry of a two-tier protective order. Docket No. 78. The Court ordered that, as to category of agreements with third party licensors, such documents may be redacted as to licensor identification and financial terms, subject to a standard privilege log. Docket No. 78 at 16:7-17:1. While those documents may not be designated "attorneys' eyes", the Court did not preclude their designation as "confidential" under any protective order. As of the filing of this joint statement, no protective

order has yet been entered. *See* footnote 22, *supra*. Dashgo's formal written agreements with third party rights holders will be designated "confidential" after redaction, and produced once a form of protective order is entered by the Court. Plaintiff cannot reasonably expect Defendants to produce documents to be designated under the protective order before such order is entered.

Defendants have provided Plaintiff information on LogikCull, a service that is free to Plaintiff and through which Plaintiff could easily and quickly electronically search Defendants' production. Defendants' files are in electronic format and easily searchable (including by "tags") and, thus, it would not be unduly burdensome for Plaintiff to discern which documents contain information responsive to Interrogatory No. 10. In other words, the records have been offered to Yellowcake "in a manner that permits the same direct and economical access" that is available to Defendants. *See* Section I.D.1., *supra*, at 11:12-13 (citing *U.S. ex. rel. Englund v. Los Angeles County* (E.D. Cal. 2006) 235 F.R.D. 675, 680.

Instead of simply agreeing to use LogikCull to *electronically* review, search and sort Defendants' document production, and despite Defendants' repeated entreaties, Plaintiff has consistently refused to use LogikCull and, instead, now complains about the purported burden of having to *manually* review Defendants' production to determine which documents are responsive to a given document request and/or interrogatory. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 2-12, Ex. "A". Plaintiff's position is without substantial justification.

Defendants have borne the initial – and substantial – burden of reviewing and "tagging" the tens of thousands of electronic documents that have been produced; Defendants should not also have to now bear a further burden of providing Plaintiff with an index of tagged documents, which would amount to nothing more than busywork. Plaintiff's motion should be denied as to Interrogatory No. 10.

**INTERROGATORY NO. 11:**

If the answer to Interrogatory No. 3 is in the affirmative[31], identify the basis upon which Dashgo asserts that it has, or had, the right to Exploit the Foreign Works.

**AMENDED RESPONSE TO INTERROGATORY NO. 11:**

Responding Parties incorporate by this reference the above General Objections. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Dashgo" purports to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources. Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time

---

[31] *See* footnote 28, *supra.*

in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Exploit" and "Foreign Works", as to the terms "basis" and "right" and as to the phrases "the basis", "it has, or had" and "the right to Exploit". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Exploit" and "Foreign Works", as to the terms "asserts", "basis", "believes" and "right" and as to the phrases "the basis", "it has, or had", "the right to Exploit" and "the basis upon which Dashgo believes it has, or had, the right to Exploit the Foreign Works".

Without waiving the foregoing objections, Responding Parties respond as follows:

In or about February of 2011, Dashgo and Richboy Ventures, Inc. f/s/a p/k/a DH1 Digital ("DH1") entered into a Digital Distribution & Licensing Representation Agreement ("Agreement"), pursuant to which Dashgo was granted rights to exploit certain of the sound recordings in which Plaintiff contends it acquired copyrights. Responding Parties are informed and believe that DH1 later became, or is otherwise affiliated with, Colonize Media, Inc. f/k/a DH1 Media, Inc.; references to "DH1" include those entities and any other entities owned, operated and/or controlled by David Hernandez, DH1's principal, including Colonize Media, Inc. f/k/a DH1 Media, Inc.

On or about January 5, 2015, DH1 sent a letter purporting to terminate the said Agreement effective as of February 15, 2015, but then requested, both verbally and in writing, prior to the would-be effective termination date, that Dashgo take down (cease the exploitation of) DH1 content only upon express notification from DH1's principal, David Hernandez, thereby superseding the purported termination of the said Agreement or, in the alternative, granting Dashgo an implied license to continue exploiting the subject sound recordings pending further written notice from DH1.

In addition, Dashgo also acquired rights from third party rights holders independently granting Dashgo rights to exploit sound recordings in which Plaintiff contends it acquired copyrights.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

**Argument**

Defendants are unable to discern what Plaintiff's issue is with regard to Defendants' response to Interrogatory No. 11. Defendants speculate that Plaintiff is unhappy with Defendants' sworn representation, that "Dashgo also acquired rights from third party rights holders independently granting Dashgo rights to exploit sound recordings in which Plaintiff contends it acquired copyrights", because Defendant have not also disclosed the identities of the referenced third party rights holders.

Presuming Defendants' speculation is correct, the rejoinder is simple: First, Plaintiff has provided neither authority nor argument as to why Defendants' sworn response is deficient. Second, Plaintiff will, in due course, have all relevant information in the form of licensing agreements between Dashgo and the said third party rights holders, from which Plaintiff can

discern the identities of the referenced third party rights holders, after a protective order is entered. *See supra* re: Interrogatory No. 10.

On both counts, Plaintiff's motion should be denied as to Interrogatory No. 11.

**INTERROGATORY NO. 12:**

Identify the parties to, and dates of, any agreements upon which Dashgo has, or had relied, in asserting that it has, or had, the right to Exploit any of the Foreign Works.

**AMENDED RESPONSE TO INTERROGATORY NO. 12:**

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection on the grounds that the Interrogatory calls for information based on documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to attorney-client privilege, the

attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Dashgo" purports to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources. Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Exploit" and "Foreign Works", as to the term "right" and as to the phrases "relied in asserting", "it has, or had" and "the right to Exploit". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Exploit" and "Foreign Works", as to the terms "relied", "asserting" and "right" and as to the phrases "relied in asserting", "it has, or had", "the right to Exploit" and "agreements upon which Dashgo has, or had, relied in asserting that it has, or had, the right to Exploit any of the Foreign Works".

Without waiving the foregoing objections, Responding Parties respond as follows:

In or about February of 2011, Dashgo and Richboy Ventures, Inc. f/s/a p/k/a DH1 Digital ("DH1") entered into a Digital Distribution & Licensing Representation Agreement ("Agreement"), pursuant to which Dashgo was granted rights to exploit certain of the sound recordings in which Plaintiff contends it acquired copyrights. Responding Parties are informed and believe that DH1 later became, or is otherwise affiliated with, Colonize Media, Inc. f/k/a DH1 Media, Inc.; references to "DH1" include those entities and any other entities owned, operated and/or controlled by David Hernandez, DH1's principal, including Colonize Media, Inc. f/k/a DH1 Media, Inc.

On or about January 5, 2015, DH1 sent a letter purporting to terminate the said Agreement effective as of February 15, 2015, but then requested, both verbally and in writing, prior to the would-be effective termination date, that Dashgo take down (cease the exploitation of) DH1 content only upon express notification from DH1's principal, David Hernandez, thereby superseding the purported termination of the said Agreement or, in the alternative, granting Dashgo an implied license to continue exploiting the subject sound recordings pending further written notice from DH1. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, and related case law, Responding Parties refer Propounding Party to correspondence to Dashgo from DH1 regarding the take down of DH1 content, to be produced by Responding Parties after entry of a suitable protective order.

In addition, Dashgo also acquired rights from third party rights holders independently granting Dashgo rights to exploit sound recordings in which Plaintiff contends it acquired copyrights. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, and related case law, Responding Parties refer Propounding Party to Dashgo's formal written agreements with third

party rights holders independently granting Dashgo rights to exploit sound recordings in which

Plaintiff contends it acquired copyrights, to be produced by Responding Parties after entry of a

suitable protective order.

Any documents responsive to this Interrogatory, to be produced by Responding Parties

after entry of a suitable protective order, will be electronically "tagged" such that Propounding

Party should be able to sort and access documents subject to the Rule 33(d) reference set forth

above and are therefore responsive to this Interrogatory.

Discovery is continuing. Responding Parties reserve the right to amend and/or

supplement this response.

### **Argument**

Plaintiff takes issue with Defendants' reference to Rule 33(d).

Rule 33(d) provides:

"If the answer to an interrogatory may be determined by examining, auditing, compiling,

abstracting, or summarizing a party's business records (including electronically stored

information), and if the burden of deriving or ascertaining the answer will be substantially the

same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the

interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the

records and to make copies, compilations, abstracts, or summaries."

Rule 33(d) provides the option of producing business records in lieu of answering an

interrogatory if the burden of deriving or ascertaining the answer will be substantially the same

for either party. *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.* (D. Colo. 2014) 305

F.R.D. 247, 255. The purpose of this option is to place the burden of research on the party seeking the information, instead of requiring the responding party to conduct a burdensome or expensive search of its own records. *Ibid.*

When the burden of deriving or ascertaining an answer to a discovery request is substantially the same for either party, the court has discretion to decide which party should do it. *See Berster Techs., LLC v. Christmas* (E.D. Cal. Oct. 4, 2011) No. CIV 2:11-CV-1541-KJM, 2011 WL 4710801, at *3 (citing *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.* (N.D.Cal. Dec.15, 2008) 2008 WL 5272186, at *3).

Preliminarily, Plaintiff's Interrogatory No. 12 is, on its face, extremely overbroad, including without limitation as to time (which, per the Interrogatories as served, is entirely unlimited). *But see* footnote 13, *supra* (2/4/2022 agreement by Plaintiff's counsel to "limit" the relevant time period to "January 1, 2010 to the present" – a period of more than 12 years). Notwithstanding the three-year statute of limitations for copyright infringement, 17 U.S.C. § 507(b), by Interrogatory No. 12, Plaintiff is seeking information on the "Exploitation" of the "Foreign Works" over a period of *more than twelve years*. Thus, Defendants' objection on overbreadth grounds is well taken.

As Plaintiff admits, for at least a portion of that time, Dashgo had a contractual right to engage in such "Exploitation". *See* Section I.B., *supra*, at 5:12-14. In other words, Plaintiff admits that Interrogatory No. 12 seeks information that is ***irrelevant*** to Plaintiff's claims of infringement. Thus, Defendants' objection on relevance grounds is also well taken

On July 21, 2022, the Court entered its order granting Defendants' motion for entry of a two-tier protective order. Docket No. 78. The Court ordered that, as to category of agreements with third party licensors, such documents may be redacted as to licensor identification and

financial terms, subject to a standard privilege log. Docket No. 78 at 16:7-17:1. While those documents may not be designated "attorneys' eyes", the Court did not preclude their designation as "confidential" under any protective order. As of the date of the filing of this joint statement, no protective order has yet been entered. *See* footnote 22, *supra*. Dashgo's formal written agreements with third party rights holders will be designated "confidential" after redaction, and produced once a form of protective order is entered by the Court. Plaintiff cannot reasonably expect Defendants to produce documents to be designated under the protective order before such order is entered.

Defendants have provided Plaintiff information on LogikCull, a service that is free to Plaintiff and through which Plaintiff could easily and quickly electronically search Defendants' production. Defendants' files are in electronic format and easily searchable (including by "tags") and, thus, it would not be unduly burdensome for Plaintiff to discern which documents contain information responsive to Interrogatory No. 12. In other words, the records have been offered to Yellowcake "in a manner that permits the same direct and economical access" that is available to Defendants. *See* Section I.D.1., *supra*, at 11:12-13 (citing *U.S. ex. rel. Englund v. Los Angeles County* (E.D. Cal. 2006) 235 F.R.D. 675, 680.

Instead of simply agreeing to use LogikCull to *electronically* review, search and sort Defendants' document production, and despite Defendants' repeated entreaties, Plaintiff has consistently refused to use LogikCull and, instead, now complains about the purported burden of having to *manually* review Defendants' production to determine which documents are responsive to a given document request and/or interrogatory. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 2-12, Ex. "A". Plaintiff's position is without substantial justification.

Defendants have borne the initial – and substantial – burden of reviewing and "tagging" the tens of thousands of electronic documents that have been produced; Defendants should not also have to now bear a further burden of providing Plaintiff with an index of tagged documents, which would amount to nothing more than busywork. Plaintiff's motion should be denied as to Interrogatory No. 12.

**INTERROGATORY NO. 14:**

If the answer to the foregoing interrogatory is in the affirmative[32], identify: (i) each Person who sent such correspondence; (ii) each Person who received each such correspondence; (iii) the date of each such correspondence; and (iv) the substance of each such correspondence.

**AMENDED RESPONSE TO INTERROGATORY NO. 14:**

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

---

[32] Interrogatory No. 13 requests that Defendants "[s]tate whether or not Dashgo received any correspondence from Yellowcake, or any third-party purporting to be acting on Yellowcake's behalf, instructing or directing Dashgo to cease the Exploitation of any of Yellowcake's Copyrighted Works." Appendix 1, Exhibit 2 [Interrogatories] at 6:4-7. Defendants' amended response to Interrogatory No. 13 states, in pertinent part: "Dashgo received correspondence from David Hernandez, or one or more third-parties purporting to be acting on Yellowcake's behalf, instructing or directing Dashgo to release, remove or take down (cease the exploitation of) sound recordings in which Plaintiff contends it acquired copyrights." Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 13, Ex. "B" [amended Interrogatory responses] at 28:10-13. Defendants yet again liberally interpreted their amended response to Interrogatory No. 13 to be "in the affirmative" and therefore responded to Interrogatory No. 14.

Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection on the grounds that the Interrogatory calls for information based on documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Dashgo" purports to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources. Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that

the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Exploitation" and "Yellowcake's Copyrighted Works" and as to the term "identify". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined terms "Dashgo", "Exploitation" and "Yellowcake's Copyrighted Works" and as to the terms "identify", "received", "correspondence", "substance".

Without waiving the foregoing objections, Responding Parties respond as follows: Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, and related case law, Responding Parties refer Propounding Party to all extant, relevant non-privileged correspondence received by Dashgo from David Hernandez, or one or more third-parties purporting to be acting on Yellowcake's behalf, instructing or directing Dashgo to release, remove or take down (cease the exploitation of) sound recordings in which Plaintiff contends it acquired copyrights, to be produced by Responding Parties after entry of a suitable protective order.

Any documents responsive to this Interrogatory, to be produced by Responding Parties after entry of a suitable protective order, will be electronically "tagged" such that Propounding Party should be able to sort and access documents subject to the Rule 33(d) reference set forth above and are therefore responsive to this Interrogatory.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

## **Argument**

Plaintiff takes issue with Defendants' reference to Rule 33(d).

Rule 33(d) provides:

"If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."

Rule 33(d) provides the option of producing business records in lieu of answering an interrogatory if the burden of deriving or ascertaining the answer will be substantially the same for either party. *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.* (D. Colo. 2014) 305 F.R.D. 247, 255. The purpose of this option is to place the burden of research on the party seeking the information, instead of requiring the responding party to conduct a burdensome or expensive search of its own records. *Ibid.*

When the burden of deriving or ascertaining an answer to a discovery request is substantially the same for either party, the court has discretion to decide which party should do it. *See Berster Techs., LLC v. Christmas* (E.D. Cal. Oct. 4, 2011) No. CIV 2:11-CV-1541-KJM, 2011 WL 4710801, at *3 (citing *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.* (N.D.Cal. Dec.15, 2008) 2008 WL 5272186, at *3).

Preliminarily, Plaintiff's Interrogatory No. 14 is, on its face, extremely overbroad, including without limitation as to time (which, per the Interrogatories as served, is entirely unlimited). *But see* footnote 13, *supra* (2/4/2022 agreement by Plaintiff's counsel to "limit" the relevant time period to "January 1, 2010 to the present" – a period of more than 12 years).

Notwithstanding the three-year statute of limitations for copyright infringement, 17 U.S.C. § 507(b), by Interrogatory No. 14, Plaintiff is seeking information on take-down correspondence over a period of *more than twelve years*. Thus, Defendants' objection on overbreadth grounds is well taken.

Moreover, if Plaintiff's allegation of ownership of "Yellowcake's Copyrighted Works" and the "Foreign Works" is true (which is denied), any demands for take-down of "Yellowcake's Copyrighted Works" and the "Foreign Works", *see* footnote 32, *supra*, would necessarily have come from Plaintiff. In other words, based on Plaintiff's own allegations, Plaintiff is, or should be, ***already in possession*** of the information sought by Interrogatory No. 14. Thus, Defendants' objections on undue burden and hardship grounds are also well taken.

Further, Plaintiff cannot explain how Defendants could possibly identify "third-parties purporting to be acting on Yellowcake's behalf" such that Defendants would be able to respond to Interrogatory No. 14. Defendants' objections on vagueness and ambiguity grounds are thus also well taken.

Defendants have not only provided documents containing responsive information to Plaintiff, but also provided Plaintiff information on LogikCull, a service that is free to Plaintiff and through which Plaintiff could easily and quickly electronically search Defendants' production. Defendants' files are in electronic format and easily searchable (including by "tags") and, thus, it would not be unduly burdensome for Plaintiff to discern which documents contain information responsive to Interrogatory No. 14. In other words, the records have been offered to Yellowcake "in a manner that permits the same direct and economical access" that is available to Defendants. *See* Section I.D.1., *supra*, at 11:12-13 (citing *U.S. ex. rel. Englund v. Los Angeles County* (E.D. Cal. 2006) 235 F.R.D. 675, 680.

Instead of simply agreeing to use LogikCull to *electronically* review, search and sort Defendants' document production, and despite Defendants' repeated entreaties, Plaintiff has consistently refused to use LogikCull and, instead, now complains about the purported burden of having to *manually* review Defendants' production to determine which documents are responsive to a given document request and/or interrogatory. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 2-12, Ex. "A". Plaintiff's position is without substantial justification.

Defendants have borne the initial – and substantial – burden of reviewing and "tagging" the tens of thousands of electronic documents that have been produced; Defendants should not also have to now bear a further burden of providing Plaintiff with an index of tagged documents, which would amount to nothing more than busywork. Plaintiff's motion should be denied as to Interrogatory No. 14.

**INTERROGATORY NO. 16:**

If the answer to the foregoing interrogatory is in the affirmative[33], identify: (i) each Person who sent each such correspondence; (ii) the Person who received each such correspondence; (iii) the date of each such correspondence; and (iv) the substance of each such correspondence.

**AMENDED RESPONSE TO INTERROGATORY NO. 16:**

---

[33] Interrogatory No. 15 requests that Defendants "[s]tate whether or not Audiomicro received any correspondence from Yellowcake, or any third-party purporting to be acting on Yellowcake's behalf, instructing or directing Audiomicro to cease the Exploitation of any of the Foreign Works." Appendix 1, Exhibit 2 [Interrogatories] at 6:17-20. Defendants' amended response to Interrogatory No. 15 states, in pertinent part: "Adrev received or was copied on some correspondence from David Hernandez instructing or directing Dashgo to cease the exploitation of sound recordings in which Plaintiff contends it acquired copyrights." Appendix 2, Exhibit 1 [Sandel Decl.], ¶ 13, Ex. "B" [amended Interrogatory responses] at 31:21-24. Defendants once again liberally interpreted their amended response to Interrogatory No. 15 to be "in the affirmative" and therefore responded to Interrogatory No. 16.

Responding Parties incorporate by this reference the above General Objections.

Objection to the extent that the information requested is not within Responding Parties'

possession, custody or control, including without limitation to the extent the information resides

on third party servers, in archived form or format and/or are inaccessible or not reasonably

accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for

information that is not relevant to any party's claim or defense in this action, that is, the

Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that

is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without

limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection on the

grounds that the Interrogatory calls for information based on documents and things which are not

reasonably accessible because of undue burden or cost, including without limitation to the extent

the documents and things reside on third party servers, in archived form or format and/or are

inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that

the Interrogatory calls for the disclosure of privileged, confidential or other protected material,

including without limitation documents and things subject to attorney-client privilege, the

attorney work product doctrine and/or any other applicable privilege or protection, including

without limitation to the extent the defined term "Dashgo" purports to include Responding

Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects

Responding Parties to undue burden and hardship, including without limitation to the extent

Propounding Party is already in the possession of the information responsive to this Interrogatory

and to the extent Propounding Party may obtain the information requested from other, less costly

and/or more convenient third party sources. Further objection on the grounds that the

Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Exploitation" and "Yellowcake's Copyrighted Works" and as to the term "identify". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined terms "Dashgo", "Exploitation" and "Yellowcake's Copyrighted Works" and as to the terms "identify", "received", "correspondence", "substance".

Without waiving the foregoing objections, Responding Parties respond as follows: Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, and related case law, Responding Parties refer Propounding Party to all extant, relevant non-privileged correspondence received by or copied to Adrev from David Hernandez instructing or directing Dashgo to cease the exploitation of sound recordings in which Plaintiff contends it acquired copyrights, to be produced by Responding Parties after entry of a suitable protective order.

Any documents responsive to this Interrogatory, to be produced by Responding Parties after entry of a suitable protective order, will be electronically "tagged" such that Propounding Party should be able to sort and access documents subject to the Rule 33(d) reference set forth above and are therefore responsive to this Interrogatory.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

**<u>Argument</u>**

Plaintiff takes issue with Defendants' reference to Rule 33(d).

Rule 33(d) provides:

"If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."

Rule 33(d) provides the option of producing business records in lieu of answering an interrogatory if the burden of deriving or ascertaining the answer will be substantially the same for either party. *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.* (D. Colo. 2014) 305 F.R.D. 247, 255. The purpose of this option is to place the burden of research on the party seeking the information, instead of requiring the responding party to conduct a burdensome or expensive search of its own records. *Ibid.*

When the burden of deriving or ascertaining an answer to a discovery request is substantially the same for either party, the court has discretion to decide which party should do it. *See Berster Techs., LLC v. Christmas* (E.D. Cal. Oct. 4, 2011) No. CIV 2:11-CV-1541-KJM,

2011 WL 4710801, at *3 (citing *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.* (N.D.Cal. Dec.15, 2008) 2008 WL 5272186, at *3).

Preliminarily, Plaintiff's Interrogatory No. 16 is, on its face, extremely overbroad, including without limitation as to time (which, per the Interrogatories as served, is entirely unlimited). *But see* footnote 13, *supra* (2/4/2022 agreement by Plaintiff's counsel to "limit" the relevant time period to "January 1, 2010 to the present" – a period of more than 12 years). Notwithstanding the three-year statute of limitations for copyright infringement, 17 U.S.C. § 507(b), by Interrogatory No. 16, Plaintiff is seeking information on take-down correspondence over a period of *more than twelve years*. Thus, Defendants' objection on overbreadth grounds is well taken.

Moreover, if Plaintiff's allegation of ownership of "Yellowcake's Copyrighted Works" and the "Foreign Works" is true (which is denied), any demands for take-down (cessation of "Exploitation") of "Yellowcake's Copyrighted Works" and the "Foreign Works", *see* footnote 33, *supra*, would necessarily have come from Plaintiff. In other words, based on Plaintiff's own allegations, Plaintiff is, or should be, ***already in possession*** of the information sought by Interrogatory No. 16. Thus, Defendants' objections on undue burden and hardship grounds are also well taken.

Further, Plaintiff cannot explain how Defendants could possibly identify "any third-party purporting to be acting on Yellowcake's behalf" such that Defendants would be able to respond to Interrogatory No. 16. Defendants' objections on vagueness and ambiguity grounds are thus also well taken.

Defendants have not only provided documents containing responsive information to Plaintiff, but also provided Plaintiff information on LogikCull, a service that is free to Plaintiff

and through which Plaintiff could easily and quickly electronically search Defendants' production. Defendants' files are in electronic format and easily searchable (including by "tags") and, thus, it would not be unduly burdensome for Plaintiff to discern which documents contain information responsive to Interrogatory No. 16. In other words, the records have been offered to Yellowcake "in a manner that permits the same direct and economical access" that is available to Defendants. *See* Section I.D.1., *supra*, at 11:12-13 (citing *U.S. ex. rel. Englund v. Los Angeles County* (E.D. Cal. 2006) 235 F.R.D. 675, 680.

Instead of simply agreeing to use LogikCull to *electronically* review, search and sort Defendants' document production, and despite Defendants' repeated entreaties, Plaintiff has consistently refused to use LogikCull and, instead, now complains about the purported burden of having to *manually* review Defendants' production to determine which documents are responsive to a given document request and/or interrogatory. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 2-12, Ex. "A". Plaintiff's position is without substantial justification.

Defendants have borne the initial – and substantial – burden of reviewing and "tagging" the tens of thousands of electronic documents that have been produced; Defendants should not also have to now bear a further burden of providing Plaintiff with an index of tagged documents, which would amount to nothing more than busywork. Plaintiff's motion should be denied as to Interrogatory No. 16.

## INTERROGATORY NO. 20:

State whether or not Audiomicro in anyway assists or is involved with Dashgo's Exploitation of sound recordings.

## AMENDED RESPONSE TO INTERROGATORY NO. 20:

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Interrogatory calls for information based on documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation information subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined terms "Dashgo" and "Audiomicro" purport to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources. Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and

things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Audiomicro" and "Exploitation", as to the term "assists" and as to the phrase "is involved with". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined terms "Dashgo", "Audiomicro" and "Exploitation", as to the terms "assists" and "anyway" and as to the phrase "in anyway assists or is involved with".

Without waiving the foregoing objections, Responding Parties respond as follows: The Interrogatory requests that Responding Parties state whether or not Audiomicro in anyway "assists" (requested as of the date the Interrogatories were propounded because of the use of the present tense) or "is involved with" (requested as of the date the Interrogatories were propounded because of the use of the present tense) Dashgo's "Exploitation" of sound recordings. Adrev does not "assist", nor is Adrev "involved with", Dashgo's exploitation of sound recordings.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

**Argument**

Although Plaintiff identifies Defendants' response to Interrogatory No. 20 as one of the Interrogatories on which Plaintiff is moving to compel, Plaintiff makes ***no argument*** as to why a further response should be compelled other than that Defendants have asserted "inapplicable form objections". *See* Section I.D.1.(d), *supra*, at 16:12-15.

In the first instance, Defendants' objections are not "form objections" but rather objections tailored to the deficiencies of this Interrogatory, which seeks information on Adrev's present relationship to Dashgo's "Exploitation of sound recordings." Dashgo and Adrev have

appropriately asserted objections to this Interrogatory, including without limitation on the bases of vagueness and ambiguity; overbreadth and undue burden; and, most saliently, relevance.

As is apparent, this Interrogatory is phrased in the present tense. The present relationship between Adrev and Dashgo is irrelevant to the issues and claims in this action.

In this regard, *Rovai v. Select Portfolio Servicing, Inc.*, No. 14-CV-1738-BAS (MSB), 2019 WL 1330922 (S.D. Cal. Mar. 22, 2019), supports Defendants' position.

There, the plaintiff propounded an Interrogatory No. 40, which, in pertinent part, asked the defendant to "[d]escribe in detail how YOU <u>process</u> YOUR receipt of monthly MORTGAGE payments from BORROWERS, including receipt of the money, and any process by which the aggregate payment <u>is</u> broken down, separated, or allocated to different components of LOAN BALANCE." *Id.* at *8 (underlining added).

The *Rovai* defendant objected on the grounds that the said Interrogatory No. 40 was vague, ambiguous, and unintelligible; overbroad and unduly burdensome; and irrelevant. *Id.* at *8. The *Rovai* plaintiff offered to narrow the interrogatory by limiting it to billing statements from 2010 to the present. *Id.* at *8.

As to Interrogatory No. 40, the *Rovai* court denied the plaintiff's motion to compel. In doing so, the court stated, in pertinent part:

> "[T]hough **the interrogatory is phrased in the present tense and only applies to the process presently in place**, Plaintiff seeks to change the scope of the interrogatory to apply from 2010 to present, and asks Defendant to explain how the mortgage statements issued to Rovai during SPS serving of her loan were calculated (<u>see</u> <u>id.</u>). The information now requested by Plaintiff bears little resemblance to the interrogatory originally served. Because answering this interrogatory would require Defendant to guess at the information requested, and the Court is doubtful that an answer which described a "process" would have any relevance to the claims and defenses in this case, Plaintiff's motion to compel further response to this interrogatory is **DENIED**."
> *Rovai v. Select Portfolio Servicing, Inc.* (S.D. Cal. Mar. 22, 2019) No. 14CV1738-BAS (MSB), 2019 WL 1330922, at *8 (bolded underlining added).

Out of circuit authority also supports Defendants' position. *See*, *e.g.*, *Flava Works, Inc. v. Gunter* (N.D. Ill. Oct. 24, 2013) No. 10 C 6517, 2013 WL 5770558, at *2 (Interrogatory No. 7); *Our Lady of Lake Reg'l Med. Ctr. v. Ochsner Health Plan, Inc.* (M.D. La. July 7, 2005) No. CV 03-371-D-M2, 2005 WL 8155430, at *3 (Interrogatory No. 7).

Interrogatory No. 20 asks Dashgo and Adrev to state "whether or not Audiomicro in anyway <u>assists</u> or <u>is</u> involved with Dashgo's Exploitation of sound recordings." (underlining added). The subject Interrogatory is undoubtedly phrased in the present tense. Interrogatory No. 20 asks only about Adrev's *present* "assistance" or "involvement with" Dashgo's "Exploitation of sound recordings."

As stated in Defendants' written response, Interrogatory No. 20 requests information as of the date the Interrogatories were propounded because of the use of the present tense. Such information is irrelevant.

To the extent Plaintiff would propose to now change the scope of this Interrogatory, the *Rovai* court makes clear that such a change is impermissible.

Further, interrogatories must be "sufficiently definite, clear, and concise" and must "adequately advise the interrogated party of the information requested." *See Capacchione v. Charlotte-Mecklenburg Sch.* (W.D.N.C. 1998) 182 F.R.D. 486, 491. What does it mean for Adrev to "assist" or be "involved with" Dashgo's exploitation of sound recordings? There is seemingly no limit to the scope of what could constitute such "assistance" or "involvement". Interrogatory No. 20 is facially overbroad, vague and ambiguous.

Defendants' objections are well taken; Plaintiff's motion is not.

Notwithstanding Defendants' objections, Defendants nevertheless appropriately responded to Interrogatory No. 20, stating, in pertinent part: "Adrev does not "assist", nor is

Adrev "involved with", Dashgo's exploitation of sound recordings." This response is fully responsive to Interrogatory No. 20.

As to Interrogatory No. 20, Plaintiff's motion is utterly without merit, and should be denied.

**INTERROGATORY NO. 21:**

If the answer to the foregoing interrogatory is in the affirmative, identify the nature of the assistance or involvement.

**AMENDED RESPONSE TO INTERROGATORY NO. 21:**

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection on the grounds that the Interrogatory calls for information based on documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material,

including without limitation documents and things subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Dashgo" purports to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources. Further objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo", "Audiomicro" and "Exploitation", as to the terms "nature", "assists", "assistance" and "involvement" and as to the phrase "is involved with". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined terms "Dashgo", "Audiomicro" and "Exploitation", as to the terms "nature", "assists", "assistance", "involvement" and "anyway" and as to the phrases "in anyway involved with" and "the nature of the assistance or involvement".

Without waiving the foregoing objections, Responding Parties respond as follows: Inasmuch as the response to Interrogatory No. 20 is negative, this Interrogatory is inapplicable.

Discovery is continuing. Responding Parties reserve the right to amend and/or supplement this response.

**<u>Argument</u>**

Although Plaintiff identifies Defendants' response to Interrogatory No. 21 as one of the Interrogatories on which Plaintiff is moving to compel, Plaintiff makes ***no argument*** as to why a further response should be compelled other than that Defendants have asserted "inapplicable form objections". *See* Section I.D.1.(d), *supra*, at 16:12-15.

In the first instance, Defendants' objections are not "form objections" but rather objections tailored to the deficiencies of this Interrogatory, which seeks information on the "nature" of any present "assistance or involvement" by Adrev in Dashgo's "Exploitation of sound recordings." Dashgo and Adrev have appropriately asserted objections to this Interrogatory, including without limitation on the bases of vagueness and ambiguity; overbreadth and undue burden; and, most saliently, relevance

As is apparent, as with Interrogatory No. 20, this Interrogatory is phrased in the present tense. The present relationship between Adrev and Dashgo is irrelevant to the issues and claims in this action.

In this regard, *Rovai v. Select Portfolio Servicing, Inc.*, No. 14-CV-1738-BAS (MSB), 2019 WL 1330922 (S.D. Cal. Mar. 22, 2019), supports Defendants' position.

There, the plaintiff propounded an Interrogatory No. 40, which, in pertinent part, asked the defendant to "[d]escribe in detail how YOU <u>process</u> YOUR receipt of monthly MORTGAGE payments from BORROWERS, including receipt of the money, and any process by which the

aggregate payment <u>is</u> broken down, separated, or allocated to different components of LOAN BALANCE." *Id.* at *8 (underlining added).

The *Rovai* defendant objected on the grounds that the said Interrogatory No. 40 was vague, ambiguous, and unintelligible; overbroad and unduly burdensome; and irrelevant. *Id.* at *8. The *Rovai* plaintiff offered to narrow the interrogatory by limiting it to billing statements from 2010 to the present. *Id.* at *8.

As to Interrogatory No. 40, the *Rovai* court denied the plaintiff's motion to compel. In doing so, the court stated, in pertinent part:

> "[T]hough **<u>the interrogatory is phrased in the present tense and only applies to the process presently in place</u>**, Plaintiff seeks to change the scope of the interrogatory to apply from 2010 to present, and asks Defendant to explain how the mortgage statements issued to Rovai during SPS serving of her loan were calculated (<u>see id.</u>). The information now requested by Plaintiff bears little resemblance to the interrogatory originally served. Because answering this interrogatory would require Defendant to guess at the information requested, and the Court is doubtful that an answer which described a "process" would have any relevance to the claims and defenses in this case, Plaintiff's motion to compel further response to this interrogatory is **DENIED**."
> *Rovai v. Select Portfolio Servicing, Inc.* (S.D. Cal. Mar. 22, 2019) No. 14CV1738-BAS (MSB), 2019 WL 1330922, at *8 (bolded underlining added).

Out of circuit authority also supports Defendants' position. *See, e.g.*, *Flava Works, Inc. v. Gunter* (N.D. Ill. Oct. 24, 2013) No. 10 C 6517, 2013 WL 5770558, at *2 (Interrogatory No. 7); *Our Lady of Lake Reg'l Med. Ctr. v. Ochsner Health Plan, Inc.* (M.D. La. July 7, 2005) No. CV 03-371-D-M2, 2005 WL 8155430, at *3 (Interrogatory No. 7).

Interrogatory No. 21 asks Dashgo and Adrev to state the "nature" of any "assistance or involvement" by Adrev with Dashgo's "Exploitation of sound recordings." Since the subject Interrogatory is based on, and references, Interrogatory No. 20, it is likewise undoubtedly phrased in the present tense. Thus, Interrogatory No. 21 asks only about the "nature" of Adrev's *present* "assistance" or "involvement with" Dashgo's "Exploitation of sound recordings."

As stated in Defendants' written response, Interrogatory No. 21 requests information as of the date the Interrogatories were propounded because of the use of the present tense. Such information is irrelevant.

To the extent Plaintiff would propose to now change the scope of this Interrogatory, the *Rovai* court makes clear that such a change is impermissible.

Further, interrogatories must be "sufficiently definite, clear, and concise" and must "adequately advise the interrogated party of the information requested." *See Capacchione v. Charlotte-Mecklenburg Sch.* (W.D.N.C. 1998) 182 F.R.D. 486, 491. What does it mean for Adrev to "assist" or be "involved with" Dashgo's exploitation of sound recordings? There is seemingly no limit to the scope of what could constitute such "assistance" or "involvement". Interrogatory No. 21 is facially overbroad, vague and ambiguous.

Defendants' objections are well taken; Plaintiff's motion is not.

Notwithstanding Defendants' objections, Defendants nevertheless appropriately responded to Interrogatory No. 21, stating, in pertinent part: "Inasmuch as the response to Interrogatory No. 20 is negative, this Interrogatory is inapplicable." This response is fully responsive to Interrogatory No. 21.

Moreover, given that Interrogatories Nos. 2 and 4 are each comprised of at least three distinct and discrete areas of inquiry, *see* footnotes 27, 29, *supra*, each of those two Interrogatories should be treated as, and deemed to be, six separate Interrogatories, thereby making Plaintiff's first set of Interrogatories a set of at least twenty-nine interrogatories[34], i.e., in

---

[34] "At least" twenty-nine interrogatories because, in addition to Interrogatories Nos. 2 and 4, Interrogatories Nos. 6 and 8 are also comprised of separate purported subparts about discrete and disparate separate subjects. *See* footnotes 27, 29, *supra*; Appendix 1, Exhibit 2 [Interrogatories] at 4:28-5:3, 5:6-9.

excess of the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Because service of more than twenty-five interrogatories is not permitted, Plaintiff's entire first set of Interrogatories is improper. *See* Hon. Philips & Stevenson, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* (The Rutter Group 2022) Ch. 11(IV)-B, ¶ 11:1695. Defendants nevertheless responded to those Interrogatories, including those in excess of the permitted number, including Interrogatory No. 21. Plaintiff has nothing to complain about.

As to Interrogatory No. 21, Plaintiff's motion is utterly without merit, and should be denied.

## INTERROGATORY NO. 22:

State whether or not Audiomicro receives any revenue from Dashgo's business activities and how such revenue is calculated.

## AMENDED RESPONSE TO INTERROGATORY NO. 22:

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Interrogatory calls for information based on documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection

to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation information subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined terms "Dashgo" and "Audiomicro" purport to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined terms "Dashgo" and "Audiomicro", as to the terms "receives", "revenue" and "calculated" and as to the phrase "business activities". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined terms "Dashgo" and "Audiomicro", as to the terms "receives", "revenue", "activities", "how" and "calculated" and as to the phrases "any revenue from", "from Dashgo's business activities", "business activities" and "how such revenue is calculated".

Without waiving the foregoing objections, Responding Parties respond as follows:

The Interrogatory requests that Responding Parties state whether or not Audiomicro "receives" (requested as of the date the Interrogatories were propounded because of the use of the present tense) any revenue from Dashgo's "business activities" and how such revenue "is" (requested as of the date the Interrogatories were propounded because of the use of the present tense) calculated. Whether or not Audiomicro "receives" (as of the date the Interrogatories were propounded) any revenue from Dashgo's "business activities", and how such revenue might be

calculated, is wholly irrelevant to any issue in this case, that is, the Interrogatory not reasonably

calculated to lead to the discovery of admissible evidence, as asserted in the above objections.

Discovery is continuing. Responding Parties reserve the right to amend and/or

supplement this response.

**Argument**

Although Plaintiff identifies Defendants' response to Interrogatory No. 22 as one of the

Interrogatories on which Plaintiff is moving to compel, Plaintiff makes ***no argument*** as to why a

further response should be compelled other than that Defendants have asserted "inapplicable

form objections". *See* Section I.D.1.(d), *supra*, at 16:12-15.

In the first instance, Defendants' objections are not "form objections" but rather

objections tailored to the deficiencies of this Interrogatory, which seeks current financial

information with regard to the present relationship between Adrev and Dashgo. Dashgo and

Adrev have appropriately asserted objections to this Interrogatory, including without limitation

on the bases of vagueness and ambiguity; overbreadth and undue burden; and, most saliently,

relevance.

As is apparent, this Interrogatory is phrased in the present tense. The present relationship

between Adrev and Dashgo is irrelevant to the issues and claims in this action.

In this regard, *Rovai v. Select Portfolio Servicing, Inc.*, No. 14-CV-1738-BAS (MSB),

2019 WL 1330922 (S.D. Cal. Mar. 22, 2019), supports Defendants' position.

There, the plaintiff propounded an Interrogatory No. 40, which, in pertinent part, asked

the defendant to "[d]escribe in detail how YOU process YOUR receipt of monthly MORTGAGE

payments from BORROWERS, including receipt of the money, and any process by which the

aggregate payment <u>is</u> broken down, separated, or allocated to different components of LOAN BALANCE." *Id.* at \*8 (underlining added).

The *Rovai* defendant objected on the grounds that the said Interrogatory No. 40 was vague, ambiguous, and unintelligible; overbroad and unduly burdensome; and irrelevant. *Id.* at \*8. The *Rovai* plaintiff offered to narrow the interrogatory by limiting it to billing statements from 2010 to the present. *Id.* at \*8.

As to Interrogatory No. 40, the *Rovai* court denied the plaintiff's motion to compel. In doing so, the court stated, in pertinent part:

> "[T]hough **<u>the interrogatory is phrased in the present tense and only applies to the process presently in place</u>**, Plaintiff seeks to change the scope of the interrogatory to apply from 2010 to present, and asks Defendant to explain how the mortgage statements issued to Rovai during SPS serving of her loan were calculated (<u>see id.</u>). The information now requested by Plaintiff bears little resemblance to the interrogatory originally served. Because answering this interrogatory would require Defendant to guess at the information requested, and the Court is doubtful that an answer which described a "process" would have any relevance to the claims and defenses in this case, Plaintiff's motion to compel further response to this interrogatory is **DENIED**."
> *Rovai v. Select Portfolio Servicing, Inc.* (S.D. Cal. Mar. 22, 2019) No. 14CV1738-BAS (MSB), 2019 WL 1330922, at \*8 (bolded underlining added).

Out of circuit authority also supports Defendants' position. *See, e.g.*, *Flava Works, Inc. v. Gunter* (N.D. Ill. Oct. 24, 2013) No. 10 C 6517, 2013 WL 5770558, at \*2 (Interrogatory No. 7); *Our Lady of Lake Reg'l Med. Ctr. v. Ochsner Health Plan, Inc.* (M.D. La. July 7, 2005) No. CV 03-371-D-M2, 2005 WL 8155430, at \*3 (Interrogatory No. 7).

Interrogatory No. 22 asks Dashgo and Adrev to "state whether or not Audiomicro <u>receives</u> any revenue from Dashgo's business activities and how such revenue <u>is</u> calculated." (underlining added). The subject Interrogatory is undoubtedly phrased in the present tense. Interrogatory No. 22 asks only about *present* receipt and calculation of Adrev's revenue from Dashgo's "business activities".

As stated in Defendants' written response, Interrogatory No. 22 requests information as of the date the Interrogatories were propounded because of the use of the present tense. Such information is irrelevant.

To the extent Plaintiff would propose to now change the scope of this Interrogatory, the *Rovai* court makes clear that such a change is impermissible.

Defendants' objections are well taken, and Plaintiff's motion should be denied as to Interrogatory No. 22.

Moreover, given that Interrogatories Nos. 2 and 4 are each comprised of at least three distinct and discrete areas of inquiry, *see* footnotes 27, 29, *supra*, each of those two Interrogatories should be treated as, and deemed to be, six separate Interrogatories, thereby making Plaintiff's first set of Interrogatories a set of at least twenty-nine interrogatories, *see* footnote 34, *supra*, i.e., in excess of the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Because service of more than twenty-five interrogatories is not permitted, Plaintiff's entire first set of Interrogatories is improper. *See* Hon. Philips & Stevenson, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* (The Rutter Group 2022) Ch. 11(IV)-B, ¶ 11:1695. Defendants nevertheless responded to those Interrogatories, including those in excess of the permitted number, including Interrogatory No. 22. Plaintiff has nothing to complain about.

## INTERROGATORY NO. 25:

Set forth all facts substantiating any defense claimed or to be asserted by either Defendant.

## FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 25:

Responding Parties incorporate by this reference the above General Objections. Objection to the extent that the information requested is not within Responding Parties' possession, custody or control, including without limitation to the extent the information resides on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection on the grounds that the Interrogatory calls for information that is not relevant to any party's claim or defense in this action, that is, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent the Interrogatory is duplicative of other Interrogatories. Objection on the grounds that the Interrogatory calls for information based on documents and things which are not reasonably accessible because of undue burden or cost, including without limitation to the extent the documents and things reside on third party servers, in archived form or format and/or are inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that the Interrogatory calls for the disclosure of privileged, confidential or other protected material, including without limitation documents and things subject to attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or protection, including without limitation to the extent the defined term "Defendant" purports to include Responding Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Propounding Party is already in the possession of the information responsive to this Interrogatory and to the extent Propounding Party may obtain the information requested from other, less costly and/or more convenient third party sources. Further objection on the grounds that the

Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including without limitation to the extent Responding Parties would be required to incur substantial expense and consume substantial time in obtaining and reviewing documents and things that may or may not contain information responsive to the Interrogatory. Objection on the grounds that the Interrogatory seeks confidential and/or proprietary business and/or financial information, including without limitation trade secrets, protected by the right to privacy, which will require entry of a suitable protective order prior to disclosure. Objection on the grounds that the Interrogatory is overbroad, including without limitation as to time, and including without limitation as to the purportedly defined term "Defendant", as to the term "substantiating" and as to the phrase "all facts". Objection on the grounds that the Interrogatory is vague and ambiguous, including without limitation as to the purportedly defined term "Defendant", as to the terms "substantiating", "claimed" and "asserted" and as to the phrases "all facts substantiating any defense", "substantiating any defense", "any defense claimed", "any defense . . . to be asserted" and "either Defendant".

Without waiving the foregoing objections, Responding Parties respond as follows:

The following facts and defenses claimed or to be asserted by either Responding Party:

In or about February of 2011, Dashgo and Richboy Ventures, Inc. f/s/a p/k/a DH1 Digital ("DH1") entered into a Digital Distribution & Licensing Representation Agreement ("Agreement"), pursuant to which Dashgo was granted rights to exploit certain of the sound recordings in which Plaintiff now contends it acquired copyrights. Defendants are informed and believe that DH1 later became, or is otherwise affiliated with, Colonize Media, Inc. f/k/a DH1 Media, Inc.

On or about January 5, 2015, DH1 sent a letter purporting to terminate the said Agreement, effective as of February 15, 2015, but then DH1 requested, both verbally and in writing, prior to the would-be effective termination date, that Dashgo should take down (cease the exploitation of) DH1 content *only upon express notification* from DH1's principal, David Hernandez, thereby superseding the purported termination of the said Agreement or, in the alternative, granting Dashgo an implied license to continue exploiting the subject sound recordings pending further written notice from DH1. Plaintiff is consequently legally and equitably estopped from making the claims alleged or, alternatively, has waived all such claims.

As and in the alternative, Plaintiff's claims are barred, in whole or in part, due to unreasonable delay, that is, by laches, including without limitation on the ground that on or about January 5, 2015, DH1 sent a letter purporting to terminate the above-referenced Agreement effective as of February 15, 2015. Plaintiff's claims are also barred and/or limited by the three-year statute of limitations for copyright infringement claims. Under the applicable statute of limitations, Plaintiff can only assert damages for acts of alleged infringement going back three years from May 17, 2021, the date of filing of the complaint, i.e., to May 17, 2018, which creates a finite damage cut-off date.

In addition, Dashgo contends that it also acquired rights from third party rights holders independently granting Dashgo rights to exploit certain of the sound recordings in which Plaintiff contends that it acquired copyrights. Defendants are informed and believe that Plaintiff has no rights to certain of the sound recordings in which Plaintiff contends it acquired copyrights and, consequently, lacks standing to bring copyright infringement claims as to those sound recordings.

The Exhibits to Plaintiff's Second Amended Complaint do not identify "Yellowcake's Copyrighted Works" or the "Foreign Works" by standard ISRC codes, which would be unique to each sound recording. Rather, the Exhibits to Plaintiff's Second Amended Complaint identify "Yellowcake's Copyrighted Works" or the "Foreign Works" by artist name, album, song title, U.S. Copyright Registration numbers and, as to Exhibit A, (broken) YouTube links.[35] Many of the copyright registrations alleged are for compilations or collections of sound recordings. Without limitation, based on the foregoing facts, and for these reasons, the subject sound recordings cannot be verifiably and positively identified with any degree of certainty. Defendants are informed and believe that Plaintiff's complaints about certain of the sound recordings are the result of ownership conflict reports over completely different sound recordings that were incorrectly flagged by Plaintiff and/or Plaintiff's predecessor(s)-in-interest as infringing versions of the same sound recording. Additionally or alternatively, as to certain of the sound recordings that are the subject of this action, Defendants are informed and believe that Plaintiff is, in fact, infringing on the rights of third parties.

Further, with regard to all of the sound recordings listed on Exhibit A to Plaintiff's Second Amended Complaint (so-called "Art Tracks"), Defendants are informed and believe that the following occurred: In or about early April of 2020, on information and belief in connection with the impending closure of Google Play Music, without Defendants' knowledge, consent, authorization or permission, Google delivered to YouTube and/or YouTube Music, by an

---

[35] As to the "Foreign Works", while Exhibit C to Plaintiff's Second Amended Complaint also lists UPCs. A UPC would be unique to an album, and not to an individual sound recording (unless the sound recording was packaged as a single or an album comprised of only one track. It appears that the UPCs for all of the sound recordings listed on Exhibit C to Plaintiff's Second Amended Complaint are for albums comprised of multiple tracks. Thus, the UPCs set forth in Exhibit C to Plaintiff's Second Amended Complaint are not unique to each sound recording.

internal transfer/migration (YouTube and Google are both owned by Alphabet, Inc.), the details of which are unknown to Defendants and which could not have been prevented by Defendants, all sound recordings that had ever appeared on Google Play Music, including those sound recordings that had, at one time, been delivered to Google Play Music through Dashgo under license, but which were later taken down from Google Play Music. Google so delivered the said sound recordings regardless of whether Google had a right to do so, regardless of whether the sound recordings had been taken down from Google Play Music, regardless of whether authorized delivery had been made to YouTube and without any prior or other notice to Defendants.

The foregoing transfer/migration of sound recordings from Google to YouTube created a circumstance wherein certain sound recordings to which Dashgo no longer had the rights, or had never delivered and had no records of delivering, became available as Art Tracks on YouTube and/or YouTube Music. Dashgo had no notice of the delivery and had no records of the delivery, nor any knowledge of which specific sound recordings were affected or how extensive the issue was, and so could not have sent takedown notices for all of the affected sound recordings. Of course, Defendants at no time had control over Google's or YouTube's actions or systems.

At some point, not long after the transfer/migration occurred, Google advised Dashgo that it had undone the transfer/migration, however, Dashgo later discovered, on an ad hoc basis, that this was not the case.

As soon as possible after discovering that a given unlicensed sound recording was still available on YouTube and/or YouTube Music, Dashgo took it down. In order to take down those sound recordings that were still available on YouTube and/or YouTube Music, Dashgo was obliged to resend metadata for the subject sound recordings and then subsequently issue

takedown notices for the very same sound recordings. Dashgo believes that all of the sound recordings that are the subject of this action have been identified and taken down.

Under U.S. copyright law, a plaintiff is entitled to statutory damages if, at the time of infringement, the copyrights were registered with the U.S. Copyright Office. Even if there is liability for copyright infringement, which Defendants deny, Plaintiff is not entitled to statutory damages, nor attorneys' fees and costs, for certain claimed copyrights because certain of the sound recordings that are the subject of this action are: (1) not registered with the U.S. Copyright Office; and/or (2) were registered with the U.S. Copyright Office after commencement of the alleged infringement(s); and/or (3) were registered with the U.S. Copyright Office after the allegedly infringing conduct ceased.

Discovery is continuing. Responding Parties reserve the right to further amend and/or supplement this response.

**Argument**

Although Plaintiff identifies Defendants' response to Interrogatory No. 25 as one of the Interrogatories on which Plaintiff is moving to compel, Plaintiff makes ***no argument*** as to why a further response should be compelled other than that Defendants have asserted "inapplicable form objections". *See* Section I.D.1.(d), *supra*, at 16:12-15.

In the first instance, Defendants' objections are not "form objections" but rather objections tailored to the deficiencies of this Interrogatory, which seeks a recitation of all facts substantiating any defense claimed or to be asserted by either Dashgo or Adrev. Dashgo and Adrev have appropriately asserted objections to this Interrogatory.

Notwithstanding those objections, Defendants nevertheless appropriately, fully and substantively responded to Interrogatory No. 25, which detailed response runs three full pages. It is entirely unclear what issue, if any, Plaintiff takes with Defendants' response.

Moreover, given that Interrogatories Nos. 2 and 4 are each comprised of at least three distinct and discrete areas of inquiry, *see* footnotes 27, 29, *supra*, each of those two Interrogatories should be treated as, and deemed to be, six separate Interrogatories, thereby making Plaintiff's first set of Interrogatories a set of at least twenty-nine interrogatories, *see* footnote 34, *supra*, i.e., in excess of the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Because service of more than twenty-five interrogatories is not permitted, Plaintiff's entire first set of Interrogatories is improper. *See* Hon. Philips & Stevenson, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* (The Rutter Group 2022) Ch. 11(IV)-B, ¶ 11:1695. Defendants nevertheless responded to those Interrogatories, including those in excess of the permitted number, including Interrogatory No. 25. Plaintiff has nothing to complain about.

It appears that Plaintiff simply included Interrogatory No. 25 in its motion to compel because it was dissatisfied with Defendants' verified amended and supplemental response. But Plaintiff's dissatisfaction would not, and does not, render the response defective or deficient in any way. The motion should be denied as to Interrogatory No. 25.

### 2. Set One Document Request.

Plaintiff's issue with Defendants' response to Plaintiff's Set One Document Request, and responsive production, is based on a false premise: that "Defendants are withholding documents based on the objections set forth in their response to Yellowcake's Set One Document Request". *See* Section I.D.2., *supra*, at 16:23-26. Plaintiff makes this unwarranted accusation *notwithstanding* the fact that, in response to Document Request No. 1 (Plaintiff's sole

"example", see Section I.D.2., *supra*, at 18:5-20:17), Defendants stated under oath that "Responding Parties will produce, on a rolling basis, extent, relevant non-privileged documents reasonably within Responding Parties' possession, custody or control responsive to the Request."

Plaintiff offers not a shred of evidence that Defendants are withholding, or have withheld, any documents responsive to the Set One Document Request. The accusation is as baseless as it is outrageous. Defendants are entitled to assert, and decline to voluntarily waive, their valid and appropriate objections.

As a threshold matter, Plaintiff's single "example" of Defendants' purportedly "deficient" responses to *<u>forty-two</u>* different document requests makes it impossible for the Court to accurately review, analyze or resolve the discovery dispute; this alone provides sufficient basis to deny Plaintiff's motion. *See, e.g., U.S. Legal Support, Inc. v. Hofioni* (E.D. Cal. Nov. 5, 2015) No. 2:13-CV-01770-MCE-AC, 2015 WL 6756234, at *8; *Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.* (E.D. Cal. Sept. 17, 2014) No. 2:13-CV-01378-WBS-AC, 2014 WL 4661979, at *11; *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.* (E.D. Cal. Sept. 7, 2006) No. 1:04CV5153 OWW DLB, 2006 WL 8458563, at *1.

Nevertheless, Plaintiff's "example" response of Document Request No. 1 shows that Defendants' objections are, in fact, well taken.[36]

Document Request No. 1 requests that Defendants "[p]roduce all documents concerning or related to the Defendants' sale, distribution, public performance, synchronization, license or any other exploitation of Yellowcake's Copyrighted Works including, but not limited to, such exploitation on digital distribution platforms such as YouTube, Amazon.com, and Spotify.

---

[36] Taking their cue from Plaintiff, Defendants offer below five "examples" of their properly-asserted objections.

Responsive documents shall include, but are not limited to, any: (i) royalty statements; (ii) contracts; (iii) reconciliations; (iv) payment receipts; (v) advertising copy; (vi) videos; (vii) "dashboard" information and (viii) documents including, but not limited to, any royalty statements from any national or international performing rights organization such as ASACP, BMI, SESAC, PRS for Music, Sound Exchange or Mechanical Licensing Collective."

1. Defendants cannot be expected to produce documents that are in the possession, custody or control of digital distribution platforms, or where the expenditure of resources required to access the documents is itself unreasonable (that is, the documents are, as a legal matter, "inaccessible"). *See U.S. ex rel. Carter v. Bridgepoint Educ., Inc.* (S.D. Cal. 2015) 305 F.R.D. 225, 239. Prior to the filing of this motion, Plaintiff <u>never</u> discussed with defense counsel the burdens and costs of accessing and retrieving the information requested. *Cf.* Adv. Comm. Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2). Defendants' objections on the grounds of lack of possession, custody or control and undue burden are well taken.

2. Document Request No. 1 seeks documents relating to the exploitation of "Yellowcake's Copyrighted Works". But not all "exploitation" constitutes an infringement, and, as repeatedly noted above, Plaintiff admits that, for at least a portion of the twelve year period at issue, Dashgo had a contractual right to engage in such "Exploitation". *See* Section I.B., *supra*, at 5:12-14; *see* footnote 13, *supra* (2/4/2022 agreement by Plaintiff's counsel to "limit" the relevant time period to "January 1, 2010 to the present" – a period of more than 12 years). Thus, Document Request No. 1 on its face seeks irrelevant documents, and Defendants' objection on relevance grounds is well taken.

3. Plaintiff's demand for "all" documents concerning or related to Defendants' exploitation of "Yellowcake's Copyrighted Works" of course encompasses correspondence between Defendants, or any of them, on the one hand, and Defendants' present and former attorneys, on the other hand, and thus calls for the production of documents subject to the attorney-client privilege and the attorney work product doctrine. Defendants' objection on privilege grounds is well taken.

4. By similar token – and as the Court is aware based on Defendants' now-granted motion for a two-tier protective order – Plaintiff's demand for "all" documents concerning or related to Defendants' exploitation of "Yellowcake's Copyrighted Works" encompasses documents containing confidential and/or proprietary business and/or financial information, including without limitation trade secrets. Defendants' objection on these grounds is also well taken.

5. The purportedly defined term "Defendants" is facially overbroad, since Plaintiff purports to include, among others, Dashgo's and Adrev's "agents or representatives". Defendants' objection on overbreadth grounds is well taken, since the only corporate defendants in this case are Dashgo and Adrev, which Defendants are the entities to which Plaintiff's discovery was directed. *See*, *e.g.*, *Valdez v. Genesis Healthcare LLC* (C.D. Cal. Sept. 7, 2021) No. 2:19-CV-00976-DMG-JC, 2021 WL 5989963, at *11 (citing *Holloway v. 3M Company* (C.D. Cal. Oct. 31, 2019) 2019 WL 7172600, *7, *et seq.*) (where definitions of terms "DEFENDANT", "YOU" and "YOUR" purported to include, inter alia, "affiliates", "agents" and "representatives", such defined terms limited to "the specific Defendant to whom each such discovery request is directed").

Defendants' objections are not "rote", "boilerplate", "irrelevant", "improper", "inapplicable" or any of the other disparaging terms with which Plaintiff tars them.

Moreover, Defendants have clearly stated under oath that, notwithstanding their proper and well-taken objections, they <u>will produce</u> responsive documents. Plaintiff has nothing to complain about.

Defendants are utterly perplexed by Plaintiff's decision to pursue this motion with regard to the Set One Document Request, which motion should be denied.

### 3.    Set Two Document Request.

As set forth in greater detail above, *see* Section II.C.3., *supra*, Plaintiff's Set Two Document Request seeks production of all documents and correspondence having anything to do with MediaMuv (a former client of Dashgo) and its various ostensibly-related entities and persons. Plaintiff contends, without factual basis, that this discovery will somehow reveal that Dashgo "copied" the allegedly criminal *modus operandi* of Jose Teran and Webster Batista Fernandez to exploit works to which it had no rights and pocket the proceeds instead of paying them over to the allegedly rightful owner, namely, Plaintiff.

The Set Two Document Request is unlimited as to time and subject matter. Moreover, the Set Two Document Request is wholly redundant with Requests Nos. 13-18 from Plaintiff's Set One Document Request, which sought MediaMuv-related documents "concerning or regarding" any of "Yellowcake's Copyrighted Works" and the "Foreign Works" (and, thus, were intended to actually be correlated to Plaintiff's allegations in this action).

Instead of connecting the requests of the Set Two Document Request to the claims or defenses alleged in this action, this set of document requests simply seeks every document having anything to do with MediaMuv and its related and affiliated persons and entities, without

any time or subject matter limitation. Plaintiff's Set Two Document Request on its face thus seeks documents that are irrelevant and is wholly disproportionate to the needs of the case. At best, the Set Two Document Request is a fishing expedition calculated to cause Defendants to incur unnecessary cost and expense, and the very type of "scorched earth" discovery that the Court has made clear is prohibited.

Plaintiff's motion should be denied as to the Set Two Document Request.

**4.**    **Defendants Should Be Awarded Their Attorneys' Fees Incurred in Defending This Motion.**

Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure provides, in pertinent part, that if a motion to compel is denied, the Court must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees, unless the motion was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

As set forth in detail above, Plaintiff's motion to compel is and, at all relevant times, was unjustified. Plaintiff's motion is largely premised on baseless and unsubstantiated accusations, bereft of any evidence, that Defendants have withheld responsive documents and engaged in criminal copyright fraud. The responses already given to Plaintiff's discovery are perfectly responsive.

Moreover, in view of the provisions of the Court's July 21, 2022 Order, granting Defendants' motion for entry of a two-tier protective order, Plaintiff's motion is premature and/or moot, and the motion should have been withdrawn without prejudice pending: (1) entry of a protective order; (2)  Plaintiff's provision of a list identifying, with specificity, "Yellowcake's

Copyrighted Works" and the "Foreign Works" to be used in the definitions for responding to Plaintiff's discovery; and (3) service of Defendants' supplemental discovery responses after the parties' agreement to such a list. Defendants specifically requested that Plaintiff withdraw the motion multiple times, not only for the foregoing reasons, but also to attempt to resolve issues and to avoid the unnecessary expenditure of resources, both those of Defendants and those of the Court. *See* Appendix 2, Exhibit 1 [Sandel Decl.], ¶¶ 14-21, Exs. "D"-"H". Defendants' reasonable request was repeatedly rejected. *See ibid.* There simply are no circumstances that would make an award of Defendants' expenses "unjust".

Plaintiff's position is, and has always been, without substantial justification, and there are no other circumstances that would make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). Accordingly, the Court should award Defendants their attorneys' fees and costs in an amount of at least $5,000 or, in the alternative, order Plaintiff to show cause why it should not be ordered to fully reimburse Defendants "for the attorneys' fees incurred to bring a motion that should never have been necessary." *Cf. Quality Inv. Properties Santa Clara, LLC v. Serrano Elec., Inc.* (N.D. Cal. July 22, 2010) No. C 09-5376 JF (PVT), 2010 WL 2889178, at *4.

### 5.     <u>Conclusion</u>.

For all of the foregoing reasons, the Court should deny Yellowcake's motion to compel and award Defendants their attorneys' fees incurred in connection with defense of this unnecessary and meritless motion.

[CONTINUED ON FOLLOWING PAGE]

Respectfully submitted,

DICKENSON PEATMAN & FOGARTY P.C.

Dated: ___8/12___, 2022      By: /s/ Richard J. Idell

Richard J. Idell (SBN 069033)
Ory Sandel (SBN 233204)
*Attorneys for Defendants Dashgo, Inc. and*
*Audiomicro, Inc. d.b.a. Adrev*

ABRAMS FENSTERMAN, LLP

HEFNER, STARK & MAROIS, LLP

Dated: ___8/12___, 2022      By: /s/ Seth L. Berman

Seth L. Berman (admitted *pro hac vice*)
Thomas P. Griffin (SBN 155133)
*Attorneys for Plaintiff Yellowcake, Inc.*