# EXHIBIT 7

1   RICHARD J. IDELL, ESQ. (SBN 069033)
2   ORY SANDEL, ESQ. (SBN 233204)
    DICKENSON, PEATMAN & FOGARTY, P.C.
3   1455 First Street, Suite 301
    Napa, CA 94559
4   Telephone: 707-252-7122
    Facsimile:  707-255-6876
5   Email: ridell@dpf-law.com
             osandel@dpf-law.com
6   *Attorneys for Defendants Dashgo, Inc. and*
7   *Audiomicro, Inc. d.b.a. Adrev*

8                  **UNITED STATES DISTRICT COURT**

9                  **EASTERN DISTRICT OF CALIFORNIA**

10                       **FRESNO DIVISION**

11   YELLOWCAKE, INC., a California          CASE NO. 1:21-cv-00803-AWI-BAM
     corporation,
12                                           **DEFENDANTS DASHGO, INC. AND**
                        Plaintiff,           **AUDIOMICRO, INC. d/b/a ADREV'S**
13                                           **FURTHER AMENDED AND**
              v.                             **SUPPLEMENTAL RESPONSE TO**
14                                           **PLAINTIFF YELLOWCAKE, INC.'S**
     DASHGO, INC., a Delaware corporation;   **FIRST SET OF INTERROGATORIES TO**
15   and AUDIOMICRO, INC. d/b/a ADREV,       **DEFENDANTS, INTERROGATORY NO.**
     a Delaware corporation,                 **25**
16
                        Defendants.
17

18   PROPOUNDING PARTY:    Plaintiff Yellowcake, Inc.

19   RESPONDING PARTIES:   Defendants Dashgo, Inc. and Audiomicro, Inc. d.b.a. Adrev

20   SET NUMBER:           One (1)

21       Defendants Dashgo, Inc. ("Dashgo") and Audiomicro, Inc. d/b/a Adrev ("Adrev" or

22   "Audiomicro") (collectively, "Defendants", or "Responding Parties") hereby further amend and

23   supplement their responses to the First Set of Interrogatories, Interrogatory No. 25,  propounded

24   by Plaintiff Yellowcake, Inc. ("Yellowcake", "Plaintiff", or "Propounding Party"), as follows:

25                          **PRELIMINARY STATEMENT**

26       Responding Parties are continuing Responding Parties' investigation and analysis of the

27   facts and law relating to this case. Since discovery, investigation and preparation for trial have not

28   been completed and are ongoing as of the date of these responses, Responding Parties do not

                                             1
     DEFENDANTS' FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO FIRST SET OF
                    INTERROGATORIES, INTERROGATORY NO. 25

purport to state anything more than information currently available, known and discovered. Responding Parties reserve the right to continue discovery and investigation in this matter regarding facts, witnesses, and supporting data. The responses below are provided without waiver of Responding Parties' right to amend, modify or supplement these responses. Responding Parties specifically reserve the right to produce and present at trial information and evidence of any facts or interpretations discovered subsequent to the date of these responses by adding to, modifying or otherwise changing or amending the responses set forth below.

Responding Parties' responses to the Interrogatories are made solely for the purposes of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility and any and all other objections and grounds that would require the exclusion of any statements contained herein as if such statements were made by a witness present and testifying in court. All objections and grounds are reserved and may be interposed by Responding Parties at the time of the trial, and these responses are given without prejudice to Responding Parties' right to object on any bases at the time of trial to the introduction of any response given herein.

This preliminary statement is incorporated into each and every response set forth below.

## GENERAL OBJECTIONS

Responding Parties makes the following general objections to Propounding Party's First Set of Interrogatories (each singularly, an "Interrogatory", or, collectively, the "Interrogatories"), each of which is hereby incorporated into Responding Parties' objections to each of the Interrogatories as if fully set forth therein. All of Responding Parties' objections are expressly subject to these general objections in addition to any specific objections which may be made on an individual basis in the separate responses set forth below:

1.      Responding Parties object to the Interrogatories on the grounds that the Interrogatories purport to exceed the limitations of Rule 33 of the Federal Rules of Civil Procedure. Responding Parties specifically object on the ground that Rule 34 provides, in pertinent part, as follows: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written Interrogatories . . ." FRCP 33(a). Rule 33 uses the singular ("party") both as to the propounding party and as to the responding party.

However, the Interrogatories purport to be simultaneously directed to both Dashgo and Adrev jointly. Without waiving Responding Parties' objection on this ground, the responses given herein are made on behalf of both Dashgo and Adrev jointly, since the Interrogatories were directed to both Dashgo and Adrev jointly; however, any response to any given Interrogatory does not mean, and should not be interpreted to mean, that both Dashgo and Adrev have information responsive to such Interrogatory, since it may be that only one of the Responding Parties (Dashgo *or* Adrev) has responsive information. Any ambiguity created thereby is solely due to the fact that Propounding Party opted to propound a single set of Interrogatories on both Responding Parties jointly.

2.      Responding Parties object to the Interrogatories to the extent that the Interrogatories call for information that is not relevant to any party's claim or defense in this action.

3.      Responding Parties object to the Interrogatories on the grounds that the Interrogatories are not proportional to the needs of the case.

4.      Responding Parties object to the Interrogatories on the grounds that the Interrogatories are overbroad, including without limitation as to the purportedly defined terms "Dashgo", "Audiomicro" and "Adrev", as purporting to include each entity's "officers, directors, shareholders, employees, owners, partners, members, parents, affiliates, subsidiaries, divisions, related entities, agents, representatives and attorneys". The responses given herein interpret each such defined term as referring only to the entity itself, i.e., Dashgo, Inc. and Audiomicro, Inc. d.b.a. Adrev, and no other person or entity.

5.      Responding Parties further object to the Interrogatories on the grounds that the Interrogatories are overbroad, vague and ambiguous, including without limitation as to the purportedly defined terms "You", "Your", "Defendants", "Plaintiff" and "Yellowcake" as purporting to include each entity's "agents" and "representatives". The responses given herein interpret each such defined term as referring only to the entity itself, i.e., Dashgo, Inc., Audiomicro, Inc. d.b.a. Adrev and Yellowcake, Inc., and no other person or entity.

6.      Responding Parties object to the Interrogatories on the grounds that the Interrogatories are vague and ambiguous as to the terms "owners", "partners", "members",

3

"parents", "affiliates", "subsidiaries", "divisions", "related entities", "agents" and "representatives" as used in the purportedly defined terms "Dashgo", "Audiomicro" and "Adrev".

7.    Responding Parties further object to the Interrogatories on the grounds that the Interrogatories are vague and ambiguous as to the terms "agents" and "representatives" as used in the purportedly defined terms "You", "Your", "Defendants", "Plaintiff" and "Yellowcake".

8.    Responding Parties object to the Interrogatories on the grounds that the Interrogatories are vague and ambiguous as to the phrase "other similar assets" as used in the purportedly defined terms "Exploit", "Exploited" and "Exploitation".

9.    Responding Parties further object to the Interrogatories on the grounds that the Interrogatories are vague and ambiguous as to the purportedly defined terms "Yellowcake's Copyrighted Works", "Foreign Works", "Exploit", "Exploited" and "Exploitation".

10.    Responding Parties object to the Interrogatories on the grounds that the Interrogatories are facially abusive, harassing, oppressive and unduly burdensome as to those Interrogatories inquiring about facts and information relating to "Yellowcake's Copyrighted Works" and/or "Foreign Works", in that the purportedly defined terms "Yellowcake's Copyrighted Works" and "Foreign Works" encompass at least one thousand two hundred and forty (1,240) individual sound recordings.

11.    Responding Parties object to the Interrogatories to the extent they can be regarded as calling for the production of documents and things protected by any applicable privilege, including but not limited to the attorney-client privilege and/or the attorney work product doctrine, including without limitation to the extent the purportedly defined terms "Dashgo", "Audiomicro", "Adrev", "You", "Your" and "Defendants" purport to include Responding Parties' attorneys. The responses given herein interpret each such defined term as referring only to the entity itself, i.e., Dashgo, Inc. and Audiomicro, Inc. d.b.a. Adrev, and no other person or entity.

12.    Responding Parties object to the Interrogatories to the extent they are overbroad, including without limitation as to time, harassing and unduly burdensome.

13.    Responding Parties object to the Interrogatories to the extent they can be

DP&F

DICKENSON, PEATMAN & FOGARTY
A Professional Law Corporation

4

regarded as calling for the production of documents that are subject to the rights of privacy of Responding Parties, or others, as calling for the production of private, protected, privileged and confidential, personal, financial and/or proprietary information.

14.    Responding Parties object to the Interrogatories to the extent that they can be regarded as calling for information that is confidential or proprietary to, or the trade secrets of, Responding Parties and/or any other person or entity. Each such Interrogatory is overly broad, unduly burdensome and oppressive, and seeks to impose obligations beyond those permitted by the Federal Rules of Civil Procedure.

15.    Responding Parties object to the Interrogatories to the extent that the Interrogatories contain factual and/or legal misrepresentations. Any response made herein is not, and shall not be deemed to be, an admission of any factual or legal contention contained in any individual Interrogatory.

16.    Responding Parties object to the Interrogatories to the extent that they call for information not within the knowledge of Responding Parties, including without limitation information based on documents or things that no longer exist or have otherwise been lost, misplaced, or destroyed, including without limitation in the ordinary course of business. The responses given herein are based upon information reasonably available to Responding Parties and documents and things reasonably within Responding Parties' possession, custody and control.

17.    Responding Parties reserve the right to amend, modify and/or supplement these objections and the below responses.

These general objections shall be deemed applicable as to each Interrogatory without specific reference being incorporated into each specific response, and Responding Parties' responses that follow shall not operate to waive or in any way limit these general objections.

## INTERROGATORIES AND RESPONSES THERETO

### INTERROGATORY NO. 25:

Set forth all facts substantiating any defense claimed or to be asserted by either Defendant.

//

//

1    **FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY**

2    **NO. 25:**

3        Responding Parties incorporate by this reference the above General Objections. Objection

4    to the extent that the information requested is not within Responding Parties' possession, custody

5    or control, including without limitation to the extent the information resides on third party

6    servers, in archived form or format and/or are inaccessible or not reasonably accessible to

7    Responding Parties. Objection on the grounds that the Interrogatory calls for information that is

8    not relevant to any party's claim or defense in this action, that is, the Interrogatory is not

9    reasonably calculated to lead to the discovery of admissible evidence. Objection on the grounds

10   that the Interrogatory is not proportional to the needs of the case, that is, the Interrogatory is

11   unduly burdensome, oppressive, harassing and abusive, including without limitation to the extent

12   the Interrogatory is duplicative of other Interrogatories. Objection on the grounds that the

13   Interrogatory calls for information based on documents and things which are not reasonably

14   accessible because of undue burden or cost, including without limitation to the extent the

15   documents and things reside on third party servers, in archived form or format and/or are

16   inaccessible or not reasonably accessible to Responding Parties. Objection to the extent that that

17   the Interrogatory calls for the disclosure of privileged, confidential or other protected material,

18   including without limitation documents and things subject to attorney-client privilege, the

19   attorney work product doctrine and/or any other applicable privilege or protection, including

20   without limitation to the extent the defined term "Defendant" purports to include Responding

21   Parties' attorneys. Objection on the grounds that the Interrogatory is abusive and subjects

22   Responding Parties to undue burden and hardship, including without limitation to the extent

23   Propounding Party is already in the possession of the information responsive to this Interrogatory

24   and to the extent Propounding Party may obtain the information requested from other, less costly

25   and/or more convenient third party sources. Further objection on the grounds that the

26   Interrogatory is abusive and subjects Responding Parties to undue burden and hardship, including

27   without limitation to the extent Responding Parties would be required to incur substantial expense

28   and consume substantial time in obtaining and reviewing documents and things that may or may

not contain information responsive to the Interrogatory. Objection on the grounds that the

1   Interrogatory seeks confidential and/or proprietary business and/or financial information,

2   including without limitation trade secrets, protected by the right to privacy, which will require

3   entry of a suitable protective order prior to disclosure. Objection on the grounds that the

4   Interrogatory is overbroad, including without limitation as to time, and including without

5   limitation as to the purportedly defined term "Defendant", as to the term "substantiating" and as

6   to the phrase "all facts". Objection on the grounds that the Interrogatory is vague and ambiguous,

7   including without limitation as to the purportedly defined term "Defendant", as to the terms

8   "substantiating", "claimed" and "asserted" and as to the phrases "all facts substantiating any

9   defense", "substantiating any defense", "any defense claimed", "any defense . . . to be asserted"

    and "either Defendant".

10        Without waiving the foregoing objections, Responding Parties respond as follows:

11        The following facts and defenses claimed or to be asserted by either Responding Party:

12        In or about February of 2011, Dashgo and Richboy Ventures, Inc. f/s/a p/k/a DH1 Digital

13  ("DH1") entered into a Digital Distribution & Licensing Representation Agreement

14  ("Agreement"), pursuant to which Dashgo was granted rights to exploit certain of the sound

15  recordings in which Plaintiff now contends it acquired copyrights. Defendants are informed and

16  believe that DH1 later became, or is otherwise affiliated with, Colonize Media, Inc. f/k/a DH1

17  Media, Inc.

18        On or about January 5, 2015, DH1 sent a letter purporting to terminate the said

19  Agreement, effective as of February 15, 2015, but then DH1 requested, both verbally and in

20  writing, prior to the would-be effective termination date, that Dashgo should take down (cease the

21  exploitation of) DH1 content *only upon express notification* from DH1's principal, David

22  Hernandez, thereby superseding the purported termination of the said Agreement or, in the

23  alternative, granting Dashgo an implied license to continue exploiting the subject sound

24  recordings pending further written notice from DH1. Plaintiff is consequently legally and

25  equitably estopped from making the claims alleged or, alternatively, has waived all such claims.

26        As and in the alternative, Plaintiff's claims are barred, in whole or in part, due to

27  unreasonable delay, that is, by laches, including without limitation on the ground that on or about

28  January 5, 2015, DH1 sent a letter purporting to terminate the above-referenced Agreement

7

DEFENDANTS' FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO FIRST SET OF
INTERROGATORIES, INTERROGATORY NO. 25

effective as of February 15, 2015. Plaintiff's claims are also barred and/or limited by the three-year statute of limitations for copyright infringement claims. Under the applicable statute of limitations, Plaintiff can only assert damages for acts of alleged infringement going back three years from May 17, 2021, the date of filing of the complaint, i.e., to May 17, 2018, which creates a finite damage cut-off date.

In addition, Dashgo contends that it also acquired rights from third party rights holders independently granting Dashgo rights to exploit certain of the sound recordings in which Plaintiff contends that it acquired copyrights. Defendants are informed and believe that Plaintiff has no rights to certain of the sound recordings in which Plaintiff contends it acquired copyrights and, consequently, lacks standing to bring copyright infringement claims as to those sound recordings.

The Exhibits to Plaintiff's Second Amended Complaint do not identify "Yellowcake's Copyrighted Works" or the "Foreign Works" by standard ISRC codes, which would be unique to each sound recording. Rather, the Exhibits to Plaintiff's Second Amended Complaint identify "Yellowcake's Copyrighted Works" or the "Foreign Works" by artist name, album, song title, U.S. Copyright Registration numbers and, as to Exhibit A, (broken) YouTube links.[1] Many of the copyright registrations alleged are for compilations or collections of sound recordings. Without limitation, based on the foregoing facts, and for these reasons, the subject sound recordings cannot be verifiably and positively identified with any degree of certainty. Defendants are informed and believe that Plaintiff's complaints about certain of the sound recordings are the result of ownership conflict reports over completely different sound recordings that were incorrectly flagged by Plaintiff and/or Plaintiff's predecessor(s)-in-interest as infringing versions of the same sound recording. Additionally or alternatively, as to certain of the sound recordings that are the subject of this action, Defendants are informed and believe that Plaintiff is, in fact, infringing on the rights of third parties.

---

[1] As to the "Foreign Works", while Exhibit C to Plaintiff's Second Amended Complaint also lists UPCs. A UPC would be unique to an album, and not to an individual sound recording (unless the sound recording was packaged as a single or an album comprised of only one track. It appears that the UPCs for all of the sound recordings listed on Exhibit C to Plaintiff's Second Amended Complaint are for albums comprised of multiple tracks. Thus, the UPCs set forth in Exhibit C to Plaintiff's Second Amended Complaint are not unique to each sound recording.

DEFENDANTS' FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES, INTERROGATORY NO. 25

Further, with regard to all of the sound recordings listed on Exhibit A to Plaintiff's Second Amended Complaint (so-called "Art Tracks"), Defendants are informed and believe that the following occurred: In or about early April of 2020, on information and belief in connection with the impending closure of Google Play Music, without Defendants' knowledge, consent, authorization or permission, Google delivered to YouTube and/or YouTube Music, by an internal transfer/migration (YouTube and Google are both owned by Alphabet, Inc.), the details of which are unknown to Defendants and which could not have been prevented by Defendants, all sound recordings that had ever appeared on Google Play Music, including those sound recordings that had, at one time, been delivered to Google Play Music through Dashgo under license, but which were later taken down from Google Play Music. Google so delivered the said sound recordings regardless of whether Google had a right to do so, regardless of whether the sound recordings had been taken down from Google Play Music, regardless of whether authorized delivery had been made to YouTube and without any prior or other notice to Defendants.

The foregoing transfer/migration of sound recordings from Google to YouTube created a circumstance wherein certain sound recordings to which Dashgo no longer had the rights, or had never delivered and had no records of delivering, became available as Art Tracks on YouTube and/or YouTube Music. Dashgo had no notice of the delivery and had no records of the delivery, nor any knowledge of which specific sound recordings were affected or how extensive the issue was, and so could not have sent takedown notices for all of the affected sound recordings. Of course, Defendants at no time had control over Google's or YouTube's actions or systems.

At some point, not long after the transfer/migration occurred, Google advised Dashgo that it had undone the transfer/migration, however, Dashgo later discovered, on an ad hoc basis, that this was not the case.

As soon as possible after discovering that a given unlicensed sound recording was still available on YouTube and/or YouTube Music, Dashgo took it down. In order to take down those sound recordings that were still available on YouTube and/or YouTube Music, Dashgo was obliged to resend metadata for the subject sound recordings and then subsequently issue takedown notices for the very same sound recordings. Dashgo believes that all of the sound recordings that are the subject of this action have been identified and taken down.

9

1    Under U.S. copyright law, a plaintiff is entitled to statutory damages if, at the time of

2  infringement, the copyrights were registered with the U.S. Copyright Office. Even if there is

3  liability for copyright infringement, which Defendants deny, Plaintiff is not entitled to statutory

4  damages, nor attorneys' fees and costs, for certain claimed copyrights because certain of the

5  sound recordings that are the subject of this action are: (1) not registered with the U.S. Copyright

6  Office; and/or (2) were registered with the U.S. Copyright Office after commencement of the

7  alleged infringement(s); and/or (3) were registered with the U.S. Copyright Office after the

    allegedly infringing conduct ceased.

8    Discovery is continuing. Responding Parties reserve the right to further amend and/or

9  supplement this response.

10

11                                              DICKENSON PEATMAN & FOGARTY, P.C.

12   Dated: April 27, 2022          By:    _____

13                                              Richard Idell

14                                              Ory Sandel
                                                *Attorneys for Defendants Dashgo, Inc. and*
15                                              *Audiomicro, Inc. d.b.a. Adrev*

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO FIRST SET OF
INTERROGATORIES, INTERROGATORY NO. 25

**VERIFICATION**

I have read the following and know its contents:

- **DEFENDANTS DASHGO, INC. AND AUDIOMICRO, INC. d/b/a ADREV'S FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO PLAINTIFF YELLOWCAKE, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANTS, INTERROGATORY NO. 25**

I am the Senior Vice President of Operations of Adrev and am verifying the contents of the foregoing document on behalf of Adrev in that capacity. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information or belief, and as to those matters I believe them to be true.

Executed on _____ April 21 _____ , 2022 at _____ Dana Point _____ [city], California.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Andrew Korn

**VERIFICATION**

I have read the following and know its contents:

- **DEFENDANTS DASHGO, INC. AND AUDIOMICRO, INC. d/b/a ADREV'S FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO PLAINTIFF YELLOWCAKE, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANTS, INTERROGATORY NO. 25**

I am the President of Dashgo, Inc. and am verifying the contents of the foregoing document on behalf of Dashgo, Inc. in that capacity. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information or belief, and as to those matters I believe them to be true.

Executed on _____April 21_____, 2022 at Los Angeles_____ [city], California.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

Benjamin Patterson

**PROOF OF SERVICE**

I am employed in the County of Napa, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is 1455 First Street, Suite 301, Napa, CA 94559.

On the date indicated below, I served the following document(s):

- **DEFENDANTS DASHGO, INC. AND AUDIOMICRO, INC. d/b/a ADREV'S FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO PLAINTIFF YELLOWCAKE, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANTS, INTERROGATORY NO. 25**

on the person(s) below, as follows:

| | |
|---|---|
| Thomas P. Griffin, Jr., Esq. | Seth Berman, Jr., Esq. |
| HEFNER, STARK & MAROIS, LLP | ABRAMS FENSTERMAN |
| 2150 River Plaza Drive, Suite 450 | 3 Dakota Drive, Suite 300 |
| Sacramento, CA 95833 | Lake Success, NY 11042 |
| Telephone: (916) 925-6620 | Telephone: (516) 328-2300 x 251 |
| Facsimile: (916) 925-1127 | Facsimile: (516) 328-6638 |
| Email: tgriffin@hsmlaw.com | Email: SBerman@Abramslaw.com |
| *Attorneys for Plaintiff Yellowcake, Inc.* | *Attorneys for Plaintiff Yellowcake, Inc.* |

**(XX)    U. S. MAIL.** I caused a copy of the document(s) to be enclosed in a sealed envelope or package addressed to the person(s) at the address(es) listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**(XX)    BY ELECTRONIC SERVICE.** I caused a copy of the document(s) to be sent to the person(s) at the electronic mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 27th day of April, 2022, at Napa, California.

_____
Sarah Laverone

DEFENDANTS' FURTHER AMENDED AND SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES, INTERROGATORY NO. 25

# EXHIBIT 8

| From: | Seth L. Berman |
|---|---|
| To: | Richard Idell |
| Cc: | Ory Sandel; Tom Griffin; Kristen DaSilva |
| Subject: | Re: Yellowcake v. Dashgo- Meet and Confer Call |
| Date: | Wednesday, January 12, 2022 7:37:13 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | imageba9b78.PNG |
| | image3e2d09.PNG |
| | imagebf4f9e.PNG |
| | image27f63c.PNG |
| | image1d783f.PNG |

Richard:

Tuesday at noon is confirmed. However, we are not required under rule 251 to spend the time and effort to specify the issues in an email prior to our conference call. That is the purpose of the meet and confer call. In general, the call is to discuss the fact that you failed to produce a single document despite having approximately two months to respond to our demands and that your interrogatory responses were either nonexistent, evasive or incomplete at best.

Sent from my iPhone



**Seth L. Berman, Esq. | Partner/Director Intellectual Property and Entertainment Dept.**

**Long Island Office**

3 Dakota Drive Suite 300

Lake Success, New York 11042

516-328-2300 x 251 | Phone

516-328-6638 | Fax

sberman@abramslaw.com

www.abramslaw.com

Long Island · Brooklyn · White Plains · Rochester · Albany

   

CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient. AF/01

On Jan 12, 2022, at 6:45 PM, Richard Idell <richard.idell@idellfirm.com> wrote:

Caution: This email originated outside of the organization

Seth –

We are happy to meet and confer with you regarding our discovery responses, but we would need to know in advance which specific responses you claim are "deficient" and the bases, including legal authorities, for your contention that those responses are "deficient". We cannot reasonably be expected to meet and confer without first knowing what we are supposed to be meeting and conferring about.

So, as to the dates you suggest, we are available to confer with you on Tuesday at Noon PT. However, before such meeting we ask that you set forth the particulars of each of the claimed "deficient discovery responses" as set forth above. Please provide that information by Friday, January 14, 2022 by close of business.

Richard Idell


**RICHARD J. IDELL**
**OF COUNSEL**
DICKENSON, PEATMAN & FOGARTY
1455 FIRST STREET, STE. 301  |  NAPA, CA  94559
T: 707.938.7763 (DIRECT)
C: 707.799.5962
SONOMA DIRECT: 707.938.7763
RIDELL@DPF-LAW.COM| WWW.DPF-LAW.COM

**For current wine law news, visit www.lexvini.com**

CONFIDENTIALITY NOTICE:   This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.  If you have received this transmission in error, please immediately notify us by reply e-mail, by forwarding this to dpf@dpf-law.com  or by telephone at (707) 261-7000, and destroy the original transmission and its attachments without reading or saving in any manner.  Thank you.



**From:** Seth L. Berman <SBerman@Abramslaw.com>
**Sent:** Wednesday, January 12, 2022 2:44 PM
**To:** Ory Sandel <OSandel@dpf-law.com>; Richard Idell <richard.idell@idellfirm.com>
**Cc:** Tom Griffin <tgriffin@hsmlaw.com>
**Subject:** Yellowcake v. Dashgo- Meet and Confer Call

Richard and Ory:

I am reaching out to you pursuant to EDCA Local Rule 251 to schedule a meet and confer call to discuss your deficient discovery responses. We are free tomorrow between 9PT and noon and Tuesday between 9PT and 2:30 PT or after 4 PT. Please let us know what

day and time works for you.

Very truly yours,

**_Seth L. Berman_**, Esq. | _Partner/Director Intellectual Property and Entertainment Dept._

**_Long Island Office_**
3 Dakota Drive Suite 300
Lake Success, New York 11042
516-328-2300 x 251 | Phone
516-328-6638 |     Fax
sberman@abramslaw.com
www.abramslaw.com

<image001.png>

<image002.png> <image003.png> <image004.png> <image005.png>

CONFIDENTIALITY NOTICE. This e mail may be an attorney client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e mail and any attachments hereto. Please notify the sender and delete this e mail if you are not the intended recipient. AF/03

# EXHIBIT 9



RICHARD IDELL
ridell@dpf-law.com

ATTORNEYS AT LAW

January 21, 2022

**MEET AND CONFER
PURSUANT TO LOCAL RULE 251**

**VIA EMAIL ONLY
(SBerman@Abramslaw.com)**

Seth Berman, Esq.
ABRAMS FENSTERMAN
3 Dakota Drive, Suite 300
Lake Success, NY 11042

> Re:    <u>Yellowcake adv. Dashgo, et al.</u>
> **USDC, E.D.Cal., Case No. 1:21-cv-00803-AWI-BAM**

Dear Seth:

This letter follows on our meet and confer conference call of January 18, 2022 pursuant to Local Rule 251 and is further to your email of January 19, 2022, a copy of which is enclosed.

<u>Stipulated Protective Order</u>

We enclose a draft proposed form of stipulated protective order with this letter.

We received your draft proposed form of order. It is not acceptable to us for a number of material reasons, not the least of which is because your form is a one-tier stipulation and order. You have known since at least July 30, 2021 (when we sent you our draft of the joint scheduling conference report) that we want a two-tier protective order. This case undoubtedly involves our clients' (and, for that matter, your client's) highly sensitive confidential information and/or trade secrets. The enclosed form is based on the Northern District of California's approved form of stipulated protective order for litigation involving highly sensitive confidential information and/or trade secrets.

Please let us know whether you have any comments to the enclosed proposed form of protective order.

<u>Document Production</u>

We will begin our rolling production of our clients' documents within three weeks of the Court's entry of a protective order. Notwithstanding our commitment to commence production, we still need to reach an agreement on time limitation (see below).

Berman, Seth
January 21, 2022
Page 2

### Interrogatory Responses

During our call, the responses to Interrogatories Nos. 1, 3, 5, 7, 17, 18, 19 and 23 were not in dispute.

We agreed to revisit our responses to Interrogatories Nos. 13. 15, 20-22, 24 and 25 in view the issues that you raised on our telephone call in regard to our responses to those Interrogatories.

As to those Interrogatories, our understanding is that your issues are as follows:

- Interrogatories Nos.13, 15: You contend that an assertion of Yellowcake's claimed rights is not equivalent to a demand to cease "Exploitation" (as defined)

- Interrogatories Nos.13, 15, 20-22: You contend that our use of the word "delivery" is overly narrow in comparison to the purportedly defined term "Exploited"

- Interrogatory No. 24: You contend that we must provide job descriptions for each employee, officer and director identified

- Interrogatory No. 25: You contend that we are obligated to set forth facts substantiating any affirmative defenses which Dashgo or Adrev might assert in answer to whatever complaint ends up being the final operative complaint[1]

If our understanding is incorrect as to any of the above Interrogatories, please let us know, and indicate what you actually contend, as soon as possible.

Our notes of our call reflect that you stated that you had "no issue" with the responses to Interrogatories Nos. 1, 3, 5, 7, 17, 18, 19 and 23. For that reason, we are puzzled by the inclusion of Interrogatories Nos. 1, 3, 5 and 18 on your list.

We did discuss our use of the word "delivered" versus your defined term "Exploit" in relation to Interrogatory No. 3, and since it appears you are now taking issue with our response to that Interrogatory, as well as Interrogatories Nos. 1 and 5 (which use the same language), we will revisit those responses as well. However, we have no idea what you now take issue with in regard to our response to Interrogatory No. 18. There was no discussion on our call about this Interrogatory, and you specifically stated that you took no issue with the response. We suggest a further meet and confer call (which will be required in any event to resolve the time limitation issue) to discuss any issues with the response to Interrogatory No. 18.

---

[1] As you know, the Court has now entered its order granting our motion to dismiss your amended Complaint, with leave to amend. Of course, we do not presently know how our clients will be responding to any Second Amended Complaint, which has not yet been filed.

Berman, Seth
January 21, 2022
Page 3

As to our responses that we will be revisiting (Interrogatories Nos. 1, 3, 5, 13, 15, 20-22, 24 and 25), if we determine that amended responses are in order, we will provide those amended responses within ten (10) business days of the date of this letter, regardless of whether the time limitation issues are resolved by then (see below).

As to Interrogatories Nos. 2, 4, 6, 8-12, 14 and 16, you contend, without authority, that we cannot avail ourselves of the procedure set forth in FRCP 33(d). You did not explain why that would be. Defendants' use of a reference to documents to be produced is not only facially permissible, it is a perfectly appropriate and acceptable procedure for responding to categorically overbroad interrogatories that call for the preparation of a compilation or summary of facts which would require burdensome or expensive research – which is the case with each of these Interrogatories. Our proposal on the call was that we re-visit the issue of these Interrogatories once our clients' documents have been produced and you have had adequate opportunity to review them. Of course, if you would like to further meet and confer on the issue before then, we will make ourselves available to participate in a good faith meet and confer.

### Limitation as to Time

As you know, neither your Interrogatories nor your document requests state any timeframe, and therefore purport to be unlimited as to time. Our responses to both the interrogatories and the document requests thus include objections on the grounds of overbreadth as to time.

In your enclosed email of January 19, you offered to limit the scope of your discovery to January 1, 2010 to the present. This purported time limitation remains radically overbroad.

First, under 17 U.S.C. § 507, the statute of limitations on a claim for copyright infringement is three years. Thus, an infringement is actionable within three years, and only three years, of its occurrence; the infringer is insulated from liability for earlier infringements of the same work. *Petrella v. Metro-Goldwyn-Mayer, Inc.* (2014) 572 U.S. 663, 671. When a defendant is alleged to have engaged in a series of discrete infringing acts, the copyright holder's suit is timely only with respect to acts of infringement that occurred within the three-year window, but untimely with respect to prior acts of the same or similar kind. *Id.* at 671-672.

Yellowcake's complaint was filed on March 17, 2021. Therefore, to the extent either of our clients infringed on Yellowcake's rights (and we deny that any such infringement occurred at any time), the very earliest date for Yellowcake to recover from any such infringement would be March 17, 2018. Any allegedly-infringing acts that occurred prior to that date, and information (including without limitation financial information) relating to such alleged infringements, are irrelevant, and any discovery relating to such time-barred alleged infringements – and most certainly any discovery relating to Yellowcake's claimed damages – is inappropriate and, frankly, unreasonable.

Second, Yellowcake, Inc. was only incorporated on September 30, 2016, and therefore could not, and did not, acquire any rights before that date.

Berman, Seth
January 21, 2022
Page 4

Third, as is apparent from Yellowcake's document production to date, to the extent Yellowcake has any rights in or to the works defined in the amended complaint (and in your discovery) as "Yellowcake's Copyrighted Works" and "Foreign Works", Yellowcake did not acquire such rights to *any* of the allegedly copyrighted works before May 1, 2017, at the very earliest.

We believe that fixing a single timeframe for all of your discovery (regardless of whether the particular request relates to issues of liability or damages) is impractical. For example, damages discovery is certainly limited to the period of time within the statute of limitations, i.e., March 17, 2018 and forward. By contrast, discovery relating to, e.g., Dashgo's correspondence with David Hernandez may need to go back further in time. Each interrogatory and document request therefore should be independently evaluated with regard to time limitation.[2] Again, we are prepared to meet and confer with you on this issue and reach agreement on reasonable and appropriate time limitations.

In closing, we note that we did not discuss our objections to any Interrogatories other that Interrogatory No. 4, nor did we discuss your apparent issues with our response to Interrogatory No. 18. There also remains the issue of time limitation. We believe these matters can be most expeditiously resolved in a further Rule 251 meet and confer telephone call. We are prepared to make ourselves available for such a call at a mutually-convenient time.

Sincerely,

DICKENSON, PEATMAN & FOGARTY

Richard Idell

RJI:obs
Enclosures
cc:    Tom Griffin, Esq. (via email only to tgriffin@hsmlaw.com)
       Ory Sandel, Esq.
       Client

---

[2] Our clients' responses to Interrogatories Nos. 2, 4, 6, 8-12, 14 and 16 did include a reference to January 5, 2015, but on reflection no time period is necessary to the responses to Interrogatories Nos. 2, 4, 6, 8-12, 14 and 16, since the reference to documents pursuant to Rule 33(d) is to documents to be produced pursuant to your document requests. Accordingly, we will at the very least amend our responses to delete that date; thus, our work product-protected reasons for using that date are irrelevant. Again, we will get any amended interrogatory responses to you within ten business days of the date hereof.

## Ory Sandel

| | |
|---|---|
| **From:** | Seth L Berman <SBerman@Abramslaw.com> |
| **Sent:** | Wednesday, January 19, 2022 9:52 AM |
| **To:** | Richard J. Idell - External; Ory Sandel |
| **Cc:** | Tom Griffin |
| **Subject:** | Yellowcake v. Dashgo et al- Meet and Confer Follow-Up |

[External Email]

Gentleman:

Further our two hour meet and confer conference call yesterday, you have represented to us that you will send us a draft proposed protective order early next week. You also represented to us that, you would produce documents responsive to our document demand within three weeks of execution of the order. Also per our conversation, you represented to us that you will revisit your responses to interrogatory numbers 1,2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 18, 20, 21, 22, 24 and 25 but have not provided us with a time frame as to when you might revise your responses. Please advise as to when you might serve your amended interrogatory responses.  I also asked you during our call why you limited the time frame for your responses to after January 5, 2015 and you refused to provide us with an answer. Please tell us why you unilaterally chose to limit your responses to until after the very specific date of January 5, 2015. However, In a good faith attempt to resolving you objections concerning the time frame of our demands, we are willing to agree to limit all discovery responses from January 1, 2010 to the present. If we cannot resolve these discovery issues by early next week, we will have no choice but to write to the court pursuant to Local Rule 251. Please be guided accordingly.

Very truly yours,


_**Seth L. Berman**_, Esq. | _**Partner/Director Intellectual Property and Entertainment Dept.**_



_**Long Island Office**_

3 Dakota Drive Suite 300

Lake Success, New York 11042

516-328-2300 x 251 | Phone

516-328-6638 |    Fax

sberman@abramslaw.com

www.abramslaw.com



CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient. AF/01

HEFNER, STARK & MAROIS, LLP
Thomas P. Griffin, Jr., Esq. (SBN 155133)
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833
Telephone: (916) 925-6620
Facsimile: (916) 925-1127
Email: tgriffin@hsmlaw.com
*Attorneys for Plaintiff Yellowcake, Inc.*

RICHARD J. IDELL, ESQ. (SBN 069033)
ORY SANDEL, ESQ. (SBN 233204)
DICKENSON PEATMAN & FOGARTY P.C.
1455 First Street, Suite 301
Napa, CA 94559
Telephone: (707) 261-7000
Facsimile: (707) 255-6876
Email: ridell@dpf-law.com
          osandel@dpf-law.com
*Attorneys for Defendants Dashgo, Inc. and
Audiomicro, Inc. d.b.a. Adrev*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation, | CASE NO. 1:21-cv-00803-AWI-BAM |
| Plaintiff, | **STIPULATED PROTECTIVE ORDER** |
| v. | |
| DASHGO, INC., a Delaware corporation; and AUDIOMICRO, INC. d/b/a ADREV, a Delaware corporation, | |
| Defendants. | |

STIPULATED PROTECTIVE ORDER

1.    PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, Plaintiff Yellowcake, Inc. ("Yellowcake" or "Plaintiff"), on the one hand, and Defendants Dashgo, Inc. ("Dashgo") and AudioMicro, Inc. d/b/a Adrev ("Adrev") (collectively, "Defendants") (Plaintiff and Defendants are, jointly, the "Parties") hereby stipulate to and petition the Court to enter the following Stipulated Protective Order.

The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not automatically entitle them to file confidential information under seal.

2.    DEFINITIONS

2.1    Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2    "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3    Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.4    Designated House Counsel: House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter.

2.5    Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY".

2.6    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.8    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of significant financial or competitive harm that could not be avoided by less restrictive means.

2.9    House Counsel: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11    Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.13    Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.14    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.17    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3.     SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a

Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4.      DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.      DESIGNATING PROTECTED MATERIAL

5.1      Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or to have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2    Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings) produced by a Producing Party itself or using a third party discovery service, that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to each page that contains protected material before production. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

If, alternatively, a Party or Non-Party makes original documents or materials available for inspection, the Party or Non-Party need not designate them for protection

until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY") to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 21 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party may specify, at the

deposition or up to 21 days afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Parties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY". If only a portion or portions of the information or item warrant protection, the Producing

Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the

designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3    <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without court intervention, the Challenging Party shall file and serve a motion challenging the confidentiality designation within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph and relevant Local Rules. Failure by the Challenging Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the right to challenge the confidentiality designation of each challenged designation.

The burdens of proof and persuasion in any such challenge proceeding shall be on the Challenging Party. Frivolous challenges or those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Pending any motion challenging the confidentiality designation as described above, all parties shall continue to afford the material in question the level of protection under the Producing Party's designation until the court rules on the challenge.

7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for

prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably

necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit

A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of

transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be

separately bound by the court reporter and may not be disclosed to anyone except as permitted

under this Stipulated Protective Order; and

(g) the author or recipient of a document containing the information or a custodian or

other person who otherwise possessed or knew the information.

7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

Information or Items. Unless otherwise ordered by the court or permitted in writing by the

Designating Party, a Receiving Party may disclose any information or item designated

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees

of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information

for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that

is attached hereto as Exhibit A;

(b) Designated House Counsel of the Receiving Party (1) who has no involvement in

competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation,

(3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as

to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed;

(c) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this

litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A),

and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed;

(d) the court and its personnel;

(e) court reporters and their staff, professional jury, mock jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4 Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items to Designated House Counsel or Experts.

(a)(1) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Designated House Counsel any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated House Counsel and the city and state of his or her residence, and (2) describes the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-making.

(a)(2) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3)

attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

 (b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Designated House Counsel or Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

 (c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to Designated House Counsel or the Expert may file a motion seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to Designated House Counsel or the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the

disclosure.

In any such proceeding, the Party opposing disclosure to Designated House Counsel or the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House Counsel or Expert.

8.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these

provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

9.      A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)     The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY". Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections. Documents produced by a Non-Party shall be deemed "CONFIDENTIAL" for a period of 30 days from the date of production, during which time any Party or the Non-Party may designate or re-designate all or any part of the Non-Party's document production as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY".

(b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

    1. promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

    2. promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

    3. make the information requested available for inspection by the Non-Party.

(c)    If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

If information is inadvertently produced in discovery that is subject to a claim of privilege or other protection, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, any notified party must promptly return or destroy the specified information and any copies it has, and may not sequester, use or disclose the information until the claim is resolved. This includes a restriction against presenting the information to the court for a determination of the claim.

This provision is not intended to modify whatever procedure may be established in an e-discovery or other court order that provides for production without prior privilege review.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with the relevant Federal Rules of Civil Procedure and Local Rule 141. Pursuant to Local Rule 141, a Notice of Request to Seal Document(s) shall be filed electronically. The Request to Seal, a proposed sealing order (in Word), and all documents covered by the request shall be emailed to awiorders@caed.uscourts.gov. If the request is approved and notice of electronic filing of the sealing order is received, all documents covered by the order must be emailed to ApprovedSealed@caed.uscourts.gov for filing under seal.

13.    FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must either: (a) return all Protected Material to the Producing Party; or (b) destroy all Protected Material. As used in this subdivision, "all Protected Material" includes all

copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that: (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed; and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain a single archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD

Jointly submitted this _____ day of _____, 2022.

Dated: _____        HEFNER, STARK & MAROIS, LLP

                                 By:  /s/ Thomas P. Griffin
                                      Thomas P. Griffin
                                      *Attorneys for Plaintiff Yellowcake, Inc.*


Dated: _____        DICKENSON PEATMAN & FOGARTY P.C.

                                 By:  /s/ Richard Idell
                                      Richard J. Idell
                                      Ory Sandel
                                      *Attorneys for Defendants Dashgo, Inc. and*
                                      *Audiomicro, Inc. d.b.a. Adrev*

STIPULATED PROTECTIVE ORDER
-18-

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____

_____ [print or type full address], declare under penalty of perjury that I

have read in its entirety and understand the Stipulated Protective Order that was issued by the

United States District Court for the Eastern District of California on _____ [date]

in the case of *Yellowcake, Inc. v. Dashgo, Inc., et al.*, being Case No. 1:21-cv-00803-AWI-BAM.

  I agree to comply with and to be bound by all the terms of the Stipulated Protective Order

and I understand and acknowledge that failure to so comply could expose me to sanctions and

punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner

any information or item that is subject to this Stipulated Protective Order to any person or entity

except in strict compliance with the provisions of this Order.

  I further agree to submit to the jurisdiction of the United States District Court for the

Eastern District of California for the purpose of enforcing the terms of this Stipulated Protective

Order, even if such enforcement proceedings occur after termination of this action.

  I hereby appoint _____ [print or type full name] of _____

_____ [print or type full address and telephone number] as my California

agent for service of process in connection with this action or any proceedings related to

enforcement of this Stipulated Protective Order.


Date: _____


City and State where sworn and signed: _____


Printed name: _____


Signature: _____

EXHIBIT 10




**Attachments:**          DH1 Media Statements March '20 - July '20.zip

**Caution: This email originated outside of the organization**

---------- Forwarded message ---------
From: **Erik Gressinger** <erik@adrev.net>
Date: Thu, Jul 30, 2020, 1:18 PM
Subject: Re: Statements and infringements
To: Ben Patterson <benp@dashgo.com>
Cc: David Hernandez <davidh@colonizemedia.com>

Hi David,

$122,246.78 will be deposited tomorrow, 7/31, for March '20 - July '20 statements. The money was held due to strikes on our MCN but this has been resolved.

Best,

Erik Gressinger
DashGo, Inc.
Royalties Manager
http://www.dashgo.com

On Thu, Jul 30, 2020 at 9:52 AM Ben Patterson <benp@dashgo.com> wrote:
Erik will provide whatever statements we have. We've responded to all your takedown requests per your instructions to remove at your direction. If you want us to trigger a complete takedown of any remaining catalog effective immediately we can do that today please let us know.

Ben

On Thu, Jul 30, 2020 at 9:25 AM David Hernandez <davidh@colonizemedia.com> wrote:
Hi Eric,

It just came to my attention from our team that we have not been receiving statements.

Something alarming that also just came to my attention is that many assets not under distribution by Dashgo have been distributed without authorization and many are still being claimed in other platforms. We ended our relationship with Dashago many years ago, nothing else should be distributed or claimed by DashGo or AudioBee.

1

PLF009532

Can you please let me know what is going on and please send reports?

Thank you!

--
David Hernandez | CEO | COLONIZE MEDIA, INC | 415-735-8236 | DavidH@ColonizeMedia.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

--
Ben Patterson
President



310-310-2382
2999 Overland Ave. Suite 123
Los Angeles CA 90064
benp@dashgo.com
Subscribe to get news from DashGo: http://eepurl.com/bp31kD

2

PLF009533

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CO | | | | | | | | A41359439 2428116 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | | | | | | | | A21550101 2962681 | | | | 49 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | | | A21550101 2962681 | | | | 51 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | | | | | | 11 | | A15452897 1652650 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | 14 | | A22388560 3781809 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | | | | | | 15 | | A15670446 5466403 | | | | 7 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | 15 | | A15670446 5466403 | | | | 4 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | | | | | | 16 | | A63593773 3591124 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | 16 | | A63593773 3591124 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | | | | | | 5 | | A54539404 9106241 | | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | 5 | | A54539404 9106241 | | | | 4 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | BUKNAS DE CULIACAN | | | | | BUKNAS EN EL RACHO AYALA! | | A86044747 3222427 | | | | 11 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | BUKNAS DE CULIACAN | | | | | BUKNAS EN EL RACHO AYALA! | | A86044747 3222427 | | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | BUKNAS DE CULIACAN | | | | | BuKnas en Las Palmas Las Vegas nevada 102811 | | A70702436 1225447 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | Buknas de culiacan | | | | | BUKNAS MONTAN DO CABALLO | | A84975370 3204765 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | LOS VAQUETO NES | | | | | CRAZY ASS VAQUETO NES (EN VIVO) | | WgXYsu00k Ks | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US | LOS VAQUETONES | | | | | CRAZY ASS VAQUETONES (EN VIVO) | | WgXYsu00kKs | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| US | EL TALIVAN ALTERADO | | | | | EL TALIVAN TRADUCIENDO PORTUGUES | | A151437819628114 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| US | Buknas de culiacan | | | | | en las vegas | | A535271068397086 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| CO | | | | | | GRUPO RENKO 1-Dame Un Beso. | | A846115748314466 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| ES | | | | | | GRUPO RENKO 1-Dame Un Beso. | | A846115748314466 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| MX | | | | | | GRUPO RENKO 1-Dame Un Beso. | | A846115748314466 | | | | 417 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| US | | | | | | GRUPO RENKO 1-Dame Un Beso. | | A846115748314466 | | | | 313 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| MX | | | | | | GRUPO RENKO 1-Dame Un Beso. | 6rx3NyWZuB0 | | | | | 2 | USD | S | | 0.0039 | 1 | 0.0039 | 90.00% | 0.00351 | 0.00% | 0 | 0 |
| US | | | | | | GRUPO RENKO 1-Dame Un Beso. | 6rx3NyWZuB0 | | | | | 3 | USD | S | | 0.03244 | 1 | 0.03244 | 90.00% | 0.0292 | 0.00% | 0 | 0 |
| MX | | | | | | GRUPO RENKO 1-Toquenme La Que Le Gusta A Mi Novia. | | A428919533200272 | | | | 4 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| US | | | | | | GRUPO RENKO 1-Toquenme La Que Le Gusta A Mi Novia. | | A428919533200272 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | | | | | | GRUPO RENKO 10-Galopando En La Pradera. | | A76223248 8759202 | | | | 70 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 10-Galopando En La Pradera. | | A76223248 8759202 | | | | 39 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 10-Siempre Te Recordare | | A82617193 2621572 | | | | 74 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| PE | | | | | | GRUPO RENKO 10-Siempre Te Recordare | | A82617193 2621572 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 10-Siempre Te Recordare | | A82617193 2621572 | | | | 47 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| HN | | | | | | GRUPO RENKO 2-El Picorete. | | A57658030 3914685 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 2-El Picorete. | | A57658030 3914685 | | | | 86 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 2-El Picorete. | | A57658030 3914685 | | | | 120 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 2-Quien Es Mejor Que Quien. | | A90691151 7116677 | | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 2-Quien Es Mejor Que Quien. | | A90691151 7116677 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | | | | | | GRUPO RENKO 3- Como Cuando Estabas Tu. | | A47048214 7278814 | | | | 67 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 3- Como Cuando Estabas Tu. | | A47048214 7278814 | | | | 39 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 3- El Plebeyo. | | A85176784 2713242 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 4- La Pobreza Es Una Cruz. | | A93469725 3024242 | | | | 12 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 4- La Pobreza Es Una Cruz. | | A93469725 3024242 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 4- Toquenme La Que Le Gusta A Mi Novia. | | A90539121 1310563 | | | | 76 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 4- Toquenme La Que Le Gusta A Mi Novia. | | A90539121 1310563 | | | | 56 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 4- Toquenme La Que Le Gusta A Mi Novia. | 8rLNxmVc QKI | | | | | 1 | USD | S | | 0.00163 | 1 | 0.00163 | 90.00% | 0.00147 | 0.00% | | 0 | 0 |
| HN | | | | | | GRUPO RENKO 5- Corazon Solitario. | | A56994839 1250659 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | | | | | | GRUPO RENKO 5- Corazon Solitario. | | A56994839 1250659 | | | | 62 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 5- Corazon Solitario. | | A56994839 1250659 | | | | 52 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 5- Corazon Solitario. | D4zPYM8 ZZd8 | | | | | 1 | USD | S | | 0.00227 | 1 | 0.00227 | 90.00% | 0.00204 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 5- Corazon Solitario. | D4zPYM8 ZZd8 | | | | | 3 | USD | S | | 0.0145 | 1 | 0.0145 | 90.00% | 0.01305 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 5- Tu Equivocaci on. | | A21827557 3860889 | | | | 47 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 5- Tu Equivocaci on. | | A21827557 3860889 | | | | 35 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| CR | | | | | | GRUPO RENKO 5- Tu Equivocaci on. | O-o7yy_qJlk | | | | | 1 | USD | S | | 0.00281 | 1 | 0.00281 | 90.00% | 0.00253 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 5- Tu Equivocaci on. | O-o7yy_qJlk | | | | | 1 | USD | S | | 0.0078 | 1 | 0.0078 | 90.00% | 0.00702 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 6- Eres. | | A47420557 8303904 | | | | 95 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 6- Eres. | | A47420557 8303904 | | | | 68 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 6- Eres. | 6x0Omx-E0Oc | | | | | 6 | USD | S | | 0.02643 | 1 | 0.02643 | 90.00% | 0.02379 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 6- Prestame El Horno. | | A54405055 5294557 | | | | 146 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 6- Prestame El Horno. | | A54405055 5294557 | | | | 80 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ES | | | | | | GRUPO RENKO 7- Al Amor De Mi Vida. | | A82552109 9282351 | | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 7- Al Amor De Mi Vida. | | A82552109 9282351 | | | | 136 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 7- Al Amor De Mi Vida. | | A82552109 9282351 | | | | 99 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 7- Al Amor De Mi Vida. | 8QyfeIQkYnA | | | | | 1 | USD | S | | 0.00227 | 1 | 0.00227 | 90.00% | 0.00204 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 7- Al Amor De Mi Vida. | 8QyfeIQkYnA | | | | | 3 | USD | S | | 0.0157 | 1 | 0.0157 | 90.00% | 0.01413 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 7- Yo Quiero Ser. | | A72955966 1938318 | | | | 25 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 7- Yo Quiero Ser. | | A72955966 1938318 | | | | 21 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| ES | | | | | | GRUPO RENKO 8- Que Bonita chaparrita . | | A47717053 2612792 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | GRUPO RENKO 8- Que Bonita chaparrita . | | A47717053 2612792 | | | | 99 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | GRUPO RENKO 8- Que Bonita chaparrita . | | A47717053 2612792 | | | | 51 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | | | | | | GRUPO RENKO 8- Rompi El Vestido Blanco. | | A34908875 7370181 | | | | 7 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| US | | | | | | GRUPO RENKO 8- Rompi El Vestido Blanco. | | A34908875 7370181 | | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| MX | | | | | | GRUPO RENKO 9- Latir De Amor. | | A94667810 4991616 | | | | 87 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| US | | | | | | GRUPO RENKO 9- Latir De Amor. | | A94667810 4991616 | | | | 70 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| MX | | | | | | GRUPO RENKO 9- Los Vergelitos. | | A90859487 3336614 | | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| US | | | | | | GRUPO RENKO 9- Los Vergelitos. | | A90859487 3336614 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| MX | | | | | | Jaime Haro - Alma de acero | | A27396148 4299774 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| MX | | | | | | Jaime Haro - Juro que nunca volvere | | A23529056 1032040 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| MX | | | | | | Jaime Haro - La AraÃ±a | | A82190161 5683867 | | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| MX | | | | | | Jaime Haro - La enorme distancia | | A11694952 1395985 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| SV | | | | | | JOSE RUVALCA BA HUERFAN O DE AMOR | | A51017319 5684568 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |
| BO | | | | | | Jose Ruvalcaba Regalame esta noche | | A45549084 6502801 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 | |

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | Videold | Channelld | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | | | | | | Jose Ruvalcaba Regalame esta noche | | A45549084 6502801 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | Jose Ruvalcaba Regalame esta noche | | A45549084 6502801 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| GT | | | | | | JOSE RUVALCA BA - CUATRO NOCHES | | A36908251 0379409 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | JOSE RUVALCA BA - EL GUERO BANDOLE RO | | A36993163 0001843 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | JOSE RUVALCA BA - LA CHIMENE A DE MI COMADRE | | A34197863 9588243 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | Jose Ruvalcaba - Lupe Ruvalcaba 0 | | A60054200 5295170 | | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | Jose Ruvalcaba - Lupe Ruvalcaba 0 | | A60054200 5295170 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | Jose Ruvalcaba - Macario Leyva0 | | A13307740 1805482 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | Jose Ruvalcaba - Macario Leyva0 | | A13307740 1805482 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | JOSE RUVALCA BA - SI ME RECUERD AS | | A80708164 9798804 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US | | | | | | Jose Ruvalcaba - Ya no presumas | | A8447S054 0955340 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | jose ruvalcaba la mafia muere | | A53864900 4199097 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| AR | buknas de culiacan | | | | | Lo Mas Nuevo de BuKnas de Culiacan!! !!estrategia de karicias | | A41823546 6042271 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | LOS TRIUNFADORES DEL VALLE 11-Alma Enamorada. | | A37127740 3014531 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | LOS TRIUNFADORES DEL VALLE 12-Mario Peralta. | | A82252707 2168373 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| FR | | | | | | LOS TRIUNFADORES DEL VALLE 14-Clemente Soto. | | A94596341 0980448 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| MX | | | | | | LOS TRIUNFADORES DEL VALLE 14-Clemente Soto. | | A94596341 0980448 | | | | 19 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |
| US | | | | | | LOS TRIUNFADORES DEL VALLE 14-Clemente Soto. | | A94596341 0980448 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 | |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | | | | | | LOS TRIUNFAD ORES DEL VALLE 15-Eladio Felix. | A84642023 2978273 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| US | | | | | | LOS TRIUNFAD ORES DEL VALLE 15-Eladio Felix. | A84642023 2978273 | | | | 4 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| MX | | | | | | LOS TRIUNFAD ORES DEL 18VALLE El Navegant e. | A27087741 9643647 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| US | | | | | | LOS TRIUNFAD ORES DEL VALLE 16-El Navegant e. | A27087741 9643647 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| MX | | | | | | LOS TRIUNFAD ORES DEL VALLE 17-El Pelavacas. | A91694396 2869623 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| US | | | | | | LOS TRIUNFAD ORES DEL VALLE 18-Rodolfo Garza. | A14523472 1523309 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |
| MX | | | | | | LOS TRIUNFAD ORES DEL VALLE 19-Rencilla Vieja. | A27475432 2641713 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | 0 | 0 |

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | | | | | | LOS TRIUNFAD ORES DEL VALLE 2- El pitallon. | | A23085173 7347475 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | LOS TRIUNFAD ORES DEL VALLE 20- Jorge Cazarez. | | A76426427 1885572 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | LOS TRIUNFAD ORES DEL 4-VALLE Ya despues de muerto. | | A13425036 0053055 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | LOS TRIUNFAD ORES DEL VALLE 4- Ya despues de muerto. | | A13425036 0053055 | | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | LOS TRIUNFAD ORES DEL VALLE 4- Ya despues de muerto. | #NAME? | | | | | 1 | USD | S | | 0.01454 | 1 | 0.01454 | 90.00% | 0.01309 | 0.00% | | 0 | 0 |
| MX | | | | | | LOS TRIUNFAD ORES DEL VALLE 5- Corrido de Gilberto. | | A24169509 9584016 | | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | LOS TRIUNFAD ORES DEL VALLE 5- Corrido de Gilberto. | | A24169509 9584016 | | | | 4 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US | | | | | | LOS TRIUNFADORES DEL VALLE 6-Coquillo Castro. | | A90628144 43S8736 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | LOS TRIUNFADORES DEL VALLE 7-Tino Quintero. | | A47080930 0820671 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | Los Vaquetones Del Hyphy Todo Me Sale Mal Promo 2010 | | FHX1ucPCLv 0 | | | | 6 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | Los Vaquetones Del Hyphy : Todo Me Sale Mal Promo 2010 | | FHX1ucPCLv 0 | | | | 8 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | Los Vaquetones Del Hyphy El Ojete | | jmedpAk6A Bw | | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | Los Vaquetones Del Hyphy El Ojete | | jmedpAk6A Bw | | | | 4 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| CL | Los Vaquetones | | | | | Los Vaquetones Del Hyphy El Sandwich | | CAfAM-o_KlM | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | Los Vaquetones | | | | | Los Vaquetones Del Hyphy El Sandwich | | CAfAM-o_KlM | | | | 16 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US | Los Vaquetones | | | | | Los Vaquetones Del Hyphy El Sandwich | | CAfAM-o_KiM | | | | 16 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | Los Vaquetones | | | | | Los Vaquetones Del Hyphy El Sandwich | Vst5Z9cilg w | | | | | 1 | USD | S | | 0.01454 | 1 | 0.01454 | 90.00% | 0.01309 | 0.00% | | 0 | 0 |
| MX | | | | | | Los Vaquetones Del hyphy En Vivo En el Midnite Rodeo de Charlotte | | 1yC_2VXwq HA | | | | 4 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | Los Vaquetones Del hyphy En Vivo En el Midnite Rodeo de Charlotte | | 1yC_2VXwq HA | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | Los Vaquetones Puro Pari Por Las Noches 2010 | | pQGZJw70c HE | | | | 12 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | Los Vaquetones Puro Pari Por Las Noches 2010 | | pQGZJw70c HE | | | | 10 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | MARLON Y SU GRUPO KARISMA 10 - Hermano. | | A81355312 1143066 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US | | | | | | MARLON Y SU GRUPO KARISMA 10 - Hermano. | | A813553121143066 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | MARLON Y SU GRUPO KARISMA 6 - Como Olvidarte. | | A807592016329081 | | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | MARLON Y SU GRUPO KARISMA 2- Vuelve. | | A664006303979126 | | | | 4 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | MARLON Y SU GRUPO KARISMA 4 - Agradezco A Dios. | | A220721880393272 | | | | 6 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | MARLON Y SU GRUPO KARISMA 5 - Muestrame. | | A256582271847336 | | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | MARLON Y SU GRUPO KARISMA 8- Buscame. | | A203800383736498 | | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | MARLON Y SU GRUPO KARISMA 1 - Lagrimas De Amor. | | A317115972693289 | | | | 12 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | MARLON Y SU GRUPO KARISMA 3 - Buscando Amor. | | A370846604425479 | | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US | | | | | | MARLON Y SU GRUPO KARISMA 3 - Buscando Amor. | | | A37084660 4425479 | | | 11 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | MARLON Y SU GRUPO KARISMA 9 - Solo. | | | A54746624 4455340 | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| SA | | | | | | MR PATO 1- Piensalo Mi Amor. | | | A71522621 2378657 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | MR PATO 1- Piensalo Mi Amor. | | | A71522621 2378657 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| PE | | | | | | MR PATO 8- Mi Cafetal. | | | A74238139 5823767 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | | | | | | ultima bolero imagenes | | | A74147481 8072625 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| US | | | | | | ultima bolero imagenes | | | A74147481 8072625 | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | | 0 | 0 |
| MX | Noel Torres | INACTIVE - En Vivo La Disco Music | Noel Torres | 1.87E+10 | | Con Que Me Pagas | | | | US3DF110 0345 | | 1 | USD | | | 0 | | 0.00015 | 90.00% | 0.00013 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - En Vivo La Disco Music | Noel Torres | 1.87E+10 | | Con Que Me Pagas | | | | US3DF110 0345 | | 2 | USD | | | 0 | | 0.00073 | 90.00% | 0.00066 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - En Vivo La Disco Music | Noel Torres | 1.87E+10 | | Corrido De Valdo | | | | US3DF110 0343 | | 1 | USD | | | 0 | | 0.00015 | 90.00% | 0.00013 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - En Vivo La Disco Music | Noel Torres | 1.87E+10 | | Corrido De Valdo | | | | US3DF110 0343 | | 16 | USD | | | 0 | | 0.00587 | 90.00% | 0.00528 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - En Vivo La Disco Music | Noel Torres | 1.87E+10 | | El Chapo Mas Alto | | | | US3DF110 0344 | | 2 | USD | | | 0 | | 0.00031 | 90.00% | 0.00028 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - En Vivo La Disco Music | Noel Torres | 1.87E+10 | | El Chapo Mas Alto | | | | US3DF110 0344 | | 12 | USD | | | 0 | | 0.0044 | 90.00% | 0.00396 | 0.00% | N | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | El Chepo | | | US3DF110 0340 | | | 1 | USD | | | 0 | | 0.00015 | 90.00% | 0.00013 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | El Chepo | | | US3DF110 0340 | | | 30 | USD | | | 0 | | 0.01101 | 90.00% | 0.00991 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | El Comando Del Diablo | | | US3DF110 0341 | | | 8 | USD | | | 0 | | 0.00123 | 90.00% | 0.00111 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | El Comando Del Diablo | | | US3DF110 0341 | | | 16 | USD | | | 0 | | 0.00587 | 90.00% | 0.00528 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | El Corrido De Francisco | | | US3DF110 0339 | | | 2 | USD | | | 0 | | 0.00031 | 90.00% | 0.00028 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | El Corrido De Francisco | | | US3DF110 0339 | | | 18 | USD | | | 0 | | 0.0066 | 90.00% | 0.00594 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | El S-T | | | US3DF110 0338 | | | 1 | USD | | | 0 | | 0.00015 | 90.00% | 0.00013 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | El S-T | | | US3DF110 0338 | | | 3 | USD | | | 0 | | 0.0011 | 90.00% | 0.00099 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Intro | | | US3DF110 0337 | | | 1 | USD | | | 0 | | 0.00015 | 90.00% | 0.00013 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Intro | | | US3DF110 0337 | | | 1 | USD | | | 0 | | 0.00037 | 90.00% | 0.00033 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | No Me La Tiro De Vivo | | | US3DF110 0346 | | | 1 | USD | | | 0 | | 0.00015 | 90.00% | 0.00013 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | No Me La Tiro De Vivo | | | US3DF110 0346 | | | 19 | USD | | | 0 | | 0.00697 | 90.00% | 0.00627 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Sin Verte Sin Oirte Sin Hablarte | | | US3DF110 0347 | | | 1 | USD | | | 0 | | 0.00015 | 90.00% | 0.00013 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Sin Verte Sin Oirte Sin Hablarte | | | US3DF110 0347 | | | 3 | USD | | | 0 | | 0.0011 | 90.00% | 0.00099 | 0.00% | N | 0 | 0 |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MX | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Con Que Me Pagas | | | US3DF110 0345 | | | 1 | USD | S | | 0.00236 | 1 | 0.00236 | 90.00% | 0.00212 | 0.00% | N | 0 | 0 |
| GT | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Con Que Me Pagas | | A65695331 1586527 | US3DF110 0345 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Con Que Me Pagas | | A65695331 1586527 | US3DF110 0345 | | | 86 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Con Que Me Pagas | | A65695331 1586527 | US3DF110 0345 | | | 205 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| MX | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | | US3DF110 0343 | | | 4 | USD | S | | 0.00945 | 1 | 0.00945 | 90.00% | 0.00851 | 0.00% | N | 0 | 0 |
| US | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | | US3DF110 0343 | | | 2 | USD | S | | 0.01742 | 1 | 0.01742 | 90.00% | 0.01568 | 0.00% | N | 0 | 0 |
| AD | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 8 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| AE | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 2 | USD | S | | 0.00224 | 1 | 0.00224 | 90.00% | 0.00202 | 0.00% | N | 0 | 0 |
| AG | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| AM | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| AR | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 2783 | USD | S | | 0.70873 | 1 | 0.70873 | 90.00% | 0.63786 | 0.00% | N | 0 | 0 |
| AT | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 1 | USD | S | | 0.00101 | 1 | 0.00101 | 90.00% | 0.00091 | 0.00% | N | 0 | 0 |
| AU | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 1 | USD | S | | 0.00286 | 1 | 0.00286 | 90.00% | 0.00257 | 0.00% | N | 0 | 0 |
| AW | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AZ | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| BE | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| BG | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| BO | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 167 | USD | S | | 0.01819 | 1 | 0.01819 | 90.00% | 0.01637 | 0.00% | N | 0 | 0 | |
| BR | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 163 | USD | S | | 0.05119 | 1 | 0.05119 | 90.00% | 0.04607 | 0.00% | N | 0 | 0 | |
| BZ | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| CA | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 22 | USD | S | | 0.04831 | 1 | 0.04831 | 90.00% | 0.04348 | 0.00% | N | 0 | 0 | |
| CH | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 10 | USD | S | | 0.01193 | 1 | 0.01193 | 90.00% | 0.01074 | 0.00% | N | 0 | 0 | |
| CL | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 1687 | USD | S | | 0.63105 | 1 | 0.63105 | 90.00% | 0.56795 | 0.00% | N | 0 | 0 | |
| CO | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 2869 | USD | S | | 0.75077 | 1 | 0.75077 | 90.00% | 0.67569 | 0.00% | N | 0 | 0 | |
| CR | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 482 | USD | S | | 0.1223 | 1 | 0.1223 | 90.00% | 0.11007 | 0.00% | N | 0 | 0 | |
| CU | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 12 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| CW | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 5 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| CY | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF110 0343 | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |

PL

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CZ | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 2 | USD | S | | 0.00068 | 1 | 0.00068 | 90.00% | 0.00061 | 0.00% | N | 0 | 0 | |
| DE | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 11 | USD | S | | 0.00677 | 1 | 0.00677 | 90.00% | 0.00609 | 0.00% | N | 0 | 0 | |
| DK | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| DO | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 332 | USD | S | | 0.05362 | 1 | 0.05362 | 90.00% | 0.04826 | 0.00% | N | 0 | 0 | |
| DZ | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| EC | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 309 | USD | S | | 0.03239 | 1 | 0.03239 | 90.00% | 0.02915 | 0.00% | N | 0 | 0 | |
| EG | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| EH | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| ES | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 1937 | USD | S | | 1.85207 | 1 | 1.85207 | 90.00% | 1.66686 | 0.00% | N | 0 | 0 | |
| FI | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| FR | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 10 | USD | S | | 0.00785 | 1 | 0.00785 | 90.00% | 0.00706 | 0.00% | N | 0 | 0 | |
| GB | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 13 | USD | S | | 0.01783 | 1 | 0.01783 | 90.00% | 0.01605 | 0.00% | N | 0 | 0 | |
| GQ | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |
| GR | Noel Torres | INACTIVE - En Vivo La Disco Music | | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg80k | US3DF1100343 | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 | |

| Region | Artist Name | Label Name | Album Name | Track Artist | UPC | Track Title | VideoId | ChannelId | ISRC | Label Track ID | Composers | Units | Currency | Product Type | Use Type | Revenue | Exchange Rate | USD Revenue | Distribution Rate | Net Revenue | Deal Share | Cover Song | Mechanical Deduction | Pub Admin Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GT | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 237 | USD | S | | 0.02959 | 1 | 0.02959 | 90.00% | 0.02663 | 0.00% | N | 0 | 0 |
| HK | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 1 | USD | S | | 0.00614 | 1 | 0.00614 | 90.00% | 0.00553 | 0.00% | N | 0 | 0 |
| HN | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 361 | USD | S | | 0.04535 | 1 | 0.04535 | 90.00% | 0.04082 | 0.00% | N | 0 | 0 |
| HU | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 4 | USD | S | | 0.00051 | 1 | 0.00051 | 90.00% | 0.00046 | 0.00% | N | 0 | 0 |
| ID | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 2 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| IE | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| IL | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 3 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| IN | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| IQ | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 6 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| IS | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| IT | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 17 | USD | S | | 0.00398 | 1 | 0.00398 | 90.00% | 0.00358 | 0.00% | N | 0 | 0 |
| JP | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 3 | USD | S | | 0.00786 | 1 | 0.00786 | 90.00% | 0.00707 | 0.00% | N | 0 | 0 |
| LY | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 1 | USD | S | | 0 | | 0 | 90.00% | 0 | 0.00% | N | 0 | 0 |
| MA | Noel Torres | INACTIVE - La Disco Music | En Vivo | Noel Torres | 1.87E+10 | Corrido De Valdo | | 0wSTzFg8_0k | US3DF1100343 | | | 6 | USD | S | | 0.00011 | 1 | 0.00011 | 90.00% | 0.0001 | 0.00% | N | 0 | 0 |

# EXHIBIT 11



**Long Island**
3 Dakota Drive, Suite 300,
Lake Success, NY 11042
516.328.2300  **P**
info@abramslaw.com  **E**

Long Island · Brooklyn · White Plains · Rochester · Albany

Seth L. Berman, Esq.
Partner
sberman@abramslaw.com

February 4, 2022

<u>VIA EMAIL ONLY</u>
DICKENSON, PEATMAN & FOGARTY
Richard Idell, Esq. (RIdell@dpf-law.com)
1455 First Street, Suite 301
Napa, CA 94559

   Re: *YellowCake, Inc. v. DashGo, Inc., et al*
      Case No. 1: 21-cv-00803 (AWI) (BAM)

Dear Mr. Idell:

   As you are aware, this law firm is counsel to the plaintiff, Yellowcake Inc. ("Yellowcake" or "Plaintiff") in the above-referenced action. We write in response to your correspondence dated January 21, 2022, in which you, among other things, memorialize your position in furtherance of our meet and confer conference call of January 18, 2022. We address the issues raised in your correspondence as follows.

   <u>Stipulated Protective Order</u>

   With respect to the proposed protective order you enclosed, we cannot stipulate to such a proposal. While we remain amenable to a one-tier stipulation, as previously disclosed, we cannot agree to the blanket two-tier protective order you have drafted. As you have stated, the protective order you propose concerns the protection of highly sensitive confidential information and/or trade secrets. However, the need for disclosure of such confidential information and/or trade secrets is neither relevant, nor applicable to this matter.

   As you are undoubtedly aware, under the two-tier protective order as proposed, the principals of our clients would not be permitted to review the disclosed protected information classified as for "Highly Confidential - Attorneys Eyes Only."  Respectfully,

ABRAMS | FENSTERMAN
ATTORNEYS AT LAW

February 4, 2022
Page 2

_____

this is unacceptable as we see no reason why the principals of our clients should not be permitted to review any disclosed material.

Respectfully, the only financial information that could ever warrant such a heightened protective measure would be financial information such as any royalties' reports from our respective clients, but we maintain that our proposed one-tier protective order sufficiently addresses any such concerns you may have.

<u>Interrogatory Responses</u>

With respect to our purported disagreement over the validity of your responses to Plaintiff's Interrogatories, I remain insistent on further responses based on the concerns set forth in my email dated January 19, 2022, that you have attached to your correspondence.

In furtherance of Plaintiff's assertion that Defendants cannot universally avail themselves of the procedure set forth in Fed. R. Civ. P. 33(d), that statute provides, in relevant part that "where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served . . . it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained. . . ." In order to appropriately employ this statute, the disclosing party must, among other things, "list the specific document provided the other party and indicat[e] the page or paragraphs that are responsive to the interrogatory." *Athwal v. Cty. of Stanislaus*, No. 15-cv-0311, 2021 WL 4505554, at *3 (E.D.C.A. Oct. 1, 2021). Your boilerplate responses have failed to include the requisite specificity of the exact location of the purported documents, or rather, include any specificity at all.

Indeed, your failure to provide with any specificity the documents and/or their location which are purportedly responsive to the interrogatories is in direct contravention of the purposes of the statute. *See id* at *3 ("when invoking Rule 33(d), the responding party has the duty to specify by category and location, the records from which answers to interrogatories can be derived."); *see also O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 278 (C.D. Cal. 1999) (holding that when voluminous documents are produced under Rule 33(d), they must be accompanied by indices designed to guide the searcher to the documents responsive to the interrogatories). Accordingly, we renew our demand that you serve amended interrogatory responses.

ABRAMS | FENSTERMAN
ATTORNEYS AT LAW

February 4, 2022
Page 3

_____

<u>Limitations as to Time</u>

With respect to your concerns regarding the limitation as to time of the requested documents and information, we are willing to limit the scope of disclosure of financial information regarding the subject copyrighted works to three (3) years prior to the date Plaintiff commenced this action. As this action was commenced on May 17, 2021, we agree to limit the disclosure of financial information and/or documents dating back to May 17, 2018.

However, with the exception of the documents and/or information listed above, we will not agree to limit the timeframe of our demands any further than our previously demanded date of January 1, 2010, to the present, as we believe there is more than enough discoverable information in that timeframe to warrant such a demand. Accordingly, we insist on the disclosure of all information and/or documents responsive to our demands from the timeframe of January 1, 2010 to the present.

In light of the above impasses, we ask for your consent to holding a telephonic conference call with Judge McAuliffe, as per her individual rules, to have the Court address the issues detailed herein. If you refuse this request, we ask that you articulate the reasons behind your refusal.

Very truly yours,

Seth L. Berman

# EXHIBIT 12



RICHARD IDELL
ridell@dpf-law.com

February 4, 2022

**MEET AND CONFER
PURSUANT TO LOCAL RULE 251**

**VIA EMAIL ONLY
(SBerman@Abramslaw.com)**

Seth Berman, Esq.
ABRAMS FENSTERMAN
3 Dakota Drive, Suite 300
Lake Success, NY 11042

      Re:   <u>Yellowcake adv. Dashgo, et al.</u>
            **USDC, E.D.Cal., Case No. 1:21-cv-00803-AWI-BAM**

Dear Seth:

    As you know, we sent you a draft proposed form of stipulated protective order on January 21, 2022 and requested your comments. As of this writing we have heard nothing from you on the matter, nor on the issue of time limitation, nor on the issues you raised with regard to our Interrogatory responses. We still intend to begin our rolling production of documents within three weeks of the Court's entry of a protective order, but of course the form of order has to be agreed first, so please do get back to us.

    Due to the remaining lack of clarity on what are the precise issues you have taken with our original responses to your Interrogatories, also addressed in our January 21, 2022 letter, we will not be sending you our amended responses to your Interrogatories today. We will get those to you by next Friday, February 11, 2022, assuming we receive a response to our letter and resolution of the issues raised therein.

    Again, we would appreciate a response to our January 21, 2022 letter.

            Sincerely,

            DICKENSON, PEATMAN & FOGARTY

            Richard Idell

RJI:obs

Berman, Seth
February 4, 2022
Page 2

cc:    Tom Griffin, Esq. (via email only to tgriffin@hsmlaw.com)
       Ory Sandel, Esq.
       Client

EXHIBIT 13



**Long Island**
3 Dakota Drive, Suite 300,
Lake Success, NY 11042
516.328.2300 | P
info@abramslaw.com | E

**ATTORNEYS AT LAW**

Long Island · Brooklyn · White Plains · Rochester · Albany

Seth L. Berman, Esq.
Partner
sberman@abramslaw.com

February 9, 2022

**VIA EMAIL ONLY**
Richard Idell, Esq.
Dickenson, Peatman & Fogarty
1455 First Street, Suite 301
Napa, CA 94559

Re:    *Yellowcake v. Dashgo, et al.*
       USDC, E.D.Cal., Case No. 1: 21-cv-00803-AWI-BAM

Dear Mr. Idell:

I write in response to your letter of February 8, 2022 and in furtherance of my letter to you dated February 4, 2022.

Regarding your letter of February 8, 2022, this office served two subpoenas in connection with this matter, one on Amazon, Inc. and one on YouTube. Copies of both are enclosed herewith. Any failure to provide prior notice under Federal Rule of Civil Procedure 45(a)(4) was inadvertent. Accordingly, we hereby withdraw the subpoenas without prejudice and reserve all rights to serve amended subpoenas.

Regarding my letter of February 4, 2022, you still have not provided us with an explanation as to why you insist that a two-tier protective order is necessary in this matter. You have also failed to confirm whether your will participate in a discovery dispute resolution conference call pursuant to Magistrate Judge McAuliffe's individual rules. Accordingly, if we do not receive confirmation that you are willing to participate in a conference call with Magistrate Judge McAuliffe to resolve our outstanding discovery dispute by 5:00 p.m. Pacific Time today, we will file a pre-motion letter pursuant to USDC-EDCA Local Rule 251 followed by a motion to compel and a motion for sanctions under FRCP Rule 11.  Please be guided accordingly.

Yours,

Seth L. Berman

SLB/gar

EXHIBIT 14

**DP&F**

ATTORNEYS AT LAW

RICHARD IDELL
ridell@dpf-law.com

February 9, 2022

**MEET AND CONFER**
**PURSUANT TO LOCAL RULE 251**

**VIA EMAIL ONLY**
**(SBerman@Abramslaw.com)**

Seth Berman, Esq.
ABRAMS FENSTERMAN
3 Dakota Drive, Suite 300
Lake Success, NY 11042

      **Re:**    <u>Yellowcake adv. Dashgo, et al.</u>
                **USDC, E.D.Cal., Case No. 1:21-cv-00803-AWI-BAM**

Dear Seth:

      This letter responds to your letter of this morning, February 9, 2022.

Improper Third-Party Subpoenas

      As you know, yesterday, February 8, 2022, promptly following our discovery that you had served a subpoena on Amazon.com, Inc. ("Amazon") without providing notice to us, we sent you a letter demanding: (a) that you immediately withdraw the subpoena to Amazon; and (b) immediately provide us with copies of each subpoena you may have issued without giving notice to us.

      This morning, February 9, 2022, we received a letter from you, which discloses, for the first time, that you had also issued a subpoena to Youtube, Inc. ("YouTube"). From the version of the subpoena you provided to us, it appears you issued the subpoena to YouTube on January 13, 2022, with a return date of February 1, 2022. In other words, the subpoena to YouTube has the same defects as the subpoena to Amazon, namely, that you did not comply with the requirements of Fed. R. Civ. P. 45(a)(4), nor allow this office sufficient time to object to the subpoena.[1] *See Deuss v. Siso*, No. 14-CV-00710-YGR(JSC), 2014 WL 4275715, at *4 (N.D. Cal. Aug. 29, 2014).

---

[1] The subpoenas to Amazon and YouTube are objectionable in other ways, including without limitation in that they purport to be unlimited as to time and, therefore, facially overbroad as to time, capturing documents throughout time that have no relevance to any of the issues in this action.

Berman, Seth
February 9, 2022
Page 2

It is surprising that a practitioner who was admitted to practice in New York federal courts in 2010, and has represented Yellowcake in numerous federal court actions in California, would "inadvertently" issue not one, but two subpoenas to third parties without giving proper notice to opposing counsel, as required by the Federal Rules of Civil Procedure and the relevant case law of every federal judicial district in the country (including those in New York). It is also telling that the two subpoenas were apparently issued on different dates, calling into question the credibility of the contention of "inadvertence".

Putting aside the issue of intent, your letter of this morning states, in pertinent part: "[W]e hereby withdraw the subpoenas without prejudice and reserve all rights to serve amended subpoenas." However, your letter does not indicate that it was copied to either of the subpoenaed third parties, namely, Amazon and YouTube, nor their respective counsel.

Accordingly, we hereby demand that you provide to us, **by 10:00 a.m. Pacific/1:00 p.m. Eastern time tomorrow, February 10, 2022**, written evidence of your contacting Amazon and YouTube, either directly or through their respective counsel, advising them that those subpoenas have been withdrawn.

If there has been *any* written response (including any emails or letters between you and/or Mr. Griffin, on the one hand, and Amazon and/or YouTube and/or their counsel, on the other hand) or production of documents in response to either subpoena, please advise us of that as well. Any responses and documents produced are <u>unauthorized by law</u> and must be returned immediately to the subpoenaed parties, and all copies in Yellowcake's possession, custody or control immediately deleted and destroyed. *See Theofel v. Farey-Jones* (9th Cir. 2004) 359 F.3d 1066, 1079.

We understand from Amazon that you have withdrawn the subpoena to Amazon, but that you intend to immediately re-serve the subpoena (hopefully with proper notice to us this time). Presumably, you intend to do the same with the subpoena to YouTube. Among the documents called for by those subpoenas are documents containing extremely sensitive and confidential financial information that would create a substantial risk of significant financial or competitive harm to Dashgo (and possibly to Adrev as well). This fact highlights the pressing need for entry of a stipulated protective order in this matter, which we address below.

We need agreement from you <u>now</u> that you will not require production of documents from either Amazon or YouTube until the issue of the protective order is resolved, so that we have the ability to designate documents produced under the subpoenas. If you will not so agree, we will have no choice but to make a motion to quash and/or for a protective order, and we certainly will do that.

Stipulated Protective Order

Your letter of this morning, February 9, 2022, re-raises the issue of the protective order we have been discussing. Specifically, you state, in pertinent part:

Berman, Seth
February 9, 2022
Page 3

"Regarding my letter of February 4, 2022, you still have not provided us with an explanation as to why you insist that a two-tier protective order is necessary in this matter. You have also failed to confirm whether your will participate in a discovery dispute resolution conference call pursuant to Magistrate Judge McAuliffe's individual rules. Accordingly, if we do not receive confirmation that you are willing to participate in a conference call with Magistrate Judge McAuliffe to resolve our outstanding discovery dispute by 5:00 p.m. Pacific Time today, we will file a pre-motion letter pursuant to USDC-EDCA Local Rule 251 followed by a motion to compel and a motion for sanctions under FRCP Rule 11. Please be guided accordingly."

As you know, we sent you a draft proposed form of stipulated protective order on January 21, 2022 and requested your comments. You did not respond to that letter until the afternoon (just before 5:00 p.m. your time) of February 4, 2022 – fully *two weeks* after we sent our letter.

Yet your letter of this morning demands that we respond by 5:00 p.m. today, February 9, 2022, to a letter we received *only three business days ago*. That demand is facially unreasonable and does not constitute meeting and conferring in good faith.

Notwithstanding the unreasonable demands of your letter of this morning, we respond below, as best we can on such short notice, enumerating the reasons as to why we believe a two-tier protective order in this case is necessary and appropriate.

In your letter of February 4, 2022, you assert, without basis, that the need for disclosure and protection of highly sensitive confidential information and/or trade secrets "is neither relevant, nor applicable to this matter" and that "the only financial information that could ever warrant such a heightened protective measure would be financial information such as any royalties' reports from our respective clients". We beg to differ.

As a preliminary matter, your recent objection to a two-tier protective order is a 180 degree about-face from the position Yellowcake took in the Joint Scheduling Conference Report filed with the Court on August 10, 2021. Section 6.f. of that Report, signed by your co-counsel, Mr. Griffin[2], states:

"Defendants anticipate the need for a two-tier protective order relating to the discovery of information relating to a trade secret or other confidential research, development, or commercial information. **Plaintiff is agreeable to entry of such order.**" (emphasis added)

Thus, in the first instance, we are surprised that you are now contending that a two-tier form is inappropriate.

_____

[2] You had not yet been admitted *pro hac vice* at the time, but the representation of your co-counsel is binding on you. Moreover, you were copied on all correspondence relating to preparation of the Report.

Berman, Seth
February 9, 2022
Page 4

Regardless, it is clear you are now refusing to agree to entry of a two-tier protective order. There are several good reasons as to why such an order is wholly appropriate:

Our proposed form of two-tier protective order, provided to you on January 21, 2022, includes provisions regarding "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items are intended to protect "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of *significant financial or competitive harm* that could not be avoided by less restrictive means." (emphasis added)

This is undoubtedly a case in which there is a substantial risk of significant financial or competitive harm.

First, Yellowcake's Amended Complaint expressly alleges that Yellowcake is primarily engaged in the business of "exploiting intellectual property rights, including, but not limited to, digital music distribution." Amended Complaint, ¶ 17. The Amended Complaint also expressly alleges that Dashgo "is in the business of selling and distributing music throughout the world using multiple internet distribution and retail channels such as the Digital Distribution Platforms." Amended Complaint, ¶ 14. Thus, from the face of the Amended Complaint alone, based on Yellowcake's own allegations, it is apparent that Yellowcake is a direct competitor of Dashgo.

Second, as the further document production you made on February 4, 2022 shows, Yellowcake has granted Colonize Media, Inc. ("Colonize") licenses to distribute, stream, transmit, exhibit, display, reproduce, enforce and monetize Yellowcake's content on all online, mobile and digital platforms. *See* Yellowcake production Bates Nos. PLF004889-PLF004905; *see also* Seth L. Berman's Response to Show Cause as to Why His Pro Hac Vice Status Should Not Be Denied (filed 8/9/2021) at 3:17-23. Colonize is undoubtedly a direct competitor of Dashgo. However, Kevin Berger is a principal of both Yellowcake <u>and</u> Colonize.[3] In other words, even if Yellowcake is not directly competing with Dashgo, Colonize is, and any information, documents or other items produced in discovery in this action are substantially likely to fall into the hands of a Dashgo competitor.

Third, Yellowcake's document requests call for the production of documents, including sensitive financial documents, relating to "Yellowcake's Copyrighted Works" and "Foreign Works". Those terms are respectively defined in the Amended Complaint by reference to Exhibit A ("Yellowcake's Copyrighted Works") and Exhibit B ("Foreign Works"). Those Exhibits, in turn, are comprised of nothing more than a list of artists and song titles. However, the same artist can re-record a song multiple times even though each iteration bears the same title. Based only on the defined terms "Yellowcake's Copyrighted Works" and "Foreign Works", even with reference to the Exhibits A and B, it is entirely unclear which iteration of any given song Yellowcake is claiming rights to. Moreover, Yellowcake has not established that it, in fact, has rights to *any* of "Yellowcake's Copyrighted Works" or "Foreign Works".

---

[3] The California Secretary of State's records indicate that Mr. Berger is an officer (CFO) and director of Colonize, and the sole officer and director of Yellowcake.

Berman, Seth
February 9, 2022
Page 5

As a consequence, your document requests capture, inadvertently or otherwise, documents and information of third parties that are clients of Dashgo or Adrev. *See, e.g.*, Yellowcake's Requests for Production of Documents, Set One, Requests Nos. 1, 2, 9, 10, 11, 12, 25, 26, 28, 29, 34, 35, 40. Documents responsive to such requests would necessarily include the records of any client of Dashgo or Adrev that claims rights in any of "Yellowcake's Copyrighted Works" and "Foreign Works". The information of those third parties is private and confidential (as well as utterly irrelevant to this action[4]). Our clients have no interest in disclosing to your client (and its affiliates) such sensitive information; if they were to do so, they would be potentially putting their business relationships at risk.

For the reasons enumerated above, we insist that the two-tier form of protective order that we provided you, and which is based on the model form for the Northern District of California, is more appropriate for this case than the form of protective order you have proffered.

Putting aside the two-tier aspect of our proposed stipulated protective order, though, we still do not know whether you take issue with any of the other provisions of our form (which, again, is based on the Northern District form), and your letter of this morning does not enlighten us at all. We therefor renew our request (first made in our January 21, 2022 letter) that you provide us with your comments, if any, to our proposed form of protective order. If the only issue is single-tier versus two-tier, please let us know. If that is the case, and we still cannot agree, we will be prepared to tender the issue to the Court.

Discovery Dispute Resolution Procedure in E.D.Cal.

As noted above, your letter of this morning, February 9, 2022, states, in pertinent part:

"You have also failed to confirm whether your will participate in a discovery dispute resolution conference call pursuant to Magistrate Judge McAuliffe's individual rules. Accordingly, if we do not receive confirmation that you are willing to participate in a conference call with Magistrate Judge McAuliffe to resolve our outstanding discovery dispute by 5:00 p.m. Pacific Time today, we will file a pre-motion letter pursuant to USDC-EDCA Local Rule 251 followed by a motion to compel and a motion for sanctions under FRCP Rule 11."

As you know, Local Rule 251(b) provides:

"**Requirement of Conferring.** Except as hereinafter set forth, a motion made pursuant to Fed. R. Civ. P. 26 through 37 and 45, including any motion to exceed discovery limitations or motion for protective order, shall not be heard unless (1)

---

[4] To the extent that there is a conflict between the copyright ownership claims of Yellowcake, on the one hand, and those of any third party client of Dashgo or Adrev, on the other hand, regarding any of the works defined in the Amended Complaint as "Yellowcake's Copyrighted Works" and "Foreign Works", such conflict would be the subject of a separate action. Indeed, from the other lawsuits filed by Yellowcake in California federal courts, listed in Section 14 of the Joint Scheduling Conference Report, it appears Yellowcake is (or was) actively pursuing such claims.

Berman, Seth
February 9, 2022
Page 6

the parties have conferred and attempted to resolve their differences, and (2) the parties have set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement. Counsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing of the motion in a good faith effort to resolve the differences that are the subject of the motion. Counsel for the moving party or prospective moving party shall be responsible for arranging the conference, which shall be held at a time and place and in a manner mutually convenient to counsel."

In other words, pursuant to the Local Rules, as a threshold matter, the parties to a discovery dispute are required to meet and confer in good faith in an attempt to resolve their differences. With regard to the protective order, the meet and confer process has not been concluded; indeed, this very letter is part of that process. We still have no idea whether you take issue with any of the provisions of our proposed form of protective order other than the fact that it is a two-tier protective order, nor your substantive reasons as to why a two-tier order would be inappropriate (other than as enumerated above, namely, that "the need for disclosure and protection of highly sensitive confidential information and/or trade secrets is neither relevant, nor applicable to this matter.") Accordingly, any "conference call with Magistrate Judge McAuliffe to resolve our outstanding discovery dispute" would be grossly premature.

Local Rule 251(c), in turn, provides, in pertinent part:

"If the moving party is still dissatisfied after the conference of counsel, that party shall draft and file a document entitled 'Joint Statement re Discovery Disagreement.' All parties who are concerned with the discovery motion shall assist in the preparation of, and shall sign, the Joint Statement[.]"

The Joint Statement re Discovery Disagreement required by Local Rule 251 is, in fact, a joint statement of the parties to the discovery dispute and, thus, requires the signature of counsel for those parties. No Joint Statement re Discovery Disagreement can be filed without our agreement and consent as to its fact and content. Until such time as the meet and confer process has been concluded, we see no reason to so agree or consent.

Your letter demands that we "confirm whether your will participate in a discovery dispute resolution conference call pursuant to Magistrate Judge McAuliffe's individual rules" and threatens a motion for sanctions under Fed. R. Civ. P. 11.[5]

---

[5] As you know, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. *See* Committee Notes on Amendments to Federal Rules of Civil Procedure (1993) 146 F.R.D. 401, 146 F.R.D. 401, 591. The failure to collaborate in the preparation of a Joint Statement re Discovery Disagreement in good faith can also lead to sanctions. *See Est. of Crawley v. Kings Cty.* (E.D. Cal. July 24, 2015) No. 1:13-CV-02042-LJO, 2015 WL 4508642, at *1.

Berman, Setli
February 9, 2022
Page 7

Paragraph 6 of Magistrate Judge McAuliffe's Standing Order provides:

"**Informal Telephonic Conferences re Discovery Disputes:**

a) If the parties stipulate, Judge McAuliffe will resolve discovery disputes outside the formal Local Rule 251 procedures.

b) After obtaining the available dates and times from the courtroom deputy and agreeing upon a date and time with opposing counsel, confirm with the courtroom deputy when the parties will be calling in. All parties must appear telephonically.

c) At least 48 hours before the conference, the parties shall email chambers a two-page synopsis of their dispute in a letter or memo format (no exhibits or attachments). Email bamorders@caed.uscourts.gov."

By the plain terms of the Standing Order, there can be no informal telephonic conference without a stipulation by the parties. Moreover, like the Joint Statement re Discovery Disagreement, the "two-page synopsis" required under the Standing Order is also required to be jointly-composed.

Again, until such time as the meet and confer process has been concluded, we see no reason to stipulate to an informal telephonic conference with Magistrate Judge McAuliffe.

In view of the requirements of Local Rule 251 and Magistrate Judge McAuliffe's Standing Order, we are puzzled by your apparent belief that you can do away with the meet and confer process and simply unilaterally file a "pre-motion letter". Should you decide to attempt to do so, we will, of course, bring this letter to the Court's attention.

We look forward to your prompt response.

Sincerely,

DICKENSON, PEATMAN & FOGARTY

Richard Idell

RJI:obs
cc:    Tom Griffin, Esq. (via email only to tgriffin@hsmlaw.com)
       Ory Sandel, Esq.

# EXHIBIT 15

| From: | Seth L. Berman |
|---|---|
| To: | Richard Idell; Ory Sandel |
| Cc: | Tom Griffin; Taylor Cary; Gisela Rubenstein |
| Subject: | Yellowcake v. Dashgo et al- Your Letter of February 9, 2022 |
| Date: | Thursday, February 10, 2022 12:07:44 PM |
| Attachments: | image0946ef.PNG |
| | image9b83cb.PNG |
| | imageef48351.PNG |
| | image42b6c2.PNG |
| | image63861c.PNG |
| | imagea72dcf.PNG |
| | image0ceedb.PNG |
| | image805eee.PNG |
| | image458561.PNG |
| | imagec41258.PNG |
| | Gold Email - Yellowcake v. Dashgo- Withdrawal of Subpoena.pdf |
| | Email Ramie Snodgrass - Yellowcake v. Dashgo et al- Withdrawal of Subpoena.pdf |

Counsel:

I received your letter dated February 9, 2022 at 7:51 PM Eastern Time which unreasonably demands a response by 1 PM Eastern Time today.

I will not address the unprofessional ad hominem attacks in your letter and will address the substance of your letter in due course.

In the interim, please see the attached correspondence to counsel for Amazon and YouTube withdrawing the subpoenas. We have not received any documents produced response to the subpoenas.

Lastly, we are well aware of the meet and confer and letter writing procedures required by Judge McCauliffe's individual rules as well as Local Rule 251. As you are well aware, we met and conferred for over two hours and had multiple correspondence exchanges regarding the same discovery issues and have clearly reached an impasse. I have asked you if you are willing to participate in a call with Judge McCaullife. If you agree, I will prepare plaintiff's portion of the joint letter and forward it to you to add your position. If you disagree, I will prepare plaintiff's portion of the joint letter required by Local Rule 251 and forward it to you to add your position. If we do not receive confirmation from you that you are willing to schedule a call with Judge McCauliffe today by 5 PM Pacific Time, we will take it to mean that you are not willing to participate in such a call and will forward plaintiff's portion of the joint letter required by Local Rule 251. If you do not respond timely, we will notify the court of our attempts to obtain your cooperation and file our motions accordingly.

Sent from my iPhone

**Seth L. Berman, Esq.** | *Partner/Director Intellectual Property and Entertainment Dept.*

**Long Island Office**

3 Dakota Drive Suite 300

Lake Success, New York 11042



516-328-2300 x 251 | Phone
516-328-6638 |   Fax
sberman@abramslaw.com
www.abramslaw.com

   

CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient. AF/02

_**Seth L. Berman, Esq.**_ | _Partner/Director Intellectual Property and Entertainment Dept._



_**Long Island Office**_

3 Dakota Drive Suite 300

Lake Success, New York 11042

516-328-2300 x 251 | Phone
516-328-6638 |   Fax
sberman@abramslaw.com
www.abramslaw.com

   

CONFIDENTIALITY NOTICE: This e-mail may be an attorney-client communication and may contain information that is privileged and confidential and is therefore subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient you are prohibited from copying, forwarding, distributing, disseminating, or otherwise viewing this e-mail and any attachments hereto. Please notify the sender and delete this e-mail if you are not the intended recipient. AF/03

# EXHIBIT 16

**DP&F**
**ATTORNEYS AT LAW**

RICHARD IDELL
ridell@dpf-law.com

February 10, 2022

**MEET AND CONFER**
**PURSUANT TO LOCAL RULE 251**

**VIA EMAIL ONLY**
**(SBerman@Abramslaw.com)**

Seth Berman, Esq.
ABRAMS FENSTERMAN
3 Dakota Drive, Suite 300
Lake Success, NY 11042

>    **Re:    Yellowcake adv. Dashgo, et al.**
>             **USDC, E.D.Cal., Case No. 1:21-cv-00803-AWI-BAM**

Dear Seth:

I am responding to your email this morning, demanding a response by the end of today.

We deny any lack of professionalism or *ad hominem* attacks, on you or anyone else. Our letter speaks for itself.

**Unlawful Subpoenas**

Despite our express request, you failed to provide us with copies of the responses given by Amazon and YouTube to your unlawful subpoenas. We have now obtained those directly from the subpoenaed parties and will, of course, bring the fact of your non-disclosure to the court's attention, should such attention become warranted.

**Discovery Matters**

We seem to have a basic disagreement over the status of our meet and confer on various discovery, and it seems you are intent on mixing apples and oranges.

***Protective Order***

As you know, the lack of a protective order is the threshold outstanding issue that needs to be resolved before any documents are produced either by our clients or by any third parties.[1] The issue of the prospective order also potentially affects other discovery which concerns

---

[1] Again, and as noted in our letter of yesterday's date, we understand that you intend to immediately re-serve subpoenas on Amazon and YouTube. In order to avoid unnecessary motion practice (i.e., a motion to quash and/or motion for a protective order), the issue of a protective order should be resolved prior to any return date on any subpoenas you may issue (or reissue).

Berman, Seth
February 10, 2022
Page 2

"confidential" or "highly confidential" information or items, as defined in our form of protective order.

You have an affirmative obligation to respond to our letter from yesterday in which we explained, in great detail (particularly given the absurdly short amount of time in which you demanded a response from us), why we insist on a two-tier form of protective order. You also have an obligation to respond as to whether you disagree with any provisions other than whether it is one or two tier so that we can evaluate whether any other disputes actually exist and, if so, what those disputes are.

If your only objection is that our form is that it is two-tier, then, I agree, we are ready to prepare a joint statement of issues pursuant to Rule 251 on the form of protective order. If, on the other hand, you have other issues with the form, we have not yet heard from you as to what those issues are, and we are therefore not yet ready to prepare a joint statement under Rule 251. If we do not hear otherwise, we will understand that you have no other issues with our proposed form of protective order.

Again, the issue of the protective order must be resolved if other discovery is to go forward, including your subpoenas to third parties, so we again ask for a response to our letter of yesterday. Another copy is enclosed for your convenience.

### Interrogatory Responses

The meet and confer call we had on January 18, 2022 – more than three weeks ago – covered certain issues regarding our responses to your interrogatories, but we by no means went over every single interrogatory and answer on that call. We told you then that we would amend our responses in certain respects. This is addressed in our letter to you of January 21, 2022.

Although we sent you a subsequent letter on February 4, 2022 requesting a response on the issue of the interrogatory responses, we have yet to hear back from you regarding that issue. Please respond to our letters on this issue.

In any case, we are still intending to serve amended interrogatory responses tomorrow. Once you have had a chance to review those amended responses, we will certainly meet and confer with you further if you believe there are any remaining issues. At this point, however, there is no issue concerning the interrogatories that is ripe for a Rule 251 process.

### Document Production

We told you, in our letter of January 21, 2022, that we would commence production within three weeks of entry of a protective order. No protective order has yet been entered and, accordingly, once again, the issue of our document production is not ripe for a Rule 251 process resolution; the form of protective order must be resolved as a preliminary matter – not only with regard to our document production, but also as to any document production to be made by any third parties. *See* footnote 1, *supra*.

Berman, Seth
February 10, 2022
Page 3

### *Time Limitations*

With regard to time limitations, we are willing to accept your offer to limit financial discovery to the three years before the filing of the complaint, i.e., May 17, 2018-May 17, 2021.

We are, however, perplexed as to why you would tell Amazon's attorney that the time limit on your unlawful subpoena (which has no time limitation whatsoever) should be 2014 and forward, when that subpoena largely sought similar financial discovery.

Otherwise, we are also willing to accept your proposal of a 2010 and forward time limitation for the production of other (non-financial) extant, relevant, non-privileged documents.

Please get back to us on the above.

Sincerely,

DICKENSON, PEATMAN & FOGARTY

Richard Idell

RJI:obs
Enclosure
cc:    Tom Griffin, Esq. (via email only to tgriffin@hsmlaw.com)
       Ory Sandel, Esq.

**DP&F**
ATTORNEYS AT LAW

RICHARD IDELL
ridell@dpf-law.com

February 9, 2022

**MEET AND CONFER
PURSUANT TO LOCAL RULE 251**

**VIA EMAIL ONLY
(SBerman@Abramslaw.com)**

Seth Berman, Esq.
ABRAMS FENSTERMAN
3 Dakota Drive, Suite 300
Lake Success, NY 11042

Re:     <u>Yellowcake adv. Dashgo, et al.</u>
        **USDC, E.D.Cal., Case No. 1:21-cv-00803-AWI-BAM**

Dear Seth:

This letter responds to your letter of this morning, February 9, 2022.

<u>Improper Third-Party Subpoenas</u>

As you know, yesterday, February 8, 2022, promptly following our discovery that you had served a subpoena on Amazon.com, Inc. ("Amazon") without providing notice to us, we sent you a letter demanding: (a) that you immediately withdraw the subpoena to Amazon; and (b) immediately provide us with copies of each subpoena you may have issued without giving notice to us.

This morning, February 9, 2022, we received a letter from you, which discloses, for the first time, that you had also issued a subpoena to Youtube, Inc. ("YouTube"). From the version of the subpoena you provided to us, it appears you issued the subpoena to YouTube on January 13, 2022, with a return date of February 1, 2022. In other words, the subpoena to YouTube has the same defects as the subpoena to Amazon, namely, that you did not comply with the requirements of Fed. R. Civ. P. 45(a)(4), nor allow this office sufficient time to object to the subpoena.[1] See *Deuss v. Siso*, No. 14-CV-00710-YGR(JSC), 2014 WL 4275715, at *4 (N.D. Cal. Aug. 29, 2014).

---

[1] The subpoenas to Amazon and YouTube are objectionable in other ways, including without limitation in that they purport to be unlimited as to time and, therefore, facially overbroad as to time, capturing documents throughout time that have no relevance to any of the issues in this action.

Berman, Seth
February 9, 2022
Page 2

It is surprising that a practitioner who was admitted to practice in New York federal courts in 2010, and has represented Yellowcake in numerous federal court actions in California, would "inadvertently" issue not one, but two subpoenas to third parties without giving proper notice to opposing counsel, as required by the Federal Rules of Civil Procedure and the relevant case law of every federal judicial district in the country (including those in New York). It is also telling that the two subpoenas were apparently issued on different dates, calling into question the credibility of the contention of "inadvertence".

Putting aside the issue of intent, your letter of this morning states, in pertinent part: "[W]e hereby withdraw the subpoenas without prejudice and reserve all rights to serve amended subpoenas." However, your letter does not indicate that it was copied to either of the subpoenaed third parties, namely, Amazon and YouTube, nor their respective counsel.

Accordingly, we hereby demand that you provide to us, **by 10:00 a.m. Pacific/1:00 p.m. Eastern time tomorrow, February 10, 2022**, written evidence of your contacting Amazon and YouTube, either directly or through their respective counsel, advising them that those subpoenas have been withdrawn.

If there has been *any* written response (including any emails or letters between you and/or Mr. Griffin, on the one hand, and Amazon and/or YouTube and/or their counsel, on the other hand) or production of documents in response to either subpoena, please advise us of that as well. Any responses and documents produced are <u>unauthorized by law</u> and must be returned immediately to the subpoenaed parties, and all copies in Yellowcake's possession, custody or control immediately deleted and destroyed. *See Theofel v. Farey-Jones* (9th Cir. 2004) 359 F.3d 1066, 1079.

We understand from Amazon that you have withdrawn the subpoena to Amazon, but that you intend to immediately re-serve the subpoena (hopefully with proper notice to us this time). Presumably, you intend to do the same with the subpoena to YouTube. Among the documents called for by those subpoenas are documents containing extremely sensitive and confidential financial information that would create a substantial risk of significant financial or competitive harm to Dashgo (and possibly to Adrev as well). This fact highlights the pressing need for entry of a stipulated protective order in this matter, which we address below.

We need agreement from you <u>now</u> that you will not require production of documents from either Amazon or YouTube until the issue of the protective order is resolved, so that we have the ability to designate documents produced under the subpoenas. If you will not so agree, we will have no choice but to make a motion to quash and/or for a protective order, and we certainly will do that.

<u>Stipulated Protective Order</u>

Your letter of this morning, February 9, 2022, re-raises the issue of the protective order we have been discussing. Specifically, you state, in pertinent part:

Berman, Seth
February 9, 2022
Page 3

"Regarding my letter of February 4, 2022, you still have not provided us with an explanation as to why you insist that a two-tier protective order is necessary in this matter. You have also failed to confirm whether your will participate in a discovery dispute resolution conference call pursuant to Magistrate Judge McAuliffe's individual rules. Accordingly, if we do not receive confirmation that you are willing to participate in a conference call with Magistrate Judge McAuliffe to resolve our outstanding discovery dispute by 5:00 p.m. Pacific Time today, we will file a pre-motion letter pursuant to USDC-EDCA Local Rule 251 followed by a motion to compel and a motion for sanctions under FRCP Rule 11. Please be guided accordingly."

As you know, we sent you a draft proposed form of stipulated protective order on January 21, 2022 and requested your comments. You did not respond to that letter until the afternoon (just before 5:00 p.m. your time) of February 4, 2022 – fully *two weeks* after we sent our letter.

Yet your letter of this morning demands that we respond by 5:00 p.m. today, February 9, 2022, to a letter we received *only three business days ago.* That demand is facially unreasonable and does not constitute meeting and conferring in good faith.

Notwithstanding the unreasonable demands of your letter of this morning, we respond below, as best we can on such short notice, enumerating the reasons as to why we believe a two-tier protective order in this case is necessary and appropriate.

In your letter of February 4, 2022, you assert, without basis, that the need for disclosure and protection of highly sensitive confidential information and/or trade secrets "is neither relevant, nor applicable to this matter" and that "the only financial information that could ever warrant such a heightened protective measure would be financial information such as any royalties' reports from our respective clients". We beg to differ.

As a preliminary matter, your recent objection to a two-tier protective order is a 180 degree about-face from the position Yellowcake took in the Joint Scheduling Conference Report filed with the Court on August 10, 2021. Section 6.f. of that Report, signed by your co-counsel, Mr. Griffin[2], states:

"Defendants anticipate the need for a two-tier protective order relating to the discovery of information relating to a trade secret or other confidential research, development, or commercial information. **Plaintiff is agreeable to entry of such order.**" (emphasis added)

Thus, in the first instance, we are surprised that you are now contending that a two-tier form is inappropriate.

---

[2] You had not yet been admitted *pro hac vice* at the time, but the representation of your co-counsel is binding on you. Moreover, you were copied on all correspondence relating to preparation of the Report.

Berman, Seth
February 9, 2022
Page 4

Regardless, it is clear you are now refusing to agree to entry of a two-tier protective order. There are several good reasons as to why such an order is wholly appropriate:

Our proposed form of two-tier protective order, provided to you on January 21, 2022, includes provisions regarding "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items are intended to protect "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of *significant financial or competitive harm* that could not be avoided by less restrictive means." (emphasis added)

This is undoubtedly a case in which there is a substantial risk of significant financial or competitive harm.

First, Yellowcake's Amended Complaint expressly alleges that Yellowcake is primarily engaged in the business of "exploiting intellectual property rights, including, but not limited to, digital music distribution." Amended Complaint, ¶ 17. The Amended Complaint also expressly alleges that Dashgo "is in the business of selling and distributing music throughout the world using multiple internet distribution and retail channels such as the Digital Distribution Platforms." Amended Complaint, ¶ 14. Thus, from the face of the Amended Complaint alone, based on Yellowcake's own allegations, it is apparent that Yellowcake is a direct competitor of Dashgo.

Second, as the further document production you made on February 4, 2022 shows, Yellowcake has granted Colonize Media, Inc. ("Colonize") licenses to distribute, stream, transmit, exhibit, display, reproduce, enforce and monetize Yellowcake's content on all online, mobile and digital platforms. *See* Yellowcake production Bates Nos. PLF004889-PLF004905; *see also* Seth L. Berman's Response to Show Cause as to Why His Pro Hac Vice Status Should Not Be Denied (filed 8/9/2021) at 3:17-23. Colonize is undoubtedly a direct competitor of Dashgo. However, Kevin Berger is a principal of both Yellowcake <u>and</u> Colonize.[3] In other words, even if Yellowcake is not directly competing with Dashgo, Colonize is, and any information, documents or other items produced in discovery in this action are substantially likely to fall into the hands of a Dashgo competitor.

Third, Yellowcake's document requests call for the production of documents, including sensitive financial documents, relating to "Yellowcake's Copyrighted Works" and "Foreign Works". Those terms are respectively defined in the Amended Complaint by reference to Exhibit A ("Yellowcake's Copyrighted Works") and Exhibit B ("Foreign Works"). Those Exhibits, in turn, are comprised of nothing more than a list of artists and song titles. However, the same artist can re-record a song multiple times even though each iteration bears the same title. Based only on the defined terms "Yellowcake's Copyrighted Works" and "Foreign Works", even with reference to the Exhibits A and B, it is entirely unclear which iteration of any given song Yellowcake is claiming rights to. Moreover, Yellowcake has not established that it, in fact, has rights to *any* of "Yellowcake's Copyrighted Works" or "Foreign Works".

---

[3] The California Secretary of State's records indicate that Mr. Berger is an officer (CFO) and director of Colonize, and the sole officer and director of Yellowcake.

Berman, Seth
February 9, 2022
Page 5

As a consequence, your document requests capture, inadvertently or otherwise, documents and information of third parties that are clients of Dashgo or Adrev. *See, e.g.*, Yellowcake's Requests for Production of Documents, Set One, Requests Nos. 1, 2, 9, 10, 11, 12, 25, 26, 28, 29, 34, 35, 40. Documents responsive to such requests would necessarily include the records of any client of Dashgo or Adrev that claims rights in any of "Yellowcake's Copyrighted Works" and "Foreign Works". The information of those third parties is private and confidential (as well as utterly irrelevant to this action[4]). Our clients have no interest in disclosing to your client (and its affiliates) such sensitive information; if they were to do so, they would be potentially putting their business relationships at risk.

For the reasons enumerated above, we insist that the two-tier form of protective order that we provided you, and which is based on the model form for the Northern District of California, is more appropriate for this case than the form of protective order you have proffered.

Putting aside the two-tier aspect of our proposed stipulated protective order, though, we still do not know whether you take issue with any of the other provisions of our form (which, again, is based on the Northern District form), and your letter of this morning does not enlighten us at all. We therefor renew our request (first made in our January 21, 2022 letter) that you provide us with your comments, if any, to our proposed form of protective order. If the only issue is single-tier versus two-tier, please let us know. If that is the case, and we still cannot agree, we will be prepared to tender the issue to the Court.

Discovery Dispute Resolution Procedure in E.D.Cal.

As noted above, your letter of this morning, February 9, 2022, states, in pertinent part:

"You have also failed to confirm whether your will participate in a discovery dispute resolution conference call pursuant to Magistrate Judge McAuliffe's individual rules. Accordingly, if we do not receive confirmation that you are willing to participate in a conference call with Magistrate Judge McAuliffe to resolve our outstanding discovery dispute by 5:00 p.m. Pacific Time today, we will file a pre-motion letter pursuant to USDC-EDCA Local Rule 251 followed by a motion to compel and a motion for sanctions under FRCP Rule 11."

As you know, Local Rule 251(b) provides:

"**Requirement of Conferring.** Except as hereinafter set forth, a motion made pursuant to Fed. R. Civ. P. 26 through 37 and 45, including any motion to exceed discovery limitations or motion for protective order, shall not be heard unless (1)

---

[4] To the extent that there is a conflict between the copyright ownership claims of Yellowcake, on the one hand, and those of any third party client of Dashgo or Adrev, on the other hand, regarding any of the works defined in the Amended Complaint as "Yellowcake's Copyrighted Works" and "Foreign Works", such conflict would be the subject of a separate action. Indeed, from the other lawsuits filed by Yellowcake in California federal courts, listed in Section 14 of the Joint Scheduling Conference Report, it appears Yellowcake is (or was) actively pursuing such claims.

the parties have conferred and attempted to resolve their differences, and (2) the parties have set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement. Counsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing of the motion in a good faith effort to resolve the differences that are the subject of the motion. Counsel for the moving party or prospective moving party shall be responsible for arranging the conference, which shall be held at a time and place and in a manner mutually convenient to counsel."

In other words, pursuant to the Local Rules, as a threshold matter, the parties to a discovery dispute are required to meet and confer in good faith in an attempt to resolve their differences. With regard to the protective order, the meet and confer process has not been concluded; indeed, this very letter is part of that process. We still have no idea whether you take issue with any of the provisions of our proposed form of protective order other than the fact that it is a two-tier protective order, nor your substantive reasons as to why a two-tier order would be inappropriate (other than as enumerated above, namely, that "the need for disclosure and protection of highly sensitive confidential information and/or trade secrets is neither relevant, nor applicable to this matter.") Accordingly, any "conference call with Magistrate Judge McAuliffe to resolve our outstanding discovery dispute" would be grossly premature.

Local Rule 251(c), in turn, provides, in pertinent part:

"If the moving party is still dissatisfied after the conference of counsel, that party shall draft and file a document entitled 'Joint Statement re Discovery Disagreement.' All parties who are concerned with the discovery motion shall assist in the preparation of, and shall sign, the Joint Statement[.]"

The Joint Statement re Discovery Disagreement required by Local Rule 251 is, in fact, a joint statement of the parties to the discovery dispute and, thus, requires the signature of counsel for those parties. No Joint Statement re Discovery Disagreement can be filed without our agreement and consent as to its fact and content. Until such time as the meet and confer process has been concluded, we see no reason to so agree or consent.

Your letter demands that we "confirm whether your will participate in a discovery dispute resolution conference call pursuant to Magistrate Judge McAuliffe's individual rules" and threatens a motion for sanctions under Fed. R. Civ. P. 11.[5]

---

[5] As you know, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. *See* Committee Notes on Amendments to Federal Rules of Civil Procedure (1993) 146 F.R.D. 401, 146 F.R.D. 401, 591. The failure to collaborate in the preparation of a Joint Statement re Discovery Disagreement in good faith can also lead to sanctions. *See Est. of Crawley v. Kings Cty.* (E.D. Cal. July 24, 2015) No. 1:13-CV-02042-LJO, 2015 WL 4508642, at *1.

Berman, Seth
February 9, 2022
Page 7

Paragraph 6 of Magistrate Judge McAuliffe's Standing Order provides:

"**Informal Telephonic Conferences re Discovery Disputes:**

a) If the parties stipulate, Judge McAuliffe will resolve discovery disputes outside the formal Local Rule 251 procedures.

b) After obtaining the available dates and times from the courtroom deputy and agreeing upon a date and time with opposing counsel, confirm with the courtroom deputy when the parties will be calling in. All parties must appear telephonically.

c) At least 48 hours before the conference, the parties shall email chambers a two-page synopsis of their dispute in a letter or memo format (no exhibits or attachments). Email bamorders@caed.uscourts.gov."

By the plain terms of the Standing Order, there can be no informal telephonic conference without a stipulation by the parties. Moreover, like the Joint Statement re Discovery Disagreement, the "two-page synopsis" required under the Standing Order is also required to be jointly-composed.

Again, until such time as the meet and confer process has been concluded, we see no reason to stipulate to an informal telephonic conference with Magistrate Judge McAuliffe.

In view of the requirements of Local Rule 251 and Magistrate Judge McAuliffe's Standing Order, we are puzzled by your apparent belief that you can do away with the meet and confer process and simply unilaterally file a "pre-motion letter". Should you decide to attempt to do so, we will, of course, bring this letter to the Court's attention.

We look forward to your prompt response.

Sincerely,

DICKENSON, PEATMAN & FOGARTY

Richard Idell

RJI:obs
cc:    Tom Griffin, Esq. (via email only to tgriffin@hsmlaw.com)
       Ory Sandel, Esq.