1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   YELLOWCAKE, INC., a California            No.  1:21-cv-00803-AWI-BAM
     corporation,
12
                                               ORDER AFTER *IN CAMERA* REVIEW
13             Plaintiff,

14        v.

15   DASHGO, INC., a Delaware corporation,
     and AUDIOMICRO, INC. d/b/a ADREV, a
16   Delaware corporation,

17             Defendants.

18

19        In this case, Plaintiff Yellowcake, Inc. ("Yellowcake") alleges copyright infringement by

20   Defendants Dashgo, Inc. and Audiomicro, Inc. d/b/a Adrev ("Adrev") (collectively "Dashgo" or

21   "Defendants") of hundreds of domestic and foreign copyrighted works owned by Yellowcake.

22   On July 21, 2022, this Court granted Defendants' request for entry of a two-tier/attorneys' eyes

23   ("AEO") protective order and directed that certain information and documents disclosed in

24   discovery should be subject to an AEO designation.  (Doc. 78 (Order Granting Motion for Entry

25   of a Two-Tier protective Order).)  The Court set forth categories of documents which would fall

26   within the scope of an AEO designation and documents which would fall outside the scope of an

27   AEO designation.  (*See* Doc. 78, p. 14-21.)  Additionally, the Court ordered specified documents

28

                                              1

1  to be submitted for an *in camera* review to determine whether such documents should be

2  produced with an AEO designation. (Doc. 78, p. 15-16.).) A more detailed discussion of the

3  parties' underlying discovery dispute and the Court's analysis can be found in the Court's Order.

4  (*See generally* Doc. 78.)

5       On August 17, 2022, the Court entered the two-tier protective order.  (Doc. 82.)

6                           **The Necessity for *In Camera* Review**

7       As it pertains to the *in camera* review, Dashgo previously asserted that its agreements

8  with DSPs [digital service providers like iTunes, Spotify, YouTube, etc.] were sensitive and

9  contained confidential information which should be produced pursuant to the AEO provision of

10  the protective order.

11       In connection with the motion for two-tier protective order, the Court evaluated the

12  evidence submitted by the parties and determined that Yellowcake and Defendants were

13  competitors but found that Dashgo had not adequately described its agreements with the DSPs.

14  (Doc. 78, p. 14.)  Given this lack of information, the Court stated:

15       The Court imagines that the agreements describe: the scope of the contract, the
16       services to be provided (including listing creative works which will be distributed),
         and the pricing agreed upon by the parties.  Presumably, the scope of these
17       agreements touches more than merely the copyrighted works allegedly infringed by
         Yellowcake and includes terms on which Dashgo has agreed with these DSPs for
18       unrelated digital works distributed to the DSPs.  As a competitor, disclosure of the
         contractual terms Dashgo has with the same DSPs that, at least, Colonize contracts
19       with for similar services, will put Dashgo at a competitive disadvantage.

20       It is probable that information can be redacted from these agreements to protect
21       confidential information.  But given that the Court cannot make a determination
         based on the lack of information, the Court will conduct an *in camera* review of
22       three contracts with DSPs. The Court notes that Dashgo has failed to carry its burden
         as to this category of documents, but nonetheless, based on the Court's concern with
23       the disclosure of competitive information, the Court will employ the *in camera*
24       proceeding.

25  (*Id.*, p. 15.)  The Court then ordered Dashgo to submit three representative contracts with

26  DSPs of Dashgo's choosing to the Court for an *in camera* review.  (*Id.*)

27       This Order is entered after considering the three representative agreements submitted by

28

                                              2

1  Dashgo and conducting an *in camera* review.

2  **Description of Documents Submitted for *In Camera* Review**

3  On August 4, 2022, the Court received the documents from Dashgo submitted for *in*

4  *camera* review, which consist of three agreements with three different DSPs. Of those, one of the

5  agreements is an "addendum" to a master agreement. The master agreement was not provided.

6  Each agreement is multiple pages, consisting of between 17 pages to 35 pages, including exhibits.

7  Each page of the agreements is marked "Confidential," which marking appears original to the

8  agreement and not added solely for the purpose of *in camera* review.  Each agreement also

9  contains a "confidentiality" provision,[1] which restricts disclosure of the terms and conditions of

10  the agreement.

11  None of the agreements include a list of the creative works or other related content that

12  will be distributed.  Instead, the majority of each agreement consists of terms describing services

13  which will be provided between the parties, the payment terms for such services, and payment

14  methodologies.

15  **Analysis**

16  The agreements do not appear to be "form" contracts.  They are unique contracts between

17  the parties and are not "canned" form contracts as argued by Yellowcake.  Importantly, there is

18  not a list of sound recordings in any of the agreements, and the agreements do not identify any

19  recordings.  As a result, the agreements do not identify any of the alleged infringed recordings at

20  issue in this litigation.  Thus, the agreements standing alone do not demonstrate alleged

21  "infringement" by Defendants of domestic or foreign copyrighted works owned by Yellowcake.

22  In opposing the motion for a two-tier, AEO protective order, Yellowcake argued that the

23  DSP agreements should be produced because the net revenue received by Dashgo from the DSPs

24  from the exploitation of Yellowcake's sound recordings is directly relevant to Yellowcake's

25  damages.  (Doc. 64, p. 41.) The Court agrees that Yellowcake is entitled to discovery regarding

26  net revenue from allegedly infringed copyrighted recordings.  However, none of the agreements

27

28  _____

[1] The "addendum" submitted for review does not contain an explicit confidentiality agreement, which may be contained in the master agreement.

3

1    shows any such net revenue.

2         At best for Yellowcake, the agreements might provide information for computation of

3    damages.  Indeed, the agreements set out various methodologies and percentages of payments,

4    depending on the services performed. However, disclosing such methodologies, the Court

5    believes, risks disclosing confidential and competitive information to Dashgo's competitor.  The

6    parties to each agreement identified confidentiality concerns with disclosure given that each page

7    of the agreements is marked "confidential," and each agreement contains a comprehensive

8    "confidentiality" provision.  Further, each agreement includes provisions, terms, conditions and

9    other language that the Court cannot parse out to evaluate which, if any, portion of the agreement

10   would either assist Yellowcake in assessing damages or would give Yellowcake a competitive

11   advantage.  Therefore, redaction is not a viable option.

12        The Court has already found that Yellowcake and Defendants are direct competitors.

13   (Doc. 78, p.14 ("For purposes of this motion, the record before the Court supports a finding that

14   Plaintiff and Defendants are direct competitors.  Defendants have submitted competent evidence

15   from Patterson that Colonize is targeting the same client base that Dashgo is targeting for the

16   same services.").)  Disclosing confidential information such as services and payment

17   methodologies to a competitor is not warranted in this case.  Moreover, Yellowcake has identified

18   documents from which it can determine alleged damages.  For instance, Yellowcake identified

19   "royalty" reports which Dashgo has already disclosed.  (Doc. 78, p. 11.)  There may be additional

20   forms or reports which would provide information for damages calculations, yet shield the

21   fundamental confidential relationship between Dashgo and DSPs from disclosure to a competitor.

22   Thus, disclosing these DSP agreements as AEO and subject to protections under the AEO

23   provision will not deprive Yellowcake of its ability to prove damages.

24                                **Conclusion and Order**

25        Based on the above, the Court finds that Dashgo's agreements with DSPs shall be

26   designated AEO and produced pursuant to the AEO terms of the protective order entered in this

27   action. (Doc. 82.)

28   ///

                                          4

The Clerk of the Court is instructed to return to Defendants' counsel of record the documents submitted for *in camera* review, via U.S. mail.

IT IS SO ORDERED.

Dated: __**August 19, 2022**__                    ____/s/ *Barbara A. McAuliffe*____
                                                                         UNITED STATES MAGISTRATE JUDGE