A | F

ABRAMS | FENSTERMAN, LLP

ATTORNEYS AT LAW

Long Island
3 Dakota Drive, Suite 300
Lake Success, NY 11042
516.328.2300 | P

Long Island · Brooklyn · White Plains · Rochester · Albany · Manhattan

Seth L. Berman, Esq.
Partner/Director Intellectual Property and Entertainment Dept.
Email: sberman@abramslaw.com

September 2, 2022

VIA ECF AND EMAIL
(c/o evaldez@caed.uscourts.gov)

Hon. Barbara A. McAuliffe
U.S. District Court, E.D. Cal., Fresno Division
Robert E. Coyle United States Courthouse
2500 Tulare Street
Courtroom 8, 6th Floor
Fresno, California 93721

Re: *Yellowcake, Inc. v. Dashgo, Inc., et al.*
USDC, E.D. Cal., Fresno Div., Case No. 1:21-cv-00803-AWI-BAM

Dear Magistrate Judge McAuliffe:

This firm, along with Hefner Law, represents Plaintiff Yellowcake, Inc. ("Yellowcake") in the above-referenced matter. We write to respectfully request an emergency court conference to discuss Defendants' violation of this Court's Order, dated July 20, 2022, concerning the parties' protective order ("Order" [Dkt. #78]) to avoid what should otherwise be unnecessary motion practice. Simply put, in compliance with the Order, Yellowcake provided Defendants with a detailed list of every copyrighted sound recording allegedly infringed in the Second Amended Complaint so that Defendants could fully respond to Yellowcake's discovery demands without any question as to what copyrighted works were in dispute. The list provided by Yellowcake included every relevant identifier for each work including the artist, song title, album title and any available International Standard Recording Code ("ISRC") and Universal Product Code ("UPC") relating to that sound recording. Despite receiving this detailed list, Defendants are still intentionally refusing to respond to Yellowcake's discovery demands claiming that they still cannot identify the works at issue, which is disingenuous. For the reasons set forth below, Yellowcake is asking for an emergency conference or framed issue hearing so that it does not have to burden the Court with yet another motion to compel and be unfairly expensed and delayed.

**Pertinent Background**

As the Court is aware, the essence of this action is that Yellowcake alleges that the Defendants, including a former distributor for Yellowcake, improperly distributed over two



thousand (2,000) digital sound recordings after the termination of two prior distribution agreements. After service of the initial Complaint, Yellowcake served interrogatories on or about November 11, 2021, and document demands on about November 1, 2021, and December 13, 2021, seeking, amongst other things, information and documents related to the copyrighted sound recordings infringed ("Discovery Demands"). The definition of Yellowcake's Copyrighted Works and Foreign Works used in the Discovery Demands mirrored the same definitions used in the Complaint. The Complaint contained exhibits identifying Yellowcake's Copyrighted Works and Foreign Works using the artists' name, song title, album title and, where applicable, the copyright registration number. *See* Dkt. #1.

On or about February 16, 2022, Yellowcake filed a Second Amended Complaint ("SAC") using the same definition of "Yellowcake's Copyrighted Works" and "Foreign Works" as the initial Complaint and First Amended Complaint, but the SAC added thirty-one (31) albums to the list of "Yellowcake's Copyrighted Works". *See* Dkt. #31. Otherwise, the definition in the SAC included all of the prior sound recordings referenced in the initial Complaint and First Amended Complaint. Thereafter, Defendants complained that they could not identify the thirty-one (31) new albums added to the SAC and therefore could not fully respond to the Discovery Demands, even though Defendants had managed to produce some responses to the Discovery Demands using the existing definitions. After multiple meet-and-confer conferences and Court conferences, Yellowcake, in good faith, provided Defendants' counsel with a list identifying the thirty-one (31) new albums added to the SAC ( "Initial List"). *See* a copy of the correspondence, dated May 16, 2022, and list sent to Defendants' counsel annexed hereto as <u>Exhibit 1</u>.

On or about March 25, 2022, Defendants filed a motion for a two-tier protective Order which Yellowcake opposed. In connection with their motion for a Protective Order, Defendants again argued that the definitions in the previously served Discovery Demands had been superseded by the definition of "Yellowcake's Copyrighted Works" in the SAC and that they could not adequately respond to Yellowcake's Discovery Demands, even though they had already received the Initial List and knew that the exhibits to the SAC comprised of the complete updated list of all works allegedly infringed.

In the Order, Your Honor held, in pertinent part, that:

> "…Plaintiff's RPD and Interrogatories Set One both incorporate the same definitions of "Yellowcake's Copyrighted Works" and the "Foreign Works" as set forth in the FAC, but not the definitions set forth in the SAC. The definitions in the FAC of Copyrighted Works and Foreign Works are different from the definitions in the SAC. Any RPD based upon terminology or allegations in the FAC are superseded by the SAC. However, the Court understands that Plaintiff has recently provided a "list" of copyrighted works (both domestic and foreign) that Plaintiff contends Defendants infringed. The parties are directed to meet and confer to identify the list and

> which definitions will be used for responding to the RPD and Interrogatories Set One." Dkt 78, Pg. 6, Lns. 18-23.

*Nowhere in the Order did the Court direct what had to be included in the list to identify the works at issue.*

Pursuant to the Order, Yellowcake sent correspondence to Defendants' counsel on August 3, 2022, with copies of the exhibits to the SAC making it unmistakably clear that Exhibits A and B set forth the entirety of "Yellowcake's Copyrighted Works" and Exhibit C set forth the entirety of the "Foreign Works," and Yellowcake agreed in that letter to later provide whatever ISRCs and UPC information Yellowcake had with regards the works. As such, there could be no good faith dispute as to what the definitions of "Yellowcake's Copyrighted Works" and the "Foreign Works" are. A copy of Yellowcake's correspondence, dated August 3, 2022, is annexed hereto as Exhibit 2.

*To be clear, at no point prior did Defendants demand that Yellowcake specifically produce ISRCs or UPCs for each work.* Furthermore, there is no legitimate need for ISRC or UPC information because Yellowcake was seeking information regarding sound recordings that were previously distributed by Defendants and Defendants have account databases that can identify a client's catalog and can be searched by song title, artist and album.

Consistent with the letter of August 3, 2022 (and follow-up correspondence on August 5, 2022), on August 9, 2022, Yellowcake's counsel sent Defendants' counsel *another list* reflecting the exhibits to the SAC together with Yellowcake's ISRC and UPC information related to each alleged work infringed as well as URL links to infringing videos on Defendant Dashgo's YouTube channel. A copy of Yellowcake's correspondence dated August 9, 2022, is annexed hereto as Exhibit 3.

Surprisingly given the breadth of information that had been provided by Yellowcake, on August 11, 2022, Defendants' counsel wrote to the undersigned refusing to respond to Yellowcake's Discovery Demands on the completely nonsensical basis that Defendants allegedly performed a "spot check" of only *three* of the ISRCs provided and that there were some discrepancies with those three ISRCs with the ISRC database (*out of thousands*) and, therefore, Defendants would not respond the Discovery Demands. Defendants also improperly stated that they would refuse to provide any discovery concerning the "Foreign Works" based on Defendants' erroneous, and self- serving argument that Yellowcake allegedly failed to prove chain of title to the Foreign Works. To be sure, Yellowcake provided more than sufficient evidence in response to Defendants' objections to the Discovery Demands to prove chain of title and this in an inappropriate reason to withhold information during the discovery phase of litigation. A copy of Defendants' letter dated August 11, 2022, is annexed hereto as Exhibit 4.



Once again, Yellowcake acted in good faith and investigated Defendants' claims regarding the three alleged ISRC discrepancies. On August 18, 2022, Yellowcake explained to Defendants' counsel that sometimes there are mis-indexed ISRCs and that there can be multiple ISRCs for the same sound recording. Nonetheless, *Yellowcake provided Defendants with yet another list of the works allegedly infringed, this time including all possible identifying information that Yellowcake could possibly provide including*: (i) the artist name; (ii) song title; (iii) album title; (iv) copyright registration number (if a domestic work); (v) all known ISRCs previously used by Yellowcake; (vi) all known ISRCs previously used defendant Dashgo; (vii) all known UPCs previously used by Yellowcake; (viii) all known UPCs previously used by Dashgo; (ix) all known URLs for any works infringed on YouTube and a note where such ISRC was not available in the ISRC database. Yellowcake also provided a copy of a sample of a typical Dashgo royalty accounting report using the same identifying information and that Dashgo's database could be searched simply by artist, title and album as well as by ISRC and UPC. A copy of Yellowcake's letter, dated August 18, 2022, is annexed hereto as Exhibit 5. At this point, Yellowcake has provided every possible piece of information that Defendants could possibly use to find the information and documents demanded related to the sound recordings at issue.

On August 19, 2022, the very next day, Defendants served what appears to a pre-canned letter once again asserting meritless arguments as to why Defendants allegedly cannot identify "Yellowcake's Copyrighted Works" and why they are refusing to respond to Yellowcake's Discovery Demands concerning the "Foreign Works". A copy of Defendants' letter, dated August 19, 2022, is annexed hereto as Exhibit 6.

**Defendants' Meritless Arguments**

Defendants first argue that there can only be one ISRC for a particular sound recording and if there is more than one or conflicting information in the ISRC database, *they are refusing to provide any information or documents for any of the works, even if the ISRC is correct for that work.*

First and foremost, and ISRC is a protocol used in the music industry to allow parties like record labels, music distributors and digital service providers to identify a particular sound recording since is within the realm of possibility that an artist can create multiple versions of sound recordings of the same song and registering an ISRC helps to identify a specific sound recording and that sound recording's owner. *However*, the use of an ISRC is not legally required in any way and the ISRC system is far from infallible. Often, an ISRC can be mis-indexed or there can be multiple ISRCs for the same sound recording. This happens when the rights to a sound recording are sold and the new owner seeks to create a clean accounting history for that sound recording.

Defendants cite to the ISRC Handbook published by the International ISRC Registration Authority as if it is binding law, which it clearly is not. The ISRC Registration Authority may publish guidelines, but that does not mean that everyone in the digital recording industry follows



the suggested rules. So, while the handbook states that ideally there should only be one ISRC per sound recording in existence, given the reality of the music business, it is very common to have multiple ISRCs for the same sound recording or mis-indexed sound recordings. In this case Defendants identified only *three* discrepancies out of more than two thousand (2,000) sound recordings.

Moreover, Defendants' claim of ISRC discrepancies are based on Sound Exchange's ISRC indexing, which is completely irrelevant to Yellowcake's claims. Yellowcake is specifically alleging that Defendants infringed Yellowcake's sound recordings by distributing them on YouTube and Amazon. *See* SAC, Dkt. 31.

Furthermore, Defendants claim that they need accurate ISRCs for every sound recording at issue in order to respond to Yellowcake's Discovery Demands is, simply put, untrue. An ISRC is only one possible piece of potential identifying information. Defendants do not need an ISRC in order to produce documents and financial information relevant to those titles. Dashgo's reporting platform allows for searches by artist and title only. *See* Dashgo's royalty accounting report with artist and song title fields, annexed as Exhibit 7 hereto. Having the artist, song title, album, multiple ISRCs and UPCs is more than sufficient to "pinpoint" a particular sound recording, even assuming, *arguendo*, that there is an issue with a particular work's ISRC.

Notwithstanding the above, Defendants brazenly state that they will not search for any information related to titles on the final list simply because they selectively cited to only *three* ISRC codes that may have some alleged discrepancies based on their analysis. Assuming Defendants' claim that certain ISRC codes are inaccurate, Defendants can still search for documents and information related to the other titles whose codes are accurate and provide Yellowcake with a list of ISRC codes they believe are inaccurate, in which case, Yellowcake can investigate and reconcile any discrepancies. This is exactly what Yellowcake offered to Defendants in its letter dated August 18, 2022. *See* Exhibit "5". Defendants conveniently refused. *See* Exhibit "6". Defendants' strategy of relying on only three discrepancies out of over two thousand (2,000) titles as a basis to withhold information for the remaining sound recordings with accurate ISRC codes is telling of Defendants' true intent.

Defendants' improper refusal to produce documents and information is also based on the false premise that Defendants are in possession of multiple ISRC codes for all of the two thousand (2,000) copyrighted sound recordings at issue and, therefore, cannot distinguish between them. This premise is inaccurate. For this to be true, it would mean that not only did Defendants distribute Yellowcake's copyrighted works with Yellowcake's ISRCs, but also that Defendants now distribute the same exact songs re-recorded by the same exact artist for a different label which were then issued a new ISRC for that new recording. It is highly unlikely Defendants have any other ISRCs for even one of the same exact artists and songs, let alone over two thousand (2,000) of them, *especially since many of the artists whose sound recordings are in dispute are under exclusive contract with Yellowcake*.



Even assuming that Defendants were lawfully distributing a different sound recording of the exact same song by the exact same artist owned by a third-party that has a different ISRC, that would provide a potential affirmative defense to Defendants and as such, that information is relevant to the case and must be produced.

Second, Defendants argue that Yellowcake is obligated to correct any ISRC error. This is not true. As explained above, Defendants' argument that complete and accurate ISRCs are necessary is nothing more than a red herring asserted to avoid responding to the Discovery Demands. ISRCs are not necessary for Defendants to identify the sound recordings in dispute. In fact, "correcting" any alleged ISRC error would actually be counterproductive. Yellowcake alleges that Defendants started to unlawfully distribute its sound recordings again in the spring of 2020. As such, Yellowcake seeks documents and information regarding Defendants' acts of infringement which occurred using the ISRCs being used at that time, and which are the ones provided by Yellowcake in Exhibit "5". If Yellowcake was to "correct" the alleged errors with the ISRCs cited by Defendants, it would mean that Yellowcake would be issued a new ISRC for that sound recording. That new ISRC would only be relevant on a "go forward" basis and would not be relevant to the past acts of infringement at issue in this case.

Third, Defendants' nonsensically claim that the UPCs provided by Yellowcake are insufficient to identify the works because UPCs refer to albums, not individual sound recordings. However, as stated above, the UPCs, together with the artist's name, song title and ISRC help to significantly refine the search to a particular album and make it very easy for Defendants to find individual songs related to that album.

Fourth, Defendants claim that the exhibits provided in Yellowcake's letter of August 18, 2022 (*See* Exhibit 5 hereto), do not all include the same identifying information, including Dashgo's prior ISRCs. However, Yellowcake has produced all identifying information it could find regarding each sound recording at issue and, when reviewed in total, is more than sufficient for Defendants to identify the sound recordings. Again, Defendants' claim that they cannot identify the works at issue is disingenuous because Defendants distributed these sound recordings for years and when Yellowcake demanded that Defendants stop infringing them prior to filing suit, Yellowcake's counsel sent Defendants a list of the sound recordings at issue (without ISRCs) and Defendants immediately identified the works and promptly stopped their acts of infringement.

Fifth, not only do Defendants insist that Yellowcake provide them with ISRCs, they are also insisting that Yellowcake provide them with all of the underlying metadata for each sound recording and first "prove" to Defendants that each sound recording allegedly infringed is the same recording registered with the copyright office. This is just beyond the pale. Defendants have no right to insist that Yellowcake make this showing just to respond to the Discovery Demands. Furthermore, Yellowcake's registrations create a *prima facie* presumption of a valid copyright. If

Defendants believe that the works at issue are not the same ones recorded in the copyright office, it is their burden to prove that they are different.

**Defendants' Refusal to Produce Documents and Information Concerning The "Foreign Works"**

Lastly, Defendants are refusing to produce any information related to Yellowcake's "Foreign Works" based on the erroneous clam that Yellowcake must first definitively prove the chain of title to the Foreign Works before Defendants will respond to any Discovery Demands concerning the Foreign Works. This is simply not a requirement.

Yellowcake *has* proven its chain of title to the Foreign Works and provided Defendant with hundreds of pages of proof substantiating its chain of title in response to Defendants' discovery demands. If after discovery, Defendants believe that Yellowcake has failed to meet its burden of proof in any way, Defendants may move for summary judgement. However, Defendants have not cited any authority for their refusal to respond to the Discovery Demands based on their claim that Yellowcake must first prove its chain of title. Yellowcake asserts that it has provided sufficient proof of its chain of title. Notably, when Defendants finally do respond to Yellowcake's Discovery Demands, Defendants will likely produce documents and information that will further prove Yellowcake's chain of title.

Defendants have no right to unilaterally impose a summary judgment standard on Yellowcake as a threshold for having to respond to Yellowcake's Discovery Demands.

**Conclusion**

The only logical conclusion that can be drawn from Defendants' actions is that they are trying to avoid having to respond to Yellowcake's Discovery Demands because copyright infringement is essentially a strict liability offense and the documents and information being withheld by Defendants will substantiate Yellowcake's claims. As part of this strategy, Defendants are unilaterally imposing burdens of proof on Yellowcake that are irrelevant and inappropriate, especially at the discovery stage. In the dozens of copyright infringement matters the undersigned has litigated, the undersigned has never had to produce ISRCs in order to obtain discovery from an adverse party. Simply put, Yellowcake is just seeking basic information from its former distributor regarding works that Defendants previously distributed for years and which are known and readily accessible to Defendants, as demonstrated by the countless reports for these works that Defendants provide to Yellowcake during the period in which Defendants distributed these works prior to the expiration of the former distribution contracts.

For the reasons set forth above, Yellowcake is requesting a discovery conference as soon as reasonably possible to discuss these issues with the Court. Yellowcake should not have to bear the burden of making yet another motion to compel when it is obvious that Defendants have


intentionally misconstrued the Court's Order and have violated the Order in doing so. In the alternative, Yellowcake is prepared to have a framed issue hearing on this matter. Defendants should be compelled to appear in Court and testify under oath, and under the penalty of perjury, that they still cannot identify Yellowcake's Copyrighted Works with the information provided.

      We thank the Court in advance for its accommodation.

Respectfully,

Seth L. Berman

SLB:gar

cc:    Richard J. Idell, Esq. (via ECF)
       Ory Sandel, Esq. (via ECF)
       Thomas P. Griffin, Jr., Esq. (via ECF)