# EXHIBIT 6



RICHARD IDELL
ridell@dpf-law.com

August 19, 2022

**MEET AND CONFER**
**PURSUANT TO LOCAL RULE 251**

**VIA EMAIL ONLY**
**(SBerman@Abramslaw.com)**

Seth Berman, Esq.
ABRAMS FENSTERMAN
3 Dakota Drive, Suite 300
Lake Success, NY 11042

> Re:    **Yellowcake adv. Dashgo, et al.**
>         **USDC, E.D.Cal., Case No. 1:21-cv-00803-AWI-BAM**

Dear Mr. Berman:

This is in response to your letter of August 18, 2022.

As you know, the Court's July 21, 2022 Order obligates Plaintiff to provide to Defendants a list of specifically-identifiable copyrighted works that Defendants are alleged to have infringed. Once Plaintiff has provided that list, Defendants have been ordered to supplement their discovery responses. The list will serve to define the terms "Yellowcake's Copyrighted Works" and "Foreign Works", as used in the Second Amended Complaint ("SAC") and in Plaintiff's discovery.

Contrary to assertions made in your letter of August 18, 2022, the SAC does not "clearly" set forth the copyrighted works allegedly infringed; had it, the Court would not have ordered Plaintiff to provide a definitive list, with specificity. Your August 18, 2022 letter also attempts to shift the burden of identifying the songs included in "Yellowcake's Copyrighted Works" and "Foreign Works" to Defendants, but, as we have previously noted, and as we again note below, specific and accurate identification of the copyrighted works allegedly infringed is Plaintiff's burden, not Defendants' burden.

On August 12, 2022, we sent you a letter pointing out three patent defects of the list you provided to us on August 9, 2022, denominated as Exhibits A, B and C.

Your August 18, 2022 letter encloses a further iteration of the "list", again denominated as Exhibits A, B and C, which you apparently intend to be correlated to, and substitutes for, the Exhibits A, B and C to the SAC. For the reasons set forth in this letter, this new iteration of the "list" still misses the mark on requisite specificity, in accordance with generally accepted third-party standards. In good faith, and to further meet and confer with you on the "list" as we have

been ordered, we further explain below, in detail, why your newly revised "list" is not acceptable, and point out that further proceeding with discovery is being impeded by Plaintiff's failure to comply with the Court's July 21, 2022 Order to provide a list with specificity.

<u>Only One ISRC Per Sound Recording</u>

In your August 18, 2022 letter, you state: "You are well aware it is possible that there is more than one ISRC code issued for a particular sound recording, and that it is also possible for a sound recording to be mis-indexed. Nor is every ISRC code available on Sound Exchange or properly indexed on Sound Exchange." You are either misinformed or simply choosing to ignore established standards, promulgated by authoritative third parties, for the digital music distribution industry.

For your review and information, we enclose herewith the ISRC Handbook (4th ed. 2021) published by the International ISRC Registration Authority (the "Handbook").[1]

Section 4.1 of the Handbook, "Principles", states, in full and verbatim:

"In order for ISRC to uniquely and permanently identify recordings, the assignment of ISRC to recordings must be carried out diligently. Assigning an ISRC correctly may involve accessing information outside the immediate control of the registrant and this must be sought meticulously.

The key principles for ISRC assignment are (a) that each distinct recording shall be assigned one and only one ISRC and (b) that any particular ISRC shall be assigned to one and only one recording."

Similarly, Section 4.3 of the Handbook, "Assign ISRC to Distinct Recordings", states, in full and verbatim:

"It is necessary to clearly distinguish when two recordings are the same and when two recordings are different.

Any recording without an ISRC may be assigned an ISRC.

A recording with an ISRC that has undergone material change since an ISRC was assigned shall not be identified with the old ISRC and shall be assigned a new ISRC.

A recording with an ISRC that has not undergone material change since an ISRC was assigned shall not be assigned another ISRC."

---

[1] The Handbook is available online at:
https://www.ifpi.org/wp-content/uploads/2021/02/ISRC_Handbook.pdf

Berman, Seth
August 19, 2022
Page 3

Likewise, Section 4.6 of the Handbook, "ISRC Does Not Change", states, in full and verbatim:

> "If the original Registrant sells or licenses the recording in unchanged form after it has been given an ISRC, no new ISRC shall be assigned and the ISRC for the recording shall remain the same. The Registrant must inform the new owner or licensee of the ISRC of the recording. The new owner will then need to inform business partners about the transaction using the unchanged ISRC. These partners will then be able to adjust their records so that the correct party is credited for use of a recording."

Section A.7 of Annex A to the Handbook, "WHEN IS A NEW ISRC REQUIRED?", again clearly states: "Recordings that are identical shall be identified by the same ISRC. Recordings that are completely different shall be identified by different ISRCs."

As you know, and as we have previously noted in our prior meet and confer correspondence, many of the copyright registrations alleged by Yellowcake's SAC are for compilations or collections of sound recordings. In this regard, Section A.8.4 of Annex A to the Handbook, "A compilation is created", states, in pertinent part: "Where the recording is reused on a compilation without change, re-mixing or re-mastering, the same ISRC shall be used. The exploitation of a recording on a compilation (or other subsequent issues) cannot be distinguished from exploitations of the same recording on other releases by reference to the ISRC. The ISRC must be the same in each case."

Section B.1 of Annex B to the Handbook, "THE RELATIONSHIP BETWEEN A MUSICAL WORK AND A RECORDING", notes: "Musical works are typically identified with the ISO standard International Standard Musical Work Code (ISWC). A recording is identified with ISRC. A musical work may be recorded once or many times as different recordings, and each distinct recording would have its distinct ISRC."

Thus, as a threshold matter, only one distinct ISRC applies to a single distinct sound recording, and a distinct ISRC is presumptively the most effective way to determine which distinct sound recording is being referenced. These neutral, third party standards are non-controversial and apply to each and every one of the sound recordings allegedly at issue in this case, and thus necessarily apply to Plaintiff's obligation to supply a list of identifiable copyrighted works "with specificity", as set forth in the Court's July 21, 2022 Order.

<u>The Digital Music Distribution Industry Uses ISRCs to Unambiguously Reference Specific Sound Recordings</u>

As you know, Dashgo provides services for the distribution of digital music. Adrev is an administrator for monetization of music rights on YouTube's Content ID platform. In other words, both Dashgo and Adrev are in the digital music distribution industry.

Berman, Seth
August 19, 2022
Page 4

Section 3.2 of the Handbook, "Why Assign ISRC?", notes: "Many online services require the supply of an ISRC to uniquely identify a recording and to help manage any data that relates to it. The use of ISRC ensures interoperability between usage reports from disparate services."

Section 4.7 of the Handbook, "Reference Metadata", notes: "When ISRC is assigned, the 'binding' of the ISRC to the specific recording is secured through 'reference metadata'. Reference metadata (sometimes called "minimum metadata" or "kernel metadata") is a small set of descriptive data such that if two recordings are different, the reference metadata will differ in at least one field."

Section 4.8 of the Handbook, "The use of ISRC in Data Interchange", notes: "The ISRC of a recording should be provided when the use of that recording is being reported. Recording data is exchanged between different parties who need to use it. ISRC enables unambiguous reference to specific recordings by the parties to a data exchange process."

Thus, it should come as no surprise to you that Defendants, and the digital services providers with which Defendants do business, require ISRCs to uniquely identify a particular sound recording. Each ISRC has necessary reference metadata associated with it. All data associated with a particular sound recording are linked to the sound recording's ISRC, and all reports generated by Defendants, or received by Defendants from third parties, rely on accurate ISRCs, each associated with a single, unique and distinct sound recording.

<u>Yellowcake Is Obligated to Correct Any ISRC Error</u>

To the extent that "there is more than one ISRC code issued for a particular sound recording", or a "mis-indexing", that is **_not_** of Defendants' doing, and it is **_not_** Defendants' responsibility to correct such errors. It is also certainly **_not_** Defendants' responsibility to ensure that any such errors are not replicated on the "list" that Plaintiff has been ordered to provide.

Section A13.1 of Annex A of the Handbook, "Single recording assigned more than one ISRC", provides in pertinent part: "Where more than one ISRC has been assigned to a recording, the Registrant shall select one and use it as the preferred ISRC. The other ISRC(s) shall be noted in the Registrant's internal records and not used for future releases."

Section 4.11 of the Handbook, "Rectifying errors", states: "In the case where two distinct recordings have improperly been assigned the same ISRC, then one or both of those recordings should be assigned a new ISRC in order to restore uniqueness of identification."

If, as it appears, there is more than one ISRC assigned to any of the sound recordings allegedly at issue in this action, or if, as it appears, the same ISRC was assigned to two different sound recordings, only one of which is allegedly at issue in this action, it is **_Yellowcake's responsibility_**, not Defendants' responsibility, to correct such errors and to ensure that the "list" that Plaintiff has been ordered to provide is 100% accurate and reliable.

Berman, Seth
August 19, 2022
Page 5

UPC Is Insufficient to Identify a Unique Sound Recording

As set forth in footnote 18 of the joint statement on Yellowcake's motion to compel, a UPC would be unique to an album, not to an individual sound recording (unless the sound recording was sold as album comprised of a single track). Thus, UPC identification in no way assists Defendants in ascertaining "the works, with specificity, they are alleged to have infringed." *Cf.* Docket No .78 [7/21/2022 Order] at 21:8-9.

Yellowcake Is Obligated to Provide the List, With Specificity

Contrary to your unfounded assertion, we did not "cherry-pick" ISRC codes to discover the discrepancies set forth in our August 11, 2022 letter. Rather, as stated in that letter, we conducted a spot check of a few ISRC codes. Based on the result of our very preliminary research, it was immediately apparent that your proffered "list" was inaccurate.

We decline your invitation to "continue to search for the remainder of the titles" to find additional discrepancies and defects with your purported "list". Because of the number of works at issue, a thorough assessment of the inaccuracies of your purported "list" (of which we have now received three different iterations) is both time-prohibitive and cost-prohibitive.

In any case, and as we noted in our August 11, 2022 letter, it is Plaintiff's burden: (1) to provide the "list" ordered by the Court; *and* (2) to establish (a) that it owns the works at issue; (b) that those works are eligible for copyright protection under the Copyright Act; and (c) that those works were infringed.

The **New** Exhibits A, B and C Do Not Contain The Information You Represent

Your letter of August 18, 2022 states, in pertinent part: "[E]nclosed herewith is our new list mirroring Exhibits A, B and C to the Second Amended Complaint which includes both Yellowcake's ISRC codes, Dashgo's prior ISRC codes, Yellowcake's UPC codes and Dashgo's UPC codes for the works infringed as well as a note when such ISRC code is not available on Sound Exchange database but used in connection with digital service providers." However, a review of the so-called new "list" (Exhibits A, B and C) reveals that the new list does not contain the information that you represent in your letter, and, more importantly fail to meet the specificity required by the July 21, 2022 Order:

   a.  Exhibit A sets forth *only*: Song Title, Artist, SR, Link, ISRC [albeit not Dashgo ISRC] and UPC.

   b.  Exhibit B sets forth *only*: Release Display Artist, Album Title, Track Number, Track Title, SR, Platform, UPC and ISRC [again, not Dashgo ISRC].

   c.  Exhibit C sets forth *only*: DashGo UPC, Colonize UPC, Release Display Artist, Album Title, Track Number, Track Title, SR, Platform and Colonize ISRC [yet again, not Dashgo ISRC].

Berman, Seth
August 19, 2022
Page 6

Thus, contrary to your representation, the Exhibits A, B and C do <u>not</u> include "Dashgo's prior ISRC codes". Neither Exhibit A nor Exhibit B identify whether the UPC column is for "Yellowcake's UPC codes" or "Dashgo's UPC codes", but in any case, those two exhibits have only one UPC column and therefore do not include both "Yellowcake's UPC codes and Dashgo's UPC codes". As for Exhibit C, it is unclear whether "Yellowcake's UPC codes" [as set forth in your August 18, 2022 letter] are the same as "Colonize UPC" [as set forth on Exhibit C].

We found no "note when such ISRC code is not available on Sound Exchange database but used in connection with digital service providers." We therefore have no idea what you are referring to by this phrase.

In short, even if the newly-delivered Exhibits contained sufficient information for the specificity required by the Defendants and the Court – which they decidedly do not – the Exhibits A, B and C sent with your August 18, 2022 do not even contain the information you say they do.

<u>An ISRC Code Is Necessary But Not Sufficient for Specificity; Plaintiff's Discovery Seeks Irrelevant Information and Documents</u>

Annex E to the Handbook, "REFERENCE METADATA TO BE MAINTAINED FOR EACH ISRC", sets forth the reference metadata elements associated with a sound recording that has been assigned an ISRC, namely: (1) ISRC; (2) Main Artist; (3) Track Title; (4) Version Title or Alternative Title or Subtitle; (5) Duration; (6) Content Type; and (7) Date of Publication. It is obvious why this information is necessary to establish which specifically-identifiable sound recordings are at issue in this action. However, a bare list of ISRCs is still insufficient.

Since this is an action for copyright infringement, Yellowcake must show that the subject sound recordings are protectable in the first instance. To do that, Yellowcake must establish that each particular sound recording (identified by ISRC) is actually the same sound recording that was registered with the Copyright Office (as to those sound recordings that were allegedly so registered; as we have previously noted, Yellowcake admits that none of the "Foreign Works" was registered).

By way of example only, and without limitation, the very first work on your new Exhibit A is identified as the song "El Patiecito" by the band La Nobleza De Aguililla, with the "SR" [sound recording copyright registration number] SR0000638659. As shown by the enclosed registration record for Reg. No. SR0000638659, the registration is actually for "Siempre Juntos" by La Nobleza De Aguilla. Obviously, the song "El Patiecito" is not the same as the song "Siempre Juntos"[2]. Nor is "Aguililla" the same as "Aguilla".

Thus, even as to the allegedly <u>registered</u> sound recordings ("Yellowcake's Copyrighted Works"), Yellowcake cannot, *prima facie*, make out a case that the works allegedly infringed are eligible for copyright protection under the Copyright Act.

---

[2] It is unclear, based on the registration alone, whether "Siempre Juntos" is a song title or an album title. Either way, though, "Siempre Juntos" is clearly not the same as "El Patiecito".

Berman, Seth
August 19, 2022
Page 7

As we have already noted on multiple occasions (most recently, in our letter of August 11, 2022), as to those works allegedly infringed that are not registered (that is, all of the "Foreign Works"), those sound recordings, allegedly of Mexican origin, are only eligible for copyright protection under the Copyright Act if Yellowcake can establish that each work meets the requirements of 17 U.S.C. § 104(b). You have repeatedly refused to provide us with any information or documents showing that any of the "Foreign Works" is, in fact, eligible for copyright protection under the Copyright Act. We have asked multiple times for this information; your continued refusal to provide the requested information will lead to a motion for issue preclusion.

In addition, to the extent that Plaintiff's discovery seeks information and documents relating to sound recordings that are *ineligible* for copyright protection under the Copyright Act – as it certainly appears to – that discovery is overbroad, unduly burdensome and irrelevant.

<u>Conclusion</u>

As the Court noted in its July 21, 2022 Order, "Defendants are entitled to know the works, with specificity, they are alleged to have infringed." The list of works Defendants are alleged to have infringed is a threshold issue since, again, the list will serve to define the terms "Yellowcake's Copyrighted Works" and "Foreign Works", as used in the SAC and in Plaintiff's discovery. Defendants cannot supplement their discovery responses, nor know for certain which documents are responsive to Plaintiff's document requests, until a final, comprehensive, specific and accurate list of identifiable copyrighted sound recordings has been provided.

Please respond to this letter by the close of business on August 26, 2022. Although the Court has not set a deadline for either provision of the list, nor for supplementation of Defendants' discovery responses, we would like to move this case along.

Sincerely,

DICKENSON, PEATMAN & FOGARTY

Richard Idell

RJI:obs
Enclosures
cc:    Tom Griffin, Esq. (via email only to tgriffin@hsmlaw.com)
       Ory Sandel, Esq.



# International Standard Recording Code (ISRC) Handbook

*4th Edition, 2021, International ISRC Registration Authority*
*© 2021 IFPI*

International ISRC Registration Authority
c/o IFPI Secretariat
7 Air Street
London
W1B 5AD
United Kingdom
Tel: +44 (0)20 7878 7900
Fax: +44 (0)20 7878 7950
Email: isrc@ifpi.org
Website: https://isrc.ifpi.org/

This work is licensed under the Creative Commons Attribution-NoDerivatives 4.0 International (CC BY-ND 4.0) licence. To view a copy of this licence, visit https://creativecommons.org/licenses/by-nd/4.0/. If you have licensing requirements outside of this licence, please contact the International ISRC Registration Authority using the above contact details. To ensure that up-to-date information is used, a link to the ISRC website at https://isrc.ifpi.org is preferred to copying this document.

# 1   CONTENTS

1   CONTENTS ......................................................................................................................... 2

2   BACKGROUND .................................................................................................................. 5

3   INTERPRETATION OF ISO 3901:2019 .......................................................................... 5

3.1   Scope and purpose of ISRC ......................................................................................... 5

3.2   Why Assign ISRC? ....................................................................................................... 6

3.3   Structure of ISRC and Assignment by Users ............................................................. 6

3.3.1   General ................................................................................................................. 6

3.3.2   Prefix Code .......................................................................................................... 7

3.3.3   Year of Reference Element .................................................................................. 8

3.3.4   Designation Code ................................................................................................. 8

3.4   Automated Assignment ................................................................................................ 9

4   IMPLEMENTATION GUIDELINES .................................................................................. 9

4.1   Principles ...................................................................................................................... 9

4.2   Who will assign ISRC ................................................................................................. 10

4.3   Assign ISRC to distinct recordings .......................................................................... 10

4.4   How to assign ISRC .................................................................................................... 10

4.5   Registration and Copyright ....................................................................................... 11

4.6   ISRC Does Not Change .............................................................................................. 11

4.7   Reference Metadata ................................................................................................... 11

4.8   The use of ISRC in Data Interchange ....................................................................... 11

4.9   Encoding of ISRC ....................................................................................................... 12

4.10   Multi-part recordings or excerpts ............................................................................. 12

4.11   Rectifying errors ........................................................................................................ 12

5   VISUAL PRESENTATION OF ISRC .............................................................................. 13

6   PRIVACY .......................................................................................................................... 13

ANNEX A ................................................................................................................................. 14

IMPLEMENTATION GUIDELINES HOW & WHEN TO ASSIGN ISRC ............................ 14

A.1   BACKGROUND ............................................................................................................ 14

A.2   THE SCOPE OF ISRC ................................................................................................. 14

A.2.1   Audio Recordings .............................................................................................. 14

A.2.2    Music Video Recordings ........................................................................ 14

A.3    PRINCIPLES OF ISRC ASSIGNMENT .............................................................. 14

A.4    SHOULD AN ISRC BE ASSIGNED? ................................................................. 15

A.5    WHO MAY ASSIGN AN ISRC? ...................................................................... 15

A.6    WHEN SHOULD A NEW ISRC BE ASSIGNED? ................................................ 15

A.7    WHEN IS A NEW ISRC REQUIRED? ............................................................... 16

A.8    NEW ISRC NEVER REQUIRED ...................................................................... 16

A.8.1    A recording is encoded using a different technology ............................ 16

A.8.2    A high-resolution version of a recording is created ............................. 17

A.8.3    A version for a different business model is created ............................. 17

A.8.4    A compilation is created ....................................................................... 17

A.8.5    A recording is licensed from a third party with its ISRC ...................... 17

A.9    NEW ISRC ALWAYS REQUIRED .................................................................... 17

A.9.1    A live version of a studio recording is released .................................... 17

A.9.2    A pre-release version is created for promotional purposes ................. 18

A.9.3    Different versions are created using different studio 'takes' ............... 18

A.9.4    An edited version is created .................................................................. 18

A.9.5    A 'cover version' is created ................................................................... 18

A.9.6    A music video is created ....................................................................... 18

A.9.7    Different music video versions are created .......................................... 18

A.9.8    A remixed version of a recording is created ......................................... 18

A.9.9    A different version is created by adding further tracks to a recording .. 18

A.9.10    An extended version is created ........................................................... 19

A.9.11    A clip is taken from the recording for promotional use or as a ringtone .............. 19

A.9.12    An interlude, skit or interview is created ............................................ 19

A.9.13    A callout is created ............................................................................. 19

A.9.14    Stems, soloed tracks or other components are created for release ..... 19

A.10    CIRCUMSTANCES DETERMINE WHETHER A NEW ISRC IS REQUIRED ........... 19

A.10.1    A re-mastered version of a recording is created ............................... 20

A.10.2    The length of a recording is altered .................................................. 20

A.11    ISRC NEVER APPROPRIATE ....................................................................... 20

A11.1    Identified entity is not a recording .................................................... 21

A.11.2   Identified entity contains recordings ................................................................... 21

A.11.3   Identified entity is a MIDI file or polyphonic ring tone ........................................... 21

A.12   ASSIGNMENTS TO INFRINGING RECORDINGS ................................................................. 21

A.13   RECOVERING FROM ERRORS .......................................................................................... 21

A.13.1   Minor procedural errors ............................................................................................ 21

A.13.2   Single recording assigned more than one ISRC .......................................................... 21

A.13.3   Single ISRC assigned to more than one recording ..................................................... 22

A.13.4   Errors affecting other Registrants ............................................................................. 22

A.14   PARTICULAR SITUATIONS ............................................................................................... 22

A.14.1   Compound recordings ................................................................................................ 22

A.14.2   Spoken word recordings ............................................................................................ 23

A.14.3   Ambient recordings ................................................................................................... 23

A.14.4   Music mixed by DJs ................................................................................................... 24

A.14.5   Immersive and surround sound recordings ............................................................... 24

A.14.6   Split ownership ......................................................................................................... 24

ANNEX B ...................................................................................................................................... 25

THE DEFINITION OF A RECORDING .............................................................................................. 25

B.1   THE RELATIONSHIP BETWEEN A MUSICAL WORK AND A RECORDING ....................... 25

ANNEX C ...................................................................................................................................... 26

THE DEFINITION OF A MUSIC VIDEO RECORDING ....................................................................... 26

ANNEX D ...................................................................................................................................... 27

ASSIGNMENT OF ISRC BY ISRC MANAGERS ............................................................................... 27

## 2    BACKGROUND

This handbook is designed to provide guidance on the implementation of the International Standard Recording Code (ISRC) in compliance with the standard ISO 3901.

ISRC was developed at the initiative of the international recording industry through the International Organisation for Standardisation (ISO) as a response to a need to identify sound and music video recordings. The ISRC standard was first published by ISO in 1986. The use of ISRC by record companies was recommended by IFPI in 1988.

Following IFPI's appointment in 1989 by ISO as the Registration Authority for ISRC ("the International ISRC Registration Authority"), IFPI has appointed 58 ISRC Registration Agencies covering 60 territories.

In 2019 the current, third edition of the standard was published. This new version is known as International Standard ISO 3901:2019. It cancels and replaces the second edition, dating from 2001.

This updated version of the ISRC Handbook explains how the system works and what has to be done to ensure that ISRCs are correctly assigned in compliance with ISO 3901:2019.

The International ISRC Registration Authority will update this handbook from time to time but between such updates, information may be published on the ISRC website at https://isrc.ifpi.org and users are advised to monitor this resource for changes.

## 3    INTERPRETATION OF ISO 3901:2019

### 3.1    Scope and purpose of ISRC

ISRC is a standard identifying code that can be used to identify sound recordings and music video recordings so that each such recording can be referred to uniquely and unambiguously.

An ISRC identifies a recording through its entire life and is assigned by the rights owner of the recording or an authorised representative. Once assigned, the ISRC is used by (among others) the producer of the recording, as well as by parties who may subsequently license or acquire the recording, contributors to the recording, users and licensees of it, organisations representing the owners of different collectively managed rights in the recording (CMOs), broadcasting organizations, media libraries and archives, musicologists, teachers, and application software developers.

The use of ISRC, instead of relying on text matching, enables more efficient and accurate identification when information about recordings needs to be stored and retrieved, or exchanged between parties. This is especially true when recordings have similar names but are

different, or when variations in spelling, language, or character set make text matching unreliable.

## 3.2    Why Assign ISRC?

Assigning ISRC can be important for a number of reasons.  Many online services require the supply of an ISRC to uniquely identify a recording and to help manage any data that relates to it.  The use of ISRC ensures interoperability between usage reports from disparate services. It also allows services to align their offerings with data from external sources such as descriptive metadata from third parties.

Collective Management Organizations (CMOs) that manage recording rights and licensing for radio plays and public performance require the registration of repertoire as part of the process of allocating revenues from radio stations and venues when recordings are played. ISRC is helpful and is usually required by CMOs so that they can manage their databases of registered repertoire. ISRC helps to avoid confusion between recordings with similar names, or between different versions of a recording.

## 3.3    Structure of ISRC and Assignment by Users

The following description summarises the International Standard ISO 3901:2019 but does not replace it.  Where interpretation is required, reference should be made to the ISO standard document itself, which is authoritative.  ISRC agencies appointed by the International ISRC Registration Authority can provide advice in case of uncertainty. Copies of the ISO standard ISO 3901:2019 can be obtained from national standards bodies and direct from ISO (https://www.iso.org/).

### 3.3.1    General

ISRC is a unique identifier for sound and music video recordings where one, and only one, identifying code is allocated to each version of the recording. An ISRC is assigned by, or on behalf of, a "Registrant" who seeks the assignment.

For code allocation purposes, the ISRC is separated into its different elements.  However when the code is being used, it is the whole number that represents the sound or music video recording and no significance should be accorded to any one element. In particular, the characters of the Prefix Code cannot be assumed to identify a current rights owner as the recording may have changed hands since code allocation or the code may have been assigned by a third party. Additionally, rights may vary territory by territory.  Further, the year of reference cannot be assumed to be a year of recording.  It represents the year in which the ISRC was assigned, which may or may not be the year the recording was released (see section 3.3.3 Year of Reference Element).

ISRC is alphanumeric, using digits (the ten Arabic numerals 0 - 9) and the 26 upper case letters of the Roman alphabet.

Lower case letters are not strictly permitted by the specification though it is recommended that systems map lower-case letters to their upper-case equivalents before validating or using codes.

Great care should be taken to avoid confusion between digit zero and upper-case O, and between digit 1, lower case l and upper case I.

The code itself consists of twelve characters though when visually presented to human users, there is an extended format described in section 5. It comprises three elements which appear in the following order:

- Prefix Code
- Year of Reference
- Designation Code

The following example uses a code made up for the purposes of explanation. This code should **never** be used and reference to the following text on how to assign a real code is imperative. The ISRC code AA6Q72000047 is constructed as follows:

| ISRC code:  AA6Q72000047 | | | |
|---|---|---|---|
| Visually presented as:   ISRC AA-6Q7-20-00047 | | | |
| | AA6Q7 | 20 | 00047 |
| Code identifier | Prefix Code (2 letters followed by 3 alphanumeric characters – total 5 characters) | Year of Reference (2 digits) 20 meaning 2020 | Designation Code (5 digits) |

In ISRC documentation, the word "allocation" is used in relation to processes where a <u>prefix</u> is provided to parties for future use and the word "assignment" is used in relation to processes where a specific code is associated with a specific recording.

### 3.3.2   Prefix Code

This comprises 2 letters followed by 3 alphanumeric characters.  This is for compatibility with previous versions of the ISRC standard where the two letters represented the country of assignment, and the three alphanumeric characters were allocated to the particular Registrant. New allocations remove this distinction and a single block of five characters is allocated, though users may find that the ISRC Registration Agency in their country still provides a prefix with a country code in the initial position. When displayed, the prefix is still split between the former fields ("AA-6Q7" above) in order to maintain compatibility with existing software systems.

Where a Registrant has been allocated a 'legacy' Registrant code and been notified of a country code under a previous edition of ISO 3901, the standard requires that they regard the

combination of the two as their prefix code. In practice, no change in assignment procedures is needed by them.

Registrants requiring a new prefix will be allocated a five-character code that should be taken as a whole.

### 3.3.3    Year of Reference Element

The Year of Reference Element identifies the year in which the ISRC is assigned to the recording. It consists of the last two digits of that year.

> **Examples:**
> 15 for 2015
> 20 for 2020

The ISRC will normally, but not necessarily always, be assigned to the recording in the year in which the preparation of the final production master of the recording is made.  The purpose of the Year of Reference element is to refresh the space of codes which may be assigned each calendar year, to ensure that codes assigned in prior years cannot be inadvertently re-assigned.

The year in which the ISRC is assigned may be a different year from the year of recording.  The year of recording is important information, but it should be entered into and obtained from the metadata associated with the recording and not from the Year of Reference element of the ISRC.

### 3.3.4    Designation Code

The Designation Code consists of five digits assigned by the Registrant.

The Designation Code must always be five-digits long. Where the Designation Code is less than five digits long, it should be packed from the left with zeros to make it five digits in length, for example, '00013'.

The allocation of a new prefix will be accompanied by the range of designation codes for which it is authorised for that registrant. This will normally reflect the number of codes they are expected to assign: a large user might need the full range of 00000 to 99999 whereas an independent artist might be allocated 23800 to 23899. Accurate estimation of likely needs will prevent the need for a request for a further range of codes.

Where a Designation Code range less than 00000-99999 is allocated to a Registrant, in order to provide clarity over which codes may be assigned by the Registrant, the allocated ISRCs will normally be notified to the Registrant as a list in a specified format.  Great care must be taken to ensure that designation codes are always taken from those on the list or from the assigned range.

Where a registrant was allocated a registrant code for use with a specified country code under previous editions of the standard, the standard requires that they understand this as an allocation of the full range of 00000 to 99999.

It is strongly recommended that Designation Codes should be assigned sequentially within the range provided, and care should be taken to ensure that the same Designation Codes are never re-used within one calendar year.

If a registrant appears likely to exceed their allocation of Designation Codes, they should approach the ISRC Registration Agency in their country to secure a further range.

## 3.4    Automated Assignment

ISO3901:2019 allows not only for assignment by users as described above but also for "Automated Assignment". This process can happen only when authorised by the International ISRC Registration Authority and at the time of writing of this edition of the Handbook, this authority has not been granted. When authority is granted, an announcement will be made on the ISRC website and this Handbook will be amended to include full information.

In Automated Assignment, rather than assigning a code themselves as set out above, the Registrant submits recording metadata to a service and receives a new code back provided no previous assignment has been made. If a previous assignment exists, the user is informed of it so the already-assigned code can be used.

New assignments under the process are fed into a single "ISRC Registry" which can be searched by ISRC system users. Other assignments may be entered into the ISRC Registry under the supervision of the International ISRC Registration Authority. Details of these processes will be published in due course once the Automated Assignment is ready to start.

It is expected that ISRC Managers (see Annex D) will in many circumstances be migrated to Automated Assignment once the scheme has been authorised.

## 4    IMPLEMENTATION GUIDELINES

## 4.1    Principles

In order for ISRC to uniquely and permanently identify recordings, the assignment of ISRC to recordings must be carried out diligently.  Assigning an ISRC correctly may involve accessing information outside the immediate control of the registrant and this must be sought meticulously.

The key principles for ISRC assignment are (a) that each distinct recording shall be assigned one and only one ISRC and (b) that any particular ISRC shall be assigned to one and only one recording.

## 4.2    Who will assign ISRC

An ISRC may be validly assigned to a recording by the owner or exclusive licensee of the recording, or by an ISRC Manager.  An ISRC Manager must be authorised to assign ISRCs behalf of such owners or exclusive licensees by either (a) the International ISRC Registration Authority or (b) an ISRC Registration Agency appointed by the International ISRC Registration Authority (see ISRC Bulletin 2009-03).

## 4.3    Assign ISRC to distinct recordings

It is necessary to clearly distinguish when two recordings are the same and when two recordings are different.

Any recording without an ISRC may be assigned an ISRC.

A recording with an ISRC that has undergone material change since an ISRC was assigned shall not be identified with the old ISRC and shall be assigned a new ISRC.

A recording with an ISRC that has not undergone material change since an ISRC was assigned shall not be assigned another ISRC.

See Annex A.7 WHEN IS A NEW ISRC REQUIRED? for detailed guidance on the interpretation of "material change".

Re-use of an ISRC that has already been assigned to another recording is not permitted.

## 4.4    How to assign ISRC

An ISRC should be assigned when all creative processes are complete and a decision is taken to release a recording or hold it for later unchanged use.

An ISRC is created as described in Section 3 and is then assigned to the selected recording. The ISRC and that particular recording are "bound" to each other by storing the recording's 'reference metadata' (see below) alongside the ISRC in the systems of the Registrant and preferably elsewhere.

Although Designation codes should normally be assigned sequentially, ISRCs may be assigned using other schemes that utilize the allocated range of designation codes, provided there is no possibility that this will lead to duplicate ISRCs being created. Such an approach requires extremely careful implementation and is not recommended.

## 4.5    Registration and Copyright

The assignment of an ISRC and the communication of the ISRC to a third party as an identifier for a particular recording should not be confused with copyright registration. Copyright registration is available in some territories and brings certain benefits, but these do not arise from simply assigning an ISRC. Copyright registration is a separate process, which may allow the inclusion of the assigned ISRC in the recording metadata.

## 4.6    ISRC Does Not Change

If the original Registrant sells or licenses the recording in unchanged form after it has been given an ISRC, no new ISRC shall be assigned and the ISRC for the recording shall remain the same.  The Registrant must inform the new owner or licensee of the ISRC of the recording. The new owner will then need to inform business partners about the transaction using the unchanged ISRC. These partners will then be able to adjust their records so that the correct party is credited for use of a recording.

## 4.7    Reference Metadata

When ISRC is assigned, the 'binding' of the ISRC to the specific recording is secured through 'reference metadata'.  Reference metadata (sometimes called "minimum metadata" or "kernel metadata") is a small set of descriptive data such that if two recordings are different, the reference metadata will differ in at least one field. The reference metadata that must be held alongside each ISRC is the recording's:

- Title
- Version title
- Artist or band name principally associated with the recording (i.e. main artist name)
- Duration of the recording
- Type (i.e. sound recording or music video)
- Year of first publication

The full specification of this reference metadata is contained in Annex E.

Any assignment of ISRC should be accompanied by the storage, in the Registrant's systems at least, of this dataset alongside the ISRC.  ISRCs which lack this data are not fully compliant under the ISRC standard.

To obtain the greatest benefit from the ISRC system, Registrants should ensure that details of the recording and its ISRC are supplied to all relevant repertoire databases.

## 4.8    The use of ISRC in Data Interchange

The ISRC should be included in all relevant documentation concerning a recording.

The ISRC of a recording should be provided when the use of that recording is being reported. Recording data is exchanged between different parties who need to use it. ISRC enables unambiguous reference to specific recordings by the parties to a data exchange process. ISRC should always be provided in such data interchange.

The recorded music sector uses the specifications of Digital Data Exchange (DDEX) very widely. All DDEX standards allow an ISRC to be carried wherever a recording is specified, and most DDEX users provide this information. Some DDEX users require that ISRC be provided or accepted by their business partners. Recipients of DDEX messages should validate the received ISRCs to ensure that they have been correctly constructed. Information on validating ISRCs is available on the ISRC website.

## 4.9    Encoding of ISRC

Where a recording is encoded technically, for instance as an audio MP3 file, an audiovisual MP4 file, a stream, a CD, DVD or BluRay disk, the ISRC should if possible be encoded alongside the recording. Information on ways in which this can be done for different media formats is posted to the ISRC website within Frequently Asked Questions at https://isrc.ifpi.org/.

The encoding of an ISRC should, where possible, be made as secure and persistent as possible. This can be done for example through the use of watermarking, fingerprinting, digital tags, bar codes, cryptographic hashes, digital signatures and other techniques.

When recordings are provided to audio fingerprinting services, the ISRC should form part of the metadata supplied with each recording.

## 4.10    Multi-part recordings or excerpts

Each recording that can be exploited separately should be assigned its own ISRC.  A recording whose parts can be exploited separately (such as a symphony) may be assigned an ISRC as a whole and each of its components may also be assigned an ISRC.  See Annex A.14.1 Compound recordings.

## 4.11    Rectifying errors

Whilst generally ISRC shall not be assigned to a recording if an ISRC has already been assigned to it, nevertheless it may be permissible to do this where errors have been made and recovery from error requires new ISRCs to be assigned.  In the case where two distinct recordings have improperly been assigned the same ISRC, then one or both of those recordings should be assigned a new ISRC in order to restore uniqueness of identification.

More detailed information on recovery from errors is contained in Annex A.13.

## 5    VISUAL PRESENTATION OF ISRC

The normative form of an ISRC is the sequence of 12 characters explained in section 3.3 above. When an ISRC is written, printed, or otherwise visually presented to human users, it should be preceded by the letters "ISRC" as a code identifier and three hyphens should be inserted as follows:

- ▪ after the second letter of the prefix element;
- ▪ between the prefix code element and the year of reference element;
- ▪ between the year of reference element and the designation code element.

This arrangement ensures compatibility with ISRCs assigned under previous editions of this document and presented in accordance with the recommendations in those editions.

The letters "ISRC" (the space) and the hyphens do not form part of the ISRC.

Example ISRC:

AA6Q72000047

Form for human users:

ISRC AA-6Q7-20-00047

## 6    PRIVACY

IFPI's privacy policy in respect of ISRC can be found at https://isrc.ifpi.org/en/privacy-policy.

ANNEX A

IMPLEMENTATION GUIDELINES HOW & WHEN TO ASSIGN ISRC

## A.1    BACKGROUND

This Annex provides more detail about how and when to assign ISRC, and when not to do so.

Although the use of the ISRC system is itself voluntary (unless required by contract or to comply with local law or regulation), compliance with the standards and associated documents issued by the International ISRC Registration Authority (including this Handbook) is required to enable effective implementation of the standard so that it can benefit all users.

The ISRC assignment rules set out within this Annex to the Handbook will be updated if necessary, for example to take into account developments in recording technology or practice. The latest version of the Handbook is available from the International ISRC Registration Authority website at https://isrc.ifpi.org along with other guidance information and updates yet to be included in the Handbook.

## A.2    THE SCOPE OF ISRC

An ISRC shall be assigned to only audio recordings and music video recordings. In this Annex these are referred to together as "recordings", unless otherwise indicated.

### A.2.1    Audio Recordings

Audio recordings include audio-only music recordings, spoken word recordings and ambient recordings (such as wildlife recordings). More detail about recordings appears below and at Annex B.

### A.2.2    Music Video Recordings

Music video recordings are defined as audio-visual recordings where the audio component is wholly or substantially a music recording. This includes short form music videos and concert recordings. A more detailed explanation of music video recordings appears at Annex C.

## A.3    PRINCIPLES OF ISRC ASSIGNMENT

A recording to which an ISRC is to be assigned shall have exactly one ISRC.

A recording to which an ISRC has been assigned shall not have another ISRC assigned to it, even if ownership changes or it is licensed.

An ISRC that has been assigned to a recording shall never be re-assigned to another different recording.

## A.4    SHOULD AN ISRC BE ASSIGNED?

An ISRC shall be assigned to a recording if the owner intends to exploit it or believes that (having been archived) it may be exploited in the future.   Exploitation does not necessarily imply monetary value but may involve reputation, promotion or exposure.

Where there is no expectation of future exploitation, an owner may elect not to assign an ISRC but should note that owners of other rights used in the recording may regard the uses to which it is put as "exploitation" and may accordingly need to track use and find the assignment of an ISRC helpful.

## A.5    WHO MAY ASSIGN AN ISRC?

An ISRC shall be assigned only by the owner of a recording or someone authorised as an ISRC Manager. The "owner" shall be understood to be the owner of the rights in the recording or a long-term exclusive licensee of a recording. The party assigning an ISRC is known as the "Registrant" and assigns ISRC using a "Prefix code[1]".

Except under the specific authorisation of the International ISRC Registration Authority, no other party shall assign an ISRC. In particular, a party receiving a recording for retailing, distribution, streaming, broadcast etc., shall not assign an ISRC but shall use the ISRC that was assigned by the owner. Further, a party acquiring the rights in a recording shall not assign an ISRC unless it is sure that the previous owner did not assign an ISRC.

## A.6    WHEN SHOULD A NEW ISRC BE ASSIGNED?

The International Standard states that ISRC shall be assigned "before the full mastering process for the recording is completed". This needs to be understood in the broader context of "mastering" which includes the preparation of physical masters and files which need to contain the ISRC before manufacturing and distribution. ISRC will normally be assigned after the recording has gone through the final creative processes which are also termed "mastering" – application of equalisation and compression to optimise the sound.

Practicalities of project management may require ISRC to be provisionally assigned in anticipation of a completed mix.  Allowing an ISRC to be associated with a recording as it completes its substantive production stages is acceptable and can have benefits for the continuity of other information such as data about performer line-up and other contributors. Such assignment of ISRC becomes secure only upon completion of a final mix, since full details

---

[1] Details about becoming and ISRC Registrant are available at https://isrc.ifpi.org/

of title, contributors to that mix, duration etc., may not be fully known prior to this point. Users should check on recommendations from Digital Data Exchange (DDEX) which is working on recommendations for the identification of projects in the studio.

It is recommended that Registrants should not communicate an ISRC for an unfinished recording outside the production process, particularly if it is associated with metadata that may change before release or if several different mixes are subsequently produced.  If different mixes are created, then distinct ISRCs should be assigned as described within this document.

A recording that is releasable (i.e. it is mixed and mastered) but is not in fact released may be assigned an ISRC.  The ISRC shall be associated with the recording as it stored and, in order to avoid multiple ISRC assignment it shall be used in future exploitation of that recording, i.e. if that recording is later released.


## A.7    WHEN IS A NEW ISRC REQUIRED?

Recordings that are identical shall be identified by the same ISRC.  Recordings that are completely different shall be identified by different ISRCs.  Between these two extremes are many subtle cases that require careful handling and evaluation of whether there has been "material change".  Consistency between Registrants in treatment of these cases contributes to the overall integrity of the ISRC system.

A key principle to be applied in determining whether there has been material change is whether one recording differs from another because of different creative input.  If creative input is responsible for the difference then a new ISRC is required.  In some circumstances there can be fine degrees by which recordings differ: within limits, subjectivity and judgement can come into play.  The following sections consider by example cases when a new ISRC shall or shall not be assigned.


## A.8    NEW ISRC NEVER REQUIRED

A new ISRC shall never be assigned in the following circumstances:

### A.8.1    A recording is encoded using a different technology

ISRC identifies the recording not the encoding of the recording so the same recording encoded with, say, MP3 and AAC technologies, shall carry the same ISRC.  Similarly a music video recording encoded with, say, H.264 and VP8 technologies, shall carry the same ISRC.

### A.8.2   A high-resolution version of a recording is created

A high-resolution (say 96kHz/24bit) version of a recording is the same recording as a standard resolution (say 44.1kHz/16bit) version.  These versions shall carry the same ISRC. Where the change in resolution results from remastering, the rules below shall be followed.

### A.8.3   A version for a different business model is created

The recording is the same whether it is sold, licensed, streamed or broadcast. All these versions shall carry the same ISRC.

### A.8.4   A compilation is created

Where the recording is reused on a compilation without change, re-mixing or re-mastering, the same ISRC shall be used.

The exploitation of a recording on a compilation (or other subsequent issues) cannot be distinguished from exploitations of the same recording on other releases by reference to the ISRC. The ISRC must be the same in each case. Where such distinction is required, reference should be made to product identifiers, which are outside the scope of the ISRC system.

Where the recording is re-mastered for use on the compilation, normally no new ISRC is required but the rules in this document shall be used to determine whether creative input means a new ISRC is required.

Where the recording length is altered on the compilation, the procedure in section A10.2 of this document shall be followed.

### A.8.5   A recording is licensed from a third party with its ISRC

Where a recording is licensed from a third-party licensor and an ISRC is provided by the licensor, that ISRC shall continue to be used without alteration to refer to the recording.

### A.9   NEW ISRC ALWAYS REQUIRED

A new ISRC shall always be assigned in the following circumstances:

### A.9.1   A live version of a studio recording is released

The live recording is completely different from the studio version and a new ISRC is required.

### A.9.2   A pre-release version is created for promotional purposes

If the pre-release version is different from the final release and it is to be used outside the Registrant's control, a new ISRC shall be assigned.  The rules in this document on re-mastering shall be used to determine whether the recording differs from the final release.

### A.9.3   Different versions are created using different studio 'takes'

Different versions or recordings or mixes require different ISRCs.  Different 'takes' are different recordings, even if all the personnel are the same.  A new ISRC shall be assigned.

### A.9.4   An edited version is created

A version that is edited, for example to mute or replace profanities, shall be assigned a new ISRC.

### A.9.5   A 'cover version' is created

A 'cover' is a different recording of a musical work, by different artists.  The cover version is completely different from the existing recording and a new ISRC is required.

### A.9.6   A music video is created

A music video is always different from an audio recording and it shall not be identified by the ISRC of the audio recording on which it is based.  Even if the soundtrack of a video has an ISRC assigned because it is to be exploited separately, a new ISRC shall be assigned to the video.

The metadata record for the video created by the Registrant should note the ISRC of the audio recording on which the video is based.

### A.9.7   Different music video versions are created

If different versions of a music video contain either different video content or different audio content (in accordance with the rules in this document), then different ISRCs shall be assigned to them.

### A.9.8   A remixed version of a recording is created

A remixed version of a recording will differ from the original and hence it shall be assigned a new ISRC.

### A.9.9   A different version is created by adding further tracks to a recording

When instruments or vocal performances are added to a recording, this will result in a different version, hence a new ISRC shall be assigned.

### A.9.10 An extended version is created

The extended version is a different recording and a new ISRC shall be assigned.

### A.9.11 A clip is taken from the recording for promotional use or as a ringtone

The clip is a different recording and a new ISRC shall be assigned.

The Registrant may elect not to assign separate ISRCs to each clip or ring tone generated if the metadata they store and communicate to others is unambiguously clear that each clip is taken from a recording with a specified ISRC (rather than being the full recording identified with that ISRC).

### A.9.12 An interlude, skit or interview is created

These are all different recordings, and each shall be assigned a new ISRC.

### A.9.13 A callout is created

If the callout (a clip from a recording which includes the "hook") may be exploited separately (rather than just being used within the recording), an ISRC shall be assigned.

### A.9.14 Stems, soloed tracks or other components are created for release

A "stem" is created when one or more components of an original multi-track recording are used to create an intermediate recording that is intended for further combination into a finished mix. When such a stem is intended for release independent of the finished mix it shall be assigned an ISRC.

A version of a track where the vocal (or other element) has been suppressed shall also be assigned a new ISRC if it is intended for release.

Where a stem is created as a normal part of the production process without an intention to release it separately, no ISRC should be assigned to that stem.

Stems provided for the film sound process, may result in recordings that might themselves need to be identified using ISRC.

### A.10    CIRCUMSTANCES DETERMINE WHETHER A NEW ISRC IS REQUIRED

In the following circumstances, the Registrant shall determine whether or not a new ISRC is required according to the rules presented.

### A.10.1 A re-mastered version of a recording is created

Re-mastering is a broad term that covers many different processes. A new ISRC shall be assigned if (and only if) the processes applied to a recording during re-mastering involve the application of creative input to the recording itself. The following processes <u>do not</u> involve creative input for the purposes of ISRC assignment:

- simple level change,
- equalisation applied to a whole recording without variation,
- compression applied to a whole recording without variation,
- digital signal processing including de-noising, de-clicking, speed or pitch correction, sample rate change, dithering etc., where the manually controlled parameters are invariant across the whole recording (even if the resulting recording is noticeably improved).

A new ISRC shall not be assigned in the context of essentially invariant or technological adjustment processes.

### A.10.2 The length of a recording is altered

The length of a recording is sometimes a useful tool to determine whether two recordings are the same or not. However, sometimes this can create misleading results. Additionally, calculation of the length of a recording can be uncertain. The playing time of an encoded digital file is clear, but this can include arbitrary amounts of silence or ambient sound before and after the recording itself. The following rules shall apply:

- Where the recording has been edited to remove or add sections such as verses or choruses, a new ISRC shall be assigned.
- Where the recording has been edited to change its length in a way that does not substantively affect the creative input (such as changes to the speed or changes to the fade-out) then a new ISRC <u>shall not</u> be assigned if the difference in recording length is less than 10 seconds; otherwise a new ISRC shall be assigned.
- Where a recording has been edited to remove or add only parts that do not involve creative input (such a silence, ambience or applause) with a resulting change in the recording length, a new ISRC <u>shall not</u> be assigned.

### A.11    ISRC NEVER APPROPRIATE

An ISRC shall never be assigned in the following circumstances:

### A11.1  Identified entity is not a recording

An ISRC shall never be assigned to anything other than an audio recording or a music video recording.  For example, an ISRC shall not be assigned to a 'wallpaper image', or to an item of merchandise, or to a book.

### A.11.2 Identified entity contains recordings

A CD or an MP3 file is not a recording, though it can contain recordings. A CD or MP3 file shall not have an ISRC assigned to it. A recording carried on a CD or in an MP3 file shall have an ISRC assigned, and the carrier shall (when technically feasible) include the ISRC of each recording that it contains.

### A.11.3 Identified entity is a MIDI file or polyphonic ring tone

Because a MIDI file is not an audio recording or a music video recording, an ISRC shall not be assigned to such a file.

## A.12    ASSIGNMENTS TO INFRINGING RECORDINGS

Where an ISRC has been assigned to an infringing recording, the assignment should not normally be regarded as a valid assignment to the infringed recording.

## A.13    RECOVERING FROM ERRORS

It is recognised that occasionally errors will occur, and it is responsibility of all affected parties to work to correct or at least mitigate the error.

### A.13.1 Minor procedural errors

If the ISRC assigned has minor procedural errors but no risk exists of impacting other repertoire or right holders, the parties should learn from the error but not seek to correct it.  For example, if the wrong year of reference is used, but this does not impact any other validly assigned ISRC, the ISRC should be retained.

It shall be the responsibility of the Registrant to check that no risk of impacting other repertoire or right holders has been created.

### A.13.2 Single recording assigned more than one ISRC

Where more than one ISRC has been assigned to a recording, the Registrant shall select one and use it as the preferred ISRC.  The other ISRC(s) shall be noted in the Registrant's internal records and not used for future releases.  Business partners shall be informed of the error and

steps taken to mitigate the potential for further error.  It is noted that it is not always practical to withdraw physical or digital stock.  Where repertoire databases exist and can accept registrations, such ISRCs shall be registered as such and linked to the preferred ISRC.

Where multiple parties have assigned ISRCs to the same recording, the owner making the first assignment should make the selection, with the earliest assignment normally being preferred.

### A.13.3 Single ISRC assigned to more than one recording

Where an error has led to the same ISRC being assigned to more than one recording, generally an attempt should be made, if possible, to resolve this in favour of correctly assigned ISRCs.  It is noted that it is often not always practical to withdraw physical or digital stock.  A new ISRC shall be assigned to one or both recordings – and used for future releases.  Erroneous ISRCs shall be noted in the Registrant's internal records. Business partners shall be informed of the error and the steps taken to mitigate the potential for further error.  The local ISRC Registration Agency or International ISRC Registration Authority should be contacted for further advice.

### A.13.4 Errors affecting other Registrants

Errors can affect other Registrants that have acted in accordance with the rules. Examples include the use of an incorrect prefix, especially if the prefix was allocated as a separate Country Code and Registrant Code under an earlier edition of the International Standard. If this happens, the Registrant shall contact the ISRC Registration Agency in their country for advice. If the ISRC Registration Agency needs to coordinate with ISRC Registration Agencies in other countries, it shall do this through the International ISRC Registration Authority, which will coordinate efforts.  Where possible, the approach taken by ISRC Registration Agencies should be to minimise the impact on correctly assigned ISRCs.


### A.14    PARTICULAR SITUATIONS

The following situations give rise to specific compliance rules.

### A.14.1 Compound recordings

Some recordings are compounds in that parts of them may be exploited separately as well the whole. Examples are classical works and concert videos.

Where both the whole and the parts of a recording may be exploited separately, an ISRC shall be assigned to each part and another ISRC to the whole.

**EXAMPLE**

| Whole symphony:<br>XYZ Orchestra – Beethoven: Symphony No. 2 in D Major | ISRC AA-6Q7-20-00055 |
|---|---|
| Individual movements:<br>XYZ Orchestra – Beethoven: Symphony No. 2 in D Major: I. Adagio molto – Allegro con brio | ISRC AA-6Q7-20-00056 |
| XYZ Orchestra – Beethoven: Symphony No. 2 in D Major: II. Larghetto | ISRC AA-6Q7-20-00057 |
| XYZ Orchestra – Beethoven: Symphony No. 2 in D Major: III. Scherzo. Allegro – Trio | ISRC AA-6Q7-20-00058 |
| XYZ Orchestra – Beethoven: Symphony No. 2 in D Major: IV. Allegro molto | ISRC AA-6Q7-20-00059 |

The metadata records created by the Registrant for the separate parts should note, at least in their own records and preferably in external repertoire databases, the ISRC of the compound recording from which it was taken.

### A.14.2 Spoken word recordings

Spoken word recordings such as lectures, language training materials and audiobooks are audio recordings and may have ISRCs assigned to them in exactly the same way as recordings of music.
Registrant should note that the ISRC for a spoken word recording is not intended to replace the assignment of an International Standard Book Number (ISBN). Whereas an ISBN identifies the product, the ISRC identifies the recording that is embodied in that product, regardless of the format on which it is used.

One ISRC shall be assigned to each of the smallest units of content into which a whole recording is divided. This will be a chapter or a CD track in most instances.

Registrants should store appropriate metadata for each assigned ISRC.

### A.14.3 Ambient recordings

Recordings of sound effects, wildlife, streetscapes, etc., are audio recordings and may have ISRCs assigned to them in exactly the same way as recordings of music.

Registrants should store appropriate metadata for each assigned ISRC. Many existing standards such as those published by Digital Data Exchange (DDEX) have defined terms such as 'main artist' to mean a performing artist rather than a sound recordist, and so care may need to be taken with regard to the mapping of metadata associated with ambient recordings.

### A.14.4 Music mixed by DJs

Some recordings involve a DJ remixing other recordings. Where a DJ mixes several original recordings to create a composite recording that is then issued, a new ISRC shall be assigned to the whole composite recording. The metadata records created by the Registrant of the composite recording should itemise the ISRCs of the original recordings from which it was created.

### A.14.5 Immersive and surround sound recordings

A multi-channel recording shall have a different ISRC from a stereo recording produced from the same session recordings. Each distinct mix from the original session recordings (or their equivalent in other genres) shall have a different ISRC but different technical encodings of the same mix shall have the same ISRC, even if the encoding and decoding technology makes the listening experience slightly different.

Some listening equipment allows automated down-mix (e.g. creation of stereo from surround) or up-mix (e.g. creation of 5.1 surround effect from stereo). Neither process involves the creation of a new recording and no new ISRC shall be assigned.

### A.14.6 Split ownership

Where ownership of a recording is divided in any way, the co-owners shall agree on which of them is to assign an ISRC to the recording and that party shall inform the others of the assigned ISRC.

Assignment of an ISRC does not affect ownership in any way and the use of a particular Registrant code in an ISRC does not imply that the assigning party owns the recording, or that royalties are to be paid to them.

**ANNEX B**

**THE DEFINITION OF A RECORDING**

The entity to which an ISRC is assigned is a recording. A recording is considered by the International ISRC Registration Authority to be an "expression" in the terminology of the <in*decs*>[2] project.

A recording can be thought of as the thing that the listener or viewer experiences.  It is independent of the encoding of the recording (for instance as an analogue waveform or digital bit-stream) and independent of the product in which the recording is included.

## B.1    THE RELATIONSHIP BETWEEN A MUSICAL WORK AND A RECORDING

Musical works (songs) and recordings are distinct categories of entity, and they are therefore identified by distinct categories of identifier.  The relationship between these is illustrated in Figure 1.



**Figure 1 - Relationships**

Musical works are typically identified with the ISO standard International Standard Musical Work Code (ISWC).  A recording is identified with ISRC.  A musical work may be recorded once or many times as different recordings, and each distinct recording would have its distinct ISRC. A number of musical works can be combined in one recording, such as a medley.

---

[2] The final report of the <indecs> project can be found at https://www.doi.org/topics/indecs/indecs_framework_2000.pdf. Although dating from 2000, the indecs project is the underpinning of ISRC and several other media metadata systems.

**ANNEX C**

**THE DEFINITION OF A MUSIC VIDEO RECORDING**

A music video recording is a sound recording that is wholly or substantially of a musical performance, that is synchronised with moving pictures.

For the purposes of ISRC assignment, it is not necessary that the visual component of a music video recording contain movement: only that the recording includes a visual component.  An audio-visual recording with a slide show of still pictures shall be assigned ISRC in a manner consistent with music video recordings.

A file containing an audio recording and a still picture (for example an MP3 file containing a JPEG image of the album cover as a tag) shall not be considered as containing a music video recording, because the audio and picture are not synchronised in the file.

In difficult cases, users should refer to the context in which a recording is intended to be used. For example, a video with a static picture encoded with an audiovisual codec and intended for upload to video sharing sites (such as YouTube) should be considered as a music video recording – while the same material encoded with an audio-only codec with the picture as a tag should be considered a sound recording.

Except as noted below, other audio-visual recordings are not music video recordings and shall not be identified with an ISRC. Identifiers as such the International Standard Audiovisual Number (ISAN) and DOI names assigned by the Entertainment ID Registry (EIDR) are available for these recordings.

There is no objection to an ISAN and/or an EIDR identifier being assigned to a music video recording in addition to an ISRC.

Some products or formats such as long-form recordings of musical concerts and music documentaries may comprise mainly music video recordings, along with additional recorded elements such as spoken segments or interviews.  In such circumstances, assignment of ISRC to the non-musical audio-visual elements is permitted and this approach may give greater consistency of identification across all elements of the recording.

**ANNEX D**

**ASSIGNMENT OF ISRC BY ISRC MANAGERS**

When a party that owns recordings does not wish to assign their own ISRCs, they can use the services of a third party termed an 'ISRC Manager'.  Often, ISRC Managers are digital aggregators or distributors who offer ISRC services alongside distribution but they can also be small studios that offer ISRC services alongside recording, mixing and mastering.

The terms under which an ISRC Manager may operate are contained in ISRC Bulletin 2009/03

In summary,

- An ISRC Manager must be approved by and have obtained a Registrant Code from either their local ISRC Registration Agency or the International ISRC Registration Authority. This Registrant Code must have been allocated expressly for use in the role of ISRC Manager.

- To ensure high quality ISRC assignment, the ISRC Manager may only assign ISRCs to recordings owned by a client under instruction from that client to do so. The client must also provide assurance that no ISRC has previously been assigned to the affected recording(s).

- The ISRC Manager shall not assign an ISRC to a recording that has already been assigned an ISRC.

- Once assigned, the details of assigned ISRCs shall be provided by the ISRC Manager to the owner of the recording who shall use the assigned ISRC to identify the recording in all circumstances thereafter.

**ANNEX E**

**REFERENCE METADATA TO BE MAINTAINED FOR EACH ISRC**

Those assigning ISRC shall, for each ISRC, maintain the following reference metadata elements in a database or similar storage medium:

| 1 | ISRC | The unique ISRC assigned to this particular recording. |
|---|------|--------------------------------------------------------|
| 2 | Main Artist | Often termed 'ArtistBand' this is the name of the featured artist or band as it would appear attached to an MP3 or printed on a CD sleeve. |
| 3 | Track Title | The title of the recording. |
| 4 | Version Title or Alternative Title or Subtitle[3] | This is additional information about the recording, for example 'live in Paris' or 'extended mix'. |
| 5 | Duration | The elapsed playing time between the first and last recorded modulations of the recording. |
| 6 | Content Type | Sound Recording or Music Video Recording. |
| 7 | Date of Publication | Known as (P) date. This is the date of first publication or first simultaneous publication, and it is used in relation to the copyright term, as well as to help to link the ISRC to a specific recording. |

---

[3] Version or subtitle information is sometimes presented as part of the main title in brackets and specific rules may apply on some delivery platforms. It is recommended that these fields be stored separately so that they can be formatted for each delivery channel. A metadata style guide prepared by the Music Business Association is available at https://musicbiz.org/wp-content/uploads/2014/08/MusicMetadataStyleGuide-MusicBiz-FINAL.pdf. Apple has the 'iTunes Store Music Data Standards and Style Guide' that sets a specific way of supplying data for that channel.



| Help | Search | History | Titles | Start Over |

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = SR0000638659
Search Results: Displaying 1 of 1 entries



---

Labeled View

### *Siempre Juntos.*

|  |  |
|---|---|
| **Type of Work:** | Sound Recording |
| **Registration Number / Date:** | SR0000638659 / 2009-08-13 |
| **Application Title:** | Siempre Juntos, Artist: La Nobleza De Aguilla, 00808835352222 (compact disc) |
| **Title:** | Siempre Juntos. |
| **Publisher Number:** | 0883535222 Fonovisa |
| **Description:** | Compact disc. |
| **Copyright Claimant:** | Platino Records c/o UMG Recordings, Inc. Address: 2220 Colorado Ave., Santa Monica, CA, 90404, United States. |
| **Date of Creation:** | 2008 |
| **Date of Publication:** | 2008-04-29 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Platino Records, employer for hire; Domicile: United States. Authorship: artwork, photograph(s), compilation, Some Sound Recordings. |
| **Pre-existing Material:** | Most Sound Recordings. |
| **Basis of Claim:** | artwork, photograph(s), compilation, 2 new sound recordings: "Olvidame" and "Ya Para Que". |
| **Rights and Permissions:** | Universal Music Group |
| **Names:** | Platino Records |
|  | UMG Recordings, Inc. |



---

| **Save, Print and Email (Help Page)** | | |
|---|---|---|
| Select Download Format | Full Record | Format for Print/Save |
| Enter your email address: | | Email |

---