**DP&F**
**ATTORNEYS AT LAW**

Richard Idell
ridell@dpf-law.com

September 6, 2022

**VIA ECF ONLY**

Hon. Barbara A. McAuliffe
U.S. District Court. E.D. Cal., Fresno Division
Robert E. Coyle United States Courthouse
2500 Tulare Street
Courtroom 8, 6th floor
Fresno, CA 93721

      Re:    <u>*Yellowcake, Inc. v. Dashgo, Inc., et al.*</u>
                 **USDC, E.D. Cal., Fresno Div., Case No. 1:21-cv-00803-AWI-BAM**

Dear Judge McAuliffe:

      Please consider this letter as Defendants' brief in opposition to Plaintiff's letter brief, styled as a request for an "emergency" judicially-supervised discovery conference, dated September 2, 2022 and filed by Seth Berman, Esq. Docket No. 84.

      Preliminarily, Defendants were surprised that Mr. Berman was able to personally prepare, execute and file Plaintiff's self-styled "emergency" request because, in response to Defendants' most recent meet and confer letter of September 1, 2022, Defendants' Exhibit "A", Defendants received an "out of office" email from Mr. Berman, which states, in pertinent part: "Thank you for your e-mail. **I will be out of the office starting 8/31/22 and returning 9/6/22.**" Defendants' Exhibit "B" (emphasis added).

      Defendants were also surprised that Mr. Berman's "emergency" request was filed at 2:10 p.m. on the afternoon of Friday, September 2, 2022 – which was, of course, the afternoon just before the three-day Labor Day weekend. Defendants' counsel was thus required either to prepare this letter brief over the long weekend (which counsel did) or risk prejudice to Defendants, were the Court to consider Mr. Berman's "emergency" request without *audi alteram partem* ("hearing the other side"). If ever there was an example of Plaintiff's continuing "scorched earth" litigation tactics, this is it.[1]

---

[1] The Court should admonish Mr. Berman that such tactics constitute an abuse of the judicial process, are inappropriate and unethical, and will not be tolerated. If the Court deems it appropriate, the Court should sanction Mr. Berman for engaging in such conduct, up to and including disqualification of counsel. *See Erickson v. Newmar Corp.* (9th Cir. 1996) 87 F.3d 298, 303 ("District judges have an arsenal of sanctions they can impose for unethical behavior. These sanctions include monetary sanctions, contempt, and the disqualification of counsel."); USDC, E.D.Cal., Civ. L.R. 180(e); Cal. Att'y Guidelines of Civility & Prof'lism (adopted [*cont'd*]

Defendants were even more surprised by the content of Plaintiff's letter brief because, on July 21, 2022, the Court had directed the parties' to meet and confer regarding the subject matter of Plaintiff's "emergency" request (namely, the list of specific iterations of sound recordings that Defendants are alleged to have infringed). Docket No. 78 [7/21/2022 Order] at 21:4-9. That meet and confer process was still ongoing as of September 1, 2022 when, without prior notice, Plaintiff filed its "emergency" request. Plaintiff's refusal to engage in further meet and confer with defense counsel is without substantial justification.

Plaintiff cites to no procedural statute, rule or other authority that would permit or require immediate judicial intervention, and there is no "emergency" that would necessitate immediate judicial intervention. Plaintiff's "emergency" request is both procedurally and substantively unwarranted. The Court should deny Plaintiff's request and order Plaintiff to recommence and complete the meet and confer process with Defendants which is the subject of the Court's July 21, 2022 Order.

Background

The "Pertinent Background" section of Plaintiff's letter brief, and Plaintiff's exhibits, set forth only a portion of the relevant correspondence and only Plaintiff's argument. Accordingly, Defendants include herewith the missing relevant correspondence (denominated "Defendants Exhibits") and Defendants' argument as to why Plaintiff's request should be denied as both: (1) procedurally improper; and (2) substantively premature and meritless (at best), in addition to being unnecessarily harassing, abusive and unduly burdensome. *See* footnote 1, *supra*.

On July 21, 2022, the Court entered an Order granting Defendants' motion for entry of a two-tier protective order. Docket No. 78.

The Court's July 21, 2022 Order orders, in pertinent part, as follows:

"3. The parties are directed to meet and confer to identify the "list" of Copyrighted Works and Foreign Works and which definitions will be used for responding to the RPD and Interrogatories. To the extent such a "list" has not been provided by Plaintiff to Defendants, the parties are directed to meet and confer and Plaintiffs are directed to provide such a list, with specificity. Defendants are entitled to

---

July 20, 2007), § 7 (found at https://www.calbar.ca.gov/Portals/0/documents/ethics/Civility/Atty-Civility-Guide-Revised_Sept-2014.pdf, *last accessed* September 5, 2022.) ("The timing and manner of service of papers should not be used to the disadvantage of the party receiving the papers. ¶ For example: . . . c. When serving papers, an attorney should allow sufficient time for opposing counsel . . . to respond to the papers. d. An attorney should not serve papers to take advantage of an opponent's absence or to inconvenience the opponent, for instance by serving papers late on Friday afternoon or the day preceding a holiday.")

know the works, with specificity, they are alleged to have infringed." Docket No. 78 [7/21/2022 Order] at 21:4-9.[2]

The Court's July 21, 2022 Order did not impose a deadline for the meet and confer process. However, after nearly a week had passed since entry of the Order without any word from Plaintiff nor receipt of Plaintiff's proposed list of "Yellowcake's Copyrighted Works" and "Foreign Works", Defendants took the initiative and sent a meet and confer letter to Plaintiff's counsel on July 27, 2022. Defendants' Exhibit "C".[3] Defendants' July 27, 2022 letter set forth Defendants' request for the specific information to be included in Plaintiff's "list".[4]

One week later, on August 3, 2022, Mr. Berman responded to Defendants' July 27, 2022 letter. Docket No. 84-2 [Plaintiff's Exhibit 2]. Rather than meeting and conferring regarding the degree of "specificity" required for the "list", or responding to Defendants' request for the specified information, *see* footnote 4, *supra*, Mr. Berman simply provided Defendants with another copy of the Exhibits to the Second Amended Complaint ("SAC"), which Defendants obviously already had.[5] Although Mr. Berman offered to provide a list that included ISRC and

---

[2] At pages 2-3 of Plaintiff's letter brief, Plaintiff *partially* quotes from footnote 4 of the Court's July 21, 2022 Order. While pertinent, that footnote does not comprise the Court's order, which is set forth at page 21 of the Order. Moreover, Plaintiff's partial quotation notably *omits* the Court's statement that "[t]he Court will not enforce a request or interrogatory that contains superseded definitions." Docket No. 78 at 6:22-23. All of Plaintiff's discovery contains superseded definitions of "Yellowcake's Copyrighted Works" and "Foreign Works", since Plaintiff's discovery defines those terms by reference to Plaintiff's First Amended Complaint ("FAC"), filed on July 21, 2021. Docket No. 7. The FAC was superseded by Plaintiff's Second Amended Complaint, filed on February 16, 2022. Docket No. 31.

[3] Defendants' Exhibits omit any attachments or enclosures which accompanied Defendants' meet and confer letters.

[4] Defendants' July 27, 2022 letter requested that the following information be included on the "list": (1) Song title; (2) Name of artist; (3) Album title; (4) Copyright registration number (where applicable); (5) Copyright claimant; (6) Date of copyright registration; (7) Date of first publication (whether in the U.S. or in Mexico); (8) Date of first fixation (in Mexico); (9) Universal Product Codes ("UPC"); (10) International Standard Recording Code ("ISRC"); and (11) Date(s) of alleged infringement.

[5] Mr. Berman's August 3, 2022 letter states, in pertinent part: "With regards to the list of works infringed, you are well aware that the exhibits attached to the second amended complaint are a current and complete list of the works alleged to be infringed. In an act of good faith, another copy of the list is enclosed herewith." The provision of yet another copy of the Exhibits to the SAC is hardly an act of "good faith". Moreover, the SAC, Docket No. 31, was filed on February 16, 2022. The Court's order directing Plaintiff to provide a "list, with specificity" of the particular sound recordings alleged to have been infringed by Defendants", Docket No. 78, was entered on July 21, 2022. Had the Exhibits to the SAC been sufficiently specific, the Court surely would not have ordered Plaintiff to provide a "list, with specificity" five months after the SAC was filed.

McAuliffe, Hon. Barbara
September 6, 2022
Page 4

UPC codes for each of the sound recordings allegedly infringed, he did not enclose such a list with his August 3, 2022 letter.

Defendants responded to Mr. Berman later the same day (August 3, 2022). Defendants' Exhibit "D". Despite Mr. Berman's failure to meet and confer in good faith, Defendants nevertheless dropped their request that certain items of information be included on the list.[6]

Defendants' August 3, 2022 letter also pointed out: (1) In order to become eligible for copyright protection under the Copyright Act, the "Foreign Works" were subject to the requirements for a foreign work set forth in 17 U.S.C. § 104(b). *United States v. Hernandez* (9th Cir. 1991) 952 F.2d 1110, 1118 (citing *New York Chinese v. U.E. Enterprises* (S.D.N.Y. March 8, 1989) 1989 WL 22442, *5, 1989 U.S.Dist. LEXIS 2760 *19–20); and (2) If a foreign work is *ineligible* for copyright protection under the Copyright Act, no infringement claim can stand, and consequently any discovery seeking documents or information relating to such ineligible works is, *prima facie*, not relevant to any party's claim or defense and not proportional to the needs of the case. *Cf.* Fed. R. Civ. P. 26(b)(1).

By letter dated August 9, 2022, Mr. Berman provided a further iteration of the list of works that Defendants are alleged to have infringed. Docket No. 84-3 [Plaintiff's Exhibit 3]. Mr. Berman's August 9, 2022 letter states that it encloses "copies of exhibits to the Second Amended Complaint including Colonize Media, Inc.'s UPC codes, Dashgo, Inc.'s UPC codes and Yellowcake, Inc.'s ISRC codes for each of the copyrighted works infringed."

Two days later, on August 11, 2022, Defendants sent a letter in response to Mr. Berman. Docket No. 84-4 [Plaintiff's Exhibit 4]. Defendants noted that a specific and accurate ISRC code is necessary to identify a particular unique iteration of a sound recording, and that, based on Defendants' very preliminary spot check, each of Exhibits A, B and C enclosed with Mr. Berman's August 9, 2022 letter had discrepancies in the ISRC codes set forth.[7] The Exhibits A, B and C enclosed with Mr. Berman's August 9, 2022 letter were therefore inaccurate and could not possibly comprise the "list, with specificity" of "Yellowcake's Copyrighted Works" and "Foreign Works" that Yellowcake had been ordered to provide.

Defendants' August 11, 2022 letter also reiterated that discovery regarding the "Foreign Works" which are ineligible for copyright protection under the Copyright Act is simply not relevant, since Plaintiff cannot pursue claims for copyright infringement for works that, as a matter of law, are not subject to claims of infringement. Defendants therefore again insisted that

---

[6] In particular, Defendants dropped their requests for: (1) Copyright claimant; (2) Date of copyright registration; (3) Date of first publication as to any sound recordings registered with the U.S. Copyright Office; and (4) Date(s) of alleged infringement.

[7] The specific works that had discrepancies were: (1) Exhibit A: The song "El Patiecito" by La Nobleza De Aguililla (no album name was provided); (2) Exhibit B: The song "La Enorme Distancia" by Los Acuaria on the album *Sus Mas Grandes Exitos*; and (3) Exhibit C: The song "No Te Vayas" by El Jefe & Su Grupo on the album *12 Super Exitos*.

Plaintiff provide evidence that each of the "Foreign Works" is eligible for copyright protection under the Copyright Act.[8]

Mr. Berman responded a full week later, on August 18, 2022. Docket No. 84-5 [Plaintiff's Exhibit 5]. Among other things, Mr. Berman's August 18, 2022 letter states that the SAC "clearly sets forth all of the copyrighted works allegedly infringed".[9] Mr. Berman's August 18, 2022 letter also attempts to shift the burden of identifying the songs included in "Yellowcake's Copyrighted Works" and "Foreign Works" to Defendants – even though the Court's July 21, 2022 Order placed that burden on Plaintiff – by demanding that Defendants "continue to search for the remainder of the titles" to find additional discrepancies and defects with Plaintiff's most recently proffered "list". Because of the number of works at issue ("thousands", in Plaintiff's own words), a thorough evaluation of the inaccuracies of Plaintiff's "list" would have been both time-prohibitive and cost-prohibitive and, thus, unduly burdensome.

Mr. Berman's August 18, 2022 letter also states: "[E]nclosed herewith is our new list mirroring Exhibits A, B and C to the Second Amended Complaint which includes both Yellowcake's ISRC codes, Dashgo's prior ISRC codes, Yellowcake's UPC codes and Dashgo's UPC codes for the works infringed as well as a note when such ISRC code is not available on Sound Exchange database but used in connection with digital service providers." That statement was untrue. *See* footnote 11, *infra*, and accompanying text.

Most relevant to Plaintiff's present "emergency" request, Mr. Berman's August 18, 2022 letter states, in pertinent part: "You are well aware it is possible that there is more than one ISRC code issued for a particular sound recording, and that it is also possible for a sound recording to be mis-indexed. Nor is every ISRC code available on Sound Exchange or properly indexed on Sound Exchange."

Mr. Berman's statement is contrary to established standards, promulgated by authoritative third parties, for the digital music distribution industry.

On August 19, 2022, Defendants responded to Mr. Berman's August 18, 2022 letter. Docket No. 84-6 [Plaintiff's Exhibit 6]. Defendants' August 19, 2022 letter enclosed the ISRC Handbook (4th ed. 2021) published by the International ISRC Registration Authority (the

---

[8] Such evidence was formally requested both by Dashgo's Document Request No. 22 and Dashgo's Interrogatory No. 4 (the latter of which is one of the three interrogatories that are the subject of Dashgo's currently-pending motion to compel, Docket Nos. 44, 79). Defendants have repeatedly followed up on these discovery requests, but, to date, Plaintiff has produced no responsive documents or information. Accordingly, as to Plaintiff's discovery, the purportedly defined term "Foreign Works" is, and remains, inherently overbroad, and the discovery seeks irrelevant information and documents.

[9] *See* footnote 5, *supra* (noting that, had the Exhibits to the SAC been sufficient, the Court would not have ordered Plaintiff to provide a "list, with specificity" of the particular sound recordings alleged to have been infringed by Defendants five months after the SAC was filed).

"Handbook")[10] and set forth, in detail, why only one distinct ISRC applies to a single distinct sound recording, and why a distinct ISRC is presumptively the most effective way to determine which distinct sound recording is being referenced.

Defendants' August 19, 2022 letter explains that Defendants, and the digital services providers with which Defendants do business, require ISRCs to uniquely identify a particular sound recording, since: (1) each ISRC has necessary reference metadata associated with it; (2) all data associated with a particular sound recording are linked to the sound recording's ISRC; and (3) all reports generated by Defendants, or received by Defendants from third parties, rely on accurate ISRCs, each associated with a single, unique and distinct sound recording.

Defendants' August 19, 2022 letter also explains why it is Plaintiff's responsibility to correct any ISRC errors (whether the error is that there are multiple ISRCs for the same sound recording or, to use Plaintiff's terminology, an ISRC is "mis-indexed") so that Plaintiff can ensure that the "list" that Plaintiff has been ordered to provide is 100% accurate and reliable.

Defendants' August 19, 2022 letter further explains that a UPC code, being unique to an album rather than to an individual sound recording, does not inform Defendants as to which specific works Defendants are alleged to have infringed.

Defendants' August 19, 2022 letter then notes that the Exhibits A, B and C enclosed with Plaintiff's August 18, 2022 do not contain the information Mr. Berman represented they do.[11]

Defendants' August 19, 2022 letter also provides Plaintiff with an example of why, even as to the allegedly registered sound recordings (those of "Yellowcake's Copyrighted Works" for which Plaintiff has provided a "SR" number on Exhibits A and B to the SAC), Yellowcake cannot

---

[10] Found at https://www.ifpi.org/wp-content/uploads/2021/02/ISRC_Handbook.pdf, *last accessed* September 5, 2022.

[11] Specifically: (1) Exhibit A sets forth *only*: Song Title, Artist, SR, Link, ISRC [albeit not a Dashgo ISRC] and UPC; (2) Exhibit B sets forth *only*: Release Display Artist, Album Title, Track Number, Track Title, SR, Platform, UPC and ISRC [again, not a Dashgo ISRC]; and (3) Exhibit C sets forth *only*: a DashGo UPC, a Colonize UPC, a Release Display Artist, Album Title, Track Number, Track Title, SR, Platform and Colonize ISRC [yet again, not a Dashgo ISRC].

Thus, contrary to Mr. Berman's representation, the Exhibits A, B and C do <u>not</u> include "Dashgo's prior ISRC codes". Neither Exhibit A nor Exhibit B identify whether the UPC column is for "Yellowcake's UPC codes" or "Dashgo's UPC codes", but in any case, those two exhibits have only one UPC column and therefore do not include both "Yellowcake's UPC codes and Dashgo's UPC codes". As for Exhibit C, it is unclear whether "Yellowcake's UPC codes" [as set forth in Mr. Berman's August 18, 2022 letter] are the same as "Colonize UPC" [as set forth on the Exhibit C enclosed with Mr. Berman's August 18, 2022 letter].

Moreover, the Exhibits include no "note when such ISRC code is not available on Sound Exchange database but used in connection with digital service providers."

make out a *prima facie* case that the works allegedly infringed are eligible for copyright protection under the Copyright Act. The letter also reiterates, for at least the third time, that as to those works allegedly infringed that are <u>not</u> registered (i.e., all of the "Foreign Works"), those sound recordings, allegedly of Mexican origin, are only eligible for copyright protection if Yellowcake can establish that each work meets the requirements of 17 U.S.C. § 104(b).

Defendants never received a response to their August 19, 2022 letter, nor did Defendants receive a response to their short September 1, 2022 follow-up letter. Defendants' Exhibit "A". Instead, on the afternoon of Friday, September 2, 2022 – fully two weeks after Defendants' August 19, 2022 letter was sent – Plaintiff filed the present "emergency" request.

<u>Argument</u>

As a threshold matter, Plaintiff cites to no procedural rule, statute or other authority that would permit Plaintiff to circumvent the procedure set forth in Local Rule 251 and, instead, seek immediate judicial intervention. Plaintiff's "emergency" request is procedurally improper and, for this reason alone, should be denied.

Moreover, there is no "emergency" requiring the Court's immediate intervention. As of September 1, 2022, the parties were in the midst of the meet and confer process ordered by the Court. But on September 2, 2022, in lieu of responding to Defendants' August 19, 2022 meet and confer letter, Plaintiff, out of the blue and without prior notice to Defendants, filed the present request for "emergency" judicial intervention. Plaintiff has not shown that it has suffered, or will suffer, any prejudice from continuing to participate in the ongoing meet and confer process[12], and Defendants are thus perplexed as to what exactly the purported "emergency" might be that could require the Court's immediate attention.

Further, as fully set forth in the meet and confer correspondence, Plaintiff's request is substantively meritless as well.

*First*, Plaintiff <u>concedes</u> that ISRCs are used in the digital music distribution industry to allow distributors and digital service providers to identify a particular sound recording.

While Plaintiff is technically correct that use of ISRCs is not "legally required", as Defendants have previously explained, in the digital music distribution business, ISRCs are a useful mechanism to identify the specific sound recordings being exploited (but only insofar as

---

[12] Plaintiff states it is asking for an "emergency" conference so that Plaintiff "does not have to burden the Court with yet another motion to compel and be unfairly expensed and delayed." Trial in this action is not until May 21, 2024, and the fact discovery cutoff is not until May 17, 2023. Docket No. 67 [Scheduling Order]. There remains more than enough time for the parties to complete the meet and confer process, and so there is no prejudice to Plaintiff in this regard. As for Plaintiff's claim of "unfair expense", there are always costs associated with the litigation process, and this dispute is not unusually expensive – particularly given the thousands of sound recordings allegedly at issue and the alleged $30 million+ in damages being sought by Plaintiff.

an ISRC is accurately assigned and applied by each label and distributor). *See* Docket No. 64 [Joint Statement re: Defendants' Motion for Two-tier Protective Order] at 10:1-11 (citing Patterson Declaration), Docket No. 80 [Joint Statement re: Plaintiff's Motion to Compel] at 29:20-25. Use of ISRCs is also standard in the digital music industry because: (1) each ISRC has necessary reference metadata associated with it; (2) all data associated with a particular sound recording are linked to the sound recording's ISRC; and (3) all reports generated by Defendants, or received by Defendants from third parties, rely on accurate ISRCs, each associated with a single, unique and distinct sound recording. This was fully explained to Plaintiff. Docket No. 84-6 [Plaintiff's Exhibit 6].

 For reasons unknown to Defendants, Plaintiff renews an argument first made by Plaintiff in opposition to Defendants' motion for entry of a two-tier protective order, namely, that ISRCs are not necessary to the definitions of "Yellowcake's Copyrighted Works" and/or "Foreign Works", since ISRCs are only "one possible piece of potential identifying information." *Compare* Docket No. 84 [Plaintiff's "emergency" request] at 5 *with* Docket No. 64 [Joint Statement re: Defendants' motion for two-tier protective order] at 40:12-21.[13] The Court has already once considered, and rejected, Plaintiff's argument, ordering Plaintiff to provide a "list, with specificity" of identifiable copyrighted works after meeting and conferring with Defendants. The Court should again reject this argument.

 Plaintiff contends that an ISRC can be "mis-indexed" and that a single sound recording can be assigned multiple ISRCs. As the ISRC Handbook shows, that is not how ISRCs are intended to work, nor, as Defendants have made clear, how they work as applied in the digital music distribution business. Again, both Defendants and the third parties with which Defendants do business rely on accurate ISRCs, each associated with a single, unique and distinct sound recording. To the extent there has been any "mis-indexing" or multiple ISRCs assigned to a single unique sound recording, it is not Defendants' burden to correct such errors.

 Plaintiff asserts that it is <u>Defendants</u>' obligation to review Plaintiff's entire list of over 2,000 ISRCs and "provide Yellowcake with a list of ISRC codes [Defendants] believe are inaccurate". The Court's July 21, 2022 Order, however, placed the burden of providing a "list, with specificity" on <u>Plaintiff</u>.

 It is not Defendants' burden to ensure that Plaintiff's "list" is accurate, and the time it would take for Defendants to review and verify the accuracy of ISRCs for over two thousand works – not to mention the associated cost – would be unduly burdensome and completely disproportionate to the needs of the case. *Cf.* Fed. R. Civ. P. 26(b)(1). Moreover, if Plaintiff

---

[13] As if to emphasize that Plaintiff's argument on this point is simply a regurgitation of that previously made, Plaintiff cites to the <u>same</u> <u>document</u> as evidence to support its argument. *Compare* Docket No. 64 [Joint Statement re: Defendants' Motion for Two-tier Protective Order] at 40:19-21 (citing Exhibit "17" [Dashgo royalty report, Bates PLF005240-5259]) *with* Docket No. 84 [Plaintiff's "emergency" request] at 5 (citing Exhibit 7 [Dashgo royalty report, Bates PLF005240-5259]).

provides Defendants with an inaccurate "list" – which is precisely what happened on August 9, 2022, *see* Docket Nos. 84-3 [Plaintiff's Exhibit 3], 84-4 [Plaintiff's Exhibit 4] – Defendants would be sent on a search for documents and information having no relevance whatsoever to the claims and allegations made in this action.

*Second*, Plaintiff asserts that Defendants' alleged acts of infringement occurred using the ISRCs "provided by Yellowcake in Exhibit '5'." Docket No. 84 [Plaintiff's "emergency" request] at 6. The ISRCs provided in Plaintiff's Exhibit 5 have the Prefix Code "QM6DC". *See* Docket No. 84-5 [Plaintiff's Exhibit 5] at 4-30; *cf.* Docket No. 84-6 [Plaintiff's Exhibit 6] at 15-16 [ISRC Handbook, § 3.3.2]. Whether the Prefix Code "QM6DC" is Yellowcake's Prefix Code or Colonize's Prefix Code, it is most certainly not Dashgo's Prefix Code. *See* footnote 11, *supra*. Plaintiff fails to explain how or why Defendants would have been utilizing Yellowcake's or Colonize's Prefix Code during the relevant time period.[14] It thus appears that Plaintiff would have Defendants search for data that, on the face of it, is irrelevant and/or not in Defendants' possession, custody or control.

*Third*, UPCs, while potentially unique to an album, are not unique to the individual sound recordings that appear on an album. Plaintiff concedes as much, in asserting that UPCs can, at best, "help" to "refine" "the search" and enable Defendants to "find individual songs related to that album".[15]

*Fourth*, Plaintiff is "the master of the complaint", *cf. Lincoln Prop. Co. v. Roche* (2005) 546 U.S. 81, 91, 126 S. Ct. 606, 614, 163 L. Ed. 2d 415, and thus controls the allegations of its complaint – including as to the list of works Defendants are alleged to have infringed. If Plaintiff lacks "identifying information" as to one or more of the sound recordings it alleges was infringed, it should withdraw that allegation. Otherwise, Plaintiff risks violating Rule 11 of the Federal Rules of Civil Procedure.

*Fifth*, as borne out by the meet and confer correspondence, not once have Defendants "insist[ed] that Yellowcake provide [Defendants] with all of the underlying metadata for each sound recording". Plaintiff's assertion to the contrary is simply untrue.

---

[14] Defendants have previously noted that, by letter dated February 4, 2022, Plaintiff agreed to "limit" the relevant time period for its discovery to "January 1, 2010 to the present" – a period of more than 12 years – notwithstanding the three-year statute of limitations for copyright infringement. 17 U.S.C. § 507(b).

[15] It is unclear what the phrase "the search" is intended to refer to, nor who Plaintiff is suggesting must conduct "the search"; however, it is clear that Plaintiff would place the onus on Defendants to "find individual songs related to that album". That is undoubtedly not what the Court had in mind when it directed Plaintiff to provide a list, with specificity, of "Yellowcake's Copyrighted Works" and "Foreign Works".

Defendants have, however, insisted that Plaintiff establish that each of the sound recordings allegedly infringed is, in fact, eligible for copyright protection under the Copyright Act, since any sound recordings that are not protectable cannot be the subject of a claim for copyright infringement and are ineligible for statutory damages. If works that cannot be the subject of a claim for copyright infringement fall within the definitions of "Yellowcake's Copyrighted Works" or "Foreign Works", those definitions are inherently overbroad and capture irrelevant documents and information.

As explained to Plaintiff in Defendants' August 19, 2022 letter, Docket No. 84-6 [Plaintiff's Exhibit 6], Defendants have good reason to question whether Plaintiff's alleged "Yellowcake's Copyrighted Works" or "Foreign Works" are eligible for copyright protection.

With regard to "Yellowcake's Copyrighted Works", and by way of example only and without limitation, the very first work on Plaintiff's new Exhibit A, Docket No. 84-5 [Plaintiff's Exhibit 5] at 5, is identified as the song "El Patiecito" by the band La Nobleza De Aguililla, with the "SR" [sound recording copyright registration number] SR0000638659. As noted in Defendants' August 19, 2022 letter, Docket No. 84-6 [Plaintiff's Exhibit 6] at 7, 37-38, the registration record for Reg. No. SR0000638659 is actually for "Siempre Juntos" by La Nobleza De Aguilla. Obviously, the song "El Patiecito" is not the same as the song "Siempre Juntos".[16] Nor is "Aguililla" the same as "Aguilla".

Thus, while Plaintiff is correct that a copyright registration creates a *prima facie* presumption of a valid copyright, *see* Ninth Circuit Manual of Model Civil Jury Instructions, Copyright (November 2021 update), Instruction 17.7[17], that presumption is rebuttable upon a simple "offer of some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.* (9th Cir. 2011) 630 F.3d 1255, 1257. The copyright registration for Reg. No. SR0000638659, cited in the preceding paragraph, itself constitutes sufficient evidence to rebut Plaintiff's allegation that the sound recording of the song "El Patiecito" by the band La Nobleza De Aguililla is eligible for copyright protection under the Copyright Act.

As to the "Foreign Works", Plaintiff does not dispute that those sound recordings, allegedly of Mexican origin, are only eligible for copyright protection under the Copyright Act if each meets the requirements of 17 U.S.C. § 104(b). Plaintiff nevertheless has failed and refused to produce any documents or information evidencing that any of the "Foreign Works" is eligible for copyright protection under the Copyright Act, including in response to Dashgo's discovery requests and repeated follow-up requests. *See* footnote 8, *supra*.

---

[16] It is unclear, based on the registration alone, whether "Siempre Juntos" is a song title or an album title. Either way, though, "Siempre Juntos" is clearly not the same as "El Patiecito".

[17] Found at https://www.ce9.uscourts.gov/jury-instructions/node/263, *last accessed* September 5, 2022.

Finally on this point, Plaintiff states that "[i]f Defendants believe that the works at issue are not the same ones recorded in the copyright office, it is _their_ burden to prove that they are different." Docket No. 84 [Plaintiff's "emergency" request] at 6-7 (emphasis added). In so stating, Plaintiff evinces a fundamental misunderstanding of burdens of proof in copyright litigation. To the contrary, on the plaintiff's copyright infringement claim, the _plaintiff_ "has the burden of proving by a preponderance of the evidence that . . . the plaintiff is the owner of a valid copyright[.]" Ninth Circuit Manual of Model Civil Jury Instructions, Copyright (November 2021 update), Instruction 17.5.[18]

Conclusion

To be perfectly clear, **Defendants are not refusing to supplement their responses to Plaintiff's discovery, nor refusing to produce documents and information responsive to that discovery**. But before doing so, Defendants are entitled to know, with specificity, what sound recordings they are alleged to have infringed. To date, Plaintiff has provided three different iterations of that list of sound recordings, but each has been defective. Defendants are entitled to an accurate list.

The list of works Defendants are alleged to have infringed is a threshold issue, since the list will serve to define the terms "Yellowcake's Copyrighted Works" and "Foreign Works", as used in the SAC and in Plaintiff's discovery. Until such time as Plaintiff can accurately identify, with specificity, those unique sound recordings which Defendants are alleged to have infringed, Plaintiff's discovery, which incorporates the defined terms "Yellowcake's Copyrighted Works" and "Foreign Works", is inherently overbroad, and seeks irrelevant information and documents.

Discovery is not a "fishing expedition" to obtain information and/or documents that, Plaintiff speculates, will "substantiate Yellowcake's claims." _See Calderon v. U.S. Dist. Ct. for the N. Dist. of California_ (9th Cir. 1996) 98 F.3d 1102, 1106 (courts should not allow federal discovery to be used "for fishing expeditions to investigate mere speculation"); _Hoffman v. Lassen Cnty._ (E.D. Cal. May 26, 2017) No. 2:15-CV-1382 DB P, 2017 WL 2311683, at *3 ("Discovery cannot be used to investigate theories and allegations that are no more than speculation."). The use of the discovery process for such purposes is a clear abuse and misuse.

For both procedural and substantive reasons, Plaintiff's "emergency" request should be denied, and Plaintiff should be ordered to return to the meet and confer process contemplated by the Court's July 21, 2022 Order. The Court should also consider imposing monetary

---

[18] Available at https://www.ce9.uscourts.gov/jury-instructions/node/261, _last accessed_ September 5, 2022.

sanctions against Plaintiff and Plaintiff's counsel, jointly and severally, to reimburse Defendants for their attorneys' fees incurred in connection with this wholly-unnecessary exercise.

Very truly yours,

DICKENSON, PEATMAN & FOGARTY

Richard Idell

RJI:obs
cc:  Seth Berman, Esq. (via ECF only)
     Tom Griffin, Esq. (via ECF only)
     Ory Sandel, Esq.