# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>DASHGO, INC., a Delaware corporation; and AUDIOMICRO, INC. d/b/a ADREV, a Delaware corporation, BENJAMIN PATTERSON, an individual and NOAH BECKER, an individual,<br><br>Defendants. | **Case No.: 1:21-cv-00803-AWI-BAM**<br><br>**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL SUBSTANTIVE RESPONSES TO PLAINTIFF'S DEMANDS AND FOR CONTEMPT OF ORDER DATED JULY 27, 2022**<br><br>**Via Zoom video conference/telephone number**<br><br>**Date**: October 24, 2022<br>**Time**: 8:30 a.m.<br>**Place**: United States District Court, E.D. Cal. Robert E. Coyle U.S. Courthouse<br><br>Courtroom 8 – Sixth Floor<br>2500 Tulare Street<br>Fresno, CA 93721<br><br>(E-filing)<br><br>Hon. Magistrate Judge Barbara A. McAuliffe, Presiding |

Plaintiff Yellowcake, Inc. ("Plaintiff"), on the one hand, and Defendants Dashgo, Inc. ("Dashgo") and Audiomicro, Inc. d/b/a Adrev ("Adrev" and when collectively referred to with Dashgo, "Defendants"), on the other hand, pursuant to Rule 251 of the Local Rules of the United States District Court, Eastern District of California, and Rule 37 of the Federal Rules of Civil Procedure ("FRCP"),  hereby file this Joint Statement re: Discovery Disagreement regarding Plaintiff's motion to (a) compel production of documents responsive to Plaintiff's Request for Documents, Sets One and Two, (b) to compel substantive responses to Plaintiff's Interrogatories (collectively with Plaintiff's Request for Documents, Sets One and Two "Discovery Demands"); (c) pursuant to FRCP 37(b)(2)(A), to impose a discovery sanction upon Defendants for their failure to comply with this Court's Order, dated July 20, 2022, and (d) pursuant to FRCP 37(b)(2)(C), to award Plaintiff its attorneys' fees incurred in making this motion.

## I.    PLAINTIFF'S STATEMENT AND CONTENTIONS.

### A.    SUMMARY.

Plaintiff has been waiting – patiently and for some time – for Defendants to provide responses to its Discovery Demands, including copies of the royalty reports for the disputed works.  Plaintiff has provided Defendants with a list of the disputed works (with the artist, song title, and album title), the copyright registration number (where applicable), all known International Standard Recording Codes ("ISRC") previously used by Plaintiff and DashGo (with a note where such ISRC was not available in the ISRC database), all known Universal Product Codes ("UPC") previously used by Plaintiff and DashGo, all known URLs for any works infringed on YouTube, and copies of royalty reports that Defendants provided to Plaintiff when they distributed the disputed works for Plaintiff under previous distribution agreements. Despite all of this, Defendants continue to refuse to respond to Plaintiff's Discovery Demands, claiming that they cannot identify the disputed works.

### B.    INTRODUCTION.

Plaintiff's motion to compel concerns Defendants' refusal to respond to

---

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL

F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint Statement\Joint Statement FINAL.docx

Plaintiff's Discovery Demands and non-compliance with this Court's Order dated, July 20, 2022, concerning the parties' protective order ("Order" [Dkt. #78]).

In compliance with the Order, Plaintiff provided Defendants with a detailed list of every copyrighted sound recording allegedly infringed in the Second Amended Complaint ("SAC') so that Defendants could fully respond to the Discovery Demands. The list provided by Plaintiff included every relevant identifier for each work including the artist, song title, album title and any available ISRC and UPC. Defendants still refuse to respond to Plaintiff's discovery demands claiming that they cannot identify the works at issue.

For the reasons set forth below, Plaintiff had no choice but to file its motion and move to compel discovery and seek discovery sanctions as it has been forced to file yet another motion to compel and be unfairly expensed and delayed.

## C.    PROCEDURAL AND MEET & CONFER HISTORY.

As the Court is aware, the essence of this action is that Plaintiff alleges that Defendants improperly distributed over two thousand (2,000) digital sound recordings after the termination of two prior distribution agreements. In *November and December of 2021*, Plaintiff served its Discovery Demands seeking, among other things, information and documents related to the copyrighted sound recordings infringed. The definition of Plaintiff's Copyrighted Works and Foreign Works used in the Discovery Demands mirrored the same definitions used in the Complaint. The Complaint contained exhibits identifying Plaintiff's Copyrighted Works and Foreign Works using the artists' name, song title, album title and, where applicable, the copyright registration number. *See* Dkt. #1.

On or about February 16, 2022, Plaintiff filed a Second Amended Complaint ("SAC") using the same definition of "Plaintiff's Copyrighted Works" and "Foreign Works" as the Complaint and First Amended Complaint, but the SAC added thirty-one (31) albums to the list of "Plaintiff's Copyrighted Works". *See* Dkt. #31. Defendants complained that they could not identify the thirty-one (31) new albums added to the SAC

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL

F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint Statement\Joint Statement FINAL.docx

and therefore could not fully respond to the Discovery Demands, even though Defendants had managed to produce some responses to the Discovery Demands using the existing definitions. After multiple meet-and-confer conferences and Court conferences, Plaintiff, in good faith, provided Defendants' counsel with a list identifying the thirty-one (31) new albums added to the SAC ("Initial List"). *See* a copy of the correspondence, dated May 16, 2022, and list sent to Defendants' counsel annexed hereto to Appendix 1 as <u>Exhibit 1</u>.

On or about March 25, 2022, Defendants filed a motion for a two-tier protective Order which Plaintiff opposed. In that motion, Defendants argued that the definitions in the previously served Discovery Demands had been superseded by the definition of "Plaintiff's Copyrighted Works" in the SAC and that they could not adequately respond to Plaintiff's Discovery Demands.

In the Order, Your Honor held, in pertinent part, that:

> …Plaintiff's RPD and Interrogatories Set One both incorporate the same definitions of "Plaintiff's Copyrighted Works" and the "Foreign Works" as set forth in the FAC, but not the definitions set forth in the SAC. The definitions in the FAC of Copyrighted Works and Foreign Works are different from the definitions in the SAC. Any RPD based upon terminology or allegations in the FAC are superseded by the SAC. However, the Court understands that Plaintiff has recently provided a "list" of copyrighted works (both domestic and foreign) that Plaintiff contends Defendants infringed. The parties are directed to meet and confer to identify the list and which definitions will be used for responding to the RPD and Interrogatories Set One.

*See* Dkt 78, Pg. 6, Lns. 18-23.

*Nowhere in the Order did the Court direct what had to be included in the list to identify the works at issue.*

Pursuant to the Order, Plaintiff sent correspondence to Defendants' counsel on August 3, 2022, stating unmistakably that Exhibits A and B set forth the entirety of "Plaintiff's Copyrighted Works" and Exhibit C sets forth the entirety of the "Foreign Works." Also, in that letter, Plaintiff agreed to provide the ISRC and UPC information it had with regarding the works. A copy of Plaintiff's correspondence, dated August 3,

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL**

**F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint Statement\Joint Statement FINAL.docx**

2022, is annexed to Appendix 1 as <u>Exhibit 2</u>.

*To be clear, at no point prior did Defendants demand that Plaintiff specifically produce ISRCs or UPCs for each work.* Furthermore, there is no legitimate need for ISRC or UPC information because Plaintiff is seeking information regarding sound recordings that were previously distributed by Defendants and Defendants have account databases that can identify a client's catalog and can be searched by song title, artist and album.

Consistent with the letter of August 3, 2022 (and follow-up correspondence on August 5, 2022), on August 9, 2022, Plaintiff's counsel sent Defendants' counsel *another list* reflecting the exhibits to the SAC together with Plaintiff's ISRC and UPC information related to each alleged work infringed as well as URL links to infringing videos on Dashgo's YouTube channel. A copy of Plaintiff's correspondence dated August 9, 2022, is annexed to Appendix 1 as <u>Exhibit 3</u>.

Surprisingly, given the breadth of information that had been provided by Plaintiff, on August 11, 2022, Defendants' counsel wrote to the undersigned refusing to respond to the Discovery Demands on the basis that Defendants allegedly performed a "spot check" of only *three* of the ISRCs provided and that there were some discrepancies with those three ISRCs with the ISRC database (*out of thousands*) and, therefore, Defendants would not respond to the Discovery Demands. Defendants also stated that they would refuse to provide any discovery concerning the "Foreign Works" based on the (incorrect) assertion that Plaintiff failed to prove its chain of title to the Foreign Works. Plaintiff has provided sufficient evidence to prove its chain of title and Defendants claim to the contrary is an inappropriate reason to withhold information during the discovery phase of litigation. A copy of Defendants' letter dated August 11, 2022, is annexed to Appendix 1 as <u>Exhibit 4</u>.

Nevertheless, Plaintiff investigated Defendants' claims regarding the three alleged ISRC discrepancies. On August 18, 2022, Plaintiff explained to Defendants' counsel that sometimes there are mis-indexed ISRCs and that there can be multiple

**4**

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL**

F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint Statement\Joint Statement FINAL.docx

ISRCs for the same sound recording. Nonetheless, *Plaintiff provided Defendants with yet another list of the works allegedly infringed, this time including all possible identifying information that Plaintiff could possibly provide including*: (i) the artist name; (ii) song title; (iii) album title; (iv) copyright registration number (if a domestic work); (v) all known ISRCs previously used by Plaintiff and by Dashgo (with a note where an ISRC was not available in the ISRC database); (vi) all known UPCs previously used by Plaintiff and by Dashgo; and (vii) all known URLs for any works infringed on YouTube. Plaintiff also provided a copy of a sample of a typical Dashgo royalty report using the same identifying information. A copy of Plaintiff's letter, dated August 18, 2022, is annexed to Appendix 1 as Exhibit 5. Plaintiff has provided every possible piece of information that Defendants could possibly use to find the information and documents demanded related to the sound recordings at issue.

On August 19, 2022, Defendants sent a letter asserting meritless arguments as to why Defendants allegedly cannot identify "Plaintiff's Copyrighted Works" and why they are refusing to respond the Discovery Demands concerning the "Foreign Works". A copy of Defendants' letter, dated August 19, 2022, is annexed to Appendix 1 as Exhibit 6.

**D.    CONTENTIONS.**

**1.   Defendants' Should Be Compelled to Comply with Discovery and this Court's Order.**

First, Defendants argue that there can only be one ISRC for a particular sound recording, and if there is more than one or conflicting information in the ISRC database, *they are refusing to provide any information or documents for any of the works, even if the ISRC is correct for that work.*

ISRC is a protocol used in the music industry to allow parties like record labels, music distributors and digital service providers to identify a particular sound recording since it is possible that an artist can create multiple versions of the same sound recording. Registering an ISRC helps identify a specific sound recording and its owner. *However,*

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL

F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint Statement\Joint Statement FINAL.docx

the use of an ISRC is not legally required in any way and the ISRC system is far from infallible. Often, an ISRC can be mis-indexed or there can be multiple ISRCs for the same sound recording. This can happen when the rights to a sound recording are sold and the new owner seeks to create a clean accounting history for that sound recording.

Defendants cite to the ISRC Handbook published by the International ISRC Registration Authority as if it is binding law, which it is not. While the ISRC Registration Authority publishes guidelines, that does not mean that everyone in the digital recording industry follows the suggested rules. So, while the handbook states that ideally there should only be one ISRC per sound recording in existence, given the reality of the music business, it is very common to have multiple ISRCs for the same sound recording or mis-indexed sound recordings. In this case Defendants identified only *three* discrepancies out of more than two thousand (2,000) sound recordings.

Moreover, Defendants' claim of ISRC discrepancies are based on Sound Exchange's ISRC indexing, which is completely irrelevant to Plaintiff's claims. Plaintiff is specifically alleging that Defendants infringed Plaintiff's sound recordings by distributing them on YouTube and Amazon. *See* SAC, Dkt. 31.

Furthermore, Defendants claim that they need accurate ISRCs for every sound recording at issue in order to respond to the Discovery Demands is, simply put, untrue. An ISRC is only one possible piece of potential identifying information. Defendants do not need an ISRC in order to produce documents and financial information relevant to those titles. Dashgo's reporting platform allows for searches by artist and title only. *See* Dashgo's royalty accounting report with artist and song title fields, annexed as <u>Exhibit 7</u> to Appendix 1. Having the artist, song title, album, multiple ISRCs and UPCs is more than sufficient to "pinpoint" a particular sound recording, even assuming, *arguendo*, that there is an issue with a particular work's ISRC.

Notwithstanding the above, Defendants brazenly state that they will not search for any information related to titles on the final list simply because they selectively cited to only *three* ISRC codes that may have some alleged discrepancies based on their

analysis. Assuming Defendants' claim that certain ISRC codes are inaccurate, Defendants can still search for documents and information related to the other titles whose codes are accurate and provide Plaintiff with a list of ISRC codes they believe are inaccurate, in which case, Plaintiff can investigate and reconcile any discrepancies. This is exactly what Plaintiff offered to Defendants in its letter dated August 18, 2022. *See* Exhibit 5. Defendants conveniently refused. *See* Exhibit 6.

Defendants' improper refusal to produce documents and information is also based on the false premise that Defendants are in possession of multiple ISRC codes for all of the two thousand (2,000) copyrighted sound recordings at issue and, therefore, cannot distinguish between them. This premise is inaccurate. For this to be true, it would mean that not only did Defendants distribute Plaintiff's copyrighted works with Plaintiff's ISRCs, but also that Defendants now distribute the same exact songs re-recorded by the same exact artist for a different label which were then issued a new ISRC for that new recording. It is highly unlikely Defendants have any other ISRCs for even one of the same exact artists and songs, let alone over two thousand (2,000) of them, *especially since many of the artists whose sound recordings are in dispute are under exclusive contract with Plaintiff.*

Second, Defendants argue that Plaintiff is obligated to correct any ISRC error. This is not true. As explained above, Defendants' argument that complete and accurate ISRCs are necessary is nothing more than a red herring asserted to avoid responding to the Discovery Demands. ISRCs are not necessary for Defendants to identify the sound recordings in dispute. In fact, "correcting" any alleged ISRC error would actually be counterproductive. Plaintiff alleges that Defendants started to unlawfully distribute its sound recordings again in the spring of 2020. As such, Plaintiff seeks documents and information regarding Defendants' acts of infringement which occurred using the ISRCs being used at that time, and which are the ones provided by Plaintiff in Exhibit 5. If Plaintiff was to "correct" the alleged errors with the ISRCs cited by Defendants, it would mean that Plaintiff would be issued a new ISRC for that sound recording. That new ISRC

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL**

**F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint Statement\Joint Statement FINAL.docx**

would only be relevant on a "go forward" basis and would not be relevant to the past acts of infringement at issue in this case.

Third, Defendants' claim that the UPCs provided by Plaintiff are insufficient to identify the works because UPCs refer to albums, not individual sound recordings. However, as stated above, the UPCs, together with the artist's name, song title and ISRC help to significantly refine the search to a particular album and make it easy for Defendants to find individual songs related to that album.

Fourth, Defendants claim that the exhibits provided in Plaintiff's letter of August 18, 2022 (*See* Exhibit 5), do not all include the same identifying information, including Dashgo's prior ISRCs. However, Plaintiff has produced all identifying information it could find regarding each sound recording at issue and, when reviewed in total, is more than sufficient for Defendants to identify the sound recordings. Again, Defendants' claim that they cannot identify the works at issue is disingenuous because Defendants distributed these sound recordings for years.  In fact, when Plaintiff demanded that Defendants stop distributing some of the songs after one of the prior distribution agreements had terminated, *Plaintiff's counsel sent Defendants a list similar to the one provided and Defendants immediately identified the works and stopped distributing them without requesting any more information.*  (*See* Exhibits 8-9). And yet, somehow they now cannot identify the same songs they previously identified.

Fifth, not only do Defendants insist that Plaintiff provide them with ISRCs, they are also insisting that Plaintiff provide them with all of the underlying metadata for each sound recording and first "prove" to Defendants that each sound recording allegedly infringed is the same recording registered with the copyright office. This is just beyond the pale. Defendants have no right to insist that Plaintiff make this showing just to respond to the Discovery Demands. Furthermore, Plaintiff's registrations create a *prima facie* presumption of a valid copyright. If Defendants believe that the works at issue are not the same ones recorded in the copyright office, it is their burden to prove that they are different.

8

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL
F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint Statement\Joint Statement FINAL.docx

**2. Defendants' Refusal to Produce Documents and Information Concerning the "Foreign Works".**

Defendants are refusing to produce any information related to Plaintiff's "Foreign Works" based on the erroneous clam that Plaintiff must first definitively prove its chain of title to the Foreign Works. This is simply not a requirement under F.R.C.P. 26 or any binding case law.

Fed. R. Civ. P 26(b)(1) provides: "Unless otherwise limited by court order, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). (*Emphasis added*)

Relevant information for the purposes of discovery is information "reasonably calculated to lead to the discovery of admissible evidence." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). "The question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Johnson v. Runnels,* 2009 WL 900755 at *1 (E.D. Cal. Mar. 31, 2009) (*quoting Miller v. Panuci,* 141 F.R.D. 292, 296 (C.D. Cal. 1992).

In cannot be disputed that any documents and information related to the Foreign Works which Plaintiff alleges were infringed by Dashgo is relevant. Dashgo's claim that Plaintiff has not proven its chain of title is not a basis to withhold discovery. Plaintiff does not have to prove its case first to obtain relevant discovery from the Defendants. *Nonetheless, Plaintiff has proven its chain of title to the Foreign Works and provided Defendant with hundreds of pages of proof substantiating its chain of title in response to Defendants' Discovery Demands.* If after discovery, Defendants believe that Plaintiff has failed to meet its burden of proof in any way, Defendants may move for summary

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL

F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint Statement\Joint Statement FINAL.docx

judgment. Defendants have no right to unilaterally impose a summary judgment standard on Plaintiff as a threshold for having to respond to Plaintiff's Discovery Demands.

### 3.  Plaintiff Should Be Granted Attorneys' Fees.

Repeatedly and without explanation, Defendants have rejected Plaintiff's multiple good faith attempts to resolve the current dispute. These attempts were made by Plaintiff in good faith to resolve the dispute over the discovery issues without having to engage in formal motion practice and unnecessarily burdening the Court with having to decide a motion on the issues. Thus, Defendants' repeated refusal to resolve this issue is extremely telling of their strategy and how they intend to continue litigating this matter. Accordingly, the Court should grant Plaintiff its fees and costs in making this motion and hold Dashgo in civil contempt for its failure to comply with the Order.

### E. CONCLUSION.

The only logical conclusion that can be drawn from Defendants' actions is that they are trying to avoid having to respond to the Discovery Demands because copyright infringement is essentially a strict liability offense and the documents and information being withheld by Defendants will substantiate Plaintiff's claims. As part of this strategy, Defendants are unilaterally imposing burdens of proof on Plaintiff that are irrelevant and inappropriate, especially at the discovery stage. Simply put, Plaintiff is just seeking basic information from its former distributor regarding works that Defendants previously distributed for years and which are known and readily accessible to Defendants, as demonstrated by the countless reports for these works that Defendants provided to Plaintiff prior to the expiration of the former distribution contracts.

For the reasons set forth above, Defendants should be compelled to respond to the Discovery Demands.

## II.     DEFENDANTS' STATEMENT AND CONTENTIONS.

### A.     INTRODUCTION.

On March 24, 2022, Plaintiff filed a motion to compel regarding all of Plaintiff's discovery (one set of interrogatories and two sets of document requests). Docket No. 40; *see also* Docket No. 61. The parties' joint statement was filed on August 12, 2022. Docket No. 80. The Court has not yet ruled on Plaintiff's first motion to compel. Nonetheless, Plaintiff has now seen fit to file another motion to compel regarding *the very same discovery*. The motion should be denied outright as redundant and premature, as well as procedurally non-compliant.[1]

Moreover, this motion was filed the afternoon before Yom Kippur eve, despite Plaintiff's counsel's knowledge that defense counsel is observant and does not work on Jewish holidays. This is another example of Plaintiff's continuing "scorched earth" litigation tactics. *Cf.* Docket No. 85 at fn. 1 and accompanying text. The motion should be denied on this additional basis.

The motion is also substantively meritless. The Court's July 21, 2022 order ("July 21 Order") clearly states that the Court "will not enforce" Plaintiff's discovery due to the inclusion of "superseded definitions." Docket No. 78, fn.4 at 6:18-23. As of this filing, those superseded definitions <u>have</u> <u>not</u> <u>changed</u> because Plaintiff has utterly failed to provide a list of specifically-identifiable copyrighted works Defendants allegedly infringed, or even to meet and confer, as ordered. *See* Docket No. 78 at 21:4-9; *see* Section II.B., *infra*. The motion should be denied.

### B.     DETAILS OF MEET AND CONFER.[2]

On July 21, 2022, the Court entered its order granting Defendants' motion for a two-tier protective order, ordering, in pertinent part, as follows:

---

[1] The Court's September 6, 2022 minute order, Docket No. 86, limits each party's portion of a Joint Statement re: Discovery Disagreement to 10 double-spaced pages "in light of the parties' past and current practice of filing hundreds of pages of exhibits with the Court." Plaintiff has nevertheless insisted that Defendants file Plaintiff's Exhibits (totaling nearly 300 pages). Correspondence not included in Plaintiff's Exhibits is available upon the Court's request.

[2] The background regarding Plaintiff's discovery is set forth in the joint statement on Plaintiff's first motion to compel, Docket No. 80 at 28:10-33:28, incorporated by this reference. The below recites only the meet and confer details following entry of the July 21 Order.

"3. The parties are directed to meet and confer to identify the "list" of Copyrighted Works and Foreign Works and which definitions will be used for responding to the RPD and Interrogatories. To the extent such a "list" has not been provided by Plaintiff to Defendants, the parties are directed to meet and confer and Plaintiffs are directed to provide such a list, *with specificity*. Defendants are entitled to know the works, *with specificity*, they are alleged to have infringed." Docket No. 78 at 21:4-9 (emphases added).[3]

On July 27, 2022, Defendants sent Plaintiff's counsel a meet and confer letter, setting forth Defendants' request for the information to be included in the list.[4]

On August 3, 2022, Mr. Berman responded. Plaintiff's Exhibit 2. Rather than meeting and conferring regarding the degree of "specificity" required for the "list", Mr. Berman provided another copy of the Exhibits to the SAC.[5] Although Mr. Berman offered a list that included ISRC and UPC codes, he did not enclose one with his letter.

Defendants responded to Mr. Berman the same day, dropping their request for certain information[6] despite Mr. Berman's failure to meet and confer.

---

[3] In Section I.C., *supra*, at 3:13-21, Plaintiff *partially* quotes from footnote 4 of the July 21 Order. While pertinent, that footnote does <u>not</u> comprise the Court's order, which is set forth at page 21. Moreover, Plaintiff's partial quotation notably *omits* the Court's statement that "[t]he Court will not enforce a request or interrogatory that contains superseded definitions." Docket No. 78 at 6:22-23. <u>All</u> of Plaintiff's discovery contains superseded definitions of "Yellowcake's Copyrighted Works" and "Foreign Works", since Plaintiff's discovery defines those terms by reference to Plaintiff's First Amended Complaint ("FAC"). Docket No. 7. The FAC was superseded by Plaintiff's Second Amended Complaint ("SAC"). Docket No. 31.

[4] Specifically, Defendants' requested: (1) Song title; (2) Name of artist; (3) Album title; (4) Copyright registration number (where applicable); (5) Copyright claimant; (6) Date of copyright registration; (7) Date of first publication (whether in the U.S. or in Mexico); (8) Date of first fixation (in Mexico); (9) Universal Product Codes ("UPC"); (10) International Standard Recording Code ("ISRC"); and (11) Date(s) of alleged infringement.

[5] Mr. Berman stated that he was providing the Exhibits to the SAC as "an act of good faith." The provision of yet another copy of the Exhibits to the SAC, which Defendants already had, is hardly an act of "good faith". Moreover, the SAC, Docket No. 31, was filed on <u>February 16, 2022</u>. The Court's order directing Plaintiff to provide a "list, with specificity" of the particular sound recordings alleged to have been infringed by Defendants", Docket No. 78, was entered on <u>July 21, 2022</u>. Had the Exhibits to the SAC been sufficiently specific, the Court surely would not have ordered Plaintiff to provide a "list, with specificity" five months after the SAC was filed.

[6] Defendants dropped their demand for: (1) Copyright claimant; (2) Registration date; (3) First publication date for registered sound recordings; and (4) Alleged infringement date(s).

Defendants also pointed out: (1) In order to become eligible for copyright protection, the "Foreign Works" were subject to the requirements of 17 U.S.C. § 104(b). *United States v. Hernandez* (9th Cir. 1991) 952 F.2d 1110, 1118 (citing *New York Chinese v. U.E. Enterprises* (S.D.N.Y. March 8, 1989) 1989 WL 22442, *5, 1989 U.S.Dist. LEXIS 2760 *19–20); and (2) If a foreign work is *ineligible* for copyright protection, no infringement claim can stand, and consequently any discovery seeking documents or information relating to such ineligible works is, *prima facie*, not relevant to any party's claim or defense and not proportional to the needs of the case. *Cf.* Fed. R. Civ. P. 26(b)(1).

On August 9, 2022, Mr. Berman provided a further iteration of the list of works that Defendants are alleged to have infringed, including Plaintiff's ISRC codes. Plaintiff's Exhibit 3.

On August 11, 2022, Defendants responded. Plaintiff's Exhibit 4. Defendants noted that a specific and accurate ISRC code is necessary to identify a sound recording, and that, based on a very preliminary spot check, each of the Exhibits enclosed with Mr. Berman's August 9, 2022 letter had discrepancies.[7] The Exhibits enclosed with Mr. Berman's August 9, 2022 letter were thus inaccurate and could not comprise the "list, with specificity" of allegedly-infringed works.

The August 11, 2022 letter also reiterated that discovery regarding "Foreign Works" which are ineligible for copyright protection is simply not relevant, and thus again insisted that Plaintiff provide evidence that each of the "Foreign Works" is eligible for copyright protection.[8]

Mr. Berman responded on August 18, 2022, stating, *inter alia*, that the SAC "clearly sets forth all of the copyrighted works allegedly infringed". Plaintiff's Exhibit 5; *but see* footnote 5,

---

[7] The specific works that had discrepancies were: (1) Exhibit A: The song "El Patiecito" by La Nobleza De Aguililla (no album name provided); (2) Exhibit B: The song "La Enorme Distancia" by Los Acuaria on the album *Sus Mas Grandes Exitos*; and (3) Exhibit C: The song "No Te Vayas" by El Jefe & Su Grupo on the album *12 Super Exitos*.

[8] Such evidence was formally requested both by Dashgo's Document Request No. 22 and Dashgo's Interrogatory No. 4 (one of the three interrogatories that are the subject of Dashgo's pending motion to compel, Docket Nos. 44, 79). Defendants have repeatedly followed up on these discovery requests, but Plaintiff has still produced no responsive documents or information. Accordingly, as to Plaintiff's discovery, the purportedly defined term "Foreign Works" is, and remains, inherently overbroad, and the discovery seeks irrelevant information and documents.

*supra*. Mr. Berman also attempted to shift the burden of identifying the songs included in "Yellowcake's Copyrighted Works" and "Foreign Works" to Defendants – even though the July 21 Order placed that burden on Plaintiff – by demanding that Defendants "continue to search for" additional discrepancies and defects with Plaintiff's most recently proffered "list". Because of the "thousands" of works at issue (to quote Plaintiff), an evaluation of the inaccuracies of Plaintiff's "list" would have been time-prohibitive, cost-prohibitive and unduly burdensome.

Mr. Berman's August 18, 2022 letter also stated: "[E]nclosed herewith is our new list mirroring Exhibits A, B and C to the Second Amended Complaint which includes both Yellowcake's ISRC codes, Dashgo's prior ISRC codes, Yellowcake's UPC codes and Dashgo's UPC codes for the works infringed as well as a note when such ISRC code is not available on Sound Exchange database but used in connection with digital service providers." That statement was untrue. *See* footnote 10, *infra*, and accompanying text.

Relevant to this motion, Mr. Berman's August 18, 2022 letter stated: "You are well aware it is possible that there is more than one ISRC code issued for a particular sound recording, and that it is also possible for a sound recording to be mis-indexed. Nor is every ISRC code available on Sound Exchange or properly indexed on Sound Exchange."

Mr. Berman's statement is contrary to established standards for the digital music distribution industry promulgated by authoritative third parties.

On August 19, 2022, Defendants responded to Mr. Berman. Plaintiff's Exhibit 6. Defendants' August 19, 2022 letter: (1) enclosed the ISRC Handbook (4th ed. 2021) published by the International ISRC Registration Authority (the "Handbook")[9]; (2) explained that Defendants, and the digital services providers with which Defendants do business, require ISRCs to uniquely identify a particular sound recording; (3) set forth why only one distinct ISRC applies to a single distinct sound recording, and why a distinct ISRC is presumptively the most effective way to determine which distinct sound recording is being referenced; (4) explained why

---

[9] *See* https://www.ifpi.org/wp-content/uploads/2021/02/ISRC_Handbook.pdf.

Plaintiff is responsible for correcting any ISRC errors; and (5) explained that a UPC code, being unique to an album rather than to an individual sound recording, does not inform Defendants as to which specific works Defendants are alleged to have infringed.

Defendants' letter then noted that the Exhibits enclosed with Plaintiff's August 18, 2022 letter did not contain the information Mr. Berman represented.[10]

Defendants' letter also provided Plaintiff with an example of why, even as to the allegedly <u>registered</u> sound recordings (those with an "SR" number), Yellowcake cannot make out a *prima facie* case that the works allegedly infringed are eligible for copyright protection. The letter also reiterated that the "Foreign Works" are only eligible for copyright protection if Yellowcake can establish that each work meets the requirements of 17 U.S.C. § 104(b).

The July 21 Order did not set a deadline for the meet and confer process, and, as of this filing, the process has not been exhausted. *Cf.* L.R. 251(b)(1). But instead of responding to Defendants' August 19, 2022 letter, on September 2, 2022, just before Labor Day weekend, Plaintiff filed an "emergency" request; the Court denied the request by minute order of September 6, 2022. Docket Nos. 84, 86. This motion is essentially a renewal of Plaintiff's "emergency" request and should likewise be denied.

---

[10] Specifically: (1) Exhibit A sets forth *only*: Song Title, Artist, SR, Link, ISRC [albeit not a Dashgo ISRC] and UPC; (2) Exhibit B sets forth *only*: Release Display Artist, Album Title, Track Number, Track Title, SR, Platform, UPC and ISRC [again, not a Dashgo ISRC]; and (3) Exhibit C sets forth *only*: a DashGo UPC, a Colonize UPC, a Release Display Artist, Album Title, Track Number, Track Title, SR, Platform and Colonize ISRC [again, not a Dashgo ISRC].

Thus, contrary to Mr. Berman's representation, the Exhibits A, B and C did not include "Dashgo's prior ISRC codes". Neither Exhibit A nor Exhibit B identified whether the UPC column is for "Yellowcake's UPC codes" or "Dashgo's UPC codes", but in any case, those two exhibits have only one UPC column and therefore did not include both "Yellowcake's UPC codes and Dashgo's UPC codes". As for Exhibit C, it is unclear whether "Yellowcake's UPC codes" [as set forth in Mr. Berman's August 18, 2022 letter] are the same as "Colonize UPC" [as set forth on the Exhibit C enclosed with Mr. Berman's August 18, 2022 letter].

Moreover, the Exhibits include no "note when such ISRC code is not available on Sound Exchange database but used in connection with digital service providers."

Despite the falsity of the representations, Plaintiff makes them again on this motion. *See* Section I.A., *supra*, at 1:17-21.

## C.    CONTENTIONS.

Plaintiff's second motion to compel is as substantively meritless as the first.

*First*, Plaintiff <u>concedes</u> that ISRCs are used in the digital music distribution industry to allow distributors and digital service providers to identify a particular sound recording.

While Plaintiff is technically correct that use of ISRCs is not "legally required", *see* Section I.D.1., *supra*, at 6:1, as Defendants have previously explained, in the digital music distribution business, ISRCs are a standard mechanism to identify specific sound recordings, but only insofar as an ISRC is <u>accurately</u> assigned and applied. *See* Docket No. 64 at 10:1-11; Docket No. 80 at 29:20-25. ISRC use is standard in the digital music industry, *inter alia*, because: (1) each ISRC has necessary associated reference metadata; (2) all data associated with a particular recording are linked to its ISRC; and (3) all reports generated by Defendants, or received by Defendants from third parties, rely on accurate ISRCs, each associated with a single, unique and distinct sound recording. This was fully explained to Plaintiff. Plaintiff's Exhibit 6.

For unknown reasons, Plaintiff renews an argument, first made in opposition to Defendants' motion for a two-tier protective order, that ISRCs are not necessary to the definitions of "Yellowcake's Copyrighted Works" and/or "Foreign Works" since ISRCs are only "one possible piece of potential identifying information." *Compare* Section I.D.1, *supra*, at 6:19 *with* Docket No. 64 at 40:12-21.[11] The Court has already considered, and rejected, Plaintiff's argument, ordering Plaintiff to provide a "list, with specificity" of identifiable copyrighted works after meeting and conferring with Defendants. The Court should again reject this argument.

Plaintiff contends that an ISRC can be "mis-indexed" and that a single sound recording can be assigned multiple ISRCs. As the ISRC Handbook shows, that is not how ISRCs are intended to work, nor, as Defendants have made clear, how they work as applied in the digital

---

[11] Emphasizing that Plaintiff's argument is simply a regurgitation of that previously made, Plaintiff cites to the <u>same</u> <u>hearsay</u> <u>document</u> as purported evidence. *Compare* Docket No. 64 at 40:19-21 (citing Exhibit "17" [Bates PLF005240-5259]) *with* Section I.D.1, *supra* at 6:19-23 (citing Plaintiff's Exhibit 7 [Bates PLF005240-5259]); Fed. R. Evid., Rules 801, 802.

music distribution business. Again, Defendants and the third parties with which Defendants do business rely on accurate ISRCs. If there has been "mis-indexing" or multiple ISRCs assigned to a single unique sound recording, it is not Defendants' burden to correct such errors.

Plaintiff asserts that it is <u>Defendants</u>' obligation to review Plaintiff's list of over 2,000 ISRCs and "provide Yellowcake with a list of ISRC codes [Defendants] believe are inaccurate". *See* Section I.D.1., *supra*, at 7:3-4. The July 21 Order, however, placed the burden of providing a "list, with specificity" on <u>Plaintiff</u>. It is not Defendants' burden to ensure that Plaintiff's "list" is accurate, and the time and cost it would take for Defendants to verify the (in)accuracy of ISRCs for over 2,000 works would be unduly burdensome and completely disproportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). Moreover, if Plaintiff's "list" is inaccurate, *see* Plaintiff's Exhibits 3 and 4, Defendants would be sent on a search for documents and information having no relevance whatsoever to the claims and allegations made in this action.

*Second*, Plaintiff asserts that Defendants' alleged acts of infringement occurred using the ISRCs "provided by Plaintiff in Exhibit 5." *See* Section I.D.1., *supra*, at 7:24-26. The ISRCs provided in Plaintiff's Exhibit 5 have the Prefix Code "QM6DC". *See* Plaintiff's Exhibit 5 at 4-30; *cf.* Plaintiff's Exhibit 6 at 15-16 [ISRC Handbook, § 3.3.2]. Whether the Prefix Code "QM6DC" is Yellowcake's or Colonize's Prefix Code, it is most certainly <u>not</u> Dashgo's.[12] *See* footnote 10, *supra*. Plaintiff fails to explain how or why Defendants would have been utilizing ISRCs with Yellowcake's or Colonize's Prefix Code during the relevant time period.[13] It thus

---

[12] Plaintiff points to its Exhibits 8 and 9 as purported evidence that the various iterations of its list – even absent Dashgo's ISRCs – are "more than sufficient for Defendants to identify the sound recordings [at issue]." *See* Section I.D.1., *supra*, at 8:8-19. First, it is not Defendants' obligation to identify the sound recordings which they are alleged to have infringed. Second, Plaintiff's Exhibit 9 sets forth the specific recordings that Dashgo would be releasing *by Dashgo ISRC* ("US3DF" Prefix Code), rather than Plaintiff's (or Colonize's) "QM6DC" Prefix Code. Thus, Plaintiff's Exhibits 8 and 9 prove the exact opposite of what Plaintiff intended. Even so, Plaintiff's Exhibit 9 is not competent evidence. *See* Fed. R. Evid., Rules 801, 802 (hearsay).

[13] As Defendants have previously noted, by letter dated February 4, 2022, Plaintiff agreed to "limit" the relevant time period for its discovery to "January 1, 2010 to the present" (more than 12 years) despite the 3-year statute of limitations for copyright infringement. 17 U.S.C. § 507(b).

appears that Plaintiff would purport to have Defendants search for data that, on the face of it, is irrelevant and/or not in Defendants' possession, custody or control.

*Third*, while UPCs are potentially unique to an <u>album</u>, they are not unique to <u>individual sound recordings</u> that appear on an album. Plaintiff concedes as much, in asserting that UPCs can, at best, "help" to "refine" "the search" and enable Defendants to "find individual songs related to that album".[14] *See* Section I.D.1., *supra*, at 8:5-7.

*Fourth*, Plaintiff is "the master of the complaint", *cf. Lincoln Prop. Co. v. Roche* (2005) 546 U.S. 81, 91, 126 S.Ct. 606, 614, 163 L.Ed. 2d 415, and thus controls the allegations of its complaint – including as to the list of works Defendants are alleged to have infringed. If Plaintiff lacks "identifying information" as to one or more of the sound recordings it alleges was infringed, *cf.* Section I.D.1., *supra*, at 8:10-11, it should withdraw that allegation; otherwise, Plaintiff risks violating Rule 11 of the Federal Rules of Civil Procedure.

*Fifth*, the meet and confer correspondence shows that Defendants have never "insist[ed] that Plaintiff provide [Defendants] with all of the underlying metadata for each sound recording". Plaintiff's assertion to the contrary, Section I.D.1., *supra*, at 8:20-22, is simply untrue.

Defendants have, however, insisted that Plaintiff establish that each of the sound recordings allegedly infringed is, in fact, eligible for copyright protection. If works that cannot be the subject of a claim for copyright infringement fall within the definitions of "Yellowcake's Copyrighted Works" or "Foreign Works", the discovery incorporating those definitions is inherently overbroad and captures irrelevant documents and information. Defendants' August 19, 2022 letter, Plaintiff's Exhibit 6, explained Defendants' reason for questioning whether each of "Yellowcake's Copyrighted Works" and "Foreign Works" is eligible for copyright protection.

With regard to "Yellowcake's Copyrighted Works", and by way of example only and without limitation, the very first work on Plaintiff's newest Exhibit A, Plaintiff's Exhibit 5 at 5,

---

[14] It is unclear what the phrase "the search" is intended to refer to, nor who Plaintiff is suggesting must conduct "the search"; however, it is clear that Plaintiff would place the onus on <u>Defendants</u> to "find individual songs related to that album". That is not Defendants' burden.

is the song "El Patiecito" by La Nobleza De Aguililla, with copyright registration number SR0000638659. As noted in Defendants' August 19, 2022 letter, Plaintiff's Exhibit 6 at 7, 37-38, Reg. No. SR0000638659 is actually for "Siempre Juntos" by La Nobleza De Aguilla. Obviously, "El Patiecito" is not the same as "Siempre Juntos", nor is "Aguililla" the same as "Aguilla".

Thus, while a copyright registration does create a *prima facie* presumption of a valid copyright, *see* Ninth Circuit Manual of Model Civil Jury Instructions, Copyright (November 2021 update), Instruction 17.7, that presumption is rebuttable upon an "offer of some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.* (9th Cir. 2011) 630 F.3d 1255, 1257. Reg. No. SR0000638659 itself constitutes sufficient evidence to rebut Plaintiff's allegation that the sound recording of the song "El Patiecito" by the band La Nobleza De Aguililla is protected by copyright.

As to the "Foreign Works", Plaintiff does not dispute that those allegedly-Mexican sound recordings, are eligible for copyright protection only if each meets the requirements of 17 U.S.C. § 104(b). Plaintiff nevertheless has failed and refused to produce any documents or information evidencing that any of the "Foreign Works" is eligible for protection. *See* footnote 8, *supra*.

Discovery regarding those "Yellowcake's Copyrighted Works" and "Foreign Works" that are not protected by copyright is irrelevant to any party's claim or defense in this action, and the burden and expense to Defendants outweighs any possible benefit to Plaintiff (since there is no benefit to discovery regarding unprotected sound recordings). Fed. R. Civ. P. 26(b)(1).

Finally, Plaintiff evinces a fundamental misunderstanding of burdens of proof in copyright litigation in stating that "[i]f Defendants believe that the works at issue are not the same ones recorded in the copyright office, it is *their* burden to prove that they are different." *See* Section I.D.1., *supra*, at 8:25-28 (emphasis added). To the contrary, Plaintiff "has the burden of proving by a preponderance of the evidence that . . . the plaintiff is the owner of a valid copyright[.]" Ninth Circuit Manual of Model Civil Jury Instructions, Copyright (November 2021 update), Instruction 17.5.

On all counts, Plaintiff's second motion to compel is meritless and should be denied.

1.    **Defendants Should Be Awarded Their Attorneys' Fees**.

As detailed above, Plaintiff's second motion to compel is unjustified, and there are no circumstances that would make an award of Defendants' fees "unjust", particularly in view of: (1) Plaintiff's pending motion to compel regarding *the very same discovery*; and (2) the July 21 Order stating that the Court "will not enforce" Plaintiff's discovery that includes "superseded definitions." Docket No. 78, fn.4 at 6:18-23; Fed. R. Civ. P. 37(a)(5)(B).

Accordingly, the Court should award Defendants their attorneys' fees and costs in an amount of at least $8,500 or, in the alternative, order Plaintiff to show cause why it should not be ordered to fully reimburse Defendants for the attorneys' fees incurred to oppose an unnecessary and utterly meritless motion. *Cf. Quality Inv. Properties Santa Clara, LLC v. Serrano Elec., Inc.* (N.D. Cal. July 22, 2010) No. C 09-5376 JF (PVT), 2010 WL 2889178, at *4.

**D.    CONCLUSION.**

To be perfectly clear, **Defendants are not refusing to supplement their responses to Plaintiff's discovery, nor refusing to produce documents and information responsive to that discovery**. But first, Defendants are entitled to know, *<u>with specificity</u>*, what sound recordings they are alleged to have infringed. To date, Plaintiff has provided three different iterations of its list, but each has been defective. Defendants are entitled to an accurate list. This is a threshold issue, since the list will serve to define the terms "Yellowcake's Copyrighted Works" and "Foreign Works" in the SAC and in Plaintiff's discovery. Until an accurate and specific list is provided, Plaintiff's discovery is overbroad, and seeks irrelevant information and documents.

Discovery is not a "fishing expedition" to obtain information and/or documents that, Plaintiff speculates, will "substantiate Yellowcake's claims." *See Hoffman v. Lassen Cnty.* (E.D. Cal. May 26, 2017) No. 2:15-CV-1382 DB P, 2017 WL 2311683, at *3; *see* Section I.E., *supra*, at 10:15-16. The use of the discovery process for such purposes is a clear abuse and misuse.

For the foregoing reasons, the Court should deny Yellowcake's second motion to compel and impose monetary sanctions against Plaintiff and Plaintiff's counsel for having to oppose this meritless motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DICKENSON PEATMAN & FOGARTY P.C.

Dated: ___10/7_____, 2022

By: /s/ Richard J. Idell_____
    Richard J. Idell (SBN 069033)
    Ory Sandel (SBN 233204)
    *Attorneys for Defendants Dashgo,*
    *Inc., Audiomicro, Inc. d.b.a. Adrev,*
    *Benjamin Patterson and Noah*
    *Becker*

ABRAMS FENSTERMAN, LLP

Dated: ___10/7_____, 2022

By: /s/ Seth L. Berman_____
    Seth L. Berman (admitted *pro hac vice*)

HEFNER, STARK&MAROIS, LLP

By: /s/ Thomas P. Griffin_____
    Thomas P. Griffin, Jr.
    (SBN 155133)
    *Attorneys for Plaintiff Yellowcake,*
    *Inc.*

JOINT STATEMENT RE: DISCOVERY DISAGREEMENT RE: PLAINTIFF'S MOTION TO COMPEL

F:\HOME\sberman\Colonize Media\Yellowcake\Dashgo\Motions\Plaintiff's Motion to Compel 9.2022\Joint
Statement\Joint Statement FINAL.docx

# Appendix 1
## Plaintiff's Exhibits

## Filed as attachments to Main Document